UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

9384-2557 QUÉBEC INC., a Canadian corporation;
MINEDMAP, INC., a Nevada corporation; and SERENITY
ALPHA, LLC, a Nevada limited liability, and other similarly
situated individuals,

Plaintiffs,

-against-

NORTHWAY MINING, LLC, a New York limited liability
company; MICHAEL MARANDA, an individual; MICHAEL
CARTER, an individual; CSX4236 MOTORCYCLE
SALVAGE, LLC, a New York limited liability company;
DROR SVORAI, an individual; MINING POWER GROUP,
INC., a Florida corporation; HUDSON DATA CENTER, INC,
a New York Corporation, MICHAEL MARANDA, LLC, a
New York Limited liability company; PORTER KING HILL
CONTRACTING, LLC, COINMINT, LLC, a Delaware limited
liability company,

Defendants.

Civ. Action No.: 1:19-CV-00501-
TJM-CFH

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

## BY DEFENDANTS NORTHWAY MINING LLC, MICHAEL MARANDA, MICHAEL MARANDA LLC, AND HUDSON DATA CENTER INC.

John F. Harwick, Esq.
Benjamin F. Neidl, Esq.
E. STEWART JONES HACKER MURPHY LLP
*Attorneys for Defendants Northway Mining
LLC, Michael Maranda, Michael Maranda
LLC and Hudson Data Center Inc.*
28 Second Street
Troy, N.Y.  12180
(518)274-5820

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................1

RELEVANT PROCEDURAL HISTORY ..........................................................1

ALLEGATIONS OF THE AMENDED COMPLAINT ......................................3

    A.    Bitcoin Mining ..................................................................................3

    B.    Quebec's Allegations ........................................................................4

    C.    MinedMap and Serenity's Allegations ...........................................5

ARGUMENT ......................................................................................................7

    I.    THE ACTION SHOULD BE DISMISSED BECAUSE
          THE PLAINTIFFS FAILED TO EFFECTUATE TIMELY
          SERVICE UNDER RULE 4(m). ...................................................7

    II.    THE RICO CLAIM (COUNT I) MUST BE DISMISSED
          FOR FAILURE TO STATE A CLAIM. .......................................7

          A.    As a Threshold Matter, the Amended Complaint is Defective
                Because it is Not Accompanied by a RICO Statement as
                Required by Local Rule 9.2 ..................................................8

          B.    The Amended Complaint Does not Allege the *Continuity*
                Required to Establish a "Pattern." ........................................9

                1.    The Amended Complaint Does Not Allege
                        a "Closed-Ended" Pattern of Racketeering Activity. ...........10

                2.    The Amended Complaint Does Not Allege an
                        "Open-Ended" Pattern of Racketeering Activity. ...............12

          C.    In Addition, the Amended Complaint Does not Allege
                 Individual Acts of "Racketeering Activity" With Particularity. .......13

    III.    THE "CIVIL CONSPIRACY" CLAIM (COUNT III) MUST
          BE DISMISSED FOR FAILURE TO STATE A CLAIM BECAUSE
          NEW YORK DOES NOT RECOGNIZE CIVIL CONSPIRACY
          AS AN INDEPENDENT TORT. ..............................................15

          A.    New York Law Governs the Tort Claims in this Action. ...............15

B.    New York Law Does Not Recognize the
         Tort of Civil Conspiracy......................................................................16

IV.    IN ANY EVENT, THE CLAIMS ASSERTED BY QUÉBEC
         AND SERENITY MUST BE DISMISSED FOR IMROPER VENUE
         OR *FORUM NON CONVENIENS* PURUSANT TO THE FORUM/
         VENUE SELECTION CLAUSES IN THEIR CONTRACTS....................17

CONCLUSION.......................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>Payday Advance Plus, Inc. v. Findwhat.com, Inc.</u>,
    478 F.Supp.2d 496 (S.D.N.Y. 2007)....................................................................... 16

<u>Abramo v. Teal, Becker & Chiarmonte</u>, 713 F.Supp.2d 96 (N.D.N.Y. 2010) ................. 9, 10, 11

<u>Albunio v. Int'l Safety Grp.</u>, WL 1267795 (S.D.N.Y. Mar. 30, 2016)........................................ 12

<u>Amaker v. Kelly</u>, 2009 WL 385413 (N.D.N.Y., Feb. 9, 2009) .................................................... 8

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009)................................................................................... 8, 15

<u>Atlantic Marine Construction Co. v. United States Dist. Court</u>
    <u>for the Western District of Texas</u>, 134 S. Ct. 568 (2013) ........................................ 17

<u>Banca Commerciale Italiana v. Northern Trust Int'l Corp.</u>, 160 F.3d 90 (2d Cir. 1988) ............ 16

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007) ................................................................ 8, 15

<u>Bernstein v. Misk</u>, 948 F. Supp. 228, 238 (E.D.N.Y. 1997)......................................................... 11

<u>Bigsby v. Barclays Capital Real Estate, Inc.</u>, 170 F. Supp. 3d 568 (S.D.N.Y. 2016) ................. 14

<u>Carl v. Dirie</u>, 2010 WL 3338566 (N.D.N.Y. Mar. 29, 2010) ...................................................... 17

<u>CFirstclass Corporation v. SilverjetPLC</u>, 560 F.Supp.2d 324 (S.D.N.Y. 2008) .......................... 19

<u>Cofacredit, S.A. v. Windsor Plumbing Supply Co.</u>, 187 F.3d 229 (2d Cir. 1999) ....................... 12

<u>Commander v. American Cruise Lines, Inc.</u>, 389 F.Supp.3d 180 (N.D.N.Y. 2019).............. 17, 19

