UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

9384-2557 Québec Inc., a Canadian corporation; MINEDMAP,
INC., a Nevada corporation; and SERENITY ALPHA, LLC, a
Nevada limited liability, and other similarly situated
individuals,

<div align="center">Plaintiffs,</div>

-against-

NORTHWAY MINING, LLC, a New York limited liability
company; MICHAEL MARANDA, an individual; MICHAEL
CARTER, an individual; CSX4236 MOTORCYCLE
SALVAGE, LLC, a New York limited liability company;
DROR SVORAI, an individual; MINING POWER GROUP,
INC., a Florida corporation; HUDSON DATA CENTER, INC,
a New York Corporation, MICHAEL MARANDA, LLC, a
New York Limited liability company; PORTER KING HILL
CONTRACTING, LLC, COINMINT, LLC, a Delaware limited
liability company,

<div align="center">Defendants.</div>

Civ. Action No.: 1:19-CV-00501-
TJM-CFH

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO FILE A SECOND AMENDED COMPLAINT

## BY DEFENDANTS NORTHWAY MINING LLC, MICHAEL MARANDA, MICHAEL MARANDA LLC, AND HUDSON DATA CENTER INC.

John F. Harwick, Esq.
Benjamin F. Neidl, Esq.
E. Stewart Jones Hacker Murphy LLP
*Attorneys for Defendants Northway Mining
   LLC, Michael Maranda, Michael Maranda
   LLC and Hudson Data Center Inc.*
28 Second Street
Troy, N.Y.  12180
(518)274-5820

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................1

SUMMARY OF ARGUMENT ........................................................................1

THE PRIOR PLEADINGS ........................................................................2

THE CURRENT, PROPOSED SECOND AMENDED COMPLAINT ...................3

ARGUMENT ........................................................................4

I.    THE RICO CLAIM (COUNT I) FAILS TO STATE A CLAIM AGAINST
      ANY OF THE DEFENDANTS. ........................................................................5

II.   THE SAC DOES NOT STATE A REPLEVIN CLAIM (COUNT II)
      AGAINST THE PROPOSED DEFENDANTS, AND THE PORTION
      OF THE CLAIM SEEKING "MONEY" DOES NOT STATE A CLAIM
      AGAINST ANY OF THE DEFENDANTS. ........................................................8

      A.    The SAC Does Not State a Replevin Claim Against the
            Proposed Defendants. ........................................................................8

      B.    To the Extent the SAC Seeks Replevin of "Money" it Fails
            to State a Claim Against All of the Defendants. ............................10

III.  THE SAC DOES NOT STATE A "CIVIL CONSPIRACY"
      CLAIM (COUNT III) AGAINST ANY OF THE DEFENDANTS
      BECAUSE NEW YORK DOES NOT RECOGNIZE CIVIL
      CONSPIRACY AS AN INDEPENDENT TORT. ..............................................11

      A.    New York Law Governs the Tort Claims in this Action. ...............11

      B.    New York Law Does Not Recognize the Tort of Civil Conspiracy. ...........11

IV.   THE SAC DOES NOT STATE A CLAIM FOR CONVERSION
      (COUNT IV) AGAINST THE PROPOSED DEFENDANTS. ..............................12

V.    THE SAC DOES NOT STATE A FRAUD CLAIM (COUNT V)
      AGAINST THE PROPOSED DEFENDANTS. ....................................................13

VI.   THE SAC DOES NOT STATE A FRAUDULENT TRANSFER CLAIM
      (COUNT VII) AGAINST THE PROPOSED NEW DEFENDANTS. .....................15

      A.    It is Not Clear Whether the SAC is Meant to Plead

Constructive Fraudulent Conveyance, Actual Fraudulent
Conveyance, or Both. ................................................................................15

B.      The SAC Fails to Plead a Constructive Fraudulent Transfer
Claim Against the Proposed Defendants. .................................................16

C.      The SAC Fails to Plead an Actual Fraudulent Transfer Claim
Against the Proposed Defendants. ............................................................18

VII.    THE SAC DOES NOT STATE AN UNJUST ENRICHMENT CLAIM
(COUNT VIII) AGAINST THE PROPOSED NEW DEFENDANTS. ....................19

VIII.   THE SAC DOES NOT STATE AN AIDING AND ABETTING FRAUD
CLAIM (COUNT IX) AGAINST THE PROPOSED NEW DEFENDANTS. ..........21

IX.     THE SAC DOES NOT STATE AN ACCOUNTING CLAIM (COUNT X)
AGAINST ANY OF THE DEFENDANTS. ...........................................................22

X.      THE SAC'S "CIVIL THEFT" CLAIM (COUNT XI) IS INDISTINCT
AND DUPLICATIVE OF THE CONVERSION CLAIM. ....................................24

XI.     THE PLAINTIFFS' "SUPPLEMENTAL" REQUEST TO ADD EVEN
MORE DEFENDANTS MUST BE DENIED FOR NUMEROUS REASONS. ......25

CONCLUSION .........................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

Abercrombie v. Andrew College, 438 F.Supp.2d 243 (S.D.N.Y. 2006) ...................................... 23

Abramo v. Teal, Becker & Chiarmonte, 713 F.Supp.2d 96 (N.D.N.Y. 2010) .............................. 6

Albunio v. Int'l Safety Grp., 15-CV-152, 2016 WL 1267795 (S.D.N.Y. Mar. 30, 2016) ............ 7

Amaker v. Kelly, 2009 WL 385413 (N.D.N.Y., Feb. 9, 2009) .................................................. 5, 6

Amusement Indus., Inc. v. Midland Ave. Assoc., 820 F.Supp.2d 510 (S.D.N.Y. 2011) ....... 16, 17

Ashcroft v. Iqbal, 556 U.S. 662 (2009).......................................................................................... 4

Banca Commerciale Italiana v. Northern Trust Int'l Corp., 160 F.3d 90 (2d Cir. 1988) ............ 12

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ......................................................................... 4

Boccardi Capital Systems, Inc. v. D.E. Shaw Laminar Portfolios, LLC,
    355 Fed.Appx. 516 (2d Cir.2009) ......................................................................................... 24

Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229 (2d Cir. 1999) ....................... 7

Cohen v. Dunne, 2017 WL 4516820 (S.D.N.Y. Sep. 27, 2017)........................................ 9, 10, 20

Corporate Trade, Inc. v. Golf Channel, 2013 WL 5375623 (S.D.N.Y., Sep. 24, 2013)............... 12

Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473 (2d Cir. 2014)...................................... 7

Curly v. AMR Corp., 153 F.3d 5 (2d Cir. 1998) ......................................................................... 11

Debtor & Creditor Law §273(a)(1)............................................................................................... 18

DeFalco v. Bernas, 244 F.3d 286 (2d Cir. 2001).......................................................................... 6

East Coast Novelty Co. v. City of New York, 842 F.Supp. 117 (S.D.N.Y. 1994)....................... 12

Ellington Credit Fund Ltd. v. Select Portfolio Servicing, 837 F.Supp.2d 162
    (S.D.N.Y. 2011) ..................................................................................................................... 23

Fantozzi v. Axys Tech., 2008 WL 4866054 (S.D.N.Y. Nov. 6, 2008)......................................... 13

First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004)........................ 6

Frink America v. Champion Road Machinery Ltd., 48 F.Supp.2d 198 (N.D.N.Y. 1999) ........... 11

Fuller Landau Advisory Services v. Gerber Finance, 333 F.Supp.3d 307 (S.D.N.Y. 2018)........ 23

Georgia Malone & Co. v. Rieder, 19 N.Y.3d 511 (2012)............................................................ 20

Grace Int'l Assemby of God v. Festa, 2019 WL 1369000 (S.D.N.Y. Mar. 26, 2019) ............... 7, 8

Heap v. Centurylink, Inc., 2020 WL 1489801 (S.D.N.Y. Mar. 27, 2020) ............................ 13, 24

Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc., 665 F.Supp.2d 239
    (S.D.N.Y.2009) .................................................................................................................... 4

Imaging Financial Services v. Digital Page, 2012 WL 913257 (N.D.N.Y. Mar. 16, 2012)......... 10

In re Bernard L. Madoff Inves. Sec., 2012 WL 5511952 (S.D.N.Y. Nov. 14, 2012)................... 17

In re North Sea Brent Crude Oil Futures Litig., 256 F.Supp.3d 298 (S.D.N.Y. 2017) ............... 20

In re Tribune Company Fraudulent Con. Litig., 2017 WL 82391 (S.D.N.Y. Jan. 6, 2017)......... 19

Innovative Custom Brands v. Minor, 2016 WL 308805 (S.D.N.Y. Jan. 25, 2016)...................... 19

Kirch v. Liberty Media, 449 F.3d 388 (2d Cir. 2006); ................................................................ 11

Knight v. Fed'l Nat'l Mtg. Ass'n, 2014 WL 4901617 (N.D.N.Y. Sep. 30, 2014) ...................... 14

Knox v. Countrywide Bank, 4 F.Supp.3d 499 (E.D.N.Y. 2014) .................................................. 4

Krys v. Pigott, 749 F.3d 117 (2d Cir. 2014) ......................................................................... 21, 22

Landis v. Remington Arms. Co., 2012 WL 6098269 (N.D.N.Y. Dec. 7, 2012) ........................... 4

Lerner v. Fleet Bank, N.A., 459 F.3d 273 (2d Cir. 2006).............................................................. 8

Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc., 87 F .3d 44 (2d Cir.1996).......... 24

Matsumur v. Benihana Nat'l Corp., 2007 WL 1489758 (S.D.N.Y. May 21, 2007)............... 23, 24

McCall v. Chesapeake Energy Corp., 509 Fed.Appx. 62 (2d Cir. 2013) .................................... 12

McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir.2007)....................................... 4

Moss v. Morgan Stanley, Inc., 719 F.2d 5 (2d Cir. 1983) ...................................................... 5

Northern Shipping Funds v. Icon Capital, 921 F.Supp.2d 94 (S.D.N.Y. 2013) .......................... 24

Payday Advance Plus, Inc. v. Findwhat.com, Inc., 478 F.Supp.2d 496 (S.D.N.Y. 2007) .......... 12

Pemrick v. Stracher, 2007 WL 1876504 (E.D.N.Y. Jun. 28, 2007) ............................................ 10

iv

Press Access v. 1800 Postcards, 2012 WL 4857547 (S.D.N.Y. Oct. 9, 2012) ........................ 8, 10

Pueblo Palomo v. Demaio, 403 F.Supp.3d 42 (N.D.N.Y. 2019) .................................. 12

Rogers v. Brooks, 2019 WL 1672364 (N.D.N.Y. Apr. 17, 2019) ...................................................... 14

Smith Barnety v. Luckie, 245 A.D.2d 17 (1st Dep't 1997) ........................................... 24

Spoto v. Herkimer County Trust, 2000 WL 533293 (N.D.N.Y, Apr. 27, 2000) ...................... 6, 8

Tap Manutencao v. Int'l Aerospace Group, 127 F.Supp.3d 202 (S.D.N.Y. 2015) ..................... 13

Townsend v. Public Storage, Inc., 2014 WL 1764432 (N.D.N.Y., Apr. 30, 2014) ...................... 5

In re Tribune Company Fraudulent Conveyance Lit., 2017 WL 82391
   (S.D.N.Y. Jan. 6, 2017) ............................................................................................... 19

Safety-Kleen Systems, Inc. v. Silogram Lubricants, 2013 WL 6795963
   (E.D.N.Y. Dec. 23, 2013) ........................................................ 16, 17, 18

United States v. Aulicino, 44 F.3d 1102 (2d Cir. 1995) .................................................... 7

Wee v. Rome Hosp., 1996 WL 191970 (N.D.N.Y., Apr. 15, 1996) ............................................... 6

Wells Fargo Bank, N.A. v. Wine, 90 A.D.3d 1216 (3d Dep't 2011) .............................. 12

**Rules**

Fed. R. Civ. P. 8 ................................................................................................................. 17

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 4, 18

N.D.N.Y. Local Rule 7.1(a)(4) ..................................................................................... 4, 25

N.D.N.Y. Local Rule 9.2 ..................................................................................................... 5

**Statutes**

2019 New York Assembly Bill No. 5622 ............................................................................ 15

N.Y. C.P.L.R. §7101 .............................................................................................................. 8

N.Y. Debtor & Creditor Law §271 ..................................................................................... 15

N.Y. Debtor & Cred. Law §273 ......................................................................................... 16

N.Y. Debtor & Cred. Law §273-a ...................................................................................... 16

v

N.Y. Debtor & Cred. Law §274.................................................................................................... 16

N.Y. Debtor & Cred. Law §275.................................................................................................... 16

**PRELIMINARY STATEMENT**

Defendants Northway Mining LLC (**"Northway"**), Michael Maranda, Michael Maranda LLC (**"MMLLC"**) and Hudson Data Center Inc. (**"Hudson Data"**), by and through their undersigned attorneys, respectfully submit this Memorandum of Law in opposition to the plaintiffs' motion for leave to file and serve a Second Amended Complaint.

**SUMMARY OF ARGUMENT**

Leave to amend should be denied because the proposed Second Amended Complaint fails to state a claim upon which relief can be granted against the several new defendants that the plaintiffs seek to add.  Moreover, with respect to some of the causes of action, the pleading fails to state a claim against any of the defendants (new or old).

The proposed new defendants include the wife, sister, mother and other relatives and friends of existing defendant Michael Maranda. The pleading does not put forth a cognizable, satisfactory or responsible basis for drawing these bystanders into a commercial dispute between cryptocurrency mining speculators.  As the plaintiffs' prior pleadings indicate, the crux of their claim is that defendants Northway, Michael Maranda and some other business associates allegedly breached their cryptocurrency hosting agreements and are obligated to refund money and return equipment.  Now, more than a year after filing suit, the plaintiffs' apparent theory for enveloping Michael Maranda's family in the case is that Maranda "transferred" the plaintiffs' mining equipment to them.

