# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – –    X

9384-2557 Québec Inc., a Canadian
corporation; MINEDMAP, INC., a Nevada
corporation; and SERENITY ALPHA, LLC, a
Nevada limited liability, and other similarly
situated individuals

                       Plaintiff,

                      against

NORTHWAY MINING, LLC, a New York limited
liability company; MICHAEL MARANDA, an
individual; MICHAEL CARTER, an individual;
CSX4236 MOTORCYCLE SALVAGE, LLC, a New
York limited liability company; DROR SVORAI,
an individual; MINING POWER GROUP, INC., a
Florida corporation; HUDSON DATA CENTER,
INC, a New York Corporation, MICHAEL
MARANDA, LLC, a New York Limited liability
company; PORTER KING HILL CONTRACTING,
LLC,  a New York limited liability company;
Coinmint, LLC, a Delaware    limited liability
company; OSWEGO DATA LLC, a New York
Limited Liability Company; LORI S. THOMPSON,
LCSW, PLLC, a professional limited liability
corporation; LORI S. THOMPSON, an individual,
ANTHONY PORTER, an individual; and DONALD
D'AVANZO, an individual

                  Defendants.

– – – – – – – – – – – – – – – – – – – – – – – – –    X

:    1:19-CV-00501-TJM-CFH

:    **PLAINTIFFS' RESPONSE IN**
   **OPPOSITION TO DEFENDANTS'**
   **MOTION TO DISMISS**

:

:    **(ECF Case)**

:

:

      Plaintiffs, MinedMap et. al., through counsel, T. Edward Williams, Esq., responds

to Defendants' Motion to Dismiss as follows:

## **INTRODUCTION**

Three of the four arguments Defendants proffer are patently frivolous, and for that reason, in separate pleading, Plaintiffs seek their reasonable attorney fees and costs against , E. Stewart Jones Hacker Murphy LLP, John F. Harwick, Esq. and Benjamin F. Neidl, Esq. jointly and severally.

Defendants argue that dismissal is required because Plaintiff did not serve them within 90 days, that Plaintiffs' RICO claim must be dismissed because Plaintiffs did not properly allege either an open-ended or closed-ended RICO violation, that a civil conspiracy is not an independent cause of action, and that the forum selection clause bars suit in this case, and so, dismissal is required.  Leaving the civil RICO argument to be addressed last, the remaining three arguments are frivolous.

First, Plaintiffs timely served the Defendants on May 2, 2019, through the US Marshal Service.  In addition, on February 10, 2020, as a prophylactic measure, Plaintiffs requested, and this Court granted, Plaintiffs' request for additional time to effect service on Defendants.  Rule 4(m) expressly allows Courts to extend time for plaintiffs to effect service on defendants.  Further, Plaintiffs can show good cause even if service was outside of the 90-day window.  Courts in this district have held that where a defendant makes it difficult for Plaintiffs to effect service on him, a plaintiff may show their efforts in attempting service and that effort constitutes good cause. Finally,

Defendants expressly waived all challenges to service in the April 17, 2020 Stipulation filed with this Court. *See* ECF. No. 41 (appearing for defendants and stating defendants have "waive[d] any defenses upon service of process or jurisdiction.").

Second, Defendants' argument regarding the forum selection clause is a waste of time. The Agreement attached to Defendants' complaint was rescinded by Defendants and Québec and Defendants and Québec entered into another agreement dated October 18, 2018. *See* Plts. Orig. Compl., at ¶¶ 52–62. The October 18, 2018 Agreement states that the Agreement Defendants cite is rescinded:

> Northway Mining, LLC hereby releases to 9384–2557 Quebec [sic] Inc. 22 pallets of Bitmain miners/power supply's which were previously removed from the racks/pulled out of service ***due to contract cancellation*** by authorized 9384–2557 Quecbec [sic] Inc. staff/contractors whom [sic] prepared the pallets for freight transport.

Third, New York Courts, including the District Court for the Southern District of New York, recognize a civil conspiracy claim when coupled with a tort:

> While New York law does not contain an actionable tort of conspiracy alone, a plaintiff may still plead the tort of civil conspiracy "in order to connect someone to an otherwise actionable tort committed by another and establish that those actions were part of a common scheme.  Thus, to state a claim for conspiracy a plaintiff must allege both a primary tort and also show the four elements of a conspiracy, namely: (1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.

Plaintiffs' civil conspiracy claim is coupled with several torts, including the intentional tort of conversion.

Fourth, Plaintiffs' RICO claim is properly pleaded, and Plaintiffs allege an open-ended RICO violation.  To remove any doubt, Plaintiffs' RICO Statement makes the point clearly.

