UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

9384-2557 QUÉBEC INC., a Canadian corporation; MINEDMAP, INC., a Nevada corporation; and SERENITY ALPHA, LLC, a Nevada limited liability, and other similarly situated individuals,

                    Plaintiffs,

  -against-

NORTHWAY MINING, LLC, a New York limited liability company; MICHAEL MARANDA, an individual; MICHAEL CARTER, an individual; CSX4236 MOTORCYCLE SALVAGE, LLC, a New York limited liability company; DROR SVORAI, an individual; MINING POWER GROUP, INC., a Florida corporation; HUDSON DATA CENTER, INC, a New York Corporation, MICHAEL MARANDA, LLC, a New York Limited liability company; PORTER KING HILL CONTRACTING, LLC, COINMINT, LLC, a Delaware limited liability company,

                    Defendants.

Civ. Action No.: 1:19-CV-00501-TJM-CFH

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS

## BY DEFENDANTS NORTHWAY MINING LLC, MICHAEL MARANDA, MICHAEL MARANDA LLC, AND HUDSON DATA CENTER INC.

John F. Harwick, Esq.
Benjamin F. Neidl, Esq.
E. STEWART JONES HACKER MURPHY LLP
*Attorneys for Defendants Northway Mining LLC, Michael Maranda, Michael Maranda LLC and Hudson Data Center Inc.*
28 Second Street
Troy, N.Y.  12180
(518)274-5820

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................1

REPLY ARGUMENT .....................................................................................................................1

I. THE PLAINTIFFS HAVE NOT REBUTTED THE MOVING
DEFENDANTS' GROUNDS FOR DISMISSING THE RICO
COUNT (COUNT I). ...............................................................................................1

    A. The Amended Complaint Does Not Allege Either Closed-Ended
or Open-Ended Continuity. ..........................................................................1

        1. Closed-Ended Continuity ................................................................1

        2. Open-Ended Continuity ...................................................................2

    B. The Amended Complaint Does Not Sufficiently Allege
Individual Acts of Racketeering Activity. ...................................................3

    C. The Plaintiffs' Late-Filed RICO Statement Does Not Suffice. ...................4

II. THE CLAIMS ASSERTED BY QUÉBEC AND SERENITY MUST
BE DISMISSED FOR IMROPER VENUE OR *FORUM NON
CONVENIENS* PURUSANT TO THE FORUM/VENUE SELECTION
CLAUSES IN THEIR CONTRACTS. ...................................................................5

    A. The Plaintiffs Apparently Do Not Oppose the Motion
as it Pertains to Serenity. ..............................................................................5

    B. Quebec's Arguments Are Without Merit. ....................................................6

III. THE "CIVIL CONSPIRACY" CLAIM (COUNT III) MUST BE
DISMISSED FOR FAILURE TO STATE A CLAIM. ..........................................8

IV. THE PLAINTIFFS HAVE NOT SHOWN GOOD CAUSE
FOR DELAY OF SERVICE UNDER RULE 4(m). ..............................................9

CONCLUSION ..............................................................................................................................10

**TABLE OF AUTHORITIES**

**Page**

**Cases**

AGR Financial LLC v. Ready Staffing, Inc., 99 F.Supp.2d 399 (S.D.N.Y 2000) ...................... 6, 7

Albunio v. Int'l Safety Grp., WL 1267795 (S.D.N.Y. Mar. 30, 2016) .......................................... 2

Amaker v. Kelly, 2009 WL 385413 (N.D.N.Y., Feb. 9, 2009) .................................................. 3, 4

Banca Commerciale Italiana v. Northern Trust Int'l Corp., 160 F.3d 90 (2d Cir. 1988) .............. 8

CFirstclass Corporation v. SilverjetPLC, 560 F.Supp.2d 324 (S.D.N.Y. 2008) ........................... 6

Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229 (2d Cir. 1999) ........................ 2

Commander v. American Cruise Lines, Inc., 389 F.Supp.3d 180 (N.D.N.Y. 2019) ..................... 6

Corporate Trade, Inc. v. Golf Channel, 2013 WL 5375623 (S.D.N.Y., Sep. 24, 2013) ................ 8

Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473 (2d Cir. 2014) ..................................... 3

Dechter v. Second Nature Therapeutic Program, 42 F.Supp.3d 450 (E.D.N.Y. 2014) ................. 8

DeFalco v. Bernas, 244 F.3d 286 (2d Cir. 2001) ........................................................................... 1

