UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――― X

9384-2557 Québec Inc., a Canadian corporation; MINEDMAP, INC., a Nevada corporation; and SERENITY ALPHA, LLC, a Nevada limited liability, and other similarly situated individuals

                     Plaintiff,

                     against

NORTHWAY MINING, LLC, a New York limited liability company; MICHAEL MARANDA, an individual; MICHAEL CARTER, an individual; CSX4236 MOTORCYCLE SALVAGE, LLC, a New York limited liability company; DROR SVORAI, an individual; MINING POWER GROUP, INC., a Florida corporation; HUDSON DATA CENTER, INC, a New York Corporation, MICHAEL MARANDA, LLC, a New York Limited liability company; PORTER KING HILL CONTRACTING, LLC, a New York limited liability company; COINMINT, LLC, a Delaware limited liability company; OSWEGO DATA LLC, a New York Limited Liability Company; LORI S. THOMPSON, LCSW, PLLC, a professional limited liability corporation; LORI S. THOMPSON, an individual, ANTHONY PORTER, an individual; and DONALD D'AVANZO, an individual

                     Defendants.

―――――――――――――――――――――――― X

1:19-CV-00501-TJM-CFH

NOTICE OF MOTION TO SHOW CAUSE FOR ISSUANCE OF CRIMINAL AND CIVIL CONTEMPT CITATION

(ECF Case)

Plaintiffs, MinedMap et. al., through counsel, WILLIAMS LLP, and under Fed. R. Civ. P. 70(e) and cases construing Rule 70(e) under Local Rule 83.5(a)–(c), file this Notice of Motion for Show Cause Order for Issuance of Criminal and Civil Contempt Citations against Defendants, Michael Carter and Michael Maranda; and against nonparty, Melissa Welsh. Defendants Carter and Maranda are guilty and liable because they willfully failed to comply with a clear order issued by this Court Nonparty, Welsh, is guilty and liable as an employee of Carter and Maranda and as a participant in a fraudulent scheme.

Plaintiffs seek the return of their bitcoin miners and the damages caused by Defendants and nonparty Welsh's contumacious behavior. In addition, Plaintiffs requests that this Court place Carter, Maranda, and Welsh into custody until such time as they return Plaintiffs' miners and pay Plaintiffs the equivalent value of their miners, along with the compensatory damages Plaintiffs seek.

BACKGROUND

On October 8, 2018, Plaintiffs delivered 2,380 s9j 14.5 tera hash bitcoin miners to Defendants. Donald D'Avanzo, then the Chief Operation Officer of Northway Mining, LLC ("Northway"), received and signed for the miners. Later, on January 15, 2019, Plaintiffs delivered 409 sj 13.5 tera hash bitcoin miners to Defendants. Defendant,

Maranda's brother-in-law, Angelo Pope signed for these miners. Plaintiffs' Miners were shipped to 2 Flint Mine Road Coxsackie, New York.

Maranda and Carter represented that the first set of miners Plaintiffs sent—the 2,380 sj9 14.5 tera hash miners—were already plugged in and hashing (or producing) bitcoins. As to the 409 s9 13.5 tera hash miners, Maranda told Plaintiffs they would be plugged in on February 15, 2020 or sooner. However, like the other representations Maranda and Carter made, these representations were false.

In February and again in March and April 2019, Plaintiffs demanded the return of their miners but Maranda and Carter did not return Plaintiffs' miners. Plaintiffs then filed this suit and on May 9, 2020, this Court issued a Writ of Replevin (the "First Writ of Replevin"). See ECF Doc. No. 20. Plaintiffs and the United States Marshal Service appeared at 2 Flint Mine Road, where Plaintiffs miners were supposed to be, but Plaintiffs miners were not there.

