UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

9384-2557 QUÉBEC INC., a Canadian corporation; MINEDMAP, INC., a Nevada corporation; and SERENITY ALPHA, LLC, a Nevada limited liability, and other similarly situated individuals,

                      Plaintiffs,

-against-

NORTHWAY MINING, LLC, a New York limited liability company; MICHAEL MARANDA, an individual; MICHAEL CARTER, an individual; CSX4236 MOTORCYCLE SALVAGE, LLC, a New York limited liability company; DROR SVORAI, an individual; MINING POWER GROUP, INC., a Florida corporation; HUDSON DATA CENTER, INC, a New York Corporation, MICHAEL MARANDA, LLC, a New York Limited liability company; PORTER KING HILL CONTRACTING, LLC, COINMINT, LLC, a Delaware limited liability company,

                      Defendants.

Civ. Action No.: 1:19-CV-00501-TJM-CFH

**JURY TRIAL DEMANDED**

# MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR ISSUANCE OF CRIMINAL AND CIVIL CONTEMPT CITATIONS

## FOR DEFENDANTS MICHAEL MARANDA AND MICHAEL CARTER

John F. Harwick, Esq.
Benjamin F. Neidl, Esq.
E. STEWART JONES HACKER MURPHY LLP
*Attorneys for Defendants Northway Mining LLC, Michael Maranda, Michael Maranda LLC, Hudson Data Center Inc. and Michael Carter*
28 Second Street
Troy, N.Y.  12180
(518)274-5820

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ............................................................................................................................ 1

    I.      The Legal Standard; Burden of Proof ................................................................... 1

    II.     The Plaintiffs' Motion Should be Deemed One for Civil
           Contempt, Not Criminal Contempt ....................................................................... 2

    III.    The Motion Respondents Did Not Disobey the Court's Order
           and, Therefore, Are Not Guilty of Civil or Criminal Contempt ............................ 2

    IV.    The Plaintiffs' Alleged Contempt Damages Are Largely Improper ..................... 6

    V.     The Defendants Are Entitled to a Jury Trial or, at the Very Least,
           an Evidentiary Hearing .......................................................................................... 8

CONCLUSION ......................................................................................................................... 8

# **TABLE OF AUTHORITIES**

**Cases**

Levin v.Tiber Holding Corp., 277 F.3d 243, 250 (2d Cir. 2002) ............................................... 1, 2

Babee-Tenda Corp. v. Scharco Manuf., 156 F.Supp. 582, 587 (S.D.N.Y. 1957) ........................... 6

Bloom v. State of Illinois, 391 U.S. 194, 201-05 (1968) ............................................................ 2, 8

Ciaprazi v. Goord, 2005 WL 3531464, at *7, n.8 (N.D.N.Y. Dec. 22, 2005) ................................ 6

Harris v. United States, 382 U.S. 162, 164 (1965) ......................................................................... 8

Int'l Union v. Bagwell, 512 U.S. 821, 826-27 (1994) ................................................................ 2, 8

Lewis v. United Mine Workers of Amer., 330 U.S. 258 (1947) ..................................................... 6

NYS Nat'l Organization for Women v. Terry, 886 F.2d 1339, 1350-51 (2d Cir. 1989) ............ 1, 2

Rand v. Birbbrower Montalbano, Condon & Frank, 149 F.Supp.2d 96, 98 (S.D.N.Y. 2001) ....... 6

U2 Home Enter. v. Wei Ping Yuan, 245 Fed. Appx. 28 (2d Cir. 2007) .......................................... 6

United States v. Lynch, 162 F.3d 732. 734 n.2 (2d Cir. 1998) ........................................................ 2

**Rules**

Local Rule 83.5 ............................................................................................................................ 2, 8

**PRELIMINARY STATEMENT**

Defendants Michael Maranda and Michael Carter, by and through their undersigned attorneys, respectfully submit this Memorandum of Law in opposition to the plaintiffs' motion for issuance of criminal and civil contempt sanctions.[1]

**ARGUMENT**

**I      THE LEGAL STANDARD; BURDEN OF PROOF.**

"The demarcation between civil and criminal contempt is well-established." NYS Nat'l Organization for Women v. Terry, 886 F.2d 1339, 1350-51 (2d Cir. 1989). "The two species of contempt are distinguished by determining the purpose for which a sanction was imposed." Id. "A sanction imposed to compel obedience to a lawful court order or to provide compensation to a complaining party is civil." Id. "A sanction imposed to punish for an offense against the public and to vindicate the authority of the court, that is, not to provide private benefits or relief, is criminal in nature." Id.

