UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

9384-2557 QUÉBEC INC., a Canadian corporation; MINEDMAP, INC., a Nevada corporation; and SERENITY ALPHA, LLC, a Nevada limited liability, and other similarly situated individuals,

Plaintiffs,

-against-

NORTHWAY MINING, LLC, a New York limited liability company; MICHAEL MARANDA, an individual; MICHAEL CARTER, an individual; CSX4236 MOTORCYCLE SALVAGE, LLC, a New York limited liability company; DROR SVORAI, an individual; MINING POWER GROUP, INC., a Florida corporation; HUDSON DATA CENTER, INC, a New York Corporation, MICHAEL MARANDA, LLC, a New York Limited liability company; PORTER KING HILL CONTRACTING, LLC, COINMINT, LLC, a Delaware limited liability company,

Defendants.

**AFFIDAVIT OF MICHAEL MARANDA**

**In Opposition to Motion for Contempt**

Civ. Action No.: 1:19-CV-00501-TJM-CFH

**Jury Trial Demanded**

I, **MICHAEL MARANDA**, declare under penalty of perjury that the following is true and correct:

1.      I am a defendant in this action.  I am also an owner of co-defendants Northway Mining LLC ("NWM"), Michael Maranda LLC ("MMLLC") and Hudson Data Center, Inc. ("HDC").  I submit this declaration in opposition to the motion by plaintiffs Minedmap, Inc. ("Minedmap") and Serenity Alpha LLC ("Serenity") for civil and criminal contempt sanctions. This declaration is based upon my personal knowledge.

2.      As described below, I am storing 2,051 bitcoin miners owned by plaintiffs Minedmap and Serenity, at two locations: (i) 193 East Seneca Street, Oswego, New York; and (ii) 2140 County Route 1, Oswego, New York.  All of those machines were manufactured by Bitmain,

1

and the great majority of them are model S9J (a smaller subset of them are model S9).  Those miners have been at those two locations since January 2020.

3.  Neither I, nor anyone working for me (or NWM, MMLLC or HDC), or anyone else that I know of, is in possession of any miners owned by Minedmap or Serenity at any locations other than 193 East Seneca Street and 2140 County Route 1 in Oswego.

4.  Neither I nor anyone working for me (or NWM, MMLLC or HDC), or anyone else that I know of, has moved or transported any miners belonging to Minedmap or Serenity since January 2020, when we delivered the machines to 193 East Seneca Street and 2140 County Route 1 in Oswego.

5.  My attorneys informed me on June 19, 2020 that Magistrate Judge Hummel ordered the defendants not to move any of the miners from those locations without notice to the Court and the plaintiffs.  The defendants have obeyed that order.  We did not move any of the miners after June 19, 2020 (nor did we ever intend to).

6.  When my attorneys informed me that the Court had issued a writ of replevin on July 16, 2020, they told me to prepare to turn all of the machines over to the U.S. Marshalls when they arrived (whenever that might be) and to cooperate fully with the Marshalls.  My staff organized the miners on pallets within 193 East Seneca Street and 2140 County Route 1 to make it easier for the Marshalls to access the machines and move them out of the buildings.  Annexed hereto as **Exhibit A** is a photograph truly and accurately depicting a sample of the machines, showing how we had them arranged for pickup.

7.  The U.S. Marshalls came to 193 East Seneca Street and 2140 County Route 1 on July 24, 2020.  I was not in Oswego that day (I was not aware in advance that the Marshalls would be there that particular day), but my site manager, Melissa Welsch, informed me by telephone that

2

they were there.  I told Ms. Welsch to cooperate with the Marshalls and she did.  I am told that the Marshalls (and some representatives of Minedmap and Serenity) were allowed into the buildings without any resistance and allowed to inspect and collect the machines as they saw fit.

8.      Ms. Welsch tells me that the Marshalls and the plaintiffs only remained onsite for no more than three hours before deciding that the 2,051 machines were not Minedmap or Serenity's machines.

