UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

9384-2557 QUÉBEC INC., a Canadian corporation; MINEDMAP, INC., a Nevada corporation; and SERENITY ALPHA, LLC, a Nevada limited liability, and other similarly situated individuals,

                         Plaintiffs,

    -against-

NORTHWAY MINING, LLC, a New York limited liability company; MICHAEL MARANDA, an individual; MICHAEL CARTER, an individual; CSX4236 MOTORCYCLE SALVAGE, LLC, a New York limited liability company; DROR SVORAI, an individual; MINING POWER GROUP, INC., a Florida corporation; HUDSON DATA CENTER, INC, a New York Corporation, MICHAEL MARANDA, LLC, a New York Limited liability company; PORTER KING HILL CONTRACTING, LLC, COINMINT, LLC, a Delaware limited liability company,

                       Defendants.

**ATTORNEY AFFIRMATION IN OPPOSITION TO PLAINTIFFS' MOTION FOR FEES AND COSTS**

Civ. Action No.: 1:19-CV-00501-TJM-CFH

**BENJAMIN F. NEIDL**, and attorney duly admitted to practice law before this Honorable Court, affirms under penalty of perjury the following:

    1.      I am of counsel to the law firm of E. Stewart Jones Hacker Murphy LLP, attorneys for defendants Northway Mining LLC, Michael Maranda, Michael Maranda LLC, Hudson Data Center Inc. and Michael Carter.  I respectfully submit this affirmation in opposition to the plaintiffs' motion for fees and costs against defendants Michael Maranda and Michael Carter, and against defense counsel.  (ECF Doc. #112.)  Furthermore, defendants Maranda and Carter also oppose that prong of the motion that seeks fees and costs against non-party Melissa Welsh (over whom the plaintiffs have not yet acquired jurisdiction).  This affirmation is based upon my personal knowledge, and based on my review of the ECF docket in this case.

1

2.      This opposition is accompanied by the following papers which we electronically filed and served simultaneously herewith:

      a.      The affidavit of Michael Maranda sworn to August 18, 2020 (the **"Maranda Aff."**);

      b.      The affidavit of Michael Carter sworn to August 10, 2020 (the **"Carter Aff."**); and

      c.      The Memorandum of Law in Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs dated August 27, 2020 (the **"Memorandum of Law"**).

3.      Much of the factual responses to the plaintiffs' motion are set forth in the Maranda and Carter Affidavits, and our legal arguments are set forth in the Memorandum of Law.  We will not needlessly repeat that content here, and instead respectfully refer the Court to those documents.

4.      However, I will briefly recite the relevant procedural history that bears on the plaintiffs' motion.

5.      According to the docket, the plaintiffs commenced this action on April 12, 2019 in the Eastern District of New York, seeking money damages against the defendants, and a provisional remedy in the form of replevin.  (ECF Doc. # 1.)  The Eastern District Judge issued a writ of replevin on April 22.  (ECF Doc. # 11.)  A few days later, on April 25, the case was transferred to the Northern District on the plaintiffs' own application, because the Eastern District did not have jurisdiction over the property in dispute.  (ECF Doc. # 13-14.)  This Court adopted the Eastern District's prior writ of replevin on April 29.  (ECF Doc. # 19.)

6.      The plaintiffs' motion for fees and costs alleges that on May 8, 2019, representatives of plaintiffs Serenity and Minedmap appeared at defendant Northway Mining's facility at Flint Mine road in Coxsackie, New York to replevy the bitcoin mining devices that are in dispute in this case.  (ECF Doc. # 112, pg. 3-4.)  It is not clear exactly what happened on May 8.  The docket does contains no entry for May 8, 2019.  The docket does no contain any affidavits

2

of service indicating that the plaintiffs or the Marshalls served the writ of replevin on any of the defendants.  There is a gap in the docket between the issuance of an amended writ of replevin on May 1, 2019 (ECF Doc. # 22) and an unrelated Rule 16 conference text order on July 16, 2019 (ECF Doc. # 23).