<u>Cosmos Forms Ltd. v. Guardian Life Ins. Co.</u>, 113 F.3d 308 (2d Cir. 1997)................................. 9

<u>Couvertier v. Concourse Rehabilitation and Nursing, Inc.</u>, 117 A.D.3d 772 (2d Dep't 2014) .... 18

<u>Crawford v. Franklin Credit Mgmt. Corp.</u>, 758 F.3d 473 (2d Cir. 2014)..................................... 14

<u>Curly v. AMR Corp.</u>, 153 F.3d 5 (2d Cir. 1998) ........................................................................ 15

<u>DeFalco v. Bernas</u>, 244 F.3d 286 (2d Cir. 2001)........................................................................ 10

<u>FD Prop. Holding, Inc. v. U.S. Traffic Corp.</u>, 206 F. Supp. 2d 362 (E.D.N.Y. 2002) ................ 10

<u>First Capital Asset Mgmt., Inc. v. Satinwood, Inc.</u>, 385 F.3d 159 (2d Cir. 2004).............. 9, 10, 11

<u>Flexborrow LLC v. TD Auto Fin. LLC</u>, 255 F. Supp. 3d 406 (E.D.N.Y. 2017).......................... 10

Frink America v. Champion Road Machinery Ltd., 48 F.Supp.2d 198 (N.D.N.Y. 1999) .......... 15

Grace International v. Festa, 2019 WL 1369000 (E.D.N.Y., Mar. 26, 2019) ................... 9, 13, 14

Gross v. Waywell, 628 F. Supp. 2d 475 (S.D.N.Y. 2009) ........................................................ 9, 14

K&D Corp. v. Concierge Auctions, LLC, 2 F. Supp. 3d 525 (S.D.N.Y. 2014) .......................... 13

Kirch v. Liberty Media, 449 F.3d 388 (2d Cir. 2006) ................................................................. 16

Lerner v. Fleet Bank, N.A., 459 F.3d 273 (2d Cir. 2006) ............................................................ 14

Martin v. Workmen's Circle Multicare Center, 171 A.D.3d 490 (1st Dep't 2019) .................... 18

Martinez v. Bloomberg, 740 F.3d 211 (2d Cir. 2014) .................................................... 17, 18, 19

McCall v. Chesapeake Energy Corp., 509 Fed.Appx. 62 (2d Cir. 2013) .................................... 16

Medina v. Gold Crest Care Cener, Inc., 117 A.D.3d 633 (1st Dep't 2014) ................................ 18

Moss v. Morgan Stanley, Inc., 719 F.2d 5 (2d Cir. 1983) ............................................................. 8

Ray Larsen Assocs., Inc. v. Nikko Am., Inc., No. 89 CIV. 2809,
    1996 WL 442799 (S.D.N.Y. Aug. 6, 1996) ............................................................................ 10

Rescuecom Corp. v. Chumley, 522 F.Supp.2d 429 (N.D.N.Y. 2007) .......................................... 17

Rudgayzer v. Google, Inc., 986 F. Supp.2d 151 (E.D.N.Y. 2013) .............................................. 18

Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91 (2d Cir. 1997) ...................................... 9

Smith v. Aegon Companies Pension Plan, 769 F.3d 922 (6th Cir. 2014) .................................... 18

Speight v. Benedict, 2007 WL 951492 (S.D.N.Y. Mar. 28, 2007) ............................................... 11

Spoto v. Herkimer County Trust, 2000 WL 533293
    (N.D.N.Y, Apr. 27, 2000) ......................................................................................... 8, 9, 12, 14

Starkey v. G. Adventures, Inc., 796 F.3d 193 (2d Cir. 2015) ...................................................... 17

Townsend v. Public Storage, Inc., 2014 WL 1764432 (N.D.N.Y., Apr. 30, 2014) ....................... 8

United States v. Aulicino, 44 F.3d 1102 (2d Cir. 1995) ......................................................... 12, 13

Wee v. Rome Hosp., 1996 WL 191970 (N.D.N.Y., Apr. 15, 1996) ....................................... 10, 11

Wells Fargo Bank, N.A. v. Wine, 90 A.D.3d 1216, 1218 (3d Dep't 2011) ................................. 16

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................ 8, 14

Fed. R. Civ. P. 12(b)(3) ............................................................................................. 20

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 20

N.D.N.Y. Local Rule 9.2 ............................................................................................. 8

## PRELIMINARY STATEMENT

Defendants Northway Mining LLC (**"Northway"**), Michael Maranda (**"Maranda"**), Michael Maranda LLC (**"MMLLC"**) and Hudson Data Center Inc. (**"Hudson Data"** and, together with Northway, Maranda and MMLLC, the **"Moving Defendants"**), by and through their undersigned attorneys, respectfully submit this Memorandum of Law in support of their partial motion to dismiss pursuant to Rule 12(b)(3) and (b)(6) of the Federal Rules of Civil Procedure.

This motion seeks dismissal of the RICO cause of action (Count I) because the Amended Complaint does not allege either a "pattern" of racketeering activity, or individual racketeering crimes with sufficient particularity.  Essentially, the plaintiffs are seeking to federalize a garden variety contract and alleged common-law fraud dispute with generalized allegations that the transactions involved mail and wire communications.  That is insufficient to sate a claim.  The motion also seeks dismissal of the "civil conspiracy" cause of action (Count III) because New York law does not recognize conspiracy as an independent tort.  Furthermore, the motion seeks dismissal of all claims pled by plaintiffs 9384-2557 Québec Inc. and Serenity Alpha LLC because the venue selection clauses in their contracts specify that all disputes relating to the agreement must be adjudicated in the courts of Greene County, New York.  Accordingly, venue in the Northern District is improper.