Although the defendants deny that as a matter of fact, it is clear from the four corners of the plaintiffs' motion and proposed amended pleading itself that leave should be denied.  The plaintiffs' motion papers recite no plausible factual basis for their belief that Maranda's family has any involvement in this matter.  The affirmation of the plaintiffs' counsel, Mr. Williams, states

only that he has "uncovered" evidence of transfers, without specifying what that evidence is.  (ECF Doc. #51-1.)  The Second Amended Complaint does not plead any details, such as when the transfers allegedly occurred, or other facts plausibly supporting the inference *that* they occurred. Though the plaintiffs propose to plead claims for replevin or conversion against these new defendants, they do not allege that they have demanded the return of their (alleged) property from them, or that any of them refused a demand (which is a necessary element of both of those claims). The plaintiffs' efforts to stretch their other claims to the new proposed defendants are simply not coherently pled against those parties (and, in some cases against any parties).

## THE PRIOR PLEADINGS

The plaintiffs commenced this action in the United States District Court for the Eastern District of New York in April 2019, with a civil Complaint against Northway, Michael Maranda, MMLLC and Hudson Data, and co-defendants Michael Carter (**"Carter"**), CSX4236 Motorcycle Salvage LLC (**"CSX"**) Dror Svorai (**"Svorai"**) and Mining Power Group, Inc. (**"Mining Power"**). (The **"Initial Complaint,"** ECF Doc. #2.)  On their own motion, the plaintiffs transferred the case to the Northern District later that same month.  (ECF Doc. #13 - #15.)

The plaintiffs never served the Initial Complaint on any defendant.  Instead, on March 12, 2020 (nearly a year into the case) the plaintiffs filed a first Amended Complaint, purportedly as-of-right.  (ECF Doc. #29 [the **"First Amended Complaint,"** or **"FAC"**].)  The FAC added two new defendants: Porter King Hill Contracting LLC (**"Porter King"**) and Coinmint LLC (**"Coinmint"**).  Northway, Michael Maranda, MMLLC and Hudson Data waived service of the FAC in March 2020 pursuant to Rule 4(f).  Upon information and belief, the plaintiffs have not served any of the other defendants.  On May 8, 2020, defendants Michael Maranda, Northway, MMLLC and Hudson Data filed a partial motion to dismiss the FAC, which is pending.

2

On April 9, 2020 the plaintiffs electronically filed a proposed "Second Amended Complaint" without leave of court.  (ECF Doc. #37.)  The Court struck that pleading by order dated April 20, 2020, and directed the plaintiffs to file a motion to amend (if they wanted to amend) by April 30, 2020.  (ECF Doc. #49.)  The plaintiffs filed their motion to amend on May 1, 2020, with a new proposed Second Amended Complaint.  (ECF Doc. #51.)

## THE CURRENT, PROPOSED SECOND AMENDED COMPLAINT

The Second Amended Complaint that the plaintiffs offer with the instant motion is ECF Doc. #51-3 (the **"SAC"**).  The SAC proposes to add the following new defendants:

- Lori Shannon Thompson (Michael Maranda's wife and a licensed clinical social worker);

- Lori Shannon Thompson LCSW PLLC (Ms. Thompson's social work practice);

- Christine Maranda (Michael Maranda's sister);

- Roseann Maranda (Michael Maranda's mother);

- Douglas Maranda (which may refer to Michael Maranda's father or brother—they are both named Douglas);

- Anthony Porter (a friend and associate of Michael Maranda's);

- Donald D'Avanzo (a former employee of Michael Maranda); and

- Oswego Data LLC (**"Oswego Data"**)

In the remainder of this memorandum, these proposed new defendants will be referred to as the **"Proposed Defendants."**  Meanwhile, all of the prior defendants who are in the caption as of the *First* Amended Complaint will be referred to as the **"Existing Defendants."**

In conclusory fashion, the SAC proposes to extend all but one of the FAC's prior causes of action to the Proposed Defendants, by broadly pleading those claims against "all defendants." (The breach of contract claim in Count VI is the only one that is not pled against the Proposed Defendants.)  The SAC also proposes to add new claims for equitable accounting and "civil theft." (SAC Counts X and XI.)  For the reasons set forth below, the motion to amend should be denied in its entirety.

On May 7, 2020, the plaintiffs filed a "Supplement" to their motion to amend.  (ECF Doc. #54.)  The Supplement was a two page document in which the plaintiffs' attorney stated—without explanation—that he wants to add even more defendants, including M&T Bank and the Teachers Federal Credit Union.  But the Supplement did not offer any proposed amended pleading naming those parties as required by Local Rule 7.1(a)(4).  The putative grounds for suing those parties is, as of this writing, a mystery.

## ARGUMENT

Although Rule 15 provides that leave to amend should be "freely granted when justice so requires," it is well-settled that "[a] district court has discretion to deny leave for good reason, including futility."  Knox v. Countrywide Bank, 4 F.Supp.3d 499, 514 (E.D.N.Y. 2014), quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir.2007).  "An amendment is considered futile when the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."  Landis v. Remington Arms. Co., 2012 WL 6098269, at *4 (N.D.N.Y. Dec. 7, 2012); see also Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc., 665 F.Supp.2d 239, 250 (S.D.N.Y.2009).

It is of course well-settled that "To withstand a Rule 12(b) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(internal quotations omitted).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"  Id., quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

I.    **THE RICO CLAIM (COUNT I) FAILS TO STATE A CLAIM AGAINST ANY OF THE DEFENDANTS.**

The RICO claim is not new—the plaintiffs also alleged it in their Initial Complaint and the FAC.  Defendants Northway, Michael Maranda, MMLLC and Hudson Data have moved to dismiss this claim in the FAC (that motion is pending).  (ECF Doc. #55.)  The SAC's RICO claim is the same, but would purportedly extend it to the Proposed New Defendants because it is pled against "all defendants."  Leave to amend should be denied because the RICO count fails to state a claim against any of the defendants.

To state a RICO claim, a plaintiff must allege that the defendant (1) through the commission of two or more acts constituting a "pattern" (2) of "racketeering activity" (3) directly or indirectly participates in an "enterprise" (4) the activities of which affect interstate or foreign commerce; (5) causing injury to the plaintiff.  Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983); Townsend v. Public Storage, Inc., 2014 WL 1764432, at *5 (N.D.N.Y., Apr. 30, 2014).  "The pleading of a civil RICO violation is subject to the heightened requirement that its supporting allegations must be pleaded with particularity" pursuant to Federal Rule 9(b).  Amaker v. Kelly, 2009 WL 385413, at *11 (N.D.N.Y., Feb. 9, 2009).  For the same reasons set forth in the pending motion to dismiss the RICO claim, the motion to amend and add new defendants to that claim should be denied.  Briefly summarized, the reasons are as follows.

First, the plaintiffs have failed to supplement the SAC with a RICO statement as required by Local Rule 9.2.  The point of the RICO statement is to shepherd the plaintiff through laying out the details necessary meet the heightened pleading requirements of a RICO claim.  The plaintiffs failed to offer a RICO statement with the Initial Complaint or the FAC, and their present motion offers no RICO statement for the SAC.  A plaintiff's failure to file the RICO statement, by itself,

warrants dismissal.  Amaker v. Kelly, 2009 WL 385413, at *11 (N.D.N.Y., Feb. 9, 2009); Spoto v. Herkimer County Trust, 2000 WL 533293, at *3 n.2 (N.D.N.Y, Apr. 27, 2000).

Second, the pleading fails to allege sufficiently a "pattern" of racketeering activity. To plead a pattern, the plaintiff must allege either "open-ended" or "closed-ended" continuity of racketeering crimes.  First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 180 (2d Cir. 2004).

"Closed-ended continuity" means that the racketeering activity occurred "over a substantial period of time."  Id.  "[P]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy the continuity requirement."  Wee v. Rome Hosp., 1996 WL 191970, at *5 (N.D.N.Y., Apr. 15, 1996).  It is a strict durational hurdle: "The Second Circuit "has never found a closed-ended pattern where the predicate acts spanned *fewer than two years*." Abramo v. Teal, Becker & Chiarmonte, 713 F.Supp.2d 96, 110 (N.D.N.Y. 2010), citing First Capital Asset Mgmt., 385 F.3d at 181; see also DeFalco v. Bernas, 244 F.3d 286, 321 (2d Cir. 2001)(collecting cases).  Here, the plaintiffs do not allege closed-ended continuity.  Indeed, the plaintiffs allege that they began their dealings with the Existing Defendants in August and September of 2018 which, as of this writing, is less than two years ago.  (SAC ¶¶41, 52, 86, 101.) Moreover, the SAC identifies only a scant few alleged "racketeering acts" of mail or wire fraud all of which occurred in the span of just two months, between September and November 2013. (Id. ¶173.) That is insufficient as a matter of law to plead closed-ended continuity.  Abramo, 713 F.Supp.2d at 110; Spoto v. Herkimer County Trust, 2000 WL 533293, at *5 (N.D.N.Y, Apr. 27, 2000).  Moreover, the SAC pleads no racketeering activity by the Proposed Defendants.

"Open-ended" continuity means that the defendant's racketeering acts were accompanied by a threat of serious crimes in the future.  "The plaintiff need not show that the predicates extended

over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999). But open-ended continuity applies only in the most dire cases, when the threatened future acts were "inherently unlawful' criminal activities in pursuit of 'inherently unlawful' goals, such as ***murder***, ***obstruction of justice, narcotics trafficking, embezzlement, extortion, bribery, and money laundering***." Albunio v. Int'l Safety Grp., 15-CV-152, 2016 WL 1267795, at *7 (S.D.N.Y. Mar. 30, 2016)(emphasis added); see also United States v. Aulicino, 44 F.3d 1102, 1111 (2d Cir. 1995); Spoto, 2000 WL 533293, at *5. "Ordinary fraud supported by wire fraud predicates are not 'inherently unlawful' for purposes of RICO continuity." Grace Int'l Assemby of God v. Festa, 2019 WL 1369000, at *8 (S.D.N.Y. Mar. 26, 2019), citing Aulicino, 44 F.3d at 1111. Here, the only predicate acts alleged are mail and wire fraud. (SAC ¶¶169-76.) There is no allegation that any of the defendants committed any of the upper-tier, "inherently unlawful" crimes necessary for open-ended continuity, such as murder, drug trafficking, etc. (And there are no allegations that the Proposed Defendants committed any racketeering activity.)

Third, even leaving aside the deficiencies in the "pattern" allegations, the SAC fails to allege the individual (alleged) acts of racketeering activity with enough specificity. "[G]iven the routine use of mail and wire communications in business operations, ... 'RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." Grace International, 2019 WL 1369000, at *5, citing Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 489 (2d Cir. 2014). At a minimum, Federal Rule 9(b) dictates that "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker,

(3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006); see also Grace International, 2019 WL 1369000; Spoto, 2000 WL 533293, at *5.  The SAC does not satisfy any of those requirements.  It alleges in bare terms that that "Defendants" sent some emails or texts in September and November 2018 that contained "fraudulent misrepresentations," but it does not specify which defendants sent communications to which plaintiffs and does not explain, even perfunctorily, what the misrepresentations were or how they were false.  (SAC ¶173.)  These arguments are presented in more detail in the pending motion to dismiss, which these defendants incorporate by reference. Accordingly, leave to add the Proposed Defendants to the RICO claim in the SAC should be denied.

## II.   THE SAC DOES NOT STATE A REPLEVIN CLAIM (COUNT II) AGAINST THE PROPOSED DEFENDANTS, AND THE PORTION OF THE CLAIM SEEKING "MONEY" DOES NOT STATE A CLAIM AGAINST ANY OF THE DEFENDANTS.

### A.   The SAC Does Not State a Replevin Claim Against the Proposed Defendants.

By adding the Proposed Defendants in the SAC, the plaintiffs would subject those defendants to the replevin claim previously pled in the Initial Complaint and the FAC (since it is pled against "all defendants").  That should not be allowed, because the SAC does not adequately plead replevin against them.

"Replevin is an action to try the right to possession of a chattel." Press Access v. 1800 Postcards, 2012 WL 4857547, at *1 (S.D.N.Y. Oct. 9, 2012), citing N.Y. C.P.L.R. §7101.[1]  To make out a claim of replevin, the plaintiff must allege: "(1) that it has a superior possessory right to the chattel, and (2) that it made a demand for possession of the chattel from the defendant." Id.

---

[1]   It is undisputed that New York law governs the replevin claim.  The plaintiffs themselves invoke N.Y. CPLR §7218 as the basis for that relief.  The law of this jurisdiction (New York) obviously must govern an action seeking to arrest property physically located in this jurisdiction.

"Demand for the return of chattel is thus a necessary element to a claim of replevin." Id.; see also Cohen v. Dunne, 2017 WL 4516820, at *6 (S.D.N.Y. Sep. 27, 2017)("To state a claim for replevin, a plaintiff must demand return of the property in question, and the cause of action then accrues when the defendant refuses to return it").