## BACKGROUND

Plaintiffs first filed their Complaint in the District Court for the Eastern District of New York.  However, Judge Cogan determined that venue was better in the District Court for the Northern District of New York and transferred this matter to this Court. This Court adopted Judge Cogan's Order and granted Plaintiffs' Emergency Motion for Replevin. *See* Decision & Order Granting the Motion to Adopt and Emergency Motion for Replevin, April 29, 2019, ECF No. 19; *see, also*, Writ of Replevin, April 29, 2019, ECF. No. 20; and Amended Writ of Replevin, May 1, 2019, ECF. No. 22.

Plaintiffs completed the USM Form 285, submitted it to the United States Marshal Service, and on May, 2, 2019, the US Marshal Service served the Writ, the Summons, and the Complaint on the property at 2 Flint Mine Road, the address from which Defendants operated.  However, on a tip from John Harwick, Esq., Defendants

became aware of the Writ of Replevin issued by this Court and the impending raid by the US Marshal Service and absconded with Plaintiffs' bitcoin machines and money.[1]

Shortly after the raid, around the end of May 2019, law enforcement contacted Plaintiffs' counsel and requested information on Defendants.[2]  Because of the nature of the investigation, law enforcement requested that the undersigned not disclose the investigation or otherwise take action that would alert Defendants of investigation, until the investigation had sufficiently advanced.  On July 30, 2019, the undersigned had a status conference with Judge Hummel and disclosed, under seal, the nature of the investigation.  Because of that disclosure, Judge Hummel allowed the undersigned to proceed on a limited basis.  On September 4, 2019, when the investigation was further along, Plaintiffs requested an ex parte telephone conference to keep the court abreast of the developments.  *See* Ex Parte Motion Request for Telephonic Hearing, Sept. 4, 2019, ECF No. 27.

After the US Marshall served Defendants, Defendants scattered.  Defendant Dror Svorai went to Ohio and did not answer calls on the telephone line he had previously used.  (Dror Svorai was later arrested and jailed in Ohio).  In addition, Defendant Dror Svorai was not at the addresses of properties he claimed to own.  For their part,

---

[1] Videos of the raid can be seen here: https://www.ccn.com/new-york-bitcoin-mining-magnate-accused-of-stealing-over-5000-crypto-miners/
[2] The undersigned is willing to submit, for an in-camera review, all documents communications, the extensive interviews, and communications with law enforcement if this Court make that request.

Defendants Michael Carter and Michael Maranda began using burner phones[3] and changed emails.  Defendants also changed addresses and made it difficult to locate them.  Michael Carter, who used more burner phones than Plaintiffs can count, told people that Michael Carter had gotten him involved in criminal enterprises, and that he had to move to the Philippines.

Also, after the raid, Michael Carter stated he had retained John Harwick, Esq., but Michael Carter's counsel denied that assertion and stated process was to be had on Michael Carter through him.  *See* Original Complaint, ¶ 11.  Thus, because Defendants went to extensive lengths to conceal their whereabouts and other contact information, Plaintiffs requested, and obtained, additional time from Judge Hummel to serve Defendants again.  Judge Hummel granted Plaintiffs' request on February 10, 2020. *See* Minute Order Entry on Docket Dated February 10, 2020 ("Counsel advises the Court that service is being effectuated on Defendants and proof of service will be filed accordingly. From there, the case should proceed in due course and in accordance with the Federal Rules of Civil Procedure.").

---

[3] A burner phone is a "prepaid cell phone that is not bound to a contact with a carrier and is usually intended to be disposed of after use." *See* Merriam-Webster Dictionary, available at: https://www.merriam-webster.com/dictionary/burner%20phone; *see, also, United States v. Alston*, 2016 U.S. Dist. Lexis 136119, *24–25 (S.D.N.Y. 2016) (defining burner phone as "cell phones possessed for a short period of time and then discarded to thwart detection by law enforcement.")

To date, all Defendants, except Dror Svorai and his companies, have been served or have waived service. Through substantial diligence, Plaintiffs obtained an address for Dror Svorai and his new companies, and Plaintiffs are on their seventh attempt at serving Dror Svorai.  Dror Svorai, who is under house arrest, will not answer the door.