Donnay U.S.A. v. Donnay Int'l, 2016 WL 9640001 (E.D.N.Y. Sept. 1, 2016) ............................ 6

First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004) ......................... 1

Getty Props. Corp. v. Getty Petroleum Marketing, Inc., 106 A.D.3d 429 (1st Dep't 2013) ...... 6, 7

Kirch v. Liberty Media, 449 F.3d 388 (2d Cir. 2006) ................................................................... 8

Lerner v. Fleet Bank, N.A., 459 F.3d 273 (2d Cir. 2006) .............................................................. 3

McCall v. Chesapeake Energy Corp., 509 Fed.Appx. 62 (2d Cir. 2013) ...................................... 8

Payday Advance Plus, Inc. v. Findwhat.com, Inc., 478 F.Supp.2d 496 (S.D.N.Y. 2007) ............ 8

Pierce v. Homecomings Financial,  2017 WL 5991750 (N.D.N.Y., Dec. 4, 2017) ....................... 4

Primex Int'l Corp. v. Wal-Mart Stores, 89 N.Y.2d 594 (1997) ..................................................... 6

Rudgayzer v. Google, Inc., 986 F. Supp.2d 151 (E.D.N.Y. 2013) ................................................ 6

Spoto v. Herkimer County Trust, 2000 WL 533293 (N.D.N.Y, Apr. 27, 2000) ........................ 3, 4

Taboola Inc. v. Ezoic, Inc., 2019 WL 465003 (S.D.N.Y. Feb. 6, 2019) ........................................ 6

United States v. Aulicino, 44 F.3d 1102 (2d Cir. 1995) ................................................................. 2

Weingrad v. Telepathy, Inc., 2005 WL 2990645 (S.D.N.Y. Nov. 7, 2005) ................................... 7

**Rules**

Fed. R. Civ. P. 4 ........................................................................................................................ 9, 10

Fed. R. Civp. P. 9(b) ................................................................................................................... 3, 4

N.D.N.Y. General Order 14 ............................................................................................................ 4

N.D.N.Y. Local Rule 7.1(b) ............................................................................................................ 4

N.D.N.Y. Local Rule 9.2 ................................................................................................................. 4

**PRELIMINARY STATEMENT**

Defendants Northway Mining LLC (**"Northway"**), Michael Maranda (**"Maranda"**), Michael Maranda LLC (**"MMLLC"**) and Hudson Data Center Inc. (**"Hudson Data"**), collectively the **"Moving Defendants,"** respectfully submit this Reply Memorandum of Law in further support of their partial motion to dismiss pursuant to F.R.C.P. 12(b)(3) and (b)(6).

**REPLY ARGUMENT**

**I.    THE PLAINTIFFS HAVE NOT REBUTTED THE MOVING DEFENDANTS' GROUNDS FOR DISMISSING THE RICO COUNT (COUNT I).**

**A.    The Amended Complaint Does Not Allege Either Closed-Ended or Open-Ended Continuity.**

A RICO plaintiff "must allege either an open-ended pattern of racketeering activity" or a "a closed-ended pattern of racketeering activity []." First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 180 (2d Cir. 2004); see also Abramo v. Teal, Becker & Chiarmonte, 713 F.Supp.2d 96, 110 (N.D.N.Y. 2010).  The cases from this Circuit establish fairly bright line criteria for both varieties of continuity, which the pleading in this case simply fails to meet.

**1.    Closed-Ended Continuity**

For closed-ended continuity, at a minimum the plaintiff's allegations must meet a clear durational requirement: "The Second Circuit "has never found a closed-ended pattern where the predicate acts spanned *fewer than two years*." Abramo, 713 F.Supp.2d at 110 (emphasis added, describing two years as "the minimum duration necessary to find closed-ended continuity"), citing First Capital Asset Mgmt., 385 F.3d at 181; see also DeFalco v. Bernas, 244 F.3d 286, 321 (2d Cir. 2001)(collecting cases); Grace International v. Festa, 2019 WL 1369000, at *7 (E.D.N.Y., Mar. 26, 2019). "[P]redicate acts extending over a few weeks or months," therefore, cannot satisfy this requirement.  Wee v. Rome Hosp., 1996 WL 191970, at *5 (N.D.N.Y., Apr. 15, 1996).