On June 17, 2020, after a hearing and a ruling on Plaintiffs' Motion for Expedited Discovery, this Court required Defendants to: (i) disclose the location of Plaintiffs' miners; and (ii) keep Plaintiffs' miners in the disclosed location unless Plaintiff agreed that their miners could be moved or the Court authorized Defendants to move Plaintiffs' miners:

> As was directed during the 6/19/2020 conference and placed on the record, by 6/20/2020, Defendants are hereby directed to provide to plaintiffs, in a letter: 1.) The address where the machines are physically located and the Court further directs that there be no movement of the machines without prior notice to plaintiff and the Court; 2.) Defendants are directed to address the issue or providing NiceHash IP information to plaintiffs; and 3.)Defendants are directed to address the issue of the Funds, as discussed on the conference call. So Ordered. Authorized by Magistrate Judge Christian F. Hummel on 6/19/2020.

ECF Doc. No. 76 (entered on June 19, 2020).

In response to this Order, John Harwick, Esq. ("Harwick") and Benjamin Niedl, Esq. ("Niedl"), counsels for Defendants, sent Plaintiffs a letter on June 19, 2020, representing that all 2,789 of Plaintiffs' miners were at 193 Seneca Street Oswego, New York and at 2140 County Route 1 Oswego, New York. The letter from Harwick and Niedl was a pretextual, a mere attempt to hold off Plaintiffs while Defendants destroyed, transported, and made fraudulent insurance claims on Plaintiffs' miners. Specifically, on or before July 12, 2020, Ms. Welsh told Charles Fink, an individual who recently became associated with Northway, that she and Mr. Fink needed to scrape and saw off serial numbers from Plaintiffs' miners. Ms. Welsh also showed Mr. Finch this Courts' June 17, 2020 Order and other documents in this case and stated that she and Mr. Fink had to act quickly to move the miners. In addition, Ms. Welsh drove a number of Plaintiffs' miners to an apartment she shares with Michael Carter at 16 Porter Street, Oswego, New York.[1] Ms. Fink disassociated from Defendants once he understood the nature and scope of the activities in which Defendants were engaging.

---

[1] Ms. Welsh drove Plaintiffs' miners in her vehicle with a license plate number plate number JCP1666.

Plaintiffs learned of the foreging activities on July 14, 2020. On that same day, Plaintiffs filed an emergency motion to have the Court reissue the First Writ of Replevin. On July 16, 2020, the Court reissued the Writ of Replevin. When it reissued the Writ of Replevin, this Court warned Defendants that it would hold Defendants in contempt of Court if Defendants misrepresented where they kept Plaintiffs' miners:

> DECISION & ORDER: that the Court will Grant the instant motion for an emergency writ of replevin, dkt. # 86 . Defendants are still engaging in the same types of conduct that caused the Court to issue the original writ; that the Clerk of this Court shall issued a writ of possession as provided in New York CPLR 7102, pursuant to Federal Rule of Civil Procedure 64, directing the Marshal to seize the property described in the spreadsheet attached as Exhibit B to the Plaintiffs' emergency motion for a writ of replevin, dkt. # [86-2] (the "Property"), and retain custody of it as provided by CPLR 7102; that the writ shall issue immediately. The written undertaking filed as required by NY CPLR 7102(e) of $1,800,000.00 in conjunction with the Court's previous writ dkt. # 20 , shall apply to this writ as well; that the Clerk of the Court shall attach a copy of this order to the writ; that the Marshal may enter the following private places to take possession of the Property or some part thereof located at: 2140 County Route 1, Oswego, New York; and 193 East Seneca Street, Oswego, New York; that the Defendants shall transfer possession of the Property described herein to the Plaintiffs; that Plaintiffs shall move of an order confirming the order of seizure on notice to Defendants and the Marshal within five days of the seizure of the Property under this order. If Plaintiffs fail to move for such an order within five days of the seizure of the Property, then this order shall have no further effect and may be vacated upon the motion of Defendants; that Plaintiffs shall pay to the United States Marshals Service all fees and expenses required under 28 U.S.C. 1921 in connection with this order. Notice to Defendants: Failure to comply with any order of the Court to turn possession of such Property to Plaintiffs may subject you to being held in contempt of court. Signed by Senior Judge Thomas J. McAvoy on 07/15/2020.

ECF Doc. No. 88 (emphasis added).

On July 22, 2020, Plaintiffs accompanied four United States Marshals to the addresses that Harwick and Niedl certified that Defendants kept Plaintiffs miners, but Plaintiffs' miners

were not at these addresses. See ECF Nos. 104–108. Indeed, Plaintiffs spent hours looking at all the available miners and could not find a single one of their miners. See Affidavit of Daniel Kim, at ¶¶ 14–18.