"[T]he party seeking to hold another in civil contempt bears the burden of proof to establish the offense by clear and convincing evidence." Levin v.Tiber Holding Corp., 277 F.3d 243, 250 (2d Cir. 2002). That is, a movant for civil contempt sanctions bears the burden of proving "(1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." Terry, 886 F.2d at 1351.  A non-party may only be found liable for aiding and abetting civil contempt if the movant proves: (1) that the defendant in fact committed

---

[1]     The plaintiffs' motion also seeks contempt sanctions against non-party Melissa Welsch. The Court's text order provides that Ms. Welsch's will be required to oppose the motion within 14 days after the plaintiffs obtain personal jurisdiction over her by effectuating personal service. As of this writing, the plaintiffs have apparently not effectuated personal service or acquired jurisdiction.  Therefore, these response papers address Mr. Maranda and Mr. Carter only.  If and when the plaintiffs serve Ms. Welsch, we understand she will oppose the motion in a timely manner.

1

contempt; and (2) the non-party assisted the defendant. Levin, 277 F.3d at 250. The party accused of committing civil contempt is entitled to an evidentiary hearing. See Local Rule 83.5(b).

On the other hand, for criminal contempt it must be "prove[n] beyond a reasonable doubt that: (1) the court entered a reasonably specific order; (2) [the defendants] knew of that order; (3) [the defendants] violated that order; and (4) [their] violation was willful." United States v. Lynch, 162 F.3d 732. 734 n.2 (2d Cir. 1998). The party accused of a "serious criminal contempt," which entails a penalty of 6 months or more of incarceration, is entitled to a jury trial. Int'l Union v. Bagwell, 512 U.S. 821, 826-27 (1994); Bloom v. State of Illinois, 391 U.S. 194, 201-05 (1968).

**II.    THE PLAINTIFFS' MOTION SHOULD BE DEEMED ONE FOR CIVIL CONTEMPT, NOT CRIMINAL CONTEMPT.**

As noted, "[a] sanction imposed to compel obedience to a lawful court order or to provide compensation to a complaining party" is civil contempt, whereas "a sanction imposed to punish for an offense against the public and to vindicate the authority of the court and … *not to provide private benefits or relief*" is criminal contempt. Terry, 886 F.2d at 1350-51 (emphasis added).

In this case, the plaintiffs' motion is clearly directed at securing compensation for themselves. Their supporting affidavit by Daniel Kim avers several categories of alleged financial losses (ECF Doc. #110-2 ¶¶8-13), and their "Notice of Motion" explicitly demands $8,646,734.19 in contempt "damages" (ECF Doc. #110). Overwhelmingly, the purpose of their motion is to "provide compensation" to the plaintiffs and, therefore, the true nature of the application is one for civil contempt. For that reason alone, the plaintiffs' prayer for "criminal" contempt sanctions should be denied.

**III.   THE MOTION RESPONDENTS DID NOT DISOBEY THE COURT'S ORDER AND, THEREFORE, ARE NOT GUILTY OF CIVIL OR CRIMINAL CONTEMPT.**

On the current record, the plaintiffs clearly have not proven civil contempt by "clear and convincing evidence," nor have they proven criminal contempt beyond a reasonable doubt.

Although we do not dispute that Magistrate Judge Hummel's June 19, 2020 text order clearly directed that "there be no movement of the machines without prior notice to plaintiff and the Court" (ECF # 76), the defendants adamantly deny that they moved the machines, and the plaintiffs have not proven otherwise.

Defendant Maranda attests in his affidavit that all of the Minedmap/Serenity machines that he (and any of defendants) have, have been located at the two locations in Oswego (193 East Seneca Street and 2140 County Route 1) since January 2020, and have not been moved anywhere since that time. (Maranda Aff. ¶¶1-4.) Therefore, none of the defendants (or anybody else) has removed any of the machines since Magistrate Judge Hummel's June 19, 2020 text order. (Id. ¶5.) Defendant Carter also attests that he has not moved any of the machines either.

As Mr. Maranda explains, there are 2,051 of the Minedman/Serenity machines in total, and they are all stored in the two Oswego locations. (Id. ¶2, 43.) By far most of the machines are model S9J miners, and a small set are model S9s. (Id. ¶2.) The defendants were ready, willing and able to turn over all of the machines to the U.S. Marshalls when they arrived on July 24, 2020. In fact, in anticipation of the Marshalls' arrival, Maranda had his staff organize the machines on pallets in a dedicated area of the space, to facilitate their removal by the Marshalls. (Id. ¶6.) Photographs of the machines packaged and ready to go are annexed to his affidavit as exhibits. (Id.)