9.      Minedmap and Serenity's assertion that the 2,051 miners in Oswego are not theirs is wrong, as I will discuss below.  In fact, I do not believe that it is even possible for the plaintiffs and/or the Marshalls to have inspected all of the machines (or even a good sample of the machines) in the short time that they were there.

10.      All of these miners are currently still at 193 East Seneca Street and 2140 County Route 1 in Oswego and remain available for collection by the Marshalls.  In accordance with Magistrate Judge Hummel's June 19, 2020 order, we are continuing to hold them there and will not move them without permission from the Court.

**A.      Contracts with Minedmap/Serenity, and Delivery of Machines to NWM in 2018**

11.      Although Minedmap and Serenity are apparently two different entities, they are affiliated and they transacted business with the defendants as though they were one entity.  The same principals (Daniel Kim and Allen Song) represented Minedmap and Serenity in their dealings with the defendants, and Minedmap and Serenity delivered miner devices together as a joint set. In other words, the parties never distinguished "Minedmap" machines from "Serenity" machines. The plaintiffs don't appear to do that in this lawsuit either—for example, Exhibit B to their motion for a writ of replevin which allegedly lists serial numbers for their machines (which I have

reviewed closely in connection with this motion for contempt) does not distinguish between machines owned by the two companies.

12.      In fall 2018, NWM entered into a contract with Serenity to host up to 3,000 S9J miners for Serenity (or, as it turned out, Serenity and/or Minedmap) at our location at 2 Flint Mine Road in Coxsackie, New York.  A true and accurate copy of that contract is annexed hereto as **Exhibit B**.  (Although the contract, at page 1, also allowed that the machines could be moved to and hosted at "another Northway hosting facility.")

13.      In negotiating that contract with Serentiy/Minedmap, I was clear with the plaintiffs that NWM would have to make substantial investments in the property at 2 Flint Mine Road in order to accommodate their infusion of machines.  That is mainly why the Serenity contract required them to pay NWM a deposit of $369,000 (pg. 3).  In fact, NWM spent at least $934,353.16 doing the buildout necessary to host the added machines (much of that being our own investment).

14.      Serenity/Minedmap delivered miner devices to NWM (at 2 Flint Mine Road) for hosting after we agreed to terms in principle in September 2018.  Every single one of the machines that Serenity/Minedmap delivered were either model S9J or model S9 devices manufactured by Bitmain (the great majority of them were model S9J).    That is important, because Serenity/Minedmap is the *only* one of our hosting clients that ever used S9J Bitmains.  NWM and MMLLC operated mining devices on their own account, and hosted machines for other clients, but neither we nor our other clients used S9J Bitmains.  In other words, every S9J Bitmain mining device that we ever possessed came from Serenity/Minedmap.  (And, therefore, all of the S9J Bitmains that are in our two Oswego locations now are the Serenity/Minedmap machines.)

15.      Although the Serenity contract (Exhibit B) states the number of machines to be hosted as "3,000" (pg. 1), Serenity/Minedmap never delivered 3,000 machines.  In fact, beginning

shortly after we agreed to terms, Serenity/Minedmap were erratic and disorganized about their plans for delivering machines, and also ran into some customs problems with delivering machines. Even now I don't believe that Serenity/Minedmap have a clear understanding, record or recollection of what they delivered. For example, Daniel Kim says in his affidavit in support of the contempt motion that Serenity/Minedmap delivered 2,798 miners (¶8), but the plaintiffs' First Amended Complaint alleges that Serenity/Minedmap delivered a total of only 2,689 miners (First Amended Complaint ¶90). And then Exhibit B to their July 14, 2020 motion for a writ of replevin only lists serial numbers for 2,432 machines.