7.      The plaintiffs apparently did not acquire jurisdiction over any of the defendants until nearly a year later, on April 6, 2020, when defendants Michael Maranda, Northway Mining, Michael Maranda LLC, and Hudson Data Center filed a Rule 4 waiver of service. (ECF Doc. # 35.)

8.      John Harwick and I of this firm filed our Notices of Appearance for those defendants on April 17, 2020.  (ECF Doc. # 39 and 42.)   We filed a partial motion to dismiss for those defendants on May 8, 2020.  (ECF Doc. # 55.)   This was the first appearance by any defendants in this action.

9.      On June 8, 2020, the plaintiffs filed an "emergency motion" for discovery to, among other things, obtain discovery regarding the location of the disputed Serenity/Minedmap bitcoin miners.  (ECF Doc. # 69.)   I wrote a letter response the next day, in which I stated that a motion was unnecessary because our defendants were open to having a Rule 16 conference and initiating discovery.  (ECF Doc. # 70.)  (The plaintiffs' "emergency motion" surely jumped the gun, because the plaintiffs' attorney never bothered to call me or Mr. Harwick after our April appearances to ask us if we would disclose where the machines were.)

10.     Magistrate Judge Hummel held a telephone conference on June 19, 2020 to address the plaintiffs' emergency motion.  (ECF Doc. # 76.)  Mr. Harwick and I participated in that call for the appearing defendants, and Mr. Williams participated for the plaintiffs.  Judge Hummel declined to set a discovery schedule that day.  Based on what I heard during the call, I surmise that

this was probably because there were about six other defendants in the caption whom the plaintiffs had not yet served with process and who thus had not appeared.  Instead, Judge Hummel asked Mr. Harwick and I simply to disclose the location of the machines.  Prior to this conference, our client had advised us that he was storing the machines in Oswego, York.  In response to Judge Hummel's question during the conference, I said that (per our client) the machines were at a facility in Oswego.  Judge Hummel asked the address.  I replied (honestly) that I did not know the address, but could obtain it from defendant Maranda.  Judge Hummel directed me to do that, and to write a letter to the plaintiffs' attorney by June 20 providing the address: "Defendants are hereby directed to provide to plaintiffs, in a letter: … The address where the machines are physically located" []. (ECF Doc. # 76.)

11.     That afternoon, I spoke with Mr. Maranda, who informed me that the machines were at two addresses in Oswego: 193 East Seneca Street and 2140 County Route 1.  Also that afternoon (June 19), I emailed Mr. Williams a letter disclosing those two addresses, a copy of which is annexed hereto as **Exhibit A**.

12.     At 9:54 p.m. on June 19, I received an email from plaintiffs' counsel, Mr. Williams, which I read (and still read) as an attempt to twist my letter to him earlier that day into a representation that the defendants were holding and operating "3,000" machines owned by Serenity/Minedmap, a true and accurate copy of which is annexed hereto as **Exhibit B**.

13.     I was certainly not in a position to certify the exact number of machines that were in two Oswego facilities 175 miles away from my office which I have never visited.  And I had no reason to believe that the number of machines was 3,000.  The plaintiffs' First Amended Complaint does not even allege that there are 3,000 machines in contention.  Therefore, I responded to Mr. Williams with another email letter on June 21, 2020, in which I specifically told him I did not

know how many machines were in Oswego, only that our client insists that all of the Serenity/Minedmap machines that he has are there.  A copy of that letter is annexed hereto as **Exhibit C**.  (Later, in July, after the Court issued a writ of replevin, our clients palleted the machines to turn over to the Marshalls, and counted up a total number of 2,051 units.)