## RELEVANT PROCEDURAL HISTORY

The plaintiffs commenced this action in the United States District Court for the Eastern District of New York in April 2019, with a civil Complaint against the Moving Defendants, and co-defendants Michael Carter (**"Carter"**), CSX4236 Motorcycle Salvage LLC (**"CSX"**) Dror Svorai (**"Svorai"**) and Mining Power Group, Inc. (**"Mining Power"**).  (The **"Initial Complaint,"** ECF Doc. #2.)

On April 25, 2019 the plaintiffs filed an emergency motion to transfer the case to the Northern District of New York because, allegedly, the property subject to two of the plaintiffs' replevin claims was located within the territorial boundaries of the Northern District.  (ECF Doc. #13.)  The Eastern District granted that motion the same day, and the case was transferred to the Northern District as of April 26, 2019.  (ECF Doc. #14, #15 and #15.)  Northern District Magistrate Judge Hummel issued a "General Order 25" that very day, April 26, 2019.  (ECF Doc. #16.)

Over the next eleven months, the plaintiffs apparently made no attempt to serve the Initial Complaint.  The plaintiffs did not serve the Moving Defendants and there is no proof of service in the case docket regarding any of the other defendants.

On March 12, 2020, the plaintiffs filed an Amended Complaint.   (ECF Doc. #29.)  The Amended Complaint added two new defendants: Porter King Hill Contracting LLC (**"Porter King"**) and Coinmint LLC (**"Coinmint"**).  The plaintiffs requested that the Moving Defendants waive service of the Amended Complaint pursuant to Federal Rule 4(d).  The Moving Defendants agreed to waive service effective March 25, 2020.  (ECF Doc. #35.)[1]  Meanwhile, there is no indication in the docket that the plaintiffs have served any of the other defendants with the amended Complaint.

---

[1]     On May 1, 2020 the plaintiffs filed a motion for leave to file a Second Amended Complaint.  (ECF Doc. #50.)  That motion is still pending.  We note, however, that the Second Amended Complaint does not cure any of the grounds for dismissal of the claims discussed below.  The Second Amended Complaint does not supply any of the missing particulars concerning the RICO claim, it still pleads a civil conspiracy claim that is not recognized in New York, and still asserts claims on behalf of Quebec that are not properly before this Court because they parties' venue selection clause specifies that they be heard elsewhere.  Contemporaneously with this motion, the Moving Defendants are filing an opposition to the motion to amend for those and other reasons.

## ALLEGATIONS OF THE AMENDED COMPLAINT

Because the facts alleged in a complaint are generally accepted as true on a motion to dismiss, the following summary of the Amended Complaint is offered without argument as to the allegations' truth or lack of truth.  Upon joinder of issue the Moving Defendants would deny many of the factual allegations and would deny liability under every cause of action.

The concise version of the pleading is that the three plaintiffs, 9384-2557 Québec Inc. (**"Quebec"**), MinedMap, Inc. (**"MinedMap"**) and Serenity Alpha LLC (**"Serenity"**) each allege that they entered into bitcoin mining/hosting transactions with defendant Northway in the latter part of 2018 which, allegedly, Northway failed to perform.  Quebec seeks a refund of monetary payments that it made to Northway.  MinedMap and Serenity seek a refund of monetary payments and damages and/or replevin with regard to the alleged loss of bitcoin mining equipment.

### A.    Bitcoin Mining

A brief explanation of bitcoin mining will help the Court assess the plaintiffs' allegations. Bitcoin mining is a support service that facilitates cryptocurrency transactions.  Cryptocurrency is, of course, a form of "virtual" currency used to make purchases over the internet.  For security and privacy reasons, some consumers prefer to make online purchases with cryptocurrency rather than credit cards.  In these transactions, the consumer uses "regular money" (*i.e.*, U.S. Dollars or another sovereign currency) to purchase units of cryptocurrency (often called bitcoins) from a third-party cryptocurrency supplier.  The consumer can then spend the bitcoins to purchase goods and services from online retailers.  Sellers who receive payment in bitcoin can, in turn, cash in the bitcoins for regular money.

*Bitcoin mining* businesses are third parties that validate the consumer's bitcoins for the seller.  That is, when a consumer offers bitcoins to make a purchase, a bitcoin mining business

checks the coins against digital ledger (known as a blockchain) to confirm that the bitcoins are legitimate.  This is done nearly instantly, through the use of specialty computers known as "miners."  A mining business will usually run a number of these miners at the same time, to handle multiple validations as transactions arise.  The mining business receives a fee for each transaction that it validates, equal to some percentage of the bitcoins that the consumer pays to the seller in the underlying purchase.

As noted, a mining business usually has a number of machines running at a time at a physical location where they are plugged into an electrical infrastructure.  Sometimes a mining business will allow other, outside parties to bring in miner machines to its facility, and run on the mining business's power.  Running another party's miner at your facility is called "hosting."

**B.      <u>Quebec's Allegations</u>**

Quebec alleges that in August 2018, it owned a number of miner machines and was looking for a company to host them.  (Amended Complaint ¶29 [ECF Doc. #29].)  Some Quebec representatives allegedly met with a broker named Joseph Stefanelli that month who was working for defendant Northway.  (<u>Id.</u> ¶¶25, 30.)  Quebec claims that Stefanelli promoted Northway's services as a bitcoin miner and a qualified host for Quebec's machines.  Allegedly, Stefanelli exaggerated Northway's capabilities by saying that Northway's upstate New York facility could host thousands of miners simultaneously and had access to abundant electrical power. (<u>Id.</u> ¶¶28, 31-32.)  The pleading alleges that one of Northway's owners, defendant Michael Maranda, instructed Stefanelli to make these representations.  (<u>Id.</u> ¶28.)