The SAC fails to state a claim against the Proposed Defendants because it does not allege that the plaintiffs demanded the return of their alleged property from any of them, or that the Proposed Defendants refused any demand.  The SAC *does* allege that the plaintiffs demanded refunds of their contract deposits and a return of MinedMap and Serenity's miners from *Existing Defendants Northway and Michael Maranda* (SAC ¶¶74, 124), but it does not allege that the plaintiffs made any attempt whatsoever to demand the return of any property from Michael Maranda's various relatives and friends whom the plaintiffs now seek to hale into federal court as new defendants in the case.  Nor does the plaintiffs' attorney, T. Edward Williams, contend in his attorney affirmation that he or his clients have made a demand to the Proposed Defendants.  (ECF Doc. #51-1.) This is not merely a technical omission.  While the plaintiffs allege that Michael Maranda has intentionally deprived them of property, they do not allege any such intentional conduct or ill intent by the Proposed Defendants—instead, the plaintiffs only vaguely and equivocally allege that the Proposed defendants "knew *or should have known*" that the miners in Michael Maranda's possession "were stolen." (SAC ¶133 [emphasis added]).  In other words, the plaintiffs do not even really pretend to know that the Proposed Defendants actually knew that anything was "stolen" ("should have known") or from whom.  Under those circumstances, good common sense would compel a plaintiff at least to demand a return of the property from those parties before suing them, even if the law of replevin did not require it (which it does). For that reason alone the SAC fails to state a claim against them, and the proposed an amendment is

improper.  Press Access, 2012 WL 4857547, at *1 (dismissing plaintiff's replevin claim for failure

to make demand); Cohen, 2017 WL 4516820, at *6 (dismissing replevin claim for plaintiff's

failure to plead demand and refusal with sufficient specificity).

We also note that the SAC does not even appear to squarely allege that the Proposed

Defendants are in actual *possession* of the miner equipment.  It alleges that Michael Maranda

"transferred" miners to the Proposed Defendants.  It is obscure as to whether that means transfer

of physical custody, transfer of title on paper, or something else.  Given the SAC's suggestion that

the operation of miners requires very substantial electrical capacity and know-how (SAC ¶¶3, 44)

it is difficult to plausibly read the SAC's "transfer" allegations as meaning physical delivery.

### B.  To the Extent the SAC Seeks Replevin of "Money" it Fails to State a Claim Against All of the Defendants.

The heading for Count II of the SAC states that it is for "Replevin for Bitcoin Miners and

Moneys Stolen."  (SAC pg. 25.)  The plaintiffs' replevin claims in their earlier pleadings did not

mention the "moneys stolen."  Notwithstanding the new heading, the allegations in Count II do

not actually allege anything about money or "moneys stolen" (¶¶181-85).  But if the plaintiffs

mean to use this claim to seek disgorgement of income that the defendants have allegedly earned

from the use of their miners, it fails to state a claim—that is not what replevin is for.

"Replevin, under New York law, is a "prejudgment quasi-provisional remedy" available to

recapture a specific chattel, not an alternative theory to recover money damages.  Imaging

Financial Services v. Digital Page, 2012 WL 913257, at *2 n.2 (N.D.N.Y. Mar. 16, 2012).  A

plaintiff may only use replevin to recover a "specific identifiable piece of property" of which the

plaintiff himself/herself had "legal ownership."  Pemrick v. Stracher, 2007 WL 1876504 at *10,

14 (E.D.N.Y. Jun. 28, 2007).  Elsewhere in the SAC, the plaintiffs complain that some of the

Proposed Defendants (allegedly) "have been earning income from Serenity and MinedMap's

10

Miners." (SAC ¶131.) Although that is denied, even if it were true, fungible income is not an "identifiable piece of property" that the plaintiffs themselves ever "legally owned." By the plaintiffs' own reckoning, that income was never in their possession, custody or control. It is not the proper subject of a replevin claim.

## III.   THE SAC DOES NOT STATE A "CIVIL CONSPIRACY" CLAIM (COUNT III) AGAINST ANY OF THE DEFENDANTS BECAUSE NEW YORK DOES NOT RECOGNIZE CIVIL CONSPIRACY AS AN INDEPENDENT TORT.

### A.   New York Law Governs the Tort Claims in this Action.

The plaintiffs are incorporated in South Korea, Nevada and Canada. (SAC ¶¶6-8.) Most of the defendants are in New York. (Id. ¶¶ 9, 13-16, 18-25.) "In tort cases, New York courts have adopted an "interest analysis to determine which of … competing jurisdictions has a greater interest in having its law applied in the litigation." Frink America v. Champion Road Machinery Ltd., 48 F.Supp.2d 198, 205 (N.D.N.Y. 1999)(internal quotations omitted). If the case concerns "conduct-regulating" laws, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." Curly v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998). In this case, the plaintiffs' tort claims are rooted in conduct-regulating doctrines: they almost rely entirely on intentional torts, such as fraud, conversion, fraudulent transfer and aiding and abetting fraud. The pleading alleges that the tortious acts occurred almost entirely in New York. Although the Moving Defendants dispute the plaintiffs' versions of these transactions, the claims, as-pled, clearly suggest that New York has the greatest interest in regulating the conduct at issue. Therefore, New York law governs the tort claims, including the putative civil conspiracy claim.

### B.   New York Law Does Not Recognize the Tort of Civil Conspiracy.

"New York does not recognize an independent tort of conspiracy." Kirch v. Liberty Media, 449 F.3d 388, 401 (2d Cir. 2006); see also McCall v. Chesapeake Energy Corp., 509 Fed.Appx.

62, 65 (2d Cir. 2013); Banca Commerciale Italiana v. Northern Trust Int'l Corp., 160 F.3d 90, 93

(2d Cir. 1988); Corporate Trade, Inc. v. Golf Channel, 2013 WL 5375623, at *5 (S.D.N.Y., Sep.

24, 2013); Wells Fargo Bank, N.A. v. Wine, 90 A.D.3d 1216, 1218 (3d Dep't 2011).  If multiple

defendants conspire to commit some other, underlying tort, a defendant's conspiratorial acts may

make him liable for the underlying tort, but "conspiracy" is not a claim unto itself.  Payday

Advance Plus, Inc. v. Findwhat.com, Inc., 478 F.Supp.2d 496, 506 (S.D.N.Y. 2007).  Accordingly,

to the extent the Amended Complaint purports to plead civil conspiracy as a discrete cause of

action, it should be dismissed.

      The SAC also does not plead facts against the Proposed Defendants to make them co-liable

for any underlying tort on a "conspiracy" theory. In order to impute a tort to a conspirator, "the

Plaintiff must plead *specific wrongful acts* constituting an independent tort."  East Coast Novelty

Co. v. City of New York, 842 F.Supp. 117, 122 (S.D.N.Y. 1994)(emphasis added).  As set forth

in all of the other points of this Memorandum, the SAC does not successfully allege any

independent tortious conduct by any of the Proposed Defendants.

## IV.    THE SAC DOES NOT STATE A CLAIM FOR CONVERSION (COUNT IV) AGAINST THE PROPOSED DEFENDANTS.

      The conversion claim is defective for the same reasons that the replevin claim fails.

      First, it fails to state a claim against the Proposed Defendants because there is no allegation

that the plaintiffs demanded return of the miners (or any other property) from the Proposed

Defendants, or that they refused.  "To convert property, the defendant must do more than simply

possess it."  Pueblo Palomo v. Demaio, 403 F.Supp.3d 42, 56 (N.D.N.Y. 2019).  Conversion only

occurs when a defendant commits a "sufficiently serious" "affirmative act" in contravention of the

plaintiff's property rights.  Id. Thus, for example, when a "thief" steals a plaintiff's property

outright, it may be an immediate conversion.  Id.  But when a defendant acquires property by

peaceable means (such as a "transfer" by a friend or relative), "there is no conversion unless the defendant refuses the owner's demand to return the property or wrongfully transfers or disposes of it before a demand is made."  Id.; see also Tap Manutencao v. Int'l Aerospace Group, 127 F.Supp.3d 202 (S.D.N.Y. 2015)(explaining that the demand and refusal element of conversion is only excused if "making the demand would be futile," a situation that "arises, for example, "when the defendant is a thief").  Here, the SAC does not allege that the Proposed Defendants are thieves. It alleges that they are relations of Michael Maranda, to whom he "transferred" miners who, perhaps, "*should have known*" that they "were stolen."  (SAC ¶133 [emphasis added].)  As with the replevin claim, that is simply too conjectural to excuse the demand-and-refusal requirement.

Second, to the extent the conversion claim seeks to recover "income" monies from the defendants, it is also defective for the separate and distinct reason that the plaintiffs never owned or possessed the alleged income.  "[A] conversion claim for money only survives if [the] plaintiff had ownership, possession or control of the money prior to the conversion."  Heap v. Centurylink, Inc., 2020 WL 1489801, at *18 (S.D.N.Y. Mar. 27, 2020)(internal quotations omitted); see also Fantozzi v. Axys Tech., 2008 WL 4866054 at *9 (S.D.N.Y. Nov. 6, 2008).  "An obligation to be paid does not equate to a plaintiff's ownership, possession or control of the money in question." Id.  An allegation of a "lost opportunity" does not support a conversion claim.  Accordingly, leave to amend should be denied.

## V.   THE SAC DOES NOT STATE A FRAUD CLAIM (COUNT V) AGAINST THE PROPOSED DEFENDANTS.

Like the Initial Complaint and the FAC, the SAC alleges a common law fraud claim against "all defendants."  Therefore, the SAC would effectively extend the existing fraud claim to the Proposed Defendants.  That amendment should not be allowed, because the SAC plainly fails to state a fraud claim against those defendants.

In New York, the elements of fraud are: (1) a material misrepresentation of a fact by the defendant, (2) the defendant's knowledge of its falsity, (3) an intent to induce reliance,(4) justifiable reliance by the plaintiff, and (5) damages. Rogers v. Brooks, 2019 WL 1672364, at *3 (N.D.N.Y. Apr. 17, 2019).  The heightened pleading standard of Rule 9(b) requires the plaintiff to allege the circumstances of the fraud in detail, including sufficient factual matter from which the Court can plausibly infer that the defendant knew that his or her statement was false. Knight v. Fed'l Nat'l Mtg. Ass'n, 2014 WL 4901617, at *13 (N.D.N.Y. Sep. 30, 2014).

With the exception of Donald D'Avanzo (who will be addressed below), the SAC does not allege that any of the Proposed Defendants made any representations of any kind to the plaintiffs. It does not allege that any of those defendants had knowledge that anything they ever said to anybody was false, or any facts showing that they knew any statements were false.  The SAC does not allege that the plaintiffs ever relied on anything uttered by those defendants at any time.

With regard to Mr. D'Avanzo, the SAC alleges exactly one statement by him: during a meeting with Quebec in September 2018, D'Avanzo allegedly repeated Michal Maranda's earlier claim that Northway's facility had abundant electrical power and could host thousands of miners. (SAC ¶51.)  But the SAC alleges no facts whatsoever tending to show that D'Avanzo knew that statement was false. Knight, 2014 WL 4901617, at *13.  It also does not allege that the plaintiffs particularly relied on D'Avanzo's re-statement of something Michael Maranda had (allegedly) already said anyway.  These allegations fall well short of the Rule 9(b) pleading standard, and do not justify the proposed amendments.

14

## VI.   THE SAC DOES NOT STATE A FRAUDULENT TRANSFER CLAIM (COUNT VII) AGAINST THE PROPOSED NEW DEFENDANTS. [2]

The SAC's fraudulent transfer claim (Count VII) is pled "Against All Defendants."  (SAC pg. 28.)  Therefore, the addition of the Proposed Defendants to this action would extend this claim to them.  That amendment should not be allowed because the SAC fails to state a fraudulent transfer claim against the Proposed Defendants.

### A.   It is Not Clear Whether the SAC is Meant to Plead Constructive Fraudulent Conveyance, Actual Fraudulent Conveyance, or Both.

As a threshold matter, it is unclear what portion of the New York Debtor & Creditor Law is the basis for the plaintiffs' claim.  As discussed further below, there is a distinction between a "constructive fraudulent conveyance" and an "actual fraudulent conveyance," and the two theories are based on different statutes.  The SAC does not cite any of the Debtor & Creditor Law statutes, nor does it clearly specify whether it asserts claims under one theory, the other, or both.

Further complicating matters is that effective April 4, 2020, New York State replaced former Article 10 of the Debtor & Creditor Law, entitled "Fraudulent Conveyances," with a new Article 10, entitled "The Uniform Voidable Transactions Act."  See current N.Y. Debtor & Creditor Law §271 *eq. seq.* (indicating April 4, 2020 effective date).  The amending legislation specifies that the new version of the law "shall apply to a transfer made or obligation incurred on or after such effective date [of April 4, 2020], but shall not apply to a transfer made or obligation incurred before such effective date []."  See 2019 New York Assembly Bill No. 5622, §7 (a true and accurate copy of which is annexed to this memorandum as **Appendix A**, with the relevant

---

[2]   This memorandum moves directly from discussion of Count V (Fraud) to Count VII (Fraudulent Transfer), skipping over the breach of contract claim in Count VI.  That is because the SAC does not make any substantive changes to the breach of contract claim from the FAC.  The SAC's breach of contract claim (¶¶202-06) is still asserted only "Against Northway, Mining Power, Dror Svorai and [Michael] Maranda."  It is not directed at the Proposed Defendants.  Therefore, there are no material amendments to oppose with regard to the contract claim.

language highlighted at page 8.).  A true and accurate copy of the pre-amendment version of Debtor & Creditor Law Article 10, applicable to transfers before April 4, 2020, is annexed to this memorandum as **Appendix B**.  In any event, the prior and current versions are similar and the SAC fails to state a claim under either.