## STANDARD OF REVIEW

Under *Twombly* and *Iqbal*, a court may only dismiss a complaint where the complaint lacks  sufficient allegations to plausibly state a claim for relief. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–1965 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009).  A complaint is plausible on its face when the pleader provides factual content "that allows a court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1950.  The pleader's job is to nudge the claims from the possible or conceivable to the plausible.  *Accord*, *Enthone Inc. v. BASF Corp.*, 126 F. Supp. 3d 821, (N.D.N.Y. 2015) (McAvoy, J.) (while Rule 8(a)(2) does not required detailed factual allegations, . . . it  demands more than an unadorned, the defendant-harmed-me-accusation."). The court must accept the allegations in the Complaint as true. *Iqbal*, 129 S. Ct. at 1949–50.

## ARGUMENT

**I.   PLAINTIFFS' TIMELY SERVED DEFENDANTS.   IN ADDITION, ON FEBRUARY 10, 2020, THIS COURT EXPRESSLY EXTENDED THE TIME FOR SERVICE ON DEFENDANTS. ALTERNATIVELY, PLAINTIFFS CAN SHOW GOOD CAUSE, BUT THAT MAY NOT BE NECESSARY BECAUSE DEFENDANTS WAIVED THIS ARGUMENT WHEN THEY ENTERED INTO THE APRIL 17, 2020, STIPULATION WITH PLAINTIFFS.**

Defendants argue that Rule 4(m) requires service "within 90 days after the complaint is filed," and, if not served within 90 days, the court must dismiss the complaint.   Defs. Mot. to Dismiss at 7, May 8, 2020, ECF No. 55–1.   Defendants are wrong.

The rule, as articulated by this court and by other courts, is that if a plaintiff does not serve a complaint on a defendant within 90 days of filing the complaint, the court must either dismiss the complaint or order service be made within a specified period. *See* Fed. R. Civ. P. 4(m); *see, e.g., Henderson v. United States*, 116 S. Ct. 1638 (1996) (construing Rule 4(m), and holding that the court may not dismiss a complaint where the complaint was served within 90 days or within the additional time allowed by the court).

In addition, where the plaintiff can show good cause for not serving the complaint, the court must grant additional time in which to serve the complaint.   *See* Fed. R. Civ. P. 4(m) ("But if the plaintiff shows good cause for the failure, the court must

extend time for service for an appropriate period."); *see, e.g., Gerena v. Korb*, 617 F.3d 197, 203–204 (2d Cir. 2010) (construing Rule 4(m) and holding that where good cause has been found, the inquiry ends and the court lacks discretion to dismiss the plaintiff's complaint); *accord*, *Blandford v. Broom Cnty. Gov't.*, 193 F.R.D. 65, 68 (N.D.N.Y. 2000) (McAvoy, J.) (denying defendant's motion to dismiss, construing Rule 4(m) in concert with Rule 6(b), and holding that courts may extend the time for service, "even if the plaintiff fails to show good cause."); *Covington v. Dibiase*, 1998 U.S. Dist. Lexis 17195, *1–3 (N.D.N.Y. 1998) (McAvoy, J.) (construing the previous version of Rule 4(m) and denying the defendant's motion to dismiss).

This District applies uses a two-part test to assess good cause. First, the court assesses the reasonableness and the diligence in plaintiff's effort to serve defendants; and second, the court assesses the prejudice to the defendant from the delay. *UMG Recordings, Inc. v. Frawley*, 2011 U.S. Dist. Lexis 164151, *18 (N.D.N.Y. 2011) (citing *Gordon v. Hunt*, 116 F.R.D. 313, 318–321 (S.D.N.Y. 1987) *aff'd* 835 F.2d 452 (2d Cir. 1987)).

As stated in the Background section above, the United States Marshal Service served Defendants at 2 Flint Mine Road on May 2, 2019, by posting the Writ of Replevin, the Summons, and the Original Complaint on the property at 2 Flint Mine Road.  Plaintiffs therefore fulfilled their obligations under Rule 4(m).

Also, on February 10, 2020, because Defendants absconded after being tipped off by their attorney, John Harwick, Esq., Plaintiffs requested, as a prophylactic measure, and obtained additional time to effect service on Defendants. Rule 4(m) expressly allows a party to request and obtain additional time to effect service on a defendant and the entry is on this Court's docket for the world to see.  With minimal diligence, Defendants' and Defendants' counsel should have seen this entry.

Even on the slim chance that Plaintiffs' service was out of the 90 days—which cannot be the case because Judge Hummel order extended the time for service without stating the date Plaintiffs must have service—Plaintiffs can show good cause.  As this court has held numerous times, where a defendant deliberately engages in tactics to avoid service the Plaintiff demonstrates good cause by showing that the delay tactics designed to impede service, did, in fact, impede Plaintiff's efforts to serve Defendants. *Korb*, 617 F.3d 197, 203–204 (2d Cir. 2010) (construing Rule 4(m) and holding that where good cause has been found, the inquiry ends, and the court lacks discretion to dismiss the plaintiff's complaint).  The background section details Plaintiffs' efforts in serving Defendant, and Plaintiffs do not address the second prong of the good cause test—whether and how Defendants have been prejudiced—because Defendants do not argue there were prejudiced.