1

The plaintiffs do not allege that the predicate racketeering acts spanned a "substantial period of time," much less a two year span.  In fact, they allege that their involvement with the defendants began in August or September 2018 which is still less than two years ago.  (Amended Complaint ¶¶29-33 and 71-76 [ECF Doc. #29].)  The pleading only vaguely lists the alleged predicate acts as spanning a few months in 2018, from September to November.  (Id. ¶158)  Their late-filed RICO Statement (discussed below), does not particularize the alleged racketeering acts and, therefore, does not cure this defect.  See Abramo, 713 F.Supp.2d at110-11 (the duration for closed-ended continuity must be "measured by the *RICO predicate act*s the defendants commit" [emphasis added]).  The plaintiffs do not dispute any of the legal contentions set forth above, nor do they cite any authorities suggesting that closed-ended continuity can be satisfied by alleged racketeering acts spanning this brief period.

**2.      Open-Ended Continuity.**

To satisfy open-ended continuity the plaintiff "must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999).  In this Circuit, open-ended continuity is a theory of limited application: it "only applies to 'inherently unlawful' criminal activities in pursuit of 'inherently unlawful' goals, such as murder, obstruction of justice, narcotics trafficking, embezzlement, extortion, bribery, and money laundering." Albunio v. Int'l Safety Grp., WL 1267795, at *7 (S.D.N.Y. Mar. 30, 2016)(emphasis added); see also United States v. Aulicino, 44 F.3d 1102, 1111 (2d Cir. 1995); Spoto v. Herkimer County Trust, 2000 WL 533293, at *5 (N.D.N.Y, Apr. 27, 2000).  "Ordinary fraud supported by wire fraud predicates are not 'inherently unlawful' for purposes of RICO continuity."  Grace Int'l Assembly, 2019 WL 1369000, at *8, citing Aulicino, 44 F.3d at 1111.

2

The plaintiffs cite no authority to the contrary.  The plaintiffs do not allege any actual or threatened predicate acts of the "inherently unlawful" variety such as murder, obstruction of justice, narcotics trafficking, embezzlement, extortion, bribery, and money laundering.  They rely entirely on alleged "[o]rdinary fraud supported by wire fraud predicates" (Grace Int'l Assembly, 2019 WL 1369000, at *8). (Amended Complaint ¶158 [ECF Doc. #29].)

B.  **The Amended Complaint Does Not Sufficiently Allege Individual Acts of Racketeering Activity.**

"The pleading of a civil RICO violation is subject to the heightened requirement that its supporting allegations must be pleaded with particularity" pursuant to Federal Rule 9(b).  Amaker v. Kelly, 2009 WL 385413, at *11 (N.D.N.Y., Feb. 9, 2009).  Thus, the complaint must specify, among other things, the time, place and manner of the discrete acts of racketeering activity, including an explanation of why or how the individual statements were fraudulent.  Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006); see also Spoto v. Herkimer County Trust, 2000 WL 533293, at *5 (N.D.N.Y, Apr. 27, 2000).  "[G]iven the routine use of mail and wire communications in business operations, ... 'RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it.'"  Grace International, 2019 WL 1369000, at *5, citing Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 489 (2d Cir. 2014).

The Amended Complaint does not satisfy those requirements.  It alleges in only very bare terms that the defendants made "fraudulent misrepresentations" in a series of emails or text messages in the fall of 2018, but does not explain particularly what those communications said, or how they were false. (Amended Complaint ¶158 [ECF Doc. #29].)  In opposition, the plaintiffs offer another bare statement that their pleading "alleges a time place, and content of the predicate

3

offenses, which satisfies the particularity requirement" (ECF Doc. #58 pg. 16), but they do not point to any particular example of one. The pleading speaks for itself and, we respectfully submit that it does not allege any of the purported predicate acts to satisfy Rule 9(b) on the one hand, or even the Twombly pleading standard on the other. As discussed below, the late-filed RICO Statement also does not particularize the alleged racketeering acts either.

      **C.**      **The Plaintiffs' Late-Filed RICO Statement Does Not Suffice.**

The failure to file a RICO Statement within 30 days of commencing the action, as required by Local Rule 9.2, may warrant dismissal of a RICO claim in and of itself. See Pierce v. Homecomings Financial, 2017 WL 5991750, at *2 n.2 (N.D.N.Y., Dec. 4, 2017); Amake, 2009 WL 385413, at *11; Spoto, 2000 WL 533293, at *3 n.2. At the time we filed our motion to dismiss in May 2020 (more than a year after commencement), the plaintiffs had not filed a RICO Statement. They have just filed one (after our motion) on May 26, 2020. (ECF Doc. #59.)