## LEGAL STANDARD

Contempt may be civil or criminal. United States v. IBM Corp., 60 F.R.D. 658, 655–666 (S.D.N.Y. 1973) (holding IBM Corp. in contempt for violating a pretrial order). Citing Gompers v. Bucks Stove & Range Co., 31 S. Ct. 492 (1911), the leading case on contempt citations, the Southern District explained the difference between criminal and civil contempt as follows:

> It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases [civil and criminal contempt]. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. . . . . But imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order.

IBM Corp., 60 F.R.D. at 665; Gompers, 31 S. Ct. at 498–499.

To hold a litigant in civil contempt of court, the court must determine whether: (i) the order violated is clear and umbiguous; (ii) the proof of noncompliance is clear and convincing; and (iii) the contemnor was not reasonably diligent in attempting to comply. Fox Indus. v. Gurovich, 2004 U.S. Dist. Lexis 16797, *8–10 (E.D.N.Y. 2004) (internal quotation marks omitted). Similarly, to hold a litigant in criminal contempt of Court, the movant must prove

beyond a reasonable doubt that: (i) the court entered a reasonable specific order; (ii) the defendant knew of the order; and (iii) the defendant violated the order; and (iv) the violation was wilful.  Id.; see United States v. Lynch, 162 F.3d 732, 734 (2d Cir. 1998).

A nonparty may be guilty of civil and criminal contempt.  Gucci Am. Inc. v. Weixing Li, 2015 U.S. Dist. Lexis 160842, *3–4 (S.D.N.Y. Nov. 30, 2015) ("Thus, a court may hold a party or a non-party in civil contempt for failing to comply with a court order. . . ."); Chevron Corp. v. Donziger, 2020 U.S. Dist. Lexis 14077, *21–22 (S.D.N.Y. Jan. 27, 2020) ("When such a nonparty 'knowingly assists a defendant in violating an injunction,' the nonparty 'subjects himself to civil as well as criminal proceedings for contempt.'") (citing United States v. Paccione, 964 F.2d 1269, 1274 (2d Cir. 1992)).  To establish a nonparty's liability for contempt, the movant must demonstrate that: (i) the nonparty had actual notice of the injunction; and (ii) the nonparty either violated the injunction while acting as the enjoined party's employee or actively participated with the enjoined party or the enjoined party's officers, agents, or employees.  Chevron Corp., 2020 U.S. Dist. Lexis at *22.

After a party prevails on a contempt citation, courts impose compensatory fine.  Vuitton et Fils S.A. v. Carousel handbags, 592 F.2d 126, 130 (2d Cir. 1979). Compensatory damages is the same as a judgment for damages caused by the contemnor's wrongful conduct.  Id. (citing Parker v. United States, 153 F.2d 66, 70 (1st Cir. 1946).  Once the movant has demonstrated his damages, the "district court is not free to exercise its discretion and withhold an order in civil contempt awarding damages. . . ."  Id. (citing Yanish v. Barber, 232 F.2d 939, 947 (9th Cir.

7

1956). Courts also award the movant their reasonable attorney's fees and costs for prosecuting the contempt. Id.

## ARGUMENT

I. DEFENDANTS, MICHAEL CARTER AND MICHAEL MARANDA, ARE GUILTY OF AND LIABLE FOR CRIMINAL AND CIVIL CONTEMPT.

The Order issued by this Court on June 19, 2020 is clear and unambiguous. That Order provides that:

> As was directed during the 6/19/2020 conference and placed on the record, by 6/20/2020, Defendants are hereby directed to provide to plaintiffs, in a letter: 1.) The address where the machines are physically located and the Court further directs that there be no movement of the machines without prior notice to plaintiff and the Court; 2.) Defendants are directed to address the issue or providing NiceHash IP information to plaintiffs; and 3.)Defendants are directed to address the issue of the Funds, as discussed on the conference call. So Ordered. Authorized by Magistrate Judge Christian F. Hummel on 6/19/2020.