The plaintiffs contend that they inspected the machines when they accompanied the Marshalls to the Oswego sites on July 24, and that they have determined that none of the machines are theirs. Daniel Kim attests to that in his affidavit. Kim claims that he and his colleague Allen Song "each spent more than two hours apiece looking at each location … but we did not find our

3

miners." (Kim Aff. ¶15.) He also states that "both Allen Song and I know what our bitcoin miners physically look like and we did not find any of our miners." (Id. ¶17.)

It is inconceivable that Mr. Kim and Mr. Song could have inspected and ruled out 2,051 miners in just a few hours. As Mr. Maranda attests, every single one of the machines in Oswego had unique serial and chip number stickers on the machines' hashboards (on the sides of the machines), and unique MAC numbers on the machines' drives. (Maranda Aff. ¶¶27-32.) Kim and Song evidently made no attempt identify the machines using those numbers (they do not mention any attempt to do so in their papers). Identifying all of the machines by the numbers undoubtedly takes time (certainly more than a few hours), but the plaintiffs could have taken the machines into the Marshalls' custody and made a more complete inspection over time.

We respectfully submit that it is also not plausible that Mr. Kim and Mr. Song could have excluded the miners based on visual inspection because they "know what [their] bitcoin miners physically look like." As Mr. Maranda attests, S9J miners are uniform in appearance and S9 miners are uniform in appearance. (Maranda Aff. ¶37.) There are 2,051 machines at the two Oswego sites. They cannot have reasonably looked at stacks of over 2,000 machines that all virtually look the same, and determined that these are not their machines. Mr. Kim's affidavit is not clear and convincing evidence of any breach of the Court's order, much less evidence beyond a reasonable doubt.

There are other issues that call into question the plaintiffs' putative identification of their own machines. For one thing, Mr. Kim asserts in his affidavit that Serenity/Minedmap delivered 2,789 miners to the defendants, which they seek to recover. (Kim Aff. ¶8.) But the First Amended Complaint alleges that they only delivered 2,689 miners (EFC Doc. #29, ¶90), and Exhibit B to their motion for writ of replevin only listed 2,432 serial numbers (ECF Doc. #86-2; see also

4

Maranda Aff. ¶15). Furthermore, that document—the plaintiffs' Exhibit B, listing the 2,432 serial numbers—largely does not agree the defendants' partial, contemporaneous inventory list made in 2018. Specifically, as Maranda attests, for a time in 2018 when NWM received machines from Serenity/Minedmap, NWM digitally scanned serial numbers upon receipt—NWM did that for the first 1,131 machines they received. (Maranda Aff. ¶17.) NWM's contemporaneous scanning record includes 800 serial numbers that are *not* on the plaintiffs' list, but should be. That implies that there are at least 800 serial numbers on their list that should *not* be.

Even if the plaintiffs demonstrate that the 2,051 machines in Oswego are not theirs (which they have not) they still have not demonstrated a *contempt* of Magistrate Judge Hummel's order. Judge Hummel issued his text order on June 19, 2020, directing that the machines not be moved. *Contempt of that order* requires the plaintiffs to prove that the defendants moved or alienated their machines *on or after* June 19. The plaintiffs have presented no competent evidence that this happened. If a jury eventually finds that the machines in Oswego are not the plaintiffs,' and the plaintiffs' machines are lost, the plaintiffs will win a conversion verdict. But to win *contempt sanctions* requires the plaintiffs to show actual disobedience of the order at issue, which means proof that the defendants moved the machines after Judge Hummel ordered them not to. That burden is unmet, and as Michael Maranda observes in his affidavit, the plaintiffs' theory is not rational: why would he move the plaintiffs' S9J and S9 machines out of Oswego after being ordered not to, and then try to give the plaintiffs 2,051 *other* S9J and S9 machines that are not theirs? (Maranda Aff. ¶ 41.) The plaintiffs do not allege that there was anything special or different about their machines that would explain why a defendant under order would move their machines only to tender them 2,051 specimens of the same thing.

Finally, we note that there are unexplained, non-evidentiary assertions in the plaintiffs' "Notice of Motion," signed only by their attorney, Mr. Williams (ECF Doc. #110). It is well-settled that an attorney's factual assertions in a paper or pleading are not evidence, and are entitled to no weight except in those rare circumstances when the attorney himself was an eyewitness to the matters he describes. Ciaprazi v. Goord, 2005 WL 3531464, at *7, n.8 (N.D.N.Y. Dec. 22, 2005); Rand v. Birbbrower Montalbano, Condon & Frank, 149 F.Supp.2d 96, 98 (S.D.N.Y. 2001). As he is prone to do, Mr. Williams makes several bald claims as to which he claims to have no personal knowledge, and offers no supporting affidavit from any person with knowledge (such as his claim that Melissa Welsch drove miners to "an apartment she shares with Michael Carter,"[2] and his claim that defense counsel disclosed the two Oswego addresses where the machines are located as a "pretext" to "hold off Plaintiffs while the defendants alienated the machines[3]). These are weightless, non-evidentiary assertions which the defendants deny in their affidavits