16. Initially when we received deliveries from Serenity/Minedmap in 2018, we digitally scanned the machines' serial numbers during unboxing and retained that record digital record of the numbers. We did that for 1,131 of their machines. We ended up discontinuing the scanning practice after that 1,131 machines because it was too time-consuming and we decided it was unnecessary since the serial numbers are printed on two locations on the machines, another identifier is recorded on the machine's drive, and the serial numbers were also printed on the machines' boxes, many of which we saved and still have. (Of course, when we stopped scanning the serial numbers in 2018, I had no idea I would eventually be in this lawsuit with Serenity/Minedmap, or that they would eventually deny that the machines we have are theirs.)

17. I have compared our list of 1,131 scanned serial numbers from 2018 to Exhibit B to the plaintiffs' July 14, 2020 motion for writ of replevin. Annexed hereto as **Exhibit C** is a true and accurate copy of the 1,131 serial numbers that we scanned., compared to the plaintiffs' list in their Exhibit B. By my count, 331 of our contemporaneously scanned numbers appear on Minedmap/Serenity's list, but 800 of our contemporaneously scanned numbers do not appear on their list. This is inexplicable to me, unless the plaintiffs' record of their own purported serial

numbers is substantially inaccurate. Furthermore, the plaintiffs recorded a video of their visit to our Coxsackie facility in 2020 in which they acknowledged that these boxes went with their miners, which is still publicly available.[1]

18.     We have also begun manually reviewing the serial numbers on the boxes to the Serenity/Minedmap miners to compare them to the plaintiffs' Exhibit B. So far we have compared 43 boxes, and of those, only 11 of the box-printed serial numbers appear on the plaintiffs' Exhibit B. In other words, from that sample, 32 out of 43 box-printed serial numbers from our inventory do not appear on the plaintiffs' Exhibit B which, again, is inexplicable to me unless the plaintiffs' record of their own purported serial numbers is substantially inaccurate. Annexed hereto as **Exhibit D** is a comparison of the serial numbers from our boxes to Exhibit B for that set of 43, and we will continue this comparison of the other boxes we have saved for the trial of this matter.

19.     In any event, the dispute in this case began in late November 2018, when Serenity/Minedmap attempted to withdraw from the hosting services agreement before we even got started with the hosting, but after NWM had spent a great deal of money preparing the site to host their machines (as described above). Specifically, in late November the bitcoin market was significantly down. Bitcoin, like stock, has a cash value that fluctuates with market conditions. When someone engages in "bitcoin mining" (either running his own machines, as I do for my own companies, or through a host, as I have done for clients) the business generates returns in the form of bitcoin. That is, if your machine successfully pings a bitcoin transaction and earns a fee, the fee you earn is paid to you in bitcoin.[2] Therefore, bitcoin mining is less lucrative as a business

---

[1]     The video may be used here: https://www.ccn.com/new-york-bitcoin-mining-magnate-accused-of-stealing-over-5000-crypto-miners/

[2]     This has been explained in other papers in this case, but bitcoin mining is basically a verification service. When someone offers bitcoin to an online retailer to purchase a good or service, the retailer needs to verify that the bitcoin is legitimate. At the time of the customer's order, the verification assignment gets routed to a bitcoin miner device operating somewhere online, and the miner device verifies the bitcoin's

when the bitcoin market is down. In late November 2018, the bitcoin market was so far down that a lot of miner devices were not generating enough returns to cover the power costs of running them.

20.     Near the end of that month, Allen Song of Serenity/Minedmap came to our facility in Coxsackie, New York, where we had received their machines, programed them, and had them racked and ready to start running. That was the day we were supposed to turn the machines on and begin operating them. Mr. Song was there supposedly to look the machines over and authorize us to turn them on. But instead he told me that we could not turn the machines on. He told us that Serenity/Minedmap had a customer for these miners (i.e., they were going to share the bitcoin returns with an investor) and that the customer had "gone dark" and wasn't responding to calls or emails.   Song said he couldn't start incurring the ongoing power charges under those circumstances. A little while later, during that same meeting, he said he had just gotten in touch with his customer and he was not authorized to let us turn on the machines unless we renegotiated the power rate. The rate we had agreed upon was $0.07 per kilowatt hour. He said they needed a rate of $0.05 per kilowatt hour. I could not agree to that. My company would have lost money on this transaction at that rate. We negotiated further that day and agreed that we would look for a different facility where we might be able to subcontract hosting of the machines at a better power rate. In December and January we looked at a number of facilities before settling on Coinmint LLC's facility in Massena, New York. My company, NWM, entered into a subcontract with Coinmint to host the machines there, and we delivered the machines to Coinmint in the first week of February 2019. Serenity/Minedmap was aware of all of that in 2018-2019, and we did all of