14.     Later, on July 14, 2020, the plaintiffs moved for a new writ of replevin covering the two Oswego locations.  (ECF Doc. # 86.)  The motion was unaccompanied by a Notice of Motion or Order to Show Cause, and did not recite a return date or a deadline for opposing the motion.  Left uncertain about our time to respond, I filed a letter on July 15 objecting to the lack of appropriate notice, and asking to be given an opportunity to be heard on the motion.  (ECF Doc. # 87.)  I can add that the position we intended to present in opposition papers was the sufficiency or insufficiency of the plaintiffs' undertaking.  The defendants assert a N.Y. Lien Law §180 lien over the mining devices, for substantial expenditures they allege that they made to situate the machines for operation.  The defendants had no objection *per se* to turning over the machines to the Marshalls, but did intend to demand an undertaking that satisfied N.Y. CPLR Article 25, which specifies certain minimum requirements if the property to be replevied is worth more than $1,000.  Specifically, the surety must either be an insurance company, or must be a New York domiciliary who pledges (by affidavit) real property as security for the undertaking.  *See* CPLR §2502, §2503. Our review of the docket showed that the "undertaking" instrument that the plaintiffs filed in 2019 in the Eastern District did not meet those requirements. (ECF Doc. # 21.)

15.     In any event, the Court granted the replevin writ on July 15, 2020.  (ECF Doc. # 88.)

16.     Mr. Harwick and I, as defense counsel, informed our clients of the Court's July 15 order, and directed Mr. Maranda to make sure that the machines were organized and ready to be

picked up by the Marshalls at the two Oswego locations.  We did not know exactly when the Marshalls would be coming but assumed that it would be in the near future.  A few days later, Mr. Maranda informed us that the Serenity/Minedmap machines totaled 2,051, and that his staff had arranged them on pallets to facilitate the Marshalls' collection of the machines.

17.     Mr. Harwick and I wanted to facilitate an orderly transfer of the machines.

18.     On July 17, I emailed plaintiffs' counsel and tried to set up a phone conference to discuss when and how we could effectuate the transfer (see **Exhibit D** hereto).  Mr. Williams never replied to that email.

19.     On July 21, 2020, at Mr. Maranda's request, I emailed a letter to the defendants' landlord at the two Oswego locations, to give him notice that we expected the Marshalls to appear in the near future, and to request that he cooperate with their visit in all respects (see **Exhibit E** hereto).  (The landlord's business also co-occupies these spaces, so we did not want the landlord's own staff to be completely surprised by the Marshalls' arrival.)

20.      Moreover, my colleague Mr. Harwick spoke with Barbara Wright in the Marshalls' office in Syracuse on July 22, also for the purposes of scheduling a turnover of the machines, and followed that with an email the same date (see **Exhibit F** hereto).  We were hoping to schedule a particular day and time for the turnover of the machines, so that defendant Maranda could be at the site to facilitate the transfer and answer any questions (Mr. Harwick or I also would have attended).

21.     In their contempt motion, Serenity/Minedmap alleges that the 2,051 machines that the defendants had available for collection on July 24, 2020 are not theirs.  Defendant Maranda signed an affidavit in opposition to that motion, denying the allegation and insisting that the machines are the plaintiffs.  (ECF Doc. #117.)  It is apparently undisputed that all 2,051 of the

machines in Oswego were of the same manufacturer's make and model that Serenity/Minedmap owns (Bitmain S9Js or S9s).

22.     There is a question of fact on that point that ultimately will have to be adjudicated. But, whatever the verdict on that may eventually be, Mr. Harwick, this firm and I had no reason to doubt that the machines in Oswego were the plaintiffs.'   We are attorneys representing defendants in this case.  We are not witnesses.  We were not parties to the transaction between the defendants and Serenity/Minedmap in 2018.  We do not have personal knowledge what particular machines Serenity/Minedmap own.  Plaintiffs' motion for fees and costs is improper.

WHEREFORE, for the foregoing reasons set forth in the accompanying papers, the plaintiffs' motion for fees and costs should be denied in its entirety.

Dated: Troy, New York                    Respectfully submitted,
      August 27, 2020

E. STEWART JONES HACKER MURPHY LLP

_____*/s/ Benjamin F. Neidl*_____
By:     Benjamin F. Neidl
      John F. Harwick
*Attorneys for Defendants Northway Mining LLC,*
*Michael Maranda, Michael Maranda LLC, Hudson*
*Data Center Inc. and Michael Carter*
28 Second Street
Troy, N.Y.  12180
(518)274-5820