On September 9, 2018, two Quebec representatives met with Maranda at Northway's upstate facility.  (<u>Id.</u> ¶33.)  During this meeting, Maranda allegedly repeated Stefanelli's earlier claim that the facility had access to abundant electrical power and could host thousands of miners

simultaneously.  (Id.)  Maranda also allegedly said that Northway had electrical engineers who could care for and maintain the miners.  (Id. ¶36.)

On September 9, 2018, Quebec allegedly sent 700 miners to Northway for Northway to host.  (Id. ¶37.)  Between September 10 and September 21, 2018, Quebec allegedly paid Northway $93,826.17 "as a deposit towards the electrical costs for hosting its miners."  (Id. ¶¶38-41.)  The pleading alleges that on September 18, 2018, Quebec and Northway entered into a written agreement for the hosting services, which the Amended Complaint refers to as "Exhibit 1," although there are in fact no exhibits attached to the pleading.  (Id. ¶39.)

Quebec contends that Northway failed to have its miners plugged in and operating by an agreed-upon date, September 23, 2018.  (Id. ¶40.)  Over the next few days, Quebec and Maranda had several discussions in which Maranda explained that the delay was caused by a defective power distribution unit and power racks.  (Id. ¶¶42-49.)  Quebec alleges that by around the end of September 2018, Quebec heard from an unnamed source that Northway's facility, endemically, did not have power capacity to support 700 miners.  (Id. ¶50.)  Therefore, on October 5, 2018, Quebec recollected its miners from Northway.  (Id. ¶¶54, 57.)  Quebec allegedly demanded a refund of its $93,826.17 in deposits, which Northway refused.  (Id. ¶58.)  Quebec generally alleges that Maranda used the so-called deposit moneys to pay for personal expenses relating to vehicles, real estate and travel. (Id. ¶68.)

## C.     **MinedMap and Serenity's Allegations**

MinedMap and Serenity are related to each other.  Serentiy holds itself out as a bitcoin mining company with investors "around the world."  (Id. ¶4.)  MinedMap is Serenity's parent company, and is in the business of "owning and purchasing" bitcoin mining machines.  (Id. ¶ 5.)  Their alleged dealings with Northway occurred at around the same time as Quebec's.

The Amended Complaint alleges that one or more MinedMap's representatives visited Northway's facility several times in September and October of 2018.  (Id. ¶¶71-73.)  During one of these meetings in September, defendant Maranda allegedly misrepresented that Northway had recently obtained $1 million in funding from defendants Mining Power and Dror Svorai.  (Id. ¶¶76-77.)  Maranda allegedly said that he intended to use that capital to purchase another mining facility in Illinois.  (Id. ¶78.)

On September 21, 2018, MinedMap and Serenity entered into a written hosting agreement with Northway, which the Amended Complaint refers to as "Exhibit 4" (although, again, there are no exhibits attached).  (Id. ¶86.)  At around the same time, MinedMap and Serenity paid Northway $432,000 in "deposit" money "on the electrical costs Northway was to incur hosting MinedMap and Serenity's Miners."  (Id. ¶¶88-89.)

Between October and early-November 2018, MinedMap and Serenity allegedly transported 2,689 Miners to Northway.  (Id. ¶90.)  The plaintiffs allege that Northway was required to have the machines plugged in and operating within 21 days of delivery, but failed to do so.  (Id. ¶91.)  They allege that beginning some time in November 2018 MinedMap and Serenity had a back-and-forth with Maranda about their miners.  Maranda allegedly said that the miners were not running because of an unspecified issue at the facility (Id. ¶99) and reported that he would have their miners transferred to a different facility in Louisiana (Id.) or New York (Id. ¶107), but did not do so.  By February 15, 2019, MinedMap and/or Serenity allegedly demanded a return of their miners, which Northway allegedly refused.  (Id. ¶¶109-10.)  The plaintiffs allege that defendant Maranda transferred the miners to third parties, including defendant Michael Carter.  (Id. ¶¶111-13.)

## **ARGUMENT**

### **POINT I**

### **THE ACTION SHOULD BE DISMISSED BECAUSE THE PLAINTIFFS FAILED TO EFFECTUATE TIMELY SERVICE UNDER RULE 4(m).**

Rule 4(m) of the Federal Rules of Civil Procedure requires the plaintiff to serve the defendant with process within 90 days after the complaint is filed.  The rule further provides that "on motion or on its own after notice to the plaintiff—[the Court] must dismiss the action without prejudice" against a defendant not served within that time, "or order that service be made within a specified time." Id. The Court may extend the time for service if the plaintiff "shows good cause for the failure."  Id.

The plaintiffs commenced this case over a year ago, in April 2019.  They never served the Initial Complaint.  The plaintiffs filed the Amended Complaint nearly a year later on March 12, 2020, and only pursued service of that pleading and the Summons upon the Moving Defendants on or about March 25, 2020.  (ECF Doc. #35.)  The record is devoid of any cause, much less "good cause," why the plaintiffs did not serve process within 90 days of commencing the action (or even the first 340 days after commencing the action.)  Accordingly, the case should be dismissed for that reason alone.

### **POINT II**

### **THE RICO CLAIM (COUNT I) MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.**

To state a RICO claim, a plaintiff must allege that the defendant (1) through the commission of two or more acts constituting a "pattern" (2) of "racketeering activity" (3) directly or indirectly participates in an "enterprise" (4) the activities of which affect interstate or foreign

commerce; (5) causing injury to the plaintiff.  Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983); Townsend v. Public Storage, Inc., 2014 WL 1764432, at *5 (N.D.N.Y., Apr. 30, 2014).