      **B.**    <ins>**The SAC Fails to Plead a Constructive Fraudulent Transfer Claim Against the Proposed Defendants.**</ins>

A constructive fraudulent transfer does not necessarily require fraudulent intent by the defendant, but it does require the plaintiff to plead and prove other circumstances that make the transfer actionable.  Under the pre-April 4, 2020 Debtor & Creditor Law, a constructive fraudulent transfer is as a conveyance by a debtor to a third party in which (A) the transferee did not give "fair consideration," and (B) at least one of the following circumstances is present at the time of the transfer: (i) the debtor is insolvent or will be rendered insolvent by the conveyance, (ii) the debtor is a defendant in an action for money damages or a judgment in such an action has been docketed against him and the debtor fails to satisfy the judgment, (iii) the debtor is engaged in or is about to engage in a business or transaction for which its remaining property will constitute unreasonably small capital, or (iv) the debtor believes it will incur a debt beyond its ability to pay. <ins>See</ins> Addendum B §§273, 273-a, 274 and 275; <ins>see also</ins> <ins>Safety-Kleen Systems, Inc. v. Silogram Lubricants</ins>, 2013 WL 6795963, at *4 (E.D.N.Y. Dec. 23, 2013)(summarizing grounds for constructive fraudulent conveyance); <ins>Amusement Indus., Inc. v. Midland Ave. Assoc.</ins>, 820 F.Supp.2d 510 (S.D.N.Y. 2011). The new version of the law uses substantially the same definition, except that trigger "ii" ("the debtor is a defendant in an action for money damages…") no longer applies, and instead of without "fair consideration," the law now uses the phrase "without receiving reasonably equivalent value."  <ins>See</ins> current Debtor & Creditor Law §273(a)(2).

There is some disagreement in the case law as to whether a constructive fraudulent conveyance case is subject to the Rule 8 Twombly pleading standard, or subject to the heightened standard of Rule 9(b).  See In re Bernard L. Madoff Inves. Sec., 2012 WL 5511952 (S.D.N.Y. Nov. 14, 2012)(comparing cases).  But even under the Rule 8 standard, the SAC fails to state a claim against the Proposed Defendants.  Twombly requires, at a minimum, that the complaint plead facts showing a plausible basis for the inference that the transfers actually occurred and facts substantiating the premise that the transfers were made "without fair consideration" (or without "reasonably equivalent value") and would purportedly render the debtor insolvent, etc.  For example, in Safety-Kleen, the Eastern District denied a motion to amend which sought to add a constructive fraudulent conveyance claim, where the complaint merely alleged that the transfers occurred, coupled with formulaic averments that the transfers were not supported by fair value.  In denying leave to amend, the court explained:

> [B]eyond these bare bones allegations that track the statutory language of the DCL, the Complaint contains no factual allegations that would indicate why plaintiff believes that such transfers to Margolis and the John Does occurred or the factual basis for the belief that these transfers were made without fair consideration. Nor does the Complaint allege with any degree of specificity when the transfers occurred, how much money was involved in the transfers, or the basis upon which plaintiff believes that the transfers were made without consideration.

 2013 WL 6795963, at *9; see also Amusement Indus., 820 F.Supp.2d at 528 ("The complaint does little to allege with specificity that any money paid to Stephen Stern was without fair consideration.").

The SAC does not state when the alleged transfers to the Proposed Defendants were made, it does not state what value, if any, those defendants gave for the transfers, nor does it allege any particulars showing that Northway (or any of the Existing Defendants) were insolvent or would be rendered insolvent by the transfers, or that any other constructive factors were present.  For most

of the Proposed Defendants, the SAC only vaguely alleges in boilerplate fashion: "At the time the Defendants conveyed Plaintiffs' Miners and money, the conveyance was made without fair consideration." (SAC ¶9.) That is just as vacuous, if not more so, than the amended pleading that was rejected in Safety-Kleen.

With respect to Proposed Defendant Lori Shannon-Thompson (Michael Maranda's wife) and her social work practice, the SAC says a little more, but not much. It alleges that at some unspecified time, Michael Maranda "transferred" shares in Northway and CSX to Shannon-Thompson. (SAC ¶¶141, 143.) But the SAC does not plead any facts indicating why the plaintiffs believe any transfer of shares in Northway occurred and, as to CSX, it alleges only that Shannon-Thompson recently signed a settlement agreement for that company. (Id. ¶143.) That does not mean she owns shares. Or maybe she does, and always owned them (rather than taking a recent transfer). And even if a transfer did occur, the plaintiffs fail to allege "with any degree of specificity … how much money was involved in the transfers, or the basis upon which plaintiff believes that the transfers were made without consideration." Safety-Kleen, 2013 WL 6795963, at *9. The proposed amendments do not satisfy Twombly, would not survive a Rule 12(b)(6) motion, and should be denied.

### C.    The SAC Fails to Plead an Actual Fraudulent Transfer Claim Against the Proposed Defendants.

Under the prior and current versions of the Debtor & Creditor Law, an *actual* fraudulent conveyance is one made with an "*actual intent* … to hinder, delay, or defraud either present or future creditors []." See Addendum B §276; see also current Debtor & Creditor Law §273(a)(1). It does not necessarily require a showing that the debtor was insolvent or would be rendered insolvent, but does require a guilty mind by the defendant. It is well-settled that because an actual fraudulent conveyance is rooted in deceptive acts, the complaint must satisfy the heightened

pleading standard of Rule 9(b).  See In re Tribune Company Fraudulent Conveyance Lit., 2017 WL 82391, at *4 (S.D.N.Y. Jan. 6, 2017); Innovative Custom Brands v. Minor, 2016 WL 308805, at *2 (S.D.N.Y. Jan. 25, 2016).   This requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake," and "*allege facts* that give rise to a strong inference of fraudulent intent" by the defendant. In re Tribune Company Fraudulent Con. Litig., 2017 WL 82391, at *4 (S.D.N.Y. Jan. 6, 2017).  "An inference is strong if it is cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id.  The pleading standard also requires the plaintiff "to plead with specificity when, how often, or in what amounts the allegedly fraudulent conveyances took place." Innovative Custom Brands, 2016 WL 308805, at *2.

The SAC does not meet this standard with regard to any of the Proposed Defendants.  As noted above, it does not allege the dates or the manner in which transfers took place, and falls far short of "alleging facts" that give rise to a strong inference of fraudulent intent by those defendants. Tribune Company, 2017 WL 82391, at *4. The SAC offers only a vague, conclusory allegation that the Proposed Defendants "knew or should have known" that the property that Michael Maranda allegedly transferred to them was stolen (SAC ¶133) with no particulars indicating why they should have known or even suspected that. Accordingly, amendment should be denied.

## VII.   THE SAC DOES NOT STATE AN UNJUST ENRICHMENT CLAIM (COUNT VIII) AGAINST THE PROPOSED NEW DEFENDANTS.

The unjust enrichment count is pled against "all defendants" and, therefore, granting the amendments would extend that claim to the Proposed Defendants.  The amendment should not be allowed because the SAC does not successfully plead an unjust enrichment claim against them.

"Under New York law, the elements of unjust enrichment are: "(1) the [defendant] was enriched, (2) at the [plaintiff's] expense, and (3) that it is against equity and good conscience to

permit the [defendant] to retain what is sought to be recovered." <u>Cohen</u>, 2017 WL 4516820, at *4. Importantly, however, "A cause of action for unjust enrichment is only available when circumstances create an equitable obligation running from the defendant to the plaintiff." <u>Id.</u> "A plaintiff cannot succeed on an unjust enrichment claim unless "it has a sufficiently close relationship with the other party." <u>Id.</u> "While a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment,' there must exist a relationship or connection between the parties that is not 'too attenuated." <u>Id.</u> "The New York Court of Appeals has held that a relationship is too attenuated where the parties simply had no dealings with each other, and the complaint did not allege that the parties had any contact" in the underlying transactions. <u>Id.</u> (internal quotations omitted), <u>citing</u> <u>Georgia Malone & Co. v. Rieder</u>, 19 N.Y.3d 511, 516 (2012)(explaining that unjust enrichment claim failed to state a cause of action where the "pleadings failed to indicate a relationship between the parties that could have caused reliance or inducement"); <u>see also</u> <u>In re North Sea Brent Crude Oil Futures Litig.</u>, 256 F.Supp.3d 298, 315 (S.D.N.Y. 2017).

In this case, with the exception of Donald D'Avanzo, the SAC does not allege that the Proposed Defendants had any "dealings" with the plaintiffs at all, much less any relationship that could have caused reliance or inducement. Here again, the SAC basically alleges that Existing Defendant Michael Maranda transferred miners to the Proposed Defendants that they, perhaps "should have known" were stolen. (SAC ¶133.) But that is a far cry from a "sufficiently close relationship" between the would-be new defendants and the plaintiffs. As to Proposed Defendant D'Avanzo, the SAC does allege that he had one conversation with some representatives of Quebec about Northway's power capacity. (SAC ¶51.) But the pleading does not allege that D'Avanzo had any dealings with the plaintiffs about *their miners*, or that he ever even spoke with the plaintiffs

again after that one conversation about power capacity.  That is too attenuated to support an unjust enrichment claim.

## VIII.   THE SAC DOES NOT STATE AN AIDING AND ABETTING FRAUD CLAIM (COUNT IX) AGAINST THE PROPOSED NEW DEFENDANTS.

The addition of the Proposed New Defendants in the SAC would also subject those defendants to the "aiding and abetting" fraud claim that the plaintiffs first alleged in the FAC.  The amendment should not be allowed because the SAC fails to plead an aiding and abetting claim against the Proposed New Defendants.

"To establish liability for aiding and abetting fraud under New York law, the plaintiffs must show (1) the existence of a fraud; (2) [the] defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission."  Krys v. Pigott, 749 F.3d 117, 127 (2d Cir. 2014)(internal quotations omitted). "[A]ctual knowledge is required to impose liability on an aider and abettor under New York law."  Id.  Constructive knowledge does not suffice—that is, the plaintiff cannot meet its burden by alleging that the defendant "knew or should have known" of the fraud.  Id. at 127, 131. "A failure to *allege sufficient facts* to support the inference that the alleged aider and abettor had *actual knowledge* of the fraudulent scheme warrants dismissal of the aiding and abetting claim at the pleading stage."  Id. at 127 (emphasis added).  Thus, conclusory allegations that the defendants "knew" of the fraudulent scheme are insufficient.  Id.

Here, the SAC does not allege that the Proposed New Defendants had actual knowledge of a fraudulent scheme.  It generally alleges that Existing Defendant Michael Maranda and his associates "transferred" Serenity and MinedMap's miner devices to some of the Proposed Defendants and that those defendants have enjoyed income produced by the miners—namely, Proposed Defendants Anthony Porter, Christine Maranda, Douglas Maranda, Roseann Maranda,

Donald D'Avanzo, Lori Thompson-Maranda and her social work practice (Lori S. Thompson LCSW PLLC).  (SAC ¶¶126, 131-133, 208.)  But it does not allege that any of those people actually knew that the miners belonged to the plaintiffs or that Michael Maranda had done anything fraudulent with respect to the miners.  For each of those individuals, the SAC makes the same bald allegation: that they were not bona fide purchasers of the miners because they allegedly "knew, *or should have known*, that the Miners in Michael Maranda's possession were stolen."  (SAC ¶133 [emphasis added].)  "To the extent that plaintiffs assert that [these defendants] 'should have' known … that contention invokes the standard for constructive knowledge, rather than actual knowledge. Constructive knowledge … is insufficient to sustain a claim for aiding and abetting fraud."  Krys, 749 F.3d at 131.  And the SAC offers no particular facts whatsoever showing how or why these defendants actually knew or should have known that the miners were stolen.

Finally, with regard to Proposed Defendant Oswego Data, the SAC does not appear to allege that it participated in a scheme to defraud.  Other than alleging that Michael Maranda formed Oswego Data "to defraud creditors" (SAC ¶1) the pleading only mentions the company twice in passing (Id. ¶¶18, 226) with no particular factual allegations about what Oswego Data did or did not do.  For the foregoing reasons, the SAC does not adequately plead an aiding and abetting claim against the Proposed Defendants, and leave to amend should be denied.

## IX.    THE SAC DOES NOT STATE AN ACCOUNTING CLAIM (COUNT X) AGAINST ANY OF THE DEFENDANTS.

The SAC alleges a new claim for an "accounting" that was not present in the Initial Complaint or the FAC.  (SAC ¶¶225-27.)  It is asserted against "all defendants."  Leave to add this count should be denied because it fails to state a claim against any of the defendants.

Under New York law, there are four elements to a claim for equitable accounting: (1) a fiduciary relationship owed by the defendant (2) entrustment of money or property to the defendant

(3) the lack of an adequate remedy at law, and (4) a demand and refusal of an accounting.  Fuller Landau Advisory Services v. Gerber Finance, 333 F.Supp.3d 307 (S.D.N.Y. 2018)(internal quotations omitted); Matsumur v. Benihana Nat'l Corp., 2007 WL 1489758, at *4 (S.D.N.Y. May 21, 2007).   Conclusory allegations that a defendant was a "fiduciary" of the plaintiff are insufficient to satisfy that element of the claim.  Abercrombie v. Andrew College, 438 F.Supp.2d 243, 274 (S.D.N.Y. 2006)("[i]n order to survive a motion to dismiss … the plaintiff must set forth specific facts constituting the alleged relationship with sufficient particularity to enable the court to determine whether, if true, such facts could give rise to a fiduciary relationship"); Ellington Credit Fund Ltd. v. Select Portfolio Servicing, 837 F.Supp.2d 162, 195 (S.D.N.Y. 2011).

This cause of action clearly fails to state a claim against the *Proposed Defendants*.  With the exception of Oswego Data, the SAC does not allege, even in boilerplate fashion, that any of the Proposed New Defendants had a "fiduciary" relationship with the plaintiffs.  (SAC ¶226.)  And as to Oswego Data, it offers only a bare, conclusory allegation in paragraph 226.  Abercrombie, 438 F.Supp.2d at 274.  The SAC also does not allege that the plaintiffs "entrusted" their money or property to the Proposed New Defendants—it alleges (in conclusory fashion) that some of the defendants received the plaintiffs' miners from defendant Michael Maranda as "stolen" property, but does not allege *an entrustment* by the plaintiffs to the Proposed New Defendants.  The pleading also does not allege that the plaintiffs ever demanded an accounting form those defendants, or that they refused.