However, none of the foregoing matters because Defendants expressly waived arguments as to service in the April 17, 2020 Stipulation filed with this Court. *See* ECF. No. 41 (appearing for defendants and stating defendants have "waive[d] any defenses upon service of process or jurisdiction.").

## II. THE FORUM SELECTION CLAUSE IS NOT ENFORCEABLE AGAINST PLAINTIFFS QUÉBEC, INC. BECAUSE NORTHWAY RESCINDED THE AGREEMENT THAT INCLUDED THE FORUM SELECTION CLAUSE.

In Point IV of their Brief, Defendants argue that the forum selection clause in the Northway Mining Hosting Contract ("Agreement") applies and requires dismissal of Plaintiff, 9384–2557 Québec, Inc.'s ("Québec") claims to be tried somewhere in Green County, New York. Defs. Mot. to Dismiss, at 17–19. Again, Defendants are wrong and Defendants, along with their attorney, E. Stewart Jones Hacker Murphy LLP, John F. Harwick, Esq., and Benjamin F. Neidl, Esq., should be sanctioned under Rule 11.

First, Defendants' Motion to Dismiss does not clarify whether dismissal, as it relates to Defendants' forum selection argument, is sought under Rule 12(b)(3) or under Rule 12(b)(6). *See* Defs. Mot. to Dismiss, at *passim*. This distinction—about whether the court is proceeding under Rule 12(b)(3) or under Rule 12(b)(6)—matters because the court must determine whether it may view documents outside of the pleadings (Rule 12(b)(3)) or whether it is confined to the pleadings (Rule 12(b)(6)). *See J.B. Harris, Inc. v. Razei Bar Indus., Ltd.*, 37 F. Supp. 2d 186, 189 (E.D.N.Y. 1998)

11

(discussing the difference between Rule 12(b)(3) and Rule 12(b)(6)). Defendants should therefore clarify the rule under which they are proceeding, and this Court should allow the undersigned to file a surreply, if necessary. If Defendants are proceeding under Rule 12(b)(6), this court would be bound to accept the allegations in the complaint as true. The allegations in the Complaint do not rest on the Agreement attached as Exhibit A to Defendants' Motion to Dismiss.

Second, and more importantly, Defendants' argument regarding the forum selection clause does not matter. Defendants attached the Agreement as Exhibit A to their Motion to Dismiss, but Defendants and Québec expressly rescinded the Agreement, and, on October 18, 2018, entered into a subsequent agreement with Québec, after Québec picked up its bitcoin machines. A relevant provision of the October 18, 2018, Agreement provides that Northway was returning Québec's machines because Québec has cancelled its contract with Northway:

> Northway Mining, LLC hereby releases to 9384–2557 Quebec [sic] Inc. 22 pallets of Bitmain miners/power supply's which were previously removed from the racks/pulled out of service **due to contract cancellation** by authorized 9384–2557 Quecbec [sic] Inc. staff/contractors whom [sic] prepared the pallets for freight transport.

October 18, 2018 Agreement (emphasis added).

The Agreement cited by Defendants was rescinded—by both parties—when Québec picked up its machines, and the October 18, 2018 Agreement was then

executed.  Québec seeks relief because although it obtained its bitcoin machines, Northway and Maranda did not return the more than $93,000.00 deposit from Defendant, Michael Maranda.  *See* Plts. Orig. Compl., at ¶¶ 52–61.  Québec's counsel, Scott Delsack, Esq. negotiated  the October 18, 2018 Agreement; Defendants' current counsel, John F. Harwick, Esq. was also involved in that discussion.  In fact, Mr. Harwick drafted a version of the October 18, 2018 Agreement that was expressly rejected by Québec and its counsel.

**III.   PLAINTIFFS PROPERLY PLEADED THEIR CIVIL CONSPIRACY CLAIM BECAUSE PLAINTIFFS' CIVIL CONSPIRACY CLAIM IS COUPLED WITH THE COGNIZABLE TORT.**

Defendants' argue there is no independent claim under New York law for civil conspiracy, and so, this Court must dismiss Plaintiffs' civil conspiracy claim.  Defs. Mot. to Dismiss, at 15–16.  Defendants likely did not research this point in any detail because, although the truism Defendants cite is supported by few cases, the Encyclopedia of New York Causes of Action: Elements and Defenses makes it clear that civil conspiracy, coupled with a tort, is actionable.  In fact, the value of a civil conspiracy claim is that it connects "a defendant to someone else's fraudulent conduct."  Ernest Edward Badway, *Encyclopedia of N.Y. Causes of Action: Elements and Defenses*, §15-8:7 at 224–225 (N.Y. L.J. 2020 ed.) (Reciting the truism that a civil conspiracy claim is not an independent cause of action and stating: "[h]owever, New York Law would permit a conspiracy to connect a defendant to someone else's fraudulent conduct.").