The RICO Statement is procedurally and substantively defective. Procedurally, it is obviously untimely. As noted, Local Rule 9.2 required the plaintiffs to file it within 30 days after commencing the action in 2019, and at the very least Local Rule 7.1(b) required them to file it at least 17 days before the return date of this motion (*i.e.*, on or before May 22) if they intend for the RICO Statement to be considered as a "paper" in opposition to the motion. They filed it a little more than a day before this reply was due.

Substantively, the RICO Statement does not satisfy the content specifications of General Order 14. Where, as here, the plaintiff relies on mail or wire fraud, the General Order requires the the "circumstances constituting fraud or mistake shall be stated with particularity. Fed. R. Civ. P. 9(b)." (¶5[c].) The General Order directs the plaintiff to "Identify the time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged

4

misrepresentations were made." The RICO Statement generally, narratively describes an alleged scheme, but it does not describe *particular* mail or wire fraud communications, or describe their content, or explain how they were false, except for its reference to some unspecified number of "text messages" that Maranda allegedly sent to Daniel Kim in January 2019, in which Maranda allegedly explained that he had used Serenity's $432,000 payment to reconstruct a hosting site (and even as to that representation, the RICO Statement does not clearly allege that Maranda's explanation was false). (ECF Doc. #59 pg. 14.) In any event, those modestly described text messages from January 2019 are obviously not enough to establish a "pattern" of racketeering activity under the closed-ended or open-ended continuity models.[1]

## II. THE CLAIMS ASSERTED BY QUÉBEC AND SERENITY MUST BE DISMISSED FOR IMROPER VENUE OR *FORUM NON CONVENIENS* PURUSANT TO THE FORUM/VENUE SELECTION CLAUSES IN THEIR CONTRACTS.

### A. The Plaintiffs Apparently Do Not Oppose the Motion as it Pertains to Serenity.

Our initial motion papers argued that all claims by Quebec and Serenity must be dismissed because both of those plaintiffs had contracts with Northway which specified that "Any and all proceedings which may arise among the Parties regarding this Agreement shall be held in Greene County, New York." (ECF Doc. #55-3 and #55-4, pg. 6 of each.)

The plaintiffs' opposition disputes this argument for Quebec, arguing that Quebec rescinded the contract with the venue selection clause (which we address below). (ECF Doc. #58 pg. 11-12.) But the plaintiffs offer no argument for Serenity. They do not dispute the presence of the venue selection clause in Serenity's agreement, nor do they attempt to rebut the "presumption" of its enforceability. See Commander v. American Cruise Lines, Inc., 389 F.Supp.3d 180, 185

---

[1] The RICO Statement alleges that Michael Maranda made some oral misrepresentations during face-to-face meetings during some site visits (pg. 10-13). While those might be pertinent to the common law fraud claim, oral communications are not acts of mail or wire fraud.

5

(N.D.N.Y. 2019); Rudgayzer v. Google, Inc., 986 F. Supp.2d 151, 155-57 (E.D.N.Y. 2013). They also do not dispute the argument asserted in our opening brief that the venue selection is not limited to Serenity's breach of contract claim, but encompasses all of its claims. CFirstclass Corporation v. SilverjetPLC, 560 F.Supp.2d 324, 329 (S.D.N.Y. 2008)("[A] contractually-based forum selection clause will also encompass tort claims if the tort claims ultimately depend on the existence of a contractual relationship between the parties, or if resolution of the claims relates to interpretation of the contract, or if the tort claims involve the same operative facts as a parallel claim for breach of contract"). Accordingly, the motion as to Serenity is apparently unopposed and should be granted.

### B.   Quebec's Arguments Are Without Merit.

Importantly, Quebec does not dispute that the Greene County forum selection clause was present in the Hosting Services Agreement that it signed with Northway in September 2018, which was annexed to the Michael Maranda Declaration as Exhibit A (ECF Doc. #55-3). Therefore, we begin with a "presumption" of enforceability. Commander, 389 F.Supp.3d at 185.