See ECF No. 76 (emphasis added); see, also, Chevron Corp., 2020 U.S. Dist. Lexis at *19–20 (in assessing whether the order that form the basis of the contempt is clear and unambiguous, the "proper analysis focuses on 'whether [the order] unambiguously proscribes the challenged conduct, not whehter it is 'clear in some general sense.'") (citing Medina v. Butler, No. 15 CV Civ. 1955, 2019 U.S. Lexis 23529, *25 (S.D.N.Y. 2019).

There l little dispute that the June 19, 2020 Order is clear. Indeed, Harwick and Niedl did not seek clarification of that order and submitted a letter identifying the location of Plaintiffs' miners.

8

In addition, proof of Maranda and Carter noncompliance with this Court is clear because Plaintiffs appeared at the property Harwick and Niedl identified as housing Plaintiffs miners, but Plaintiffs miners were not at that location. In fact, Plaintiffs conducted a thorough search of the premises Harwick and Niedl identified as housing Plaintiffs miners and could not find their miners. The United states Marshals who accompanied Plaintiffs can also corroborate the foregoing.

Maranda and Carter did not make any efforts to comply with the June 19, 2020 Order. In fact, the opposite is true: Maranda and Carter did everything in their power to transfer Plaintiffs' miners to Illinois, out of Plaintiffs reach. The reminder of Plaintiffs' miners that Maranda and Carter deemed to be in poor condition, they destroyed and then fraudulently claimed insurance proceeds on the miners they destroyed. See, e.g., Powell v. Ward, 487 F. Supp. 917, 933 (S.D.N.Y. 1980) ("It is more troubling when a Defendant takes actions 'that contravene the provisions of the order.'").

The June 19, 2020 was clear: (i) defendants were to identify where they kept Plaintiffs' miners and (ii) keep Plaintiffs' miners in that location unless Plaintiffs or Defendants approve the transfer of their miners to a different location. Defendants' counsels represented that Plaintiffs miners were at two locations in Oswego, New York. However, when Plaintiffs showed up, their miners were gone. Defendants had asked Mr. Fink to scrape the serial numbers from Plaintiffs' miners and had asked him to drive Plaintiffs miners to Illinois. Mr. Fink declined, but Defendants hired others to perform the foregoing tasks.

Defendants are criminally liable to Plaintiffs because Defendants performed the foregoing acts willfully.

II. NONPARTY, MELISSA WELSH, KNEW OF THE JUNE 19, 2020 ORDER AND VIOLATED THAT ORDER AS CARTER AND MARANDA'S EMPLOYEE AND AS AN ACTIVE PARTICIPANT IN CARTER AND MARANDA'S FRAUDULENT SCHEME.

As stated above, a nonparty expose himself to civil and criminally liability where the nonparty violated the court order as an employee or while acting in concert with the individuals to whom the court order was directed. Chevron Corp., 2020 U.S. Dist. Lexis at *22.

Harwick and Niedl argued on Monday, July 27, 2020, that Ms. Welsh is employed by Carter and Maranda. Consequently, there is no dispute that Ms. Welsh is employed by Carter and Maranda. In addition, Ms. Welsh knew of this Court's Order, and in fact, cited the Order to Mr. Fink as reason why she and Mr. Fink had to move quickly to scrape off the serial numbers from Plaintiffs miners. Ms. Welsh moved quickly indeed to ship Plaintiffs' miners to Illinois and to scrape the serial numbers from Plaintiffs miners. In fact, on July 12, 2020, Ms. Welsh was seen packing and preparing for shipment, Plaintiffs' miners. Indeed, the pictures below, show Ms. Welsh boxing Plaintiffs to have them transferred to Illinois:



In addition to acting as an employee of Carter and Maranda, Ms. Welsh is also an active participant in Carter and Maranda's scheme to defraud Plaintiff. For example, Ms. Welsh maintains an apartment with Mr. Carter at 16 Porter Street in Oswego, New York. Ms. Welsh drove some of Plaintiffs' miners and store them at this apartment for her own use and profit. When Ms. Welsh's car was full and could not take anymore miners, she used a minivan with a license plate number HWZ3345 to transport Plaintiffs' bitcoin miners in violation of this Court's June 19, 2020 Order.  As Plaintiffs will further demonstrate, Ms. Welsh undertook the foregoing acts willfully, after she became fully aware of the Court's Order.  See, e.g., Bear U.S.A., Inc. v. Kim, 71 F. Supp. 2d 237, 256 (S.D.N.Y. 1999).