**IV.    THE PLAINTIFFS' ALLEGED CONTEMPT DAMAGES ARE LARGELY IMPROPER**

The measure "for damages in civil contempt [is] the amount of injury proven and no more." Lewis v. United Mine Workers of Amer., 330 U.S. 258 (1947). Compensatory damages for civil contempt must be proximately caused by the defendant's disobedience of the Court's order. U2 Home Enter. v. Wei Ping Yuan, 245 Fed. Appx. 28 (2d Cir. 2007); Babee-Tenda Corp. v. Scharco Manuf., 156 F.Supp. 582, 587 (S.D.N.Y. 1957)("In a civil contempt proceeding such as this penalties are confined to the actual damages suffered by the opposing parties from failure to comply with the injunction…").

---

[2]   How could they possibly store over 2,000 machines in an apartment?

[3]   Defense counsel wrote Mr. Williams on June 19, 2020 to provide him with the two Oswego addresses (which we obtained from Mr. Maranda) because the Court directed us to do that in the very same text order that they cite as the basis of their contempt motion. It is unclear how that letter purportedly "held the defendants off" from doing anything.

6

The plaintiffs' "Notice of Motion" (ECF Doc. #110) demands a number of categories of damages that facially bear no relationship with the alleged contempt. (Id. pg. 11-12.) Here again, the contempt alleged is disobedience of Magistrate Judge Hummel's June 19, 2020 text order directing that the defendants not move the machines. Among other things, the plaintiffs seek:

- *$432,000 in damages for the contract deposit that they paid to NWM in 2018*. That deposit (and much of the defendants' own money) was spent in 2018 and 2019 on buildout costs (Maranda Aff. ¶13) and is not proximately related to Magistrate Judge Hummel's June 19, 2020 order direct the defendants not to move the *machines*.

- *$125,000 in shipping costs from 2018, allegedly incurred in delivering the machines to NWM in Coxsackie.* These shipping costs were not caused by anything that happened on or after the day Magistrate Judge Hummel issued his June 19, 2020 order. The plaintiffs might possibly pursue these alleged costs as damages for their underlying tort and fraud claims, but this would not be compensation for the *alleged contempt*.

- *The purchase price for the miners and equipment itself.* The plaintiffs also seek recovery of the full purchase prices they paid to acquire the machines in 2018. If the plaintiffs prevail on the merits in their conversation claim, they would be entitled to some damages for the value of the machines, but they did not incur their 2018 purchase expense from any violation of the Court's order in 2020.

Accordingly, the defendants dispute the plaintiffs' purported measure of contempt damages.

## V. THE DEFENDANTS ARE ENTITLED TO A JURY TRIAL OR, AT THE VERY LEAST, AN EVIDENTIARY HEARING.

As noted, when the "serious criminal contempt" sanction is invoked, the defendant is entitled to a jury trial. Int'l Union v. Bagwell, 512 U.S. 821, 826-27 (1994); Bloom v. State of Illinois, 391 U.S. 194, 201-05 (1968); Harris v. United States, 382 U.S. 162, 164 (1965). Therefore, if and to the extent the Court does not dismiss the criminal contempt prong of the motion as set forth above, the defendants demand a jury trial.

In all other contempt cases, the defendant is entitled to an evidentiary hearing. See Local Rule 83.5. If and to the extent the Court does not dismiss the civil contempt prong of the motion for the reasons set forth above, the defendants demand an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, the plaintiffs' motion should be denied in its entirety or, failing that, defendants are entitled to a jury trial on the motion for serious criminal contempt sanctions, and an evidentiary hearing as to all other relief.

Dated: Troy, New York　　　　　　　　　Respectfully submitted,
　　　　August 12, 2020

　　　　　　　　　　　　　　　　　　　E. STEWART JONES HACKER MURPHY LLP

　　　　　　　　　　　　　　　　　　　　　*/s/ Benjamin F. Neidl*
　　　　　　　　　　　　　　　　　　　By:　Benjamin F. Neidl
　　　　　　　　　　　　　　　　　　　　　John F. Harwick
　　　　　　　　　　　　　　　　　　　*Attorneys for Defendants Northway Mining LLC,*
　　　　　　　　　　　　　　　　　　　 *Michael Maranda, Michael Maranda LLC, Hudson*
　　　　　　　　　　　　　　　　　　　*Data Center Inc. and Michael Carter*
　　　　　　　　　　　　　　　　　　　28 Second Street
　　　　　　　　　　　　　　　　　　　Troy, N.Y. 12180
　　　　　　　　　　　　　　　　　　　(518)274-5820