---

authenticity on the blockchain.  In exchange for that verification, the miner device's owner gets a share of the bitcoin that it verified.  It is called bitcoin "mining" because the act of running a device with expectation of picking up random verification assignments (and fees) is analogized to old-economy speculative mining for precious metals.

this at his urging.  They were aware in February 2019 that Minedmap/Serenity's machines were at Coinmint.

21.     Nevertheless, in February 2019, Kim told us that Serenity/Minedmap still did not want to proceed with hosting the machines through us and demanded that we return the machines. This left NWM in a terrible predicament, because we had invested so much money in readying our Coxsackie site and setting up the plaintiffs' machines in reliance on the contract, and then went to the trouble and expense of subcontracting with Coinmint and moving the machines there.  That is why I did not return the machines when Kim demanded it—we treated this essentially as a workman's lien against our damages for Serenity/Minedmap's breach of the hosting agreement. When we file an Answer in this case, we intend to assert a counterclaim for these losses.

22.     Nevertheless, we were ready, willing and able to turn the machines over to the Marshalls on July 24, 2020.  As my attorneys explain in their papers, we intended to demand an adequate undertaking bond for the machines, but we never intended to withhold the machines from the Marshalls (and we did not withhold the machines).

**B.     The Plaintiffs and the Marshalls appearance at the Oswego sites on July 24, 2020 and the plaintiffs' determination that these are not their machines.**

23.     As I indicate above, I was not in Oswego on July 24, 2020.  As my attorneys explain in their Affirmations, prior to July 24 they attempted to coordinate a transfer of the machines to the Marshalls, through communications with the plaintiffs' attorney and the Marshalls.  We had hoped to have a coordinated, agreed-upon date for the turnover, so that I could be there and one of my attorneys could be there to answer any questions that might come up, and to assure an orderly transfer.  As my attorneys also explain in their Affirmations, they never heard back from the plaintiffs' attorney, and the Marshalls initially indicated that they would welcome a scheduled date, but ended up going to the sites on July 24 without notice to the defendants or our counsel.

24.    Although I was not in Oswego that day, my site manager Melissa Welsch was.  We believe the Marshalls, and Daniel Kim and Allen Song (from Serenity/Minedmap), arrived between 11:00 a.m. and noon and left at approximately 2:00 p.m.  They were apparently there for about three hours or less, and they did not look at most of the machines.  In that time, they could not have possibly made an examination of all 2,051 miners that we had prepared for them, and probably not even a good percentage of them.

25.    In their motion, the plaintiffs state that the serial numbers were "scraped off or sawed off" of the machines which they claim frustrated their attempts to identify the machines.  (Daniel Kim Affidavit ¶16)  But Mr. Kim says in his affidavit that, nevertheless, he knows these are not the Serenity/Minedmap machines because "Allen Song and I know what our bitcoin miners physically look like and we did not find any of our miners" (¶17).  According to Kim, "Allen Song and I each spent more than two hours apiece looking at each location the Defendants provided, but we did not find our miners" (¶15).

26.    None of those assertions make sense for several reasons.

(i)    **Serial Numbers and MAC Numbers**

27.    First, every single one of the 2,051 miners in Oswego has identifying numbers on them.

28.    Out of the box, an S9Js and S9s have serial numbers recorded in three different locations and formats: (i) there is a sticker with a serial number on the top casing of the machine; (ii) there is another sticker with a serial number and chip number embedded on the hash board on the side of the machine; and (iii) a unique MAC number is also recorded digitally in the machine's drive—when you turn on the machine and boot it up, you can view the MAC number electronically.