It is of course well-settled that "To withstand a Rule 12(b) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(internal quotations omitted).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"  Id., quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Moreover, "The pleading of a civil RICO violation is subject to the heightened requirement that its supporting allegations must be pleaded with particularity" pursuant to Federal Rule 9(b). Amaker v. Kelly, 2009 WL 385413, at *11 (N.D.N.Y., Feb. 9, 2009).  Thus, the complaint must specify, among other things, the time, place and manner of the discrete acts of racketeering activity, and how they purportedly constitute a pattern.  Spoto v. Herkimer County Trust, 2000 WL 533293, at *5 (N.D.N.Y, Apr. 27, 2000).

## A.   As a Threshold Matter, the Amened Complaint is Defective Because it is Not Accompanied by a RICO Statement as Required by Local Rule 9.2

Because RICO claims are subject to a heightened pleading standard, the Local Rules of this Court require the plaintiff to supplement his/her complaint with a separate RICO statement, itemizing the factual allegations that are the basis of the claim.  Local Rule 9.2 requires the plaintiff to file the RICO statement within thirty (30) days after filing the complaint, and the statement must conform to the format dictated by the Court in General Order #14.  "This statement shall state in detail and with specificity the information requested in the RICO Statement."  Local Rule 9.2.  A plaintiff's failure to file the RICO statement, by itself, warrants dismissal.  Amaker v. Kelly, 2009 WL 385413, at *11 (N.D.N.Y., Feb. 9, 2009); Spoto v. Herkimer County Trust, 2000 WL 533293,

at *3 n.2 (N.D.N.Y, Apr. 27, 2000).  In this case the absence of the RICO statement is a material deficiency because, as set forth below, the allegations of the Amended Complaint alone are insufficient to meet the pleading standard.

**B.**     **The Amended Complaint Does not Allege the *Continuity* Required to Establish a "Pattern."**

To satisfy the "pattern" requirement of a civil RICO claim, the factual allegations must meet two standards: relatedness and continuity.  Gross v. Waywell, 628 F. Supp. 2d 475, 485 (S.D.N.Y. 2009).

"Predicate acts are 'related' for RICO purposes, when they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 97 (2d Cir. 1997).  Relatedness is indicated by "temporal proximity of the [underlying] acts, by common goal, methodology, and their repetition."  Cosmos Forms Ltd. v. Guardian Life Ins. Co., 113 F.3d 308, 310 (2d Cir. 1997).

*Continuity*, on the other hand, requires something more.  And, in fact, the continuity element is where many would-be claims fall short of RICO's strict requirements and find dismissal.  See, e.g., Abramo v. Teal, Becker & Chiarmonte, 713 F.Supp.2d 96, 110 (N.D.N.Y. 2010); Spoto v. Herkimer County Trust, 2000 WL 533293, at *5 (N.D.N.Y, Apr. 27, 2000); Grace International v. Festa, 2019 WL 1369000, at *5 (E.D.N.Y., Mar. 26, 2019).

Specifically, to plead continuity, the plaintiff "must allege either an open-ended pattern of racketeering activity (*i.e.*, past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (*i.e.*, past criminal conduct extending over a substantial period of time)."  First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 180 (2d Cir. 2004); see also Abramo, 713 F.Supp.2d at 110.  These labels—"closed-ended" and "open-

ended"—are non-intuitive, but an examination of what they mean in the case law reveals that plaintiffs in this case have failed to allege either in this case.

>    1.    **The Amended Complaint Does Not Allege a "Closed-Ended" Pattern of Racketeering Activity.**

In a nutshell, "closed-ended continuity" means that the underlying racketeering acts happened over a long time—it is rather strictly about *duration*.  See First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 181 (2d Cir.2004)("A closed-ended pattern of racketeering activity involves predicate acts extending over a substantial period of time.").  "[P]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy the continuity requirement."  Wee v. Rome Hosp., 1996 WL 191970, at *5 (N.D.N.Y., Apr. 15, 1996).

In fact, "The Second Circuit "has never found a closed-ended pattern where the predicate acts spanned *fewer than two years*."  Abramo, 713 F.Supp.2d at 110 (emphasis added), citing First Capital Asset Mgmt., 385 F.3d at 181; see also DeFalco v. Bernas, 244 F.3d 286, 321 (2d Cir. 2001)(collecting cases).  This duration "is measured by the *RICO predicate act*s the defendants commit"—that is, the span of time in which the actual acts of mail fraud, wire fraud, or other RICO crimes occurred. Abramo, 713 F.Supp.2d at110-11.  In accordance with Second Circuit precedent, the courts in this Circuit repeatedly dismiss closed-ended pattern cases when the defendant fails to allege racketeering acts spanning at least two years. See Abramo, 713 F.Supp.2d at 110; Wee, 1996 WL 191970, at *5; FD Prop. Holding, Inc. v. U.S. Traffic Corp., 206 F. Supp. 2d 362, 372 (E.D.N.Y. 2002); Flexborrow LLC v. TD Auto Fin. LLC, 255 F. Supp. 3d 406, 420 (E.D.N.Y. 2017); Ray Larsen Assocs., Inc. v. Nikko Am., Inc., No. 89 CIV. 2809, 1996 WL 442799, at *8 (S.D.N.Y. Aug. 6, 1996).