The cause of action also fails to state a claim against the *Existing Defendants*.  The SAC does allege contractual privity between the plaintiffs and some of the Existing Defendants, and alleges some face-to-face and electronic interaction with Michael Maranda, but that, by itself, does not justify the conclusory "fiduciary" label that the plaintiffs affix to this claim.  "[W]hen parties

deal at arm[']s length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." Boccardi Capital Systems, Inc. v. D.E. Shaw Laminar Portfolios, LLC, 355 Fed.Appx. 516, 519 (2d Cir.2009); see also Northern Shipping Funds v. Icon Capital, 921 F.Supp.2d 94, 101 (S.D.N.Y. 2013). The SAC does not allege particulars from which the Court can plausibly infer that the parties transcended an arm's length contractual relationship. Even if the Existing Defendants were fiduciaries (which is denied), the claim still fails because the plaintiffs have an adequate remedy at law. "Because the plaintiffs have sought money damages in both their breach of contract and conversion claims, and because discovery as to the measure of damages would be available to them if they were to prevail on those claims, they can obtain all the information they seek in their existing claims at law." Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc., 87 F .3d 44, 49 (2d Cir.1996). "Accordingly, no useful purpose would be served by treating the plaintiffs' equitable accounting claim as an additional, and duplicative, action at law." Id.; Matsumur v. Benihana Nat'l Corp., 2007 WL 1489758, at *4 (S.D.N.Y. May 21, 2007). Therefore, the Court should deny the plaintiffs leave to add the accounting claim.

## X.    THE SAC'S "CIVIL THEFT" CLAIM (COUNT XI) IS INDISTINCT AND DUPLICATIVE OF THE CONVERSION CLAIM.

As discussed above, New York law controls the plaintiffs' tort claims. "New York common law does not recognize a distinct claim of civil theft, instead treating it as synonymous with the recognized claim of conversion." Heap v. Centurylink, Inc., 2020 WL 1489801, at *17 (S.D.N.Y. Mar. 27, 2020); see also Smith Barnety v. Luckie, 245 A.D.2d 17, 19 (1st Dep't 1997). Accordingly, the SAC's "Civil Theft" count is not a distinct claim unto itself, and fails for the same reasons as the conversion claim discussed above.

**XI.  THE PLAINTIFFS' "SUPPLEMENTAL" REQUEST TO ADD EVEN MORE DEFENDANTS MUST BE DENIED FOR NUMEROUS REASONS.**

On May 7, 2020 the plaintiffs filed a "supplement" to their motion to amend, in which they ask to add even more defendants, namely M&T Bank, the Teachers Federal Credit Union and someone named Angelo Pope.  (ECF Doc. #54.)  The motion supplement offers no explanation of what the claims against these parties would be.  (It is far from self-evident what a bank and a teacher's union have to do with this case.)  The plaintiffs have also failed to offer a proposed pleading regarding these parties as required by Local Rule 7.1(a)(4)—a rule of this Court that the plaintiffs have ignored once already.  (<u>See</u> ECF Doc. #37 and #49.)  The request to add these parties also comes a full week after the April 30 court-ordered deadline for the amendment of pleadings, with no good cause shown.  (ECF Doc. #49.)  The supplemental request is void on its face and must be denied.

<div align="center"><b><u>CONCLUSION</u></b></div>

For the foregoing reasons, the plaintiffs' motion for leave to file and serve the Second Amended Complaint should be denied.

Dated:  Troy, New York
      May 8, 2020

                                  Respectfully submitted,

                                  E. STEWART JONES HACKER MURPHY LLP

                                      */s/ John F. Harwick*
                                By:    John F. Harwick
                                        Benjamin F. Neidl
                                *Attorneys for Defendants Northway Mining LLC,*
                                *Michael Maranda, Michael Maranda LLC and*
                                *Hudson Data Center Inc.*
                                28 Second Street
                                Troy, N.Y.  12180
                                (518) 730-4723

<div align="center">25</div>

# Addendum A

**2019 New York Assembly Bill No. 5622**

                              STATE OF NEW YORK
_____

                                    5622

                           2019-2020 Regular Sessions

                                 IN ASSEMBLY

                              February 14, 2019
                              _____

            Introduced  by  M.  of A. WEINSTEIN, TAYLOR -- read once and referred to
            the Committee on Judiciary

            AN ACT to amend the debtor and creditor law, the civil practice law  and
            rules,  the  estates,  powers  and trusts law and the workers' compen-
            sation law, in relation to enacting the "uniform voidable transactions
            act"; and to repeal certain provisions of the debtor and creditor  law
            relating to fraudulent conveyances

            <The  People of the State of New York, represented in Senate and Assem->

            <bly, do enact as follows:>

    1- 1      Section 1. Short title. This act shall be known and may  be  cited  as
    1- 2    the "uniform voidable transactions act".
    1- 3      §  2.  Article 10 of the debtor and creditor law is REPEALED and a new
    1- 4    article 10 is added to read as follows:
    1- 5                              <ARTICLE 10>
    1- 6                    <UNIFORM VOIDABLE TRANSACTIONS ACT>
    1- 7    <Section 270.   Definitions.>
    1- 8          <271.   Insolvency.>
    1- 9          <272.   Value.>
    1-10          <273.   Transfer or obligation voidable as to present  or  future>
    1-11            <creditor.>
    1-12          <274.   Transfer or obligation voidable as to present creditor.>
    1-13          <275.   When transfer is made or obligation is incurred.>
    1-14          <276.   Remedies of creditor.>
    1-15          <276-a.  Attorney's  fees  in action or special proceeding under>
    1-16            <this article to avoid a transfer or obligation.>
    1-17          <277.   Defenses, liability,  and  protection  of  transferee  or>
    1-18            <obligee.>
    1-19          <278.   Extinguishment of claim for relief.>
    1-20          <279.   Governing law.>
    1-21          <280.   Supplementary provisions.>
    1-22          <281. Uniformity of application and construction.>

            EXPLANATION--Matter in <italics> (underscored) is new; matter in
    brackets
                              [ ] is old law to be omitted.
                                                              LBD00878-01-9

            A. 5622                         2

    2- 1            <281-a. Relation  to electronic signatures in global and national>
    2- 2                <commerce act.>
    2- 3    <§ 270. Definitions. As used in this article:>
    2- 4    <(a) "Affiliate" means:>
    2- 5    <(1)  a person that directly or indirectly owns, controls or holds with>
    2- 6    <power to vote, twenty percent or more of the outstanding voting  securi->
    2- 7    <ties of the debtor, other than a person that holds the securities:>
    2- 8      <(i)  as  a fiduciary or agent without sole discretionary power to vote>
    2- 9    <the securities; or>
    2-10      <(ii) solely to secure a debt, if the person has not in fact  exercised>
    2-11    <the power to vote;>
    2-12      <(2)  a  corporation twenty percent or more of whose outstanding voting>
    2-13    <securities are directly or indirectly owned,  controlled  or  held  with>
    2-14    <power  to  vote,  by  the debtor or a person that directly or indirectly>
    2-15    <owns, controls or holds, with power to vote, twenty percent or  more  of>

```
2-16     <the  outstanding  voting  securities  of the debtor, other than a person>
2-17     <that holds the securities:>
2-18     <(i) as a fiduciary or agent without sole discretionary power  to  vote>
2-19     <the securities; or>
2-20     <(ii)  solely to secure a debt, if the person has not in fact exercised>
2-21     <the power to vote;>
2-22     <(3) a person whose business is operated by the debtor under a lease or>
2-23     <other agreement, or a person  substantially  all  of  whose  assets  are>
2-24     <controlled by the debtor; or>
2-25     <(4)  a  person  that  operates  the debtor's business under a lease or>
2-26     <other agreement or controls substantially all of the debtor's assets.>
2-27     <(b) "Asset" means property of a debtor, but the term does not include:>
2-28     <(1) property to the extent it is encumbered by a valid lien;>
2-29     <(2) property to the extent it is generally exempt under non-bankruptcy>
2-30     <law; or>
2-31     <(3) an interest in property held in tenancy by  the  entirety  to  the>
2-32     <extent  it  is  not  subject  to  process  by a creditor holding a claim>
2-33     <against only one tenant.>
2-34     <(c) "Claim", except as used in "claim for relief", means  a  right  to>
2-35     <payment,  whether  or  not the right is reduced to judgment, liquidated,>
2-36     <unliquidated, fixed, contingent, matured,  unmatured,  disputed,  undis->
2-37     <puted, legal, equitable, secured or unsecured.>
2-38     <(d) "Creditor" means a person that has a claim.>
2-39     <(e) "Debt" means liability on a claim.>
2-40     <(f) "Debtor" means a person that is liable on a claim.>
2-41     <(g)  "Electronic"  means  relating  to  technology  having electrical,>
2-42     <digital, magnetic, wireless, optical, electromagnetic or  similar  capa->
2-43     <bilities.>
2-44     <(h) "Insider" includes:>
2-45     <(1) if the debtor is an individual:>
2-46     <(i) a relative of the debtor or of a general partner of the debtor;>
2-47     <(ii) a partnership in which the debtor is a general partner;>
2-48     <(iii)  a  general  partner  in a partnership described in subparagraph>
2-49     <(ii) of this paragraph; or>
2-50     <(iv) a corporation of which the debtor  is  a  director,  officer,  or>
2-51     <person in control;>
2-52     <(2) if the debtor is a corporation:>
2-53     <(i) a director of the debtor;>
2-54     <(ii) an officer of the debtor;>
2-55     <(iii) a person in control of the debtor;>
2-56     <(iv) a partnership in which the debtor is a general partner;>
             A. 5622                                    3

3- 1     <(v) a general partner in a partnership described in subparagraph (iv)>
3- 2     <of this paragraph; or>
3- 3     <(vi)  a  relative of a general partner, director, officer or person in>
3- 4     <control of the debtor;>
3- 5     <(3) if the debtor is a partnership:>
3- 6     <(i) a general partner in the debtor;>
3- 7     <(ii) a relative of a general partner in, a general  partner  of  or  a>
3- 8     <person in control of the debtor;>
3- 9     <(iii) another partnership in which the debtor is a general partner;>
3-10     <(iv)  a  general  partner  in a partnership described in subparagraph>
3-11     <(iii) of this paragraph; or>
3-12     <(v) a person in control of the debtor;>
3-13     <(4) an affiliate, or an insider of an affiliate as  if  the  affiliate>
3-14     <were the debtor; and>
3-15     <(5) a managing agent of the debtor.>
3-16     <(i) "Lien" means a charge against or an interest in property to secure>
3-17     <payment  of a debt or performance of an obligation, and includes a secu->
3-18     <rity interest created by agreement, a judicial lien obtained by legal or>
3-19     <equitable process or proceedings, a  common-law  lien,  or  a  statutory>
3-20     <lien.>
3-21     <(j) "Organization" means a person other than an individual.>
3-22     <(k)  "Person"  means  an individual, estate, partnership, association,>
3-23     <trust, business or nonprofit entity, public corporation,  government  or>
3-24     <governmental  subdivision,  agency or instrumentality, or other legal or>
3-25     <commercial entity.>
3-26     <(l) "Property" means anything that may be the subject of ownership.>
```

3-27      &lt;(m) "Record" means information that is inscribed on a tangible  medium&gt;
3-28      &lt;or that is stored in an electronic or other medium and is retrievable in&gt;
3-29      &lt;perceivable form.&gt;
3-30      &lt;(n) "Relative" means an individual related by consanguinity within the&gt;
3-31      &lt;third  degree as determined by the common law, a spouse or an individual&gt;
3-32      &lt;related to a spouse within the  third  degree  as  so  determined,  and&gt;
3-33      &lt;includes  an  individual  in  an  adoptive relationship within the third&gt;
3-34      &lt;degree.&gt;
3-35      &lt;(o) "Sign" means, with present  intent  to  authenticate  or  adopt  a&gt;
3-36      &lt;record:&gt;
3-37      &lt;(i) to execute or adopt a tangible symbol; or&gt;
3-38      &lt;(ii) to attach to or logically associate with the record an electronic&gt;
3-39      &lt;symbol, sound, or process.&gt;
3-40      &lt;(p)  "Transfer"  means  every  mode,  direct  or indirect, absolute or&gt;
3-41      &lt;conditional, voluntary or involuntary, of disposing of or  parting  with&gt;
3-42      &lt;an  asset  or  an  interest in an asset, and includes payment of money,&gt;
3-43      &lt;release, lease, license, and creation of a lien or other encumbrance.&gt;
3-44      &lt;(q) "Valid lien" means a lien that is effective against the  holder  of&gt;
3-45      &lt;a  judicial  lien subsequently obtained by legal or equitable process or&gt;
3-46      &lt;proceedings.&gt;
3-47      &lt;§ 271. Insolvency.  (a) A debtor is insolvent if, at a fair valuation,&gt;
3-48      &lt;the sum of the debtor's debts is greater than the sum  of  the  debtor's&gt;
3-49      &lt;assets.&gt;
3-50      &lt;(b)  A  debtor that is generally not paying the debtor's debts as they&gt;
3-51      &lt;become due other than as a result of a bona fide dispute is presumed  to&gt;
3-52      &lt;be  insolvent.    The presumption imposes on the party against which the&gt;
3-53      &lt;presumption is directed the burden of proving that the  nonexistence  of&gt;
3-54      &lt;insolvency is more probable than its existence.&gt;
3-55      &lt;(c)  Assets  under  this section do not include property that has been&gt;
3-56      &lt;transferred, concealed or  removed  with  intent  to  hinder,  delay  or&gt;
          A. 5622                              4