In *Fezzani v. Bear Stearns & Co.*, 592 F. Supp. 2d 410, 423 (S.D.N.Y. 2008)[4], the

District Court for the Southern District of New York recognized a civil conspiracy claim

as an actionable claim when coupled with a tort:

> While New York law does not contain an actionable tort of conspiracy alone, a plaintiff may still plead the tort of civil conspiracy "in order to connect someone to an otherwise actionable tort committed by another and establish that those actions were part of a common scheme.  Thus, to state a claim for conspiracy a plaintiff must allege both a primary tort and also show the four elements of a conspiracy, namely: (1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.

*Fezzani*, 592 F. Supp. 2d at 423 (citing *Lewis v. Rosenfeld*, 138 F. Supp. 2d 466, 479

(S.D.N.Y. 2001).

Plaintiffs' civil conspiracy claim is tethered to numerous torts, including the

intentional tort of conversion.  Plts. Orig. Compl. at ¶¶ 175–200.

## IV.   PLAINTIFFS' CORRECTLY PLEADED THEIR CIVIL RICO CLAIM.

To prevail on a RICO claim, the Plaintiff must demonstrate that: (i) a culpable person;

(ii) who willfully or knowingly (iii) commits or conspires to commission of racketeering activity,

(iv) through a pattern involving a separate enterprise or association in fact, and (v) an effect

on interstate or foreign commerce.  18 U.S.C. 1962(a)–(c)(2018); *see, e.g., Katzman*, 167

---

[4] LexisNexis states the lawyer should exercise caution in citing *Fezzani* because *Fezzani* was distinguished on other grounds.  The principle for which Plaintiffs cite *Fezzani* remain good law.

F.R.D. at 655–656.; *Holmes,* 2013WL5405541 at 7–9; *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 18–19 (S.D.N.Y. 1983) (listing these elements but in a different order).

Defendants  argue that Plaintiffs RICO claim must fail because Plaintiffs fail to allege an open-ended or a closed-ended pattern of racketeering. Defendants also argue that Plaintiffs' fail to allege the predicate offenses with particularity.  *See* Defs. Mot. to Dismiss, at 7–15.

Since the Supreme Court decided *H.J. Inc. v. Northwestern Bell Tel. Co.*, 109 S. Ct. 2893 (1989), the Second Circuit has made clear that a plaintiff can demonstrate the continuity element of a RICO claim by alleging a closed-ended pattern of racketeering or an open-ended pattern of racketeering.  *See, Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183–185 (2d Cir. 2008); *First Capital Asset Mgmt. Inc. c. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004); *Cofacredit v. S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999).  A plaintiff alleges a closed-ended pattern of racketeering by demonstrating ". . . a series of related predicate acts extending over a substantial period of time." *Spool*, supra (quotation marks omitted). Similarly, a plaintiff alleges an open-ended pattern of racketeering by alleging a "pattern of racketeering that poses a risk of continuing criminal conduct beyond the period during which the predicate acts were performed." *Spool, supra*.

Here, Plaintiffs have alleged an opened-ended and a closed-ended pattern of racketeering. *See* Plts. Orig. Compl. at ¶¶ 15–123.  In addition, Plaintiff alleges a time place, and content of the predicate offenses, which satisfies the particularity requirement.  Nevertheless, Plaintiffs' RICO statement expounds on the open-ended and closed-ended nature of Defendants' pattern of racketeering.  That statement is being submitted on Monday, May 25, 2020, if not sooner.

## **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully requests that this Court deny Defendants' Motion to Dismiss.

Dated as of May 22, 2020.
New York, New York

**RESPECTFULLY SUBMITTED**,

*/s/ T. Edward Williams, Esq.*
T. Edward Williams, Esq. Bar No. 5634738
WILLIAMS LLP
7 World Trade Center
250 Greenwich 46th FL.
New York, New York 10007
Tel: 212.634.9106
Fax: 212.202.6228
Edward.williams@wmsintl.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of May 2020, this **RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS** was served on the following individuals:

John Harwick, Esq. *via ECF*
*Counsel for Maranda Defendants*