What Quebec essentially argues is that the selection clause is no longer enforceable because Quebec terminated the Hosting Services Agreement and retrieved its machines in October 2018. (ECF Doc. #58 pg. 12.) But under New York law, the mere termination of a contract containing a forum selection clause does not render the clause unenforceable. See Donnay U.S.A. v. Donnay Int'l, 2016 WL 9640001, at *5 (E.D.N.Y. Sept. 1, 2016); AGR Financial LLC v. Ready Staffing, Inc., 99 F.Supp.2d 399, 401-02 (S.D.N.Y 2000); Getty Props. Corp. v. Getty Petroleum Marketing, Inc., 106 A.D.3d 429, 430 (1st Dep't 2013); see also Primex Int'l Corp. v. Wal-Mart Stores, 89 N.Y.2d 594, 599 (1997); Taboola Inc. v. Ezoic, Inc., 2019 WL 465003, at *8 (S.D.N.Y. Feb. 6, 2019). The parties remain bound by the choice of forum or venue "where, as here, the plaintiff's

claims [in the present litigation] involve rights arising out of the contract and the entire business relationship between the parties stems from that contract." Weingrad v. Telepathy, Inc., 2005 WL 2990645, at *3 (S.D.N.Y. Nov. 7, 2005); see also AGR Financial LLC, 99 F.Supp.2d at 401-02.

In this case, Quebec seeks $93,826.17 in damages to recover amounts that it allegedly paid Northway in September 2018, pursuant to that very Hosting Services Agreement that it executed in September 2018 (the one that includes the venue selection clause). (Amended Complaint ¶¶39-41.) The pleading itself cites that "Hosting Services Agreement" putatively, as "Exhibit 1" (although it omits a copy). (Amended Complaint ¶39.) All of Quebec's claims are different labels for, ultimately, the same relief, which is the return of money that Quebec paid pursuant to that contract, for which Quebec claims it is entitled to a refund because Northway allegedly could not or would not perform. Therefore, the dispute is subject to the venue selection clause in the Hosting Services Agreement, even though Quebec terminated it. Weingrad, 2005 WL 2990645, at *3; AGR Financial LLC, 99 F.Supp.2d at 401-02; Getty Props., 106 A.D.3d 430.

We note that Quebec suggests that its *termination* of the Hosting Services Agreement in October 2018 gave rise to some new, ill-defined contract altogether. Specifically, plaintiffs' counsel writes that the venue selection clause is inapplicable because Quebec "expressly rescinded the Agreement, and, on October 18, 2018, entered into a subsequent agreement with Québec, after Québec picked up its bitcoin machines." (ECF Doc. #58 pg. 12.) Quebec fails to attach a copy of the October 18, 2018 "subsequent agreement" but purportedly quotes it as follows:

> Northway Mining, LLC hereby releases to 9384–2557 Quebec [sic] Inc. 22 pallets of Bitmain miners/power supply's which were previously removed from the racks/pulled out of service ***due to contract cancellation*** by authorized 9384–2557 Quecbec [sic] Inc. staff/contractors whom [sic] prepared the pallets for freight transport.

(*Id.* [emphasis in plaintiffs' original quotation].)

7

Whatever that unattached document allegedly is,[2] the one excerpt the plaintiffs have quoted is clearly insufficient to plead that Quebec and Northway "entered into a subsequent agreement" in October 2018.  The excerpt reads like more like a receipt, in which Quebec or Northway is trying to document the release of Quebec's machines.  The plaintiffs do not state any terms upon which the parties allegedly agreed in the "subsequent agreement," and they give the Court no reason to believe that they renegotiated, modified or novated the venue selection clause in the September Hosting Services Agreement.  The plaintiffs' demonstration is too vague and conclusory to overcome the presumption that the venue selection clause is enforceable.

### III.    THE "CIVIL CONSPIRACY" CLAIM (COUNT III) MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

"New York does not recognize an independent tort of conspiracy." Kirch v. Liberty Media, 449 F.3d 388, 401 (2d Cir. 2006); see also McCall v. Chesapeake Energy Corp., 509 Fed.Appx. 62, 65 (2d Cir. 2013); Corporate Trade, Inc. v. Golf Channel, 2013 WL 5375623, at *5 (S.D.N.Y., Sep. 24, 2013).  It is true that a person's conspiracy to commit some underlying tort may make him or her a tortfeasor, *liable for that other tort.* Payday Advance Plus, Inc. v. Findwhat.com, Inc., 478 F.Supp.2d 496, 506 (S.D.N.Y. 2007).  For example, if multiple people conspire and cooperate to commit a conversion, they might all be liable for conversion.  "Conspiracy" is more of an evidentiary path for demonstrating a particular defendant's culpable conduct, and not a discrete tort in itself.  As the court explained in Dechter v. Second Nature Therapeutic Program, 42 F.Supp.3d 450, 463-64 (E.D.N.Y. 2014):

---

[2]    The Moving Defendants do not dispute that Quebec purported to terminate the Hosting Services Agreement, by around the time Quebec recollected its miners on October 5, 2018 (*see* Amended Complaint ¶57). But the Moving Defendants do dispute that Northway (or any of the Moving Defendants) signed any new "agreement" with Quebec, and dispute that any of them signed any document bearing the language that the plaintiffs quote in their opposition papers.  We do not know what the plaintiffs' attorney is quoting.