III. PLAINTIFFS ARE ENTITLED TO DAMAGES AGAINST MICHAEL CARTER, MICHAEL MARANDA, AND MELISSA WELSH[2].

As stated in Daniel Kim's affidavit, Plaintiffs purchased 2,380 s9j 14.5 tera hash bitcoin miners for $361.00 each. In total, Plaintiffs paid $859,180.00 for 2,380 s9j 14.5 tera hash bitcoin miners. Plaintiffs also purchased an additional 409 s9 13.5 tera hash miners for $260.00 each. In total, Plaintiffs paid $106,340.00 for 409 s9 13.5 tera hash miners.  For the total of 2789 miners, Plaintiffs paid $965,520.  Affadavit of Daniel Kim  ("Kim Aff."), at ¶¶ 7–8.

---

[2] Plaintiffs are also entitled to damages against Defendants' counsels, Harwick and Niedl, and against their law firm.  The briefing on that issue is set forth in Plaintiffs Motion for Sanctions and for Attorney Fees and Costs, which will be filed consistent with this Court's July 27, 2020 Order.

Plaintiffs also purchased Power Supply Units ("PSUs") and paid $85.00 for each of the 409 s9 13.5 tera hash; and $90.00 for each of the 2380 s9j 14.5 tera hash miners. In total, Plaintiffs paid $248,965.00 for the Power Supply Units suited to the miners Plaintiffs sent to Defendants. Kim Aff. at ¶ 11.

As for shipping, Plaintiffs paid $120,000.00 to ship the 2,380 miners and an additional $5,000 to ship the 409 miners to Defendants, for a total shipment cost of $125,000.00.

Plaintiffs also paid Defendants $432,000.00 in deposit to be applied against the electrical costs Defendants would incur if Defendants had plugged in Plaintiffs' miners.

All told, including the value of the bitcoins that would have been mined from Plaintiffs' miners had they been plugged in, Defendants owe Plaintiffs $8,646,734.19 and Plaintiffs seek this amount against Defendants. As to Ms. Welsh, and by operation of Gucci Am. v. Weixing Li, 2015 U.S. Dist. Lexis 160842, *6–18 (S.D.N.Y. Nov. 30, 2015), Plaintiffs do not yet seek the full compensatory damages against her, but seek their reasonable attorneys fees, damages Plaintiffs incurred because of Ms. Welsh actions, and other damages Plaintiffs will establish at he evidentiary hearing. See Weixing Lii, at *6.

Plaintiffs' damages are thoroughly calculated and set forth in the the spreadsheet annexed hereto as Exhibit A.

## DIRECTION TO THE COURT

Pursuant to Local Rule 83.5 (c)(5), Plaintiffs direct this Court, in its discretion, to Order the United States Marshal Service to confine Defendants, Carter and Maranda; and nonparty Welsh, until they have returned Plaintiffs' miners and paid the damages above. However, as stated above, this Court has no discretion to limit Plaintiffs' damages once Plaintiffs have proven their damages.

Dated this 31st day of July 2020.
New York, New York

                                          RESPECTFULLY SUBMITTED,

                                          WILLIAMS LLP

                                          /s/ T. Edward Williams, Esq.
                                          T. Edward Williams, Esq. Bar No. 5634738
                                          WILLIAMS LLP
                                          7 World Trade Center
                                          250 Greenwich 46th FL.
                                          New York, New York 10007
                                          Tel: 212.634.9106
                                          Fax: 212.202.6228
                                          Edward.williams@wmsintl.com

CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of July 2020, this NOTICE OF MOTION TO SHOW CASE FOR ISSUANCE OF CRIMINAL AND CIVIL CONTEMPT CITATION was served on the following individuals:

John Harwick, Esq. via ECF
Counsel for Maranda Defendants