29.     All of the machines in the Oswego sites have the side serial and chip numbers visible and fully intact. Annexed hereto as **Exhibit E** are photographs we have taken of many of the machines' hash number stickers (as a sample) after the plaintiffs filed their contempt motion, which shows the hash board intact. We have not had time to photograph all 2,051 machines as of yet, but we will photograph more before the trial of this action.

30.     The identifying numbers on the hash board stickers share most of the same characters as the regular serial number (from the box and casing) but with the chip number also embedded within. Someone trying to isolate and identify particular machines from a list (as the plaintiffs say they were trying to do) can do so by looking at the characters from the hash board sticker and comparing them against the characters in common with the regular box and shell serial number.

31.     The plaintiffs' contempt motion does not make any mention of the hash board stickers. There is no indication that they looked at those. The Marshalls could have taken possession of the machines and the plaintiffs could have taken what time they needed to compare those formats numbers against their list to confirm whether the machines were theirs. Again, we were ready willing and able to surrender all 2,051 of the machines to the Marshalls on July 24 (and still are). But the plaintiffs did not do that, and apparently are not interested in doing that.

32.     We are still in the process of comparing our machines to the plaintiffs' list, but so far we have matched 108 of the machines in Oswego either to the shell serial number sticker (where available) or to the common characters on the side hash sticker. We also have machines that do not match the plaintiffs' list but, for reasons I explain above, I dispute the accuracy of the plaintiffs' list. (Again, of the 1,131 serial numbers that we contemporaneously scanned at delivery in 2018, we have 800 numbers that are *not* on their list and should be, which suggests to me that there are

at least 800 numbers on their list that should not be.)  Also, as indicated above, we have never received S9J machines from any source other than Minedmap/Serenity and, therefore, all of the S9Js in Oswego must be theirs (and by far most of the 2,051 machines there are S9Js).

33.     As noted, all of the machines also have another unique identifying code as well, known as the MAC number.  The MAC number is a number that is recorded digitally on the machine's drive.  You can access it by turning the machine on.  You can match a MAC number to the machine's serial numbers through the manufacturer (in this case, Bitmain).  The plaintiffs and the Marshalls could have taken the machines on July 24 and reviewed their MAC numbers at a later time, but did not.

### (ii)     The plaintiffs were not at the Oswego sites long enough to identify or rule out these machines.

34.     As noted, the plaintiffs and the Marshalls were only at the Oswego sites for about three hours or less.  According to Mr. Kim's affidavit, he and Allen Song "each spent more than two hours apiece looking at each location the Defendants provided, but we did not find our miners" (¶15).  Two hours apiece, or even three hours apiece, would not be remotely long enough to make an adequate survey of the machines.

35.     A typical serial or hash board serial/chip number is a combination of 15 or more digits and letters.  Comparing two numbers in that format (one on a machine, and one on the plaintiffs' list) takes time.  With 2,051 machines, even if the plaintiffs spent only 30 seconds on each machine (which would be very fast), it would take over 17 hours for a person to complete that review.  Even if Mr. Kim and Mr. Song split that evenly, it would take them more than 8 hours each.  This is not something that can be done by two people in "two hours apiece."  We expected the Marshalls to take all of the machines, and the plaintiffs to have them reviewed in an appropriate fashion after that.  We cannot understand why they did not.

    (iii)    **The plaintiffs cannot have possibly identified or ruled out the machines from visual inspection alone.**

36.    Finally, Mr. Kim's statement in his affidavit that he and Allen Song "know what our bitcoin miners physically look like and we did not find any of our miners" (¶17) is completely unrealistic.

37.    Every single one of the Serenity/Minedmap machines are the same: model S9Js or (in fewer cases) model S9s, manufactured by Bitmain.  All S9Js look alike, and all S9s look alike.  They are all the same color, the same size, same shape, etc.