In this case the plaintiffs do not allege that the predicate racketeering acts spanned a "substantial period of time," much less the minimum of two years required in this Circuit.  For one

thing, all three plaintiffs allege that their involvement with the defendants began in August or September 2018 which, as of this writing, is still less than two years ago.  (Amended Complaint ¶¶29-33 and 71-76 [ECF Doc. #29].)  Furthermore, the Amended Complaint's own allegations indicate that the alleged acts of mail and wire fraud spanned only a few months in 2018.  (Id. ¶158) Specifically,  the pleading alleges in conclusory fashion that the defendants sent misleading text messages or emails to the plaintiffs only in September and November 2018.  (Id.)  Again, "predicate acts extending over a few weeks or months" do not satisfy the continuity requirement. Wee, 1996 WL 191970, at *5.  That is exactly what we have here—a pleading that only vaguely alleges "racketeering acts" over a period of roughly two months.  As a matter of law, that is insufficient to plead closed-ended continuity.

Even if the pleading did satisfy the durational requirement (which it does not) it suffers another defect.  Closed-ended continuity requires something more than a minimum duration of two years.  "[W]hile two years may be the minimum duration necessary to find closed-ended continuity, the mere fact that predicate acts span two years is insufficient, without more, to support a finding of a closed-ended pattern."  Abramo 713 F.Supp.2d at 110.  "[O]ther factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists."  Id., quoting First Capital Asset Mgmt., 385 F.3d at 181; see also Speight v. Benedict, 2007 WL 951492, at *5 (S.D.N.Y. Mar. 28, 2007); Bernstein v. Misk, 948 F. Supp. 228, 238 (E.D.N.Y. 1997)(finding no closed-ended continuity where acts took place over four-and-a-half years, but the criminal activity alleged "involved only one major perpetrator who focused his activity on one group of purchasers in a single, non-complex scheme to obtain financing for a purchase of property and then default on the loan").

Here, the Amended Complaint suggests only a small number of "participants and victims" and a low "variety of predicate acts."  Basically, the Complaint alleges two bad transactions with Northway: one by Quebec and another by Serenity and MinedMap.  There is nothing here suggesting a prolific criminal enterprise or sustained organized crime of the variety that RICO was intended to target.  In addition, the Amended Complaint cites only three particular dates in which any of the defendants allegedly made misleading text messages or emails: September 21, September 28 and November 13.  (Amended Complaint ¶158 [ECF Doc. #29].)  (And even as to those the pleading does not specify what the messages said.)  That is, by any measure, not a "variety" of predicate acts. Accordingly, the plaintiffs fail to plead closed-ended continuity.

## 2.   The Amended Complaint Does Not Allege an "Open-Ended" Pattern of Racketeering Activity.

"To satisfy open-ended continuity, the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999).  In other words, courts do not require a plaintiff to establish that the criminal conduct occurred for a long time in the *past* (two years or more) if the defendant threatened certain RICO criminal conduct in the *future,* as of the time that the plaintiff sued.

Importantly, "open-ended continuity" applies only in the most dire cases. Specifically, it "only applies to 'inherently unlawful' criminal activities in pursuit of 'inherently unlawful' goals, such as *murder*, *obstruction of justice, narcotics trafficking, embezzlement, extortion, bribery, and money laundering*."  Albunio v. Int'l Safety Grp., WL 1267795, at *7 (S.D.N.Y. Mar. 30, 2016)(emphasis added); see also United States v. Aulicino, 44 F.3d 1102, 1111 (2d Cir. 1995); Spoto v. Herkimer County Trust, 2000 WL 533293, at *5 (N.D.N.Y, Apr. 27, 2000).

12

Of particular significance here, "Ordinary fraud supported by wire fraud predicates are not 'inherently unlawful' for purposes of RICO continuity."  Grace Int'l Assemby of God v. Festa, 2019 WL 1369000, at *8 (S.D.N.Y. Mar. 26, 2019), citing Aulicino, 44 F.3d at 1111.  That is because using the mails or wires is not *per se* criminal—whether a particular piece of mail or wire communication is deceptive or not depends on factual details surrounding the communication, which lend themselves to resolution within an ordinary civil remedy (such as a common law fraud claim).  In contrast, murder, bribery and drug trafficking, etc., are generally illegal *per se*.  Open-ended continuity is reserved for those cases in which the defendant's threat of future conduct rises to that grave level of offense.

In this case, the plaintiffs rely entirely on alleged mail and wire fraud predicates.  There are no allegations that the defendants engaged in or threatened "inherently unlawful" crimes such as murder, drug trafficking, money laundering, or anything of the sort.  Accordingly, the plaintiffs' claims are ineligible for an open-ended continuity theory, and the pleading fails to allege a "pattern" of racketeering activity.

## C.  In Addition, the Amended Complaint Does not Allege Individual Acts of "Racketeering Activity" With Particularity.

Even if the Amended Complaint alleged a "pattern" of racketeering activity (which it does not), it still fails to state a claim because it does not allege any of the individual racketeering acts specifically enough.

"Where a plaintiff alleges racketeering activity based on mail or wire fraud, it "must prove three elements: (1) scheme to defraud, including proof of intent; (2) money or property as object of [the] scheme; (3) use of mails or wires to further the scheme."  Grace International, 2019 WL 1369000, at *5, citing K&D Corp. v. Concierge Auctions, LLC, 2 F. Supp. 3d 525, 539 (S.D.N.Y. 2014).  "However, "[g]iven the routine use of mail and wire communications in business

13

operations, ... 'RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it.'"  Grace International, 2019 WL 1369000, at *5, citing Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 489 (2d Cir. 2014); see also Gross, 628 F. Supp. 2d at 493 (observing that "virtually every ordinary fraud is carried out in some form by means of mail or wire communication"); Bigsby v. Barclays Capital Real Estate, Inc., 170 F. Supp. 3d 568, 575–76 (S.D.N.Y. 2016) (noting that "predicate acts of mail and wire fraud merit particular scrutiny ... lest the courts allow the RICO statute 'to federalize garden-variety state common law claims" [internal quotation marks and citations omitted]).