4- 1      &lt;defraud  creditors,  or that has been transferred in a manner making the&gt;
4- 2      &lt;transfer voidable under this article.&gt;
4- 3      &lt;(d)  Debts  under  this  section  do  not include an obligation to the&gt;
4- 4      &lt;extent it is secured by a valid lien on  property  of  the  debtor  not&gt;
4- 5      &lt;included as an asset.&gt;
4- 6      &lt;§ 272. Value.  (a) Value is given for a transfer or an obligation if,&gt;
4- 7      &lt;in exchange for the transfer or obligation, property is  transferred  or&gt;
4- 8      &lt;an  antecedent  debt is secured or satisfied, but value does not include&gt;
4- 9      &lt;an unperformed promise made otherwise than in the ordinary course of the&gt;
4-10      &lt;promisor's business to furnish support to the debtor or another person.&gt;
4-11      &lt;(b) For the purposes of paragraph two of subdivision  (a)  of  section&gt;
4-12      &lt;two  hundred  seventy-three and section two hundred seventy-four of this&gt;
4-13      &lt;article, a person gives a reasonably  equivalent  value  if  the  person&gt;
4-14      &lt;acquires  an  interest of the debtor in an asset pursuant to a regularly&gt;
4-15      &lt;conducted, noncollusive foreclosure sale or execution of a power of sale&gt;
4-16      &lt;for the acquisition or disposition of the interest of the  debtor  upon&gt;
4-17      &lt;default under a mortgage, deed of trust, or security agreement.&gt;
4-18      &lt;(c)  A  transfer is made for present value if the exchange between the&gt;
4-19      &lt;debtor and the transferee is intended by them to be contemporaneous  and&gt;
4-20      &lt;is in fact substantially contemporaneous.&gt;
4-21      &lt;§ 273. Transfer or obligation voidable as to present or future credi-&gt;
4-22      &lt;tor.  (a) A transfer made or obligation incurred by a debtor is voidable&gt;
4-23      &lt;as to a creditor, whether the creditor's claim arose before or after the&gt;
4-24      &lt;transfer was made or the obligation was incurred, if the debtor made the&gt;
4-25      &lt;transfer or incurred the obligation:&gt;
4-26      &lt;(1) with actual intent to hinder, delay or defraud any creditor of the&gt;
4-27      &lt;debtor; or&gt;
4-28      &lt;(2) without receiving a reasonably equivalent value  in  exchange  for&gt;
4-29      &lt;the transfer or the obligation, and the debtor:&gt;
4-30      &lt;(i)  was engaged or was about to engage in a business or a transaction&gt;
4-31      &lt;for which the remaining assets of the debtor were unreasonably small  in&gt;
4-32      &lt;relation to the business or transaction; or&gt;
4-33      &lt;(ii) intended to incur, or believed or reasonably should have believed&gt;
4-34      &lt;that the debtor would incur, debts beyond the debtor's ability to pay as&gt;
4-35      &lt;they became due.&gt;
4-36      &lt;(b)  In  determining  actual intent under paragraph one of subdivision&gt;
4-37      &lt;(a) of this section, consideration may be given, among other factors, to&gt;

```
4-38      <whether:>
4-39      <(1) the transfer or obligation was to an insider;>
4-40      <(2) the debtor retained possession or control of the  property  trans->
4-41      <ferred after the transfer;>
4-42      <(3) the transfer or obligation was disclosed or concealed;>
4-43      <(4) before  the  transfer  was  made  or obligation was incurred, the>
4-44      <debtor had been sued or threatened with suit;>
4-45      <(5) the transfer was of substantially all the debtor's assets;>
4-46      <(6) the debtor absconded;>
4-47      <(7) the debtor removed or concealed assets;>
4-48      <(8) the value of the consideration received by the debtor was  reason->
4-49      <ably  equivalent  to the value of the asset transferred or the amount of>
4-50      <the obligation incurred;>
4-51      <(9) the debtor was insolvent or became  insolvent  shortly  after  the>
4-52      <transfer was made or the obligation was incurred;>
4-53      <(10)  the transfer occurred shortly before or shortly after a substan->
4-54      <tial debt was incurred; and>
4-55      <(11) the debtor transferred the essential assets of the business to  a>
4-56      <lienor that transferred the assets to an insider of the debtor.>
          A. 5622                                5

5- 1      <(c) A creditor making a claim for relief under subdivision (a) of this>
5- 2      <section  has  the burden of proving the elements of the claim for relief>
5- 3      <by a preponderance of the evidence.>
5- 4      <§ 274. Transfer or obligation voidable as to present creditor.  (a) A>
5- 5      <transfer made or obligation incurred by a debtor is  voidable  as  to  a>
5- 6      <creditor  whose  claim  arose  before the transfer was made or the obli->
5- 7      <gation was incurred if the debtor made  the  transfer  or  incurred  the>
5- 8      <obligation  without  receiving a reasonably equivalent value in exchange>
5- 9      <for the transfer or obligation and the debtor was insolvent at that time>
5-10      <or the debtor became insolvent as a result  of  the  transfer  or  obli->
5-11      <gation.>
5-12      <(b) A  transfer  made  by a debtor is voidable as to a creditor whose>
5-13      <claim arose before the transfer was made if the transfer was made to  an>
5-14      <insider  for  an antecedent debt, the debtor was insolvent at that time,>
5-15      <and the insider had reasonable cause to  believe  that  the  debtor  was>
5-16      <insolvent.>
5-17      <(c) Subject  to subdivision (b) of section two hundred seventy-one of>
5-18      <this article, a creditor making a claim for relief under subdivision (a)>
5-19      <or (b) of this section has the burden of proving  the  elements  of  the>
5-20      <claim for relief by a preponderance of the evidence.>
5-21      <§ 275.  When  transfer  is  made  or  obligation is incurred. For the>
5-22      <purposes of this article:>
5-23      <(a) a transfer is made:>
5-24      <(1) with respect to an asset  that  is  real  property  other  than  a>
5-25      <fixture,  but  including  the  interest of a seller or purchaser under a>
5-26      <contract for the sale  of  the  asset,  when  the  transfer  is  so  far>
5-27      <perfected  that  a  good-faith  purchaser  of  the asset from the debtor>
5-28      <against which applicable law permits the transfer to be perfected cannot>
5-29      <acquire an interest in the asset that is superior to the interest of the>
5-30      <transferee; and>
5-31      <(2) with respect to an asset that is not real property or  that  is  a>
5-32      <fixture,  when  the  transfer  is  so far perfected that a creditor on a>
5-33      <simple contract cannot acquire a judicial lien otherwise than under this>
5-34      <article that is superior to the interest of the transferee;>
5-35      <(b) if applicable law permits the transfer to be perfected as provided>
5-36      <in subdivision (a) of this section and the transfer is not so  perfected>
5-37      <before  the commencement of an action for relief under this article, the>
5-38      <transfer is deemed made  immediately  before  the  commencement  of  the>
5-39      <action;>
5-40      <(c)  if applicable law does not permit the transfer to be perfected as>
5-41      <provided in subdivision (a) of this section, the transfer is  made  when>
5-42      <it becomes effective between the debtor and the transferee;>
5-43      <(d) a transfer is not made until the debtor has acquired rights in the>
5-44      <asset transferred; and>
5-45      <(e) an obligation is incurred:>
5-46      <(1) if oral, when it becomes effective between the parties; or>
5-47      <(2) if evidenced by a record, when the record signed by the obligor is>
5-48      <delivered to or for the benefit of the obligee.>
```

```
5-49        <§ 276.  Remedies of creditor.  (a) In an action for relief against a>
5-50   <transfer or obligation under this article, a creditor,  subject  to  the>
5-51   <limitations  in  section  two hundred seventy-seven of this article, may>
5-52   <obtain:>
5-53     <(1) avoidance of the transfer or obligation to the extent necessary to>
5-54   <satisfy the creditor's claim;>
          A. 5622                                        6


6- 1     <(2) an attachment or other provisional remedy against the asset trans->
6- 2   <ferred or other property of the transferee if available under applicable>
6- 3   <law; and>
6- 4     <(3)  subject to applicable principles of equity and in accordance with>
6- 5   <applicable rules of civil procedure:>
6- 6     <(i) an injunction against further  disposition  by  the  debtor  or  a>
6- 7   <transferee, or both, of the asset transferred or of other property;>
6- 8     <(ii) appointment of a receiver to take charge of the asset transferred>
6- 9   <or of other property of the transferee; or>
6-10     <(iii) any other relief the circumstances may require.>
6-11     <(b)  If  a  creditor  has  obtained  a judgment on a claim against the>
6-12   <debtor, the creditor, if the court so orders, may levy execution on  the>
6-13   <asset transferred or its proceeds.>
6-14     <§ 276-a.  Attorney's  fees in action or special proceeding under this>
6-15   <article to avoid a transfer or  obligation.  In  an  action  or  special>
6-16   <proceeding  under this article in which a judgment creditor who has been>
6-17   <awarded by court order or agreement or has waived attorney's fees avail->
6-18   <able to prevailing parties by the terms of the statute under  which  the>
6-19   <creditor's  underlying  claim arose, or  representative asserting the>
6-20   <rights of such judgment creditor, recovers judgment avoiding any  trans->
6-21   <fer or obligation, the justice or surrogate presiding at the trial shall>
6-22   <fix  the  reasonable attorney's fees of the creditor, or creditor repre->
6-23   <sentative, incurred in such action or  special  proceeding  under  this>
6-24   <article  as  an  additional  amount  required  to satisfy the creditor's>
6-25   <claim, and the creditor, or creditor representative, shall have judgment>
6-26   <therefor against the debtor and, subject to the defenses and protections>
6-27   <in section two hundred seventy-seven of this article, against any trans->
6-28   <feree (or person for whose benefit the transfer was made)  against  whom>
6-29   <relief  is ordered, in addition to the other relief granted by the judg->
6-30   <ment. The fee so fixed shall be without regard, or  prejudice,  to  any>
6-31   <agreement,  express  or  implied,  between the creditor, or the creditor>
6-32   <representative, and his or her attorney with respect to the compensation>
6-33   <of such attorney.>
6-34     <§ 277. Defenses, liability, and protection of transferee  or  obligee.>
6-35     <(a)  A  transfer  or  obligation  is not voidable under paragraph one of>
6-36   <subdivision (a) of section two hundred  seventy-three  of  this  article>
6-37   <against a person that took in good faith and for a reasonably equivalent>
6-38   <value given the debtor or against any subsequent transferee or obligee.>
6-39     <(b)  To  the extent a transfer is avoidable in an action by a creditor>
6-40   <under paragraph one of subdivision (a) of section two  hundred  seventy->
6-41   <six of this article the following rules apply:>
6-42     <(1)  Except  as  otherwise  provided in this section, the creditor may>
6-43   <recover judgment for the value of the  asset  transferred,  as  adjusted>
6-44   <under subdivision (c) of this section, or the amount necessary to satis->
6-45   <fy  the creditor's claim, whichever is less. The judgment may be entered>
6-46   <against:>
6-47     <(i) the first transferee of the asset or the person for whose  benefit>
6-48   <the transfer was made; or>
6-49     <(ii) an immediate or mediate transferee of the first transferee, other>
6-50   <than:>
6-51     <(A) a good-faith transferee that took for value; or>
6-52     <(B)  an  immediate  or  mediate  good-faith  transferee  of  a  person>
6-53   <described in clause (A) of this subparagraph.>
6-54     <(2) Recovery pursuant to paragraph one of subdivision (a) or  subdivi->
6-55   <sion  (b)  of section two hundred seventy-six of this article of or from>
6-56   <the asset transferred or its proceeds, by levy or otherwise,  is  avail->
          A. 5622                                        7


7- 1   <able  only  against  a  person  described in subparagraph (i) or (ii) of>
7- 2   <paragraph one of this subdivision.>
7- 3     <(c)  If  the  judgment  under subdivision (b) of this section is based>
```

```
7- 4   <upon the value of the asset transferred, the judgment  must  be  for  an>
7- 5   <amount  equal  to  the  value  of the asset at the time of the transfer,>
7- 6   <subject to adjustment as the equities may require.>
7- 7     <(d) Notwithstanding voidability of a transfer or an  obligation  under>
7- 8   <this  article,  a good-faith transferee or obligee is entitled, to the>
7- 9   <extent of the value given the debtor for the transfer or obligation, to:>
7-10     <(1) a lien on or a right to retain an interest  in  the  asset  trans->
7-11   <ferred;>
7-12     <(2) enforcement of an obligation incurred; or>
7-13     <(3) a reduction in the amount of the liability on the judgment.>
7-14     <(e)  A transfer is not voidable under paragraph two of subdivision (a)>
7-15   <of section two hundred seventy-three or section two hundred seventy-four>
7-16   <of this article if the transfer results from:>
7-17     <(1) termination of a lease upon default by the debtor when the  termi->
7-18   <nation is pursuant to the lease and applicable law; or>
7-19     <(2) enforcement of a security interest in compliance with article nine>
7-20   <of  the  uniform commercial code, other than acceptance of collateral in>
7-21   <full or partial satisfaction of the obligation it secures.>
7-22     <(f) A transfer is not voidable under subdivision (b)  of  section  two>
7-23   <hundred seventy-four of this article:>
7-24     <(1)  to the extent the insider gave new value to or for the benefit of>
7-25   <the debtor after the transfer was made, except to  the  extent  the  new>
7-26   <value was secured by a valid lien;>
7-27     <(2) if made in the ordinary course of business or financial affairs of>
7-28   <the debtor and the insider; or>
7-29     <(3) if made pursuant to a good-faith effort to rehabilitate the debtor>
7-30   <and the transfer secured present value given for that purpose as well as>
7-31   <an antecedent debt of the debtor.>
7-32     <(g)  The  following  rules  determine  the  burden  of proving matters>
7-33   <referred to in this section:>
7-34     <(1) A party that seeks to invoke subdivision (a), (d), (e) or  (f)  of>
7-35   <this  section has the burden of proving the applicability of that subdi->
7-36   <vision.>
7-37     <(2) Except as otherwise provided in paragraphs three and four of  this>
7-38   <subdivision,  the  creditor  has  the  burden of proving each applicable>
7-39   <element of subdivision (b) or (c) of this section.>
7-40     <(3) The transferee has the burden of proving the applicability to  the>
7-41   <transferee of clause (A) or (B) of subparagraph (ii) of paragraph one of>
7-42   <subdivision (b) of this section.>
7-43     <(4)  A  party  that  seeks  adjustment  under  subdivision (c) of this>
7-44   <section has the burden of proving the adjustment.>
7-45     <(h) The standard of proof required to establish matters referred to in>
7-46   <this section is preponderance of the evidence.>
7-47     <§ 278. Extinguishment of claim for relief. A  claim  for  relief  with>
7-48   <respect  to  a transfer or obligation under this article is extinguished>
7-49   <unless action is brought:>
7-50     <(a) under paragraph one of subdivision  (a)  of  section  two  hundred>
7-51   <seventy-three  of  this  article,  not  later  than four years after the>
7-52   <transfer was made or the obligation was incurred or, if later, not later>
7-53   <than one year after the transfer or obligation was or  could  reasonably>
7-54   <have been discovered by the claimant;>
7-55     <(b)  under  paragraph  two  of  subdivision (a) of section two hundred>
7-56   <seventy-three or subdivision (a) of section two hundred seventy-four  of>
      A. 5622                          8

8- 1   <this  article,  not later than four years after the transfer was made or>
8- 2   <the obligation was incurred; or>
8- 3     <(c)  under subdivision (b) of section two hundred seventy-four of this>
8- 4   <article, not later than one year after the transfer was made.>
8- 5     <§ 279. Governing law.  (a) In this section, the following rules deter->
8- 6   <mine a debtor's location:>
8- 7     <(1) A debtor who is an individual is located at the individual's prin->
8- 8   <cipal residence.>
8- 9     <(2) A debtor that is an organization and has only one place  of  busi->
8-10   <ness is located at its place of business.>
8-11     <(3)  A  debtor  that is an organization and has more than one place of>
8-12   <business is located at its chief executive office.>
8-13     <(b) A claim for relief in the nature of a claim for relief under  this>
8-14   <article  is  governed  by the local law of the jurisdiction in which the>
```

```
8-15    <debtor is located when the transfer is made or the obligation is>
8-16    <incurred.>
8-17       <§ 280. Supplementary provisions. Unless displaced by the provisions of>
8-18    <this article, the principles of law and equity, including the law>
8-19    <merchant and the law relating to principal and agent, estoppel, laches,>
8-20    <fraud, misrepresentation, duress, coercion, mistake, insolvency, or>
8-21    <other validating or invalidating cause, supplement its provisions.>
8-22       <§ 281. Uniformity of application and construction. This article  shall>
8-23    <be applied and construed to effectuate  its general purpose to make>
8-24    <uniform the law with respect to the subject of this article among states>
8-25    <enacting it.>
8-26       <§ 281-a. Relation to electronic  signatures  in  global  and  national>
8-27    <commerce act. This article modifies, limits, or supersedes the Electron->
8-28    <ic  Signatures  in  Global  and National Commerce Act, 15 U.S.C. Section>
8-29    <7001 et seq., but does not modify, limit, or supersede Section 101(c) of>
8-30    <that act, 15 U.S.C. Section 7001(c), or authorize electronic delivery of>
8-31    <any of the notices described in Section 103(b) of that  act,  15  U.S.C.>
8-32    <Section 7003(b).>
8-33       § 3. Paragraph 5 of subdivision (c) of section 5205 of the civil prac-
8-34    tice  law  and  rules,  as amended by chapter 93 of the laws of 1995, is
8-35    amended to read as follows:
8-36       5. Additions to an asset described in paragraph two of  this  subdivi-
8-37    sion shall not be exempt from application to the satisfaction of a money
8-38    judgment  if  (i)  made after  the  date that is ninety days before the
8-39    interposition of the claim on which such judgment was entered,  or  (ii)
8-40    deemed  to be [fraudulent conveyances] <voidable transactions> under arti-
8-41    cle ten of the debtor and creditor law.
8-42       § 4. Subdivision (g) of section 5519 of the  civil  practice  law  and
8-43    rules,  as  added by chapter 184 of the laws of 1988, is amended to read
8-44    as follows:
8-45       (g) Appeals in medical, dental or podiatric malpractice judgments.  In
8-46    an  action for medical, dental or podiatric malpractice, if an appeal is
8-47    taken from a judgment in excess of one million dollars and an  undertak-
8-48    ing  in  the  amount  of  one  million dollars or the limit of insurance
8-49    coverage available to the appellant for  the  occurrence,  whichever  is
8-50    greater,  is given together with a joint undertaking by the appellant and
8-51    any  insurer  of the appellant's professional liability that, during the
8-52    period of such stay, the appellant will make no  [fraudulent  conveyance]
8-53    [without   fair  consideration]  <voidable  transaction>  as  described
in
8-54    [section two hundred seventy-three-a] <article ten>  of  the  debtor  and
8-55    creditor  law, the court to which such an appeal is taken shall stay all
8-56    proceedings to enforce the judgment pending such appeal if it finds that
```

```
9- 1    there is a reasonable probability that the judgment may be  reversed  or
9- 2    determined  excessive. In making a determination under this subdivision,
9- 3    the court shall not consider the availability  of  a  stay  pursuant  to
9- 4    subdivision  (a)  or  (b)  of  this  section. Liability under such joint
9- 5    undertaking shall be limited to [fraudulent conveyances] <voidable trans->
9- 6    <actions> made by the appellant subsequent to the execution of such under-
9- 7    taking and during the period of such  stay,  but  nothing  herein  shall
9- 8    limit the liability of the appellant for [fraudulent conveyances] <voida->
9- 9    <ble  transactions> pursuant to article ten of the debtor and creditor law
9-10    or any other law. An insurer that pays money to a beneficiary of such  a
9-11    joint  undertaking  shall  thereupon be subrogated, to the extent of the
9-12    amount to be paid, to the rights and interests of such beneficiary, as  a
9-13    judgment  creditor,  against  the  appellant  on  whose  behalf the joint
9-14    undertaking was executed.
9-15       § 5. Subparagraph 4 of paragraph (b) of section 7-3.1 of the estates,
9-16    powers and trusts law, as amended by chapter 206 of the laws of 1998, is
9-17    amended to read as follows:
9-18       (4) Additions to an asset described in subparagraph one of this  para-
9-19    graph  shall  not  be  exempt  from application to the satisfaction of a
9-20    money judgment if (i) made after the date that is ninety days before the
9-21    interposition of the claim on which such judgment was entered,  or  (ii)
9-22    deemed  to be [fraudulent conveyances] <voidable transactions> under arti-
9-23    cle ten of the debtor and creditor law.
9-24       § 6. Paragraph 3 of subdivision 3-a of  section  50  of  the  workers'
```

```
9-25     compensation  law,  as  amended   by  chapter 139 of the laws of 2008, is
9-26     amended to read as follows:
9-27       (3) A member's participation in a group self-insurer shall not relieve
9-28     it of its liability for compensation prescribed by this  chapter   except
9-29     by  the  payment  thereof  by  the  group self-insurer or by itself. Each
9-30     member shall be responsible, jointly and severally, for all  liabilities
9-31     of  the group self-insurer provided for by this chapter occurring during
9-32     its respective period of membership, and such liability shall attach  to
9-33     any recipient of a conveyance of assets made in violation of <subdivision>
9-34     <(a) of>  section  two hundred [seventy-three] <seventy-four> of the
debtor
9-35     and creditor law. As between the employee and  the  group  self-insurer,
9-36     notice  to  or  knowledge of the occurrence of the injury on the part of
9-37     the member shall be deemed notice or knowledge, as the case may  be,  on
9-38     the  part  of  the group self-insurer; jurisdiction of the member shall,
9-39     for the purpose of this chapter, be jurisdiction of  the  group  self-in-
9-40     surer  and  such  group self-insurer shall in all things be bound by and
9-41     subject to the orders, findings, decisions or  awards  rendered  against
9-42     the  participating  member  for  the  payment  of compensation under the
9-43     provisions of this chapter.  The insolvency or bankruptcy of  a  partic-
9-44     ipating member shall not relieve the group self-insurer from the payment
9-45     of  compensation  for  injuries or death sustained by an employee during
9-46     the time the member was a participant in such group self-insurer. Notice
9-47     of termination of a participating member shall not be effective until at
9-48     least ten days after notice of such termination, on a  prescribed  form,
9-49     has been either filed in the office of the chair or sent by certified or
9-50     registered  letter,  return  receipt  requested, and also served in like
9-51     manner upon the member. In the  event  such  termination  is  due  to  a
9-52     member's  failure  to  pay  required contributions, such member's termi-
9-53     nation shall not be rescinded more than three times.
9-54       § 7. This act shall take effect one hundred twenty days after it shall
9-55     have become a law, and shall apply to a  transfer  made  or  obligation
9-56     incurred  on  or  after  such  effective  date, but shall not apply to a
         A. 5622                          10

10- 1    transfer made or obligation incurred before  such  effective  date,  nor
10- 2    shall  it apply to a right of action that has accrued before such effec-
10- 3    tive date. For the purposes of this act, a transfer is made and an obli-
10- 4    gation is incurred at the time provided in section 275 of the debtor and
10- 5    creditor law, as added by section two of this act.
```