> It is axiomatic that civil conspiracy cannot be alleged as a separate claim because New York law does not recognize civil conspiracy as an independent tort.  Therefore, ***to the extent that plaintiff alleges conspiracy as a separate cause of action, that separate claim must be dismissed***.  However, although it is not permitted as a separate cause of action, ***allegations of conspiracy*** may survive in a complaint under certain circumstances. … As explained in *Transit Mgmt.*, "[a]llegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort." 803 N.Y.S.2d at 863 (internal quotations and citation omitted). … Therefore, although ***the Court dismisses the conspiracy claim as a separate cause of action***, it will permit the conspiracy allegations to remain for the purposes described above.

(emphasis added.)  In the instant case, the Amended Complaint already pleads every other tort claim against "all defendants," and Count III's threadbare allegations (¶¶172-175) do not add any separate factual detail about conspiratorial acts.  Therefore, Count III for, "Civil Conspiracy" adds nothing other than putatively being a "separate claim," which it is not, and it should, therefore, be dismissed as "a separate cause of action."

**IV.     THE PLAINTIFFS HAVE NOT SHOWN GOOD CAUSE FOR DELAY OF SERVICE UNDER RULE 4(m).**

The Moving Defendants have raised the issue of untimely service because the plaintiffs have delayed in serving the Moving Defendants and the rest of the defendants for a remarkably long time—so much so that it has been unclear whether the plaintiffs are serious about achieving joinder of issue with all named parties and moving the case forward.  The plaintiffs commenced this action in April 2019, with service required within 90 days after that pursuant to Federal Rule 4(m).  Contrary to their arguments, the docket does not indicate that they took any action to serve the Summons and Complaint until March *2020* when they sent Rule 4(d) packages to the Moving Defendants, and even now the docket appears to be lacking affidavits of service for the rest of the

9

...

defendants, except for an affidavit of service that the plaintiffs filed on May, 22, 2020, purportedly regarding service on Michael Carter.[3]

The plaintiffs argue that on February 10, 2020, they "obtained additional time to effect service on Defendants." But the docket does not show that the plaintiffs made any application, or that the Court issued any order, extending the time for service. Under Rule 4(m), the plaintiff must show "good cause" for the delay, and that relief is granted by an order "that service be made within a specified time." Fed. R. Civ. P. 4(m). The docket only shows that on February 10, plaintiffs' counsel had a conference with the Magistrate Judge in which "plaintiff. Counsel advises the Court that service is being effectuated on Defendants and proof of service will be filed accordingly." There is no indication of a motion before the Magistrate Judge, or an order from him.

## CONCLUSION

For the foregoing reasons, the Moving Defendants' motion to dismiss should be granted.

Dated: Troy, New York
May 27, 2020

Respectfully submitted,

E. STEWART JONES HACKER MURPHY LLP

*/s/ John F. Harwick*
By:   John F. Harwick
      Benjamin F. Neidl
*Attorneys for Defendants Northway Mining LLC, Michael Maranda, Michael Maranda LLC and Hudson Data Center Inc.*
28 Second Street
Troy, N.Y. 12180
(518)274-5820

---

[3] The plaintiffs' opposition is also laden with unattributed, conclusory factual assertions, such as contentions that the defendants "scattered," went into hiding using "burner phones," and have acted on "tips" form attorneys and others in avoiding service. Plaintiffs' counsel attaches no proof of these assertions to his submission, and his bare statements as an attorney (without any explanation of a basis for personal knowledge) is purely non-evidentiary and inadmissible. Little v. City of New York, 487 F.Supp.2d 426, 432 n.2 (S.D.N.Y. 2007). If the plaintiffs were thwarted in service by such tactics, when did the plaintiffs try to serve the defendants, how and where? None of that is explained. If nothing else, every corporate defendant could have easily and promptly been served through the New York State Department of State.