38.    Therefore, I do not understand Mr. Kim's assertion that he Allen Song could possibly look at 2,051 on pallets, most of which were identical S9Js and some of which were identical S9s, and determine that they are not theirs.  It is impossible, by visual inspection alone, to look at pallets of over 2,050 machines that all look alike say that none of them are theirs.

**C.**    **Conclusion**

39.    Serenity/Minedmap are the only hosting clients of NWM or MML who ever delivered S9J miners manufactured by Bitmain, and my companies never owned any S9Js for their own account.  Therefore, every SJ9 Bitmain that we have is Serenity/Minedmap's.  We have 2,051 of Minedmap/Serenity's miners (most of which, by far, are S9Js), and they are all at 193 East Seneca Street and 2140 County Route 1 in Oswego, New York.  None of the plaintiffs' machines are at any other locations.  We did not move any of the plaintiffs' machines after Magistate Judge Hummel's order of June 19, 2020 and, in fact, none of those machines were moved anywhere since January 2020 (when they were delivered to the two Oswego locations at issue). The machines were there for the taking on July 24, 2020 when the plaintiffs came with the Marshalls, and they chose not to take them.

40.     Serenity and Minedmap did not even come close to making an adequate review of the machines on July 24 to determine that they are not theirs.  On top of that, I don't believe that Serenity and Minedmap's own list of serial numbers (in Exhibit B to their replevin motion) is accurate, because 800 scans in our own contemporaneous digital record of 1,131 of their serial numbers do not match their exhibit, and we are finding that many of the serial numbers on the boxes to their machines do not match their exhibit.

41.     I also respectfully add that it would not make any sense for me to disobey Magistrate Judge Hummel's June 19, 2020 order at all, much less the way the plaintiffs imagine it. Magistrate Judge Hummel's order directed that "there be no movement of the machines without prior notice to the plaintiff and the Court."  The only way I could disobey that order (and become liable for contempt) would be by moving the machines after June 19, 2020.  And that is apparently the plaintiffs' theory: that I allegedly moved 2,432 miners (listed in Exhibit B to their replevin motion) from the Oswego sites to some other location, and that the 2,051 machines that I have in Oswego are not theirs.  The plaintiffs' attorney, Mr. Williams theorizes in his "Notice of Motion" (ECF Doc. #110) that this is what happened:

> In response to [Magistrate Judge Hummel's] Order, John Harwick, Esq. ("Harwick") and Benjamin Niedl, Esq. ("Niedl"), counsels for Defendants, sent Plaintiffs a letter on June 19, 2020, representing that all 2,789 of Plaintiffs' miners were at 193 Seneca Street Oswego, New York and at 2140 County Route 1 Oswego, New York. The letter from Harwick and Niedl was a pretextual, a mere attempt to hold off Plaintiffs while Defendants destroyed, transported, and made fraudulent insurance claims on Plaintiffs' miners.

42.     As an initial matter, we never received 2,790 miners from Serenity and Minedman, and Exhibit B to their own replevin motion only shows 2,432 serial numbers.  But even leaving that aside, if Magistrate Judge Hummel ordered me on June 19 not to move the plaintiffs' 2,000+ miners (as he did), why would I then move the *plaintiffs'* miners and try to give them 2,051 *other*

S9J miners?  What would I gain by moving *their* SJ9s and S9s out of the Oswego locations, and giving them more than 2,000 *other* SJ9s and S9s?  It does not make sense.

43.     All 2,051 of Serenity/Minedmap's machines are at the two Oswego locations, were available to them on July 24, and are available to them now. Therefore, I respectfully submit that the contempt motion should be denied.

I declare under penalty of perjury that the following is true and correct.

_____
Michael Maranda

Sworn to before me this
_14TH___ day of August, 2020

_____
Notary Public
Albany County
Reg. No.: 01DU6340971
Ex. 5/2/2024