At a minimum, Federal Rule 9(b) dictates that "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006); see also Grace International, 2019 WL 1369000; Spoto, 2000 WL 533293, at *5.

The Amended Complaint does not satisfy any of those requirements.  With regard to mail fraud, it alleges only in the barest terms that "Maranda caused items to be mailed to MinedMap and Serenity showing that Northway had obtained $1 million in additional dollars in capital that would allow it to expand."  (Amended Complaint ¶79 [ECF Doc. #29].)  But it does not clearly allege the *particular* statements made in those "items," does state when they were mailed, does not state who received and read them, or how they relied on them.

With regard to wire fraud, the Amended Complaint is just as vague.  The only allegations appear in paragraph 158, describing the communications as vacuously as: (i) "Defendants sent numerous text messages via Apple Message Application and by other similar message applications

14

from August 2, 2018 through the present"; (ii) "On September 21, 2018, Defendants sent an email making fraudulent misrepresentations"; (iii) "On September 28, 2018, Defendants sent several text messages making misrepresentations to Plaintiffs"; and (iv) "On or around November 13, 2018, Defendants sent several text messages to Plaintiffs making fraudulent representations to Plaintiff." These allegations offer dates and little else.  They do not specify which defendants sent communications to which plaintiffs and do not explain, even perfunctorily, what the misrepresentations were or how they were false.  These allegations do not satisfy even the notice pleading standard of Twombly and Iqbal, much less the heightened pleading standard of Rule 9(b). For that separate and distinct reason, the RICO claim must be dismissed.

### POINT III

**THE "CIVIL CONSPIRACY" CLAIM (COUNT III) MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM BECAUSE NEW YORK DOES NOT RECOGNIZE CIVIL CONSPIRACY AS AN INDEPENDENT TORT.**

**A.      New York Law Governs the Tort Claims in this Action.**

The plaintiffs are incorporated in South Korea, Nevada and Canada.  (Amended Complaint ¶¶4-6 [ECF Doc. #29].)  Most of the defendants are in New York.  (Id. ¶¶7, 9, 11-14)  "In tort cases, New York courts have adopted an "interest analysis to determine which of … competing jurisdictions has a greater interest in having its law applied in the litigation."  Frink America v. Champion Road Machinery Ltd., 48 F.Supp.2d 198, 205 (N.D.N.Y. 1999)(internal quotations omitted).  If the case concerns "conduct-regulating" laws, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."  Curly v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998).  In this case, the plaintiffs' tort claims are rooted in conduct-regulating doctrines: they rely entirely on intentional torts, such as fraud, conversion, fraudulent transfer and aiding and abetting fraud.  The pleading

alleges that the tortious acts mostly occurred in New York.  They allege that Maranda made misrepresentations to the plaintiffs' representatives during meetings in upstate New York (Amended Complaint ¶¶33-35, 73-78) and that Northway accepted delivery of and converted the plaintiffs' property in New York (Id. ¶¶90-112).  Although the Moving Defendants dispute the plaintiffs' versions of these transactions, the claims, as-pled, clearly suggest that New York has the greatest interest in regulating the conduct at issue.  Therefore, New York law governs the tort claims, including the putative civil conspiracy claim.

**B.**     **New York Law Does Not Recognize the Tort of Civil Conspiracy.**

"New York does not recognize an independent tort of conspiracy."  Kirch v. Liberty Media, 449 F.3d 388, 401 (2d Cir. 2006); see also McCall v. Chesapeake Energy Corp., 509 Fed.Appx. 62, 65 (2d Cir. 2013); Banca Commerciale Italiana v. Northern Trust Int'l Corp., 160 F.3d 90, 93 (2d Cir. 1988); Corporate Trade, Inc. v. Golf Channel, 2013 WL 5375623, at *5 (S.D.N.Y., Sep. 24, 2013); Wells Fargo Bank, N.A. v. Wine, 90 A.D.3d 1216, 1218 (3d Dep't 2011)("New York does not recognize civil conspiracy to commit a tort as an independent cause of action").  If multiple defendants conspire to commit some other, underlying tort, a defendant's conspiratorial acts may make him liable for the underlying tort, but "conspiracy" is not a claim unto itself. Payday Advance Plus, Inc. v. Findwhat.com, Inc., 478 F.Supp.2d 496, 506 (S.D.N.Y. 2007). Accordingly, to the extent the Amended Complaint purports to plead civil conspiracy as a discrete cause of action, it should be dismissed.

**POINT IV**

**IN ANY EVENT, THE CLAIMS ASSERTED BY QUÉBEC AND SERENITY MUST BE DISMISSED FOR IMROPER VENUE OR *FORUM NON CONVENIENS* PURUSANT TO THE FORUM/VENUE SELECTION CLAUSES IN THEIR CONTRACTS.**

"A forum-selection clause is 'presumptively enforceable' if it 'was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute.'" Commander v. American Cruise Lines, Inc., 389 F.Supp.3d 180, 185 (N.D.N.Y. 2019), quoting Martinez v. Bloomberg, 740 F.3d 211, 217 (2d Cir. 2014). A District Court "will decline to enforce a forum selection clause only if (1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." Starkey v. G. Adventures, Inc., 796 F.3d 193,198 (2d Cir. 2015); see also Rescuecom Corp. v. Chumley, 522 F.Supp.2d 429, 446 (N.D.N.Y. 2007). The proper procedural mechanism for enforcing a forum selection clause that specifies a nonfederal forum is a motion to dismiss for *forum non conveniens*, rather than a motion to transfer. Atlantic Marine Construction Co. v. United States Dist. Court for the Western District of Texas, 134 S. Ct. 568, 580 (2013).