# Addendum B

**Prior Version of N.Y. Debtor & Creditor Law Art. 10**
**(Effective Until April 3, 2020)**

McKinney's Consolidated Laws of New York Annotated

Debtor and Creditor Law (Refs & Annos)

Chapter 12. Of the Consolidated Laws (Refs & Annos)

Article 10. Fraudulent Conveyances [eff. Until April 4, 2020. See, Also, Art. 10, Effective April 4, 2020] (Refs & Annos)

This section has been updated. Click here for the updated version.

McKinney's Debtor and Creditor Law § 270

§ 270. Definition of terms

Effective: [See Text Amendments] to April 3, 2020

<[Repealed by L.2019, c. 580, § 2, eff. April 4, 2020. See, also, § 270 added eff. April 4, 2020.]>

In this article "assets" of a debtor means property not exempt from liability for his debts. To the extent that any property is liable for any debts of the debtor, such property shall be included in his assets.

"Conveyance" includes every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance.

"Creditor" is a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent.

"Debt" includes any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent.

**Credits**

(Added L.1925, c. 254, § 1.)

McKinney's Debtor and Creditor Law § 270, NY DEBT & CRED § 270
Current through L.2019, chapter 758 & L.2020, chapters 1 to 55, 58 to 88. Some statute sections may be more current, see credits for details.

    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

McKinney's Consolidated Laws of New York Annotated
   Debtor and Creditor Law (Refs & Annos)
      Chapter 12. Of the Consolidated Laws (Refs & Annos)
         Article 10. Fraudulent Conveyances [eff. Until April 4, 2020. See,
         Also, Art. 10, Effective April 4, 2020] (Refs & Annos)

This section has been updated. Click here for the updated version.

McKinney's Debtor and Creditor Law § 271

§ 271. Insolvency

Effective: [See Text Amendments] to April 3, 2020

<[Repealed by L.2019, c. 580, § 2, eff. April 4,
2020. See, also, § 271 added eff. April 4, 2020.]>

1. A person is insolvent when the present fair salable value of his assets is less than the
amount that will be required to pay his probable liability on his existing debts as they
become absolute and matured.

2. In determining whether a partnership is insolvent there shall be added to the
partnership property the present fair salable value of the separate assets of each general
partner in excess of the amount probably sufficient to meet the claims of his separate
creditors, and also the amount of any unpaid subscription to the partnership of each
limited partner, provided the present fair salable value of the assets of such limited
partner is probably sufficient to pay his debts, including such unpaid subscription.

**Credits**
(Added L.1925, c. 254, § 1.)

McKinney's Debtor and Creditor Law § 271, NY DEBT & CRED § 271
Current through L.2019, chapter 758 & L.2020, chapters 1 to 55, 58 to 88. Some statute
sections may be more current, see credits for details.

 © 2020 Thomson Reuters. No claim to original U.S. Government Works.

 © 2020 Thomson Reuters. No claim to original U.S. Government Works.

McKinney's Consolidated Laws of New York Annotated
Debtor and Creditor Law (Refs & Annos)
Chapter 12. Of the Consolidated Laws (Refs & Annos)
Article 10. Fraudulent Conveyances [eff. Until April 4, 2020. See, Also, Art. 10, Effective April 4, 2020] (Refs & Annos)
This section has been updated. Click here for the updated version.

McKinney's Debtor and Creditor Law § 272

§ 272. Fair consideration

Effective: [See Text Amendments] to April 3, 2020

<[Repealed by L.2019, c. 580, § 2, eff. April 4, 2020. See, also, § 272 added eff. April 4, 2020.]>

Fair consideration is given for property, or obligation,

a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

**Credits**

(Added L.1925, c. 254, § 1.)