In this case, Quebec's and Serenity's claims are rooted in, and arise out of, their written contracts with Northway. Both plaintiffs squarely allege that they entered into written Hosting Agreements with Northway and that the defendants' conduct amounts to a breach of those agreements. (Amended Complaint ¶¶39, 86, 187-92 [ECF Doc. #29].) Accordingly, the contents of the agreement are properly considered on this motion to dismiss. Carl v. Dirie, 2010 WL 3338566 (N.D.N.Y. Mar. 29, 2010)(noting that a court "may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings"

17

in deciding a motion to dismiss).   The agreements are annexed as Exhibits A and B to the accompanying Declaration of Michael Maranda in support of this motion.

The agreements contain identical "Governing Law" sections at page 6:

> This Agreement evidenced by the signature of the Parties below is made in Athens, New York, under, and shall be construed in accordance with the internal laws of the State of New York of the United States without resort to New York's conflict of laws' provisions.  *Any and all proceedings which may arise among the Parties regarding this Agreement shall be held in Greene County, New York*.

(Emphasis added.)

This type of covenant—specifying a particular *county* in which litigation must occur—is sometimes called a "*venue*" selection clause.  Rudgayzer v. Google, Inc., 986 F. Supp.2d 151, 155-57 (E.D.N.Y. 2013).  Federal courts will enforce a venue selection clause in the same manner as a forum selection clause, so long as venue selection is enforceable under the substantive state law governing the contract. Rudgayzer, 986 F. Supp.2d at 155-57; see also Smith v. Aegon Companies Pension Plan, 769 F.3d 922, 930-32 (6th Cir. 2014); Song Fi, Inc. v. Google, Inc., 72 F.Supp.3d 53, 61-64 (D.D.C. 2014).  Here, the Governing Law clause specifies that the substantive law of New York controls the parties' relationship.  In New York, county-specific venue selection clauses are enforceable, and are routinely enforced.  See, e.g, Martin v. Workmen's Circle Multicare Center, 171 A.D.3d 490 (1st Dep't 2019); Medina v. Gold Crest Care Cener, Inc., 117 A.D.3d 633 (1st Dep't 2014); Couvertier v. Concourse Rehabilitation and Nursing, Inc., 117 A.D.3d 772, 773 (2d Dep't 2014).

The clauses in Quebec's and Serenity's contracts satisfy the Martinez test, and are enforceable.  Facially, clearly the venue selection "was communicated to" these plaintiffs. (Martinez, 740 F.3d at 217). The venue selection language appears in plain English on page five of the six page agreements made between sophisticated parties.  This is not a case of the selection

18

language being buried in the fine print of a consumer contract.  The clause also has "mandatory force"—it states that all such proceedings "shall" (not "may") be held in Greene County, New York.  <u>Martinez</u>, 740 F.3d at 217.

The clause also "covers the claims and parties involved in the dispute."  <u>Commander</u>, 389 F.Supp.3d at 185.  It states that "Any and *all* proceedings which *may arise* among the Parties regarding this Agreement" are subject to venue in Greene County (emphasis added).  This covers not only Quebec's and Serenity's breach of contract claims, but also their purported tort and RICO claims.  "[A] contractually-based forum selection clause will also encompass tort claims if the tort claims ultimately depend on the existence of a contractual relationship between the parties, or if resolution of the claims relates to interpretation of the contract, or if the tort claims involve the same operative facts as a parallel claim for breach of contract."  <u>CFirstclass Corporation v. SilverjetPLC</u>, 560 F.Supp.2d 324, 329 (S.D.N.Y. 2008)(internal quotations omitted).

Here, all of Quebec's and Serenity's claims are fully intertwined with the contracts.  When all is said and done, the relief that Quebec seeks is money damages for the $93,826.17 that it claims to have paid Northway as a deposit under the Hosting Agreement.  (Amended Complaint ¶¶38-41 [ECF Doc. #29].)  Serenity seeks the same refund and a return of equipment that it alleges retains ownership of under the contract.  (<u>Id.</u> ¶¶86-90.)  Regardless of how many causes of action the plaintiffs name, they ultimately seek refunds and property that they claim they are entitled to under their contracts and, therefore, their claims "depend on the existence of" the contracts, the "resolution of the claims [will] relate[] to interpretation of the contract[s]," and "involve the same operative facts as a parallel claim for breach of contract."  <u>CFirstclass</u>, 560 F.Supp.2d 324, 329.  Thus all of Quebec's and Serenity's claims must be settled in the venue agreed to by the parties, Greene County, New York.

## <u>CONCLUSION</u>

For the foregoing reasons, the RICO and "Civil Conspiracy" claims (Counts I and III) should be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule 12(b)(6), and all claims by plaintiff 9384-2557 Québec Inc. and Serenity Alpha LLC should be dismissed for improper venue pursuant to Federal Rule 12(b)(3).

Dated:  Troy, New York
      May 8, 2020

                                  Respectfully submitted,

                                  E. STEWART JONES HACKER MURPHY LLP

                                      */s/ John F. Harwick*
                           By:    John F. Harwick
                                 Benjamin F. Neidl
                          *Attorneys for Defendants Northway Mining LLC,*
                           *Michael Maranda, Michael Maranda LLC and*
                          *Hudson Data Center Inc.*
                          28 Second Street
                          Troy, N.Y.  12180
                          (518)274-5820

20