McKinney's Debtor and Creditor Law § 272, NY DEBT & CRED § 272

Current through L.2019, chapter 758 & L.2020, chapters 1 to 55, 58 to 88. Some statute sections may be more current, see credits for details.

**End of Document**    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

McKinney's Consolidated Laws of New York Annotated
  Debtor and Creditor Law (Refs & Annos)
    Chapter 12. Of the Consolidated Laws (Refs & Annos)
      Article 10. Fraudulent Conveyances [eff. Until April 4, 2020. See,
      Also, Art. 10, Effective April 4, 2020] (Refs & Annos)

This section has been updated. Click here for the updated version.

McKinney's Debtor and Creditor Law § 273

§ 273. Conveyances by insolvent

Effective: [See Text Amendments] to April 3, 2020

<[Repealed by L.2019, c. 580, § 2, eff. April 4,
2020. See, also, § 273 added eff. April 4, 2020.]>

Every conveyance made and every obligation incurred by a person who is or will be
thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent
if the conveyance is made or the obligation is incurred without a fair consideration.

**Credits**
(Added L.1925, c. 254, § 1.)

McKinney's Debtor and Creditor Law § 273, NY DEBT & CRED § 273
Current through L.2019, chapter 758 & L.2020, chapters 1 to 55, 58 to 88. Some statute
sections may be more current, see credits for details.

End of Document                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

McKinney's Consolidated Laws of New York Annotated
  Debtor and Creditor Law (Refs & Annos)
    Chapter 12. Of the Consolidated Laws (Refs & Annos)
      Article 10. Fraudulent Conveyances [eff. Until April 4, 2020. See, Also, Art. 10, Effective April 4, 2020] (Refs & Annos)

This section has been updated. Click here for the updated version.

McKinney's Debtor and Creditor Law § 273-a

§ 273-a. Conveyances by defendants

Effective: [See Text Amendments] to April 3, 2020

<[Repealed by L.2019, c. 580, § 2, eff. April 4, 2020.]>

Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

**Credits**
(Added L.1962, c. 310, § 103.)

McKinney's Debtor and Creditor Law § 273-a, NY DEBT & CRED § 273-a
Current through L.2019, chapter 758 & L.2020, chapters 1 to 55, 58 to 88. Some statute sections may be more current, see credits for details.

---

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.

 © 2020 Thomson Reuters. No claim to original U.S. Government Works.

McKinney's Consolidated Laws of New York Annotated
   Debtor and Creditor Law (Refs & Annos)
      Chapter 12. Of the Consolidated Laws (Refs & Annos)
         Article 10. Fraudulent Conveyances [eff. Until April 4, 2020. See,
         Also, Art. 10, Effective April 4, 2020] (Refs & Annos)

This section has been updated. Click here for the updated version.

McKinney's Debtor and Creditor Law § 274

§ 274. Conveyances by persons in business

Effective: [See Text Amendments] to April 3, 2020

<[Repealed by L.2019, c. 580, § 2, eff. April 4,
2020. See, also, § 274 added eff. April 4, 2020.]>

Every conveyance made without fair consideration when the person making it is
engaged or is about to engage in a business or transaction for which the property
remaining in his hands after the conveyance is an unreasonably small capital, is
fraudulent as to creditors and as to other persons who become creditors during the
continuance of such business or transaction without regard to his actual intent.

**Credits**
(Added L.1925, c. 254, § 1.)

McKinney's Debtor and Creditor Law § 274, NY DEBT & CRED § 274
Current through L.2019, chapter 758 & L.2020, chapters 1 to 55, 58 to 88. Some statute
sections may be more current, see credits for details.

McKinney's Consolidated Laws of New York Annotated
   Debtor and Creditor Law (Refs & Annos)
      Chapter 12. Of the Consolidated Laws (Refs & Annos)
         Article 10. Fraudulent Conveyances [eff. Until April 4, 2020. See, Also, Art. 10, Effective April 4, 2020] (Refs & Annos)

This section has been updated. Click here for the updated version.

McKinney's Debtor and Creditor Law § 275

§ 275. Conveyances by a person about to incur debts

Effective: [See Text Amendments] to April 3, 2020

<[Repealed by L.2019, c. 580, § 2, eff. April 4, 2020. See, also, § 275 added eff. April 4, 2020.]>

Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

**Credits**
(Added L.1925, c. 254, § 1.)

McKinney's Debtor and Creditor Law § 275, NY DEBT & CRED § 275
Current through L.2019, chapter 758 & L.2020, chapters 1 to 55, 58 to 88. Some statute sections may be more current, see credits for details.

**End of Document**                  © 2020 Thomson Reuters. No claim to original U.S. Government Works.

McKinney's Consolidated Laws of New York Annotated
   Debtor and Creditor Law (Refs & Annos)
      Chapter 12. Of the Consolidated Laws (Refs & Annos)
         Article 10. Fraudulent Conveyances [eff. Until April 4, 2020. See,
         Also, Art. 10, Effective April 4, 2020] (Refs & Annos)

This section has been updated. Click here for the updated version.

McKinney's Debtor and Creditor Law § 276

§ 276. Conveyance made with intent to defraud

Effective: [See Text Amendments] to April 3, 2020

<[Repealed by L.2019, c. 580, § 2, eff. April 4,
2020. See, also, § 276 added eff. April 4, 2020.]>

Every conveyance made and every obligation incurred with actual intent, as
distinguished from intent presumed in law, to hinder, delay, or defraud either present or
future creditors, is fraudulent as to both present and future creditors.

**Credits**
(Added L.1925, c. 254, § 1.)

McKinney's Debtor and Creditor Law § 276, NY DEBT & CRED § 276
Current through L.2019, chapter 758 & L.2020, chapters 1 to 55, 58 to 88. Some statute
sections may be more current, see credits for details.

End of Document        © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:19-cv-00501-DNH-CFH   Document 56   Filed 05/08/20   Page 53 of 61

§ 276-a. Attorneys' fees in action or special proceeding to..., NY DEBT & CRED §...

McKinney's Consolidated Laws of New York Annotated
    Debtor and Creditor Law (Refs & Annos)
        Chapter 12. Of the Consolidated Laws (Refs & Annos)
            Article 10. Fraudulent Conveyances [eff. Until April 4, 2020. See,
            Also, Art. 10, Effective April 4, 2020] (Refs & Annos)

This section has been updated. Click here for the updated version.

McKinney's Debtor and Creditor Law § 276-a

§ 276-a. Attorneys' fees in action or special proceeding
to set aside a conveyance made with intent to defraud

Effective: [See Text Amendments] to April 3, 2020

<[Repealed by L.2019, c. 580, § 2, eff. April 4,
2020. See, also, § 276-a added eff. April 4, 2020.]>

In an action or special proceeding brought by a creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors to set aside a conveyance by a debtor, where such conveyance is found to have been made by the debtor and received by the transferee with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, in which action or special proceeding the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors shall recover judgment, the justice or surrogate presiding at the trial shall fix the reasonable attorney's fees of the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors in such action or special proceeding, and the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors shall have judgment therefor against the debtor and the transferee who are defendants in addition to the other relief granted by the judgment. The fee so fixed shall be without prejudice to any agreement, express or implied, between the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors and his attorney with respect to the compensation of such attorney.

**Credits**
(Added L.1938, c. 479. Amended L.1943, c. 172.)

McKinney's Debtor and Creditor Law § 276-a, NY DEBT & CRED § 276-a

Case 1:19-cv-00501-DNH-CFH   Document 56   Filed 05/08/20   Page 54 of 61

§ 276-a. Attorneys' fees in action or special proceeding to..., NY DEBT & CRED §...

Current through L.2019, chapter 758 & L.2020, chapters 1 to 55, 58 to 88. Some statute sections may be more current, see credits for details.

**End of Document**                                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

McKinney's Consolidated Laws of New York Annotated
  Debtor and Creditor Law (Refs & Annos)
    Chapter 12. Of the Consolidated Laws (Refs & Annos)
      Article 10. Fraudulent Conveyances [eff. Until April 4, 2020. See,
      Also, Art. 10, Effective April 4, 2020] (Refs & Annos)

This section has been updated. Click here for the updated version.

McKinney's Debtor and Creditor Law § 277

§ 277. Conveyance of partnership property

Effective: [See Text Amendments] to April 3, 2020

<[Repealed by L.2019, c. 580, § 2, eff. April 4,
2020. See, also, § 277 added eff. April 4, 2020.]>

Every conveyance of partnership property and every partnership obligation incurred
when the partnership is or will be thereby rendered insolvent, is fraudulent as to
partnership creditors, if the conveyance is made or obligation is incurred,

a. To a partner, whether with or without a promise by him to pay partnership debts, or

b. To a person not a partner without fair consideration to the partnership as distinguished
from consideration to the individual partners.

**Credits**
(Added L.1925, c. 254, § 1. Amended L.1938, c. 15, § 1.)

McKinney's Debtor and Creditor Law § 277, NY DEBT & CRED § 277
Current through L.2019, chapter 758 & L.2020, chapters 1 to 55, 58 to 88. Some statute
sections may be more current, see credits for details.

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

McKinney's Consolidated Laws of New York Annotated
   Debtor and Creditor Law (Refs & Annos)
      Chapter 12. Of the Consolidated Laws (Refs & Annos)
         Article 10. Fraudulent Conveyances [eff. Until April 4, 2020. See,
         Also, Art. 10, Effective April 4, 2020] (Refs & Annos)

This section has been updated. Click here for the updated version.

McKinney's Debtor and Creditor Law § 278

§ 278. Rights of creditors whose claims have matured

Effective: [See Text Amendments] to April 3, 2020

<[Repealed by L.2019, c. 580, § 2, eff. April 4,
2020. See, also, § 278 added eff. April 4, 2020.]>

1. Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,

a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

b. Disregard the conveyance and attach or levy execution upon the property conveyed.

2. A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment.

**Credits**
(Added L.1925, c. 254, § 1.)

McKinney's Debtor and Creditor Law § 278, NY DEBT & CRED § 278

Current through L.2019, chapter 758 & L.2020, chapters 1 to 55, 58 to 88. Some statute sections may be more current, see credits for details.

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.

McKinney's Consolidated Laws of New York Annotated
   Debtor and Creditor Law (Refs & Annos)
      Chapter 12. Of the Consolidated Laws (Refs & Annos)
         Article 10. Fraudulent Conveyances [eff. Until April 4, 2020. See, Also, Art. 10, Effective April 4, 2020] (Refs & Annos)

This section has been updated. Click here for the updated version.

McKinney's Debtor and Creditor Law § 279

§ 279. Rights of creditors whose claims have not matured

Effective: [See Text Amendments] to April 3, 2020

<[Repealed by L.2019, c. 580, § 2, eff. April 4, 2020. See, also, § 279 added eff. April 4, 2020.]>

Where a conveyance made or obligation incurred is fraudulent as to a creditor whose claim has not matured he may proceed in a court of competent jurisdiction against any person against whom he could have proceeded had his claim matured, and the court may,

a. Restrain the defendant from disposing of his property.

b. Appoint a receiver to take charge of the property,

c. Set aside the conveyance or annul the obligation, or

d. Make any order which the circumstances of the case may require.

**Credits**
(Added L.1925, c. 254, § 1.)

McKinney's Debtor and Creditor Law § 279, NY DEBT & CRED § 279
Current through L.2019, chapter 758 & L.2020, chapters 1 to 55, 58 to 88. Some statute sections may be more current, see credits for details.

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

McKinney's Consolidated Laws of New York Annotated
   Debtor and Creditor Law (Refs & Annos)
      Chapter 12. Of the Consolidated Laws (Refs & Annos)
         Article 10. Fraudulent Conveyances [eff. Until April 4, 2020. See,
         Also, Art. 10, Effective April 4, 2020] (Refs & Annos)

This section has been updated. Click here for the updated version.

McKinney's Debtor and Creditor Law § 280

§ 280. Cases not provided for in article

Effective: [See Text Amendments] to April 3, 2020

<[Repealed by L.2019, c. 580, § 2, eff. April 4,
2020. See, also, § 280 added eff. April 4, 2020.]>

In any case not provided for in this article the rules of law and equity including the
law merchant, and in particular the rules relating to the law of principal and agent, and
the effect of fraud, misrepresentation, duress or coercion, mistake, bankruptcy or other
invalidating cause shall govern.

**Credits**
(Added L.1925, c. 254, § 1.)

McKinney's Debtor and Creditor Law § 280, NY DEBT & CRED § 280
Current through L.2019, chapter 758 & L.2020, chapters 1 to 55, 58 to 88. Some statute
sections may be more current, see credits for details.

**End of Document**　　　　　　　　　　　　© 2020 Thomson Reuters. No claim to original U.S. Government Works.

McKinney's Consolidated Laws of New York Annotated
    Debtor and Creditor Law (Refs & Annos)
        Chapter 12. Of the Consolidated Laws (Refs & Annos)
            Article 10. Fraudulent Conveyances [eff. Until April 4, 2020. See,
            Also, Art. 10, Effective April 4, 2020] (Refs & Annos)

This section has been updated. Click here for the updated version.

McKinney's Debtor and Creditor Law § 281

§ 281. Construction of article

Effective: [See Text Amendments] to April 3, 2020

<[Repealed by L.2019, c. 580, § 2, eff. April 4,
2020. See, also, § 281 added eff. April 4, 2020.]>

This article shall be so interpreted and construed as to effectuate its general purpose to
make uniform the laws of those states which enact it.

**Credits**
(Added L.1925, c. 254, § 1.)

McKinney's Debtor and Creditor Law § 281, NY DEBT & CRED § 281
Current through L.2019, chapter 758 & L.2020, chapters 1 to 55, 58 to 88. Some statute
sections may be more current, see credits for details.

**End of Document**                                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.