UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

9384-2557 QUÉBEC INC., a Canadian corporation; MINEDMAP, INC., a Nevada corporation; and SERENITY ALPHA, LLC, a Nevada limited liability, and other similarly situated individuals,

                    Plaintiffs,

-against-

NORTHWAY MINING, LLC, a New York limited liability company; MICHAEL MARANDA, an individual; MICHAEL CARTER, an individual; CSX4236 MOTORCYCLE SALVAGE, LLC, a New York limited liability company; DROR SVORAI, an individual; MINING POWER GROUP, INC., a Florida corporation; HUDSON DATA CENTER, INC, a New York Corporation, MICHAEL MARANDA, LLC, a New York Limited liability company; PORTER KING HILL CONTRACTING, LLC, COINMINT, LLC, a Delaware limited liability company,

                      Defendants.

Civ. Action No.: 1:19-CV-00501-TJM-CFH

# MEMORANDUM OF LAW IN OPPOSITION

## TO PLAINTFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

John F. Harwick, Esq.
Benjamin F. Neidl, Esq.
E. STEWART JONES HACKER MURPHY LLP
*Attorneys for Defendants Northway Mining LLC, Michael Maranda, Michael Maranda LLC, Hudson Data Center Inc. and Michael Carter*
28 Second Street
Troy, N.Y.  12180
(518)274-5820

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

RELEVANT BACKGROUND ............................................................................................. 1

ARGUMENT ......................................................................................................................... 4

    I.    The Legal Standards ............................................................................................. 4

    II.    The Motion Must be Denied as to Carter, Maranda and Welsh ......................... 7

        A.    28 U.S.C. §1927 and Rule 11 are Inapplicable ........................................ 7

        B.    The Plaintiffs Have Not Carried Their Burden of Demonstrating
A Basis for Sanctions Under the Court's Inherent Power ....................... 7

            1.    The 2019 Allegations ................................................................... 8

            2.    The 2020 Allegations ................................................................... 10

    III.    The Motion Must be Denied as to Defense Counsel ........................................ 11

        A.    Rule 11 is Inapplicable Because the Plaintiffs' Motion
Does Not Implicate a Signed Paper to the Court, and
The Plaintiffs Made no 21-Day Demand. ................................................ 11

        B.    There is No Basis for Sanctions Against Defense Counsel
Under the Court's "Inherent Authority" or 28 U.S.C. §1927 .................. 12

CONCLUSION ...................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases**

Agee v. Paramount Communications, Inc., 114 F.3d 395 (1997) .......................................6, 7, 8, 12

Alvarez v. 894 Pizza Corp., 2016 WL 4536574 (E.D.N.Y. Aug. 2, 2016) .......................... 5, 7, 11

Canusa Corp. v. A&R Lobasco, 986 F.Supp. 723 (E.D.N.Y. 1997) ............................................. 7

Ciaprazi v. Goord, 2005 WL 3531464 (N.D.N.Y. Dec. 22, 2005)................................................. 9

E.D. Capital LLC v. Bloomfield Resources, 316 F.R.D. 77 (E.D.N.Y. 2016)............... 5, 7, 11, 12

Kim v. Kimm, 88 F.3d 98 (2d Cir. 2018) ...................................................................................... 5

McDraw, Inc. v. CIT Group Equip. Financing, 73 F.3d 1253 (2d Cir. 1996) ...................... 5, 6, 12

Oliveri v. Thompson, 803 F.2d 1265 (2d Cir. 1986) ..................................................................... 5

Perez v. Posse Comitatus, 373 F.3d 321 (2d Cir.2004) ................................................................ 6

PNL Phoenix LLC v. Janton Indus., 47 Misc.3d 1208(A) (S. Ct. King's Co. 2015) ..................... 6

Rand v. Birbbrower Montalbano, Condon & Frank, 149 F.Supp.2d 96 (S.D.N.Y. 2001) ............. 9

Sassower v. Field, 973 F.2d 75 (2d Cir. 1992) ...................................................................... 5, 11

Sierra Club. v. U.S. Army Corps. of Engineers, 776 F.2d 383 (2d Cir. 1985).............................. 8

Sorenson v. Wolvson, 170 F.Supp.3d 622 (S.D.N.Y. 2016) ............................................. 6, 7, 12

U.S. v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, AFL-CIO, 948 F.2d 1338, 1344 (2d Cir. 1991)................................................................................ 5

**Statutes**

28 U.S.C. §1927................................................................................................................... 4, 6, 7

N.Y. Lien Law §180 ..................................................................................................................... 8

**Rules**

Fed. R. Civ. P. 11............................................................................................................... passim

## PRELIMINARY STATEMENT

Defendants Michael Maranda and Michael Carter, by and through their undersigned attorneys, respectfully submit this Memorandum of Law in opposition to the plaintiffs' motion for attorneys' fees and costs against them, and against non-party Melissa Welsh and defense counsel. (We note that Ms. Welsh is not a defendant and has not appeared in this action—upon information and belief, the plaintiffs have not yet served her with the motion, and she enjoys a period of 14 days after service to oppose the motion in her own right [ECF Doc. #103].  Nevertheless, defendants Maranda and Carter likewise object to the imposition of fees and costs as against her and themselves, for reasons set forth below.)

## RELEVANT BACKGROUND

According to defendant Michael Maranda, in the fall of 2018 his company Northway Mining LLC ("NWM") entered into a bitcoin hosting services agreement with plaintiff Serenity Alpha, LLC. (Maranda Aff.[1] ¶3.) Maranda contends that NWM invested hundreds of thousands of dollars fitting up NWM's facility in Coxsackie, New York to host the machines, and to set up and program the machines, in reliance on that contract. (Id. ¶4.) He further contends that Serenity and its affiliate Minedmap, Inc. improperly renegotiated that contract after-the fact, refusing to pay the energy rate that NWM charged in Coxsackie. (Id. ¶5.)  Maranda attests that after further renegotiation, NWM agreed to try to find another site for Serenity/Minedmap's machines, where NWM might possibly be able to subcontract the hosting services for a lower energy rate. (Id.)  He attests that after an extensive search, he determined that Coinmint, LLC in Massena, New York was the best option. (Id. ¶6.)  Mr. Maranda attests that in February 2019, he arranged to have the

---

[1]  "Maranda Aff." refers to the Affidavit of Michael Maranda sworn to August 18, 2020, electronically filed and served with this opposition.

1

machines delivered to Coinmint for that purpose, which the plaintiffs knew and understood. (Id. ¶¶6-7.) Maranda states that this dispute effectively began after that, later in February 2019, when Serenity/Minedmap decided to withdraw completely from the transaction in contravention of their contract. Maranda refused to return the machines, and held them as security for reimbursement of his expenses incurred in improving the machines for service. (Id.; see also N.Y. Lien Law §180.)

According to the docket, the plaintiffs commenced this action on April 12, 2019 (ECF Doc. #1), about two months after Maranda says he moved the machines from Coxsackie to Coinmint's facility in Massena, on notice to Serenity/Minedmap. (Maranda Aff. ¶¶6-7.) Nevertheless, the plaintiffs apparently visited NWM's *Coxsackie* facility on May 8, 2019 to collect the machines, according to their motion. (ECF Doc. #112 pg. 3-4.) (The machines were, of course, not there.) It is not entirely clear what happened on May 8, 2019. There is no docket entry for that date, and no docket entry indicating that the plaintiffs or the Marshalls ever served the 2019 writ of replevin on any of the defendants. (And defendant Maranda was not at the facility on May 8 [Maranda Aff. ¶9].)

Indeed, the plaintiffs apparently did not acquire jurisdiction over any of the defendants until nearly a year later, on April 6, 2020, when defendants Michael Maranda, Northway Mining, Michael Maranda LLC, and Hudson Data Center filed a Rule 4 waiver of service. (ECF Doc. # 35.) Defendants' counsel filed their Notices of Appearance for those defendants on April 17, 2020. (ECF Doc. # 39 and 42.) Those defendants filed a partial motion to dismiss for those defendants on May 8, 2020. (ECF Doc. # 55.) This was the first appearance by any defendants in this action.

On June 8, 2020, the plaintiffs filed an "emergency motion" for discovery to, among other things, obtain discovery regarding the location of the disputed Serenity/Minedmap bitcoin miners (ECF Doc. # 69), even though plaintiffs' counsel had never asked the recently-appeared defense

counsel for disclosure of their location (Neidl Aff.[2] ¶9.). Defense counsel wrote a letter response the next day, stating that a motion was unnecessary because the defendants were open to simply having a Rule 16 conference and initiating discovery immediately. (ECF Doc. # 70.)

Magistrate Judge Hummel held a telephone conference on June 19, 2020 to address the plaintiffs' emergency motion. (ECF Doc. # 76.) Judge Hummel did not set a discovery schedule during the conference, probably because several other defendants had not yet been served with process (Neidl Aff. ¶10). Instead Judge Hummel directed defense counsel to write the plaintiffs' attorney a letter by June 20, providing the address where the machines were located: "Defendants are hereby directed to provide to plaintiffs, in a letter: … The address where the machines are physically located" []. (ECF Doc. # 76.)

On the afternoon of June 19, defense counsel informed defendant Maranda of the Magistrate Judge's order. Maranda informed defense counsel that the machines were at two addresses in Oswego: 193 East Seneca Street and 2140 County Route 1. (Neidl Aff. ¶11.) A short time later that day, defense counsel provided the addresses to the plaintiffs' attorney in an emailed letter. (Neid Aff. Exh. A; see also Neidl Aff. Exhs. B and C.[3])

On July 14, 2020, the plaintiffs moved for a new writ of replevin covering the two Oswego locations (ECF Doc. # 86), which the Court granted on July 15 (ECF Doc. # 88.) Defense counsel promptly notified Maranda of the order, and directed him to make sure that the machines were

---

[2]  "Neidl Affirmation" refers to the Attorney Affirmation of Benjamin F. Neidl dated August 19, 2020, accompanying this opposition.

[3]  In a June 19 email the plaintiffs' attorney told defense counsel, in effect, that he was construing this letter as a representation that the defendants were holding "3,000" of the plaintiffs' miners in Oswego. (Neidl Aff. Exh. B.) That number—3,000—was more than the plaintiffs even alleged in the First Amended Complaint (¶90 thereof) and, in any event, defense counsel were not in a position to personally certify the exact number of hundreds and hundreds of miners in two Oswego facilities 175 miles from their office. They wrote a letter to plaintiffs' attorney on June 21 documenting this. (Neidl Aff. Exh. C.)

3

organized and ready to be picked up by the Marshalls at the two Oswego locations, whenever they might arrive. (Neidl Aff. ¶16.) A few days later Maranda reported that his staff had the machines palleted and ready to be taken by the Marshalls, and that the number of machines totaled 2,051. (Id.)

The defendants and defense counsel did not know when the Marshalls might come to collect the machines, but attempted to make sure that it went smoothly whenever it happened. On July 17, 2020, defense counsel sent an email to plaintiffs' counsel, Mr. Williams, proposing to set up a conference call to plan for the turnover of the machines (to which Williams did not reply). (Neidl Aff. ¶18.) On July 21, defense counsel emailed a letter to the landlord and co-occupant of the Oswego facilities to inform him of the Marhsalls' arrival, and to request that the landlord comply in all respects with the Marshalls when they arrived. (Neidl Aff. ¶19.) Defense counsel also spoke with the U.S. Marshalls' office, to try to affirmatively schedule a date for the turnover of the machines. (Neidl Aff. ¶20.) Counsel was hoping to coordinate a date on which Michael Maranda could be present.

## ARGUMENT

**I  THE LEGAL STANDARDS.**

The plaintiffs rely primarily on two authorities as the basis for their claim to fees and costs: 28 U.S.C. §1927, and Rule 11 of the Federal Rules of Civil Procedure. (ECF Doc. #112.)

**Section 1927** is applicable to attorneys only, and is not a vehicle for seeking costs or sanctions against parties (or non-parties). It provides:

> Any ***attorney*** or other person ***admitted to conduct cases*** in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

4

(Emphasis added.)  See also Kim v. Kimm, 88 F.3d 98, 106 n.2 (2d Cir. 2018)(explaining that §1927 "only reaches attorneys"); Sassower v. Field, 973 F.2d 75, 80 (2d Cir. 1992)(same). Therefore, section 1927 is inapplicable to Maranda, Carter and Welsh.  Furthermore, "To impose sanctions under this provision [on an attorney], a court must find clear evidence that (1) the offending [attorney's] claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." Kim, 88 F.3d at 106. The Second Circuit has emphasized that "An award of sanctions pursuant to § 1927 must be accompanied by a finding of bad faith." McDraw, Inc. v. CIT Group Equip. Financing, 73 F.3d 1253, 1261 (2d Cir. 1996).

**Rule 11** applies to attorneys and may, in some rare circumstances, extend to the parties, but it is subject to some important limitations.  *First*, "Rule 11's application is limited to documents that are signed and *submitted to the court*." Alvarez v. 894 Pizza Corp., 2016 WL 4536574, at *4 (E.D.N.Y. Aug. 2, 2016)(emphasis added), citing Sassower, 973 F.2d 75, 79, and U.S. v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, AFL-CIO, 948 F.2d 1338, 1344 (2d Cir. 1991), and Oliveri v. Thompson, 803 F.2d 1265, 1274 (2d Cir. 1986).  As discussed further below, the plaintiffs do not complain of any document that has been submitted to the Court and, for that reason alone, Rule 11 is inapplicable. *Second*, there is a prerequisite to making a Rule 11 motion: the movant must first make a written demand that the other party withdraw the sanctionable paper and, only if the other party fails to do so within 21 days, can the movant seek relief from the Court.  See Fed. R. Civ. P. 11(c)(2); see also E.D. Capital LLC v. Bloomfield Resources, 316 F.R.D. 77, 82-83  (E.D.N.Y. 2016).  Here the plaintiffs do not contend that they served any 21 day demand (nor did they).  *Third*, even when those conditions are met, courts exercise the Rule 11 sanction authority "with restraint." E.D. Capital, 316 F.R.D. at 81,

citing Perez v. Posse Comitatus, 373 F.3d 321, 325 (2d Cir.2004).  Sanctions are appropriate under the Rule only when the offending content in papers submitted to the court is objectively "frivolous, legally unreasonable, or factually without foundation."  Id.  The court must "resolve all doubts in favor of the signer" of a paper challenged under Rule 11.  Id., citing Oliveri v. Thompson, 803 F.2d 1265, 1275 (2d Cir.1986); see also McDraw, Inc. v. CIT Group Equip. Financing, 73 F.3d 1253, 1259 (2d Cir. 1996)("We have noted that Rule 11 sanctions must be imposed with caution.").

The plaintiffs' motion also briefly references two other premises for imposing sanctions: (i) "this Court's inherent power to sanction parties before it"; and (ii) "cases construing CPLR 7102."  (ECF Doc. #112.)

The Court does have **inherent** sanctioning power independent of Rule 11 and 28 U.S.C. §1927, but the standard is actually identical to the §1927 standard.  That is, "To impose sanctions under either authority, the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes" which Second Circuit defines as "bad faith."  Agee v. Paramount Communications, Inc., 114 F.3d 395, 398 (1997); see also Sorenson v. Wolvson, 170 F.Supp.3d 622, 633 (S.D.N.Y. 2016)("a finding of bad faith is a prerequisite to an award of attorney's fees under either authority").

As for the plaintiffs' reliance on "cases construing CPLR 7102" as a basis for sanctions, that is without merit.  Section 7102 does not contain any allowance an award of attorneys' fees, and the two cases that the plaintiffs cite do not suggest otherwise.  One of plaintiffs' cases—PNL Phoenix LLC v. Janton Indus., 47 Misc.3d 1208(A) (S. Ct. King's Co. 2015)—awarded the plaintiff attorneys fees in a foreclosure and replevin action only because *the parties' contract provided that the lender was entitled to attorneys' fees in any enforcement action*.  The plaintiffs'

other case--Canusa Corp. v. A&R Lobasco, 986 F.Supp. 723 (E.D.N.Y. 1997)—was about the availability of attorneys' fees under Maryland replevin statutes. It is not at all instructive here.

## II.   THE MOTION MUST BE DENIED AS TO CARTER, MARANDA AND WELSH.

### A.   28 U.S.C. §1927 and Rule 11 Are Inapplicable

As a threshold matter, there is no basis for imposing sanctions on Carter, Maranda and Welsh under 28 U.S.C. §1927 or Rule 11. As noted §1927 only applies to attorneys. Kim, 88 F.3d at 106 n.2; Sassower, 973 F.2d 80. Rule 11 applies only to the signer of a paper or pleading submitted to the Court and, even then, only after the signer has failed to withdraw the offending paper within 21 days' of the movant's demand. Alvarez, 2016 WL 4536574, at *4; Fed. R. Civ. P. 11(c)(2); E.D. Capital, 316 F.R.D. at 82-83. Carter, Maranda and Welsh are not attorneys. The plaintiffs' motion does not complain of any paper or pleading signed by them, or their attorneys, submitted to the Court. Moreover, the plaintiffs do not contend that they made a 21-day demand to Carter, Maranda or Welsh, either directly or through their attorneys. Therefore, these authorities have no application.

### B.   The Plaintiffs Have Not Carried Their Burden of Demonstrating a Basis for Sanctions Under the Court's Inherent Power.

As noted, in order to win sanctions under the Court's separate "inherent power," the movant must prove that: (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes, *i.e.*, it acted in "bad faith." Agee, 114 F.3d at 398; Sorenson, 170 F.Supp.3d at 633.

This doctrine is also inapplicable to Maranda, Carter and Welsh for several reasons.

First, this doctrine does not reach Welsh, because she is not a party to the action. The "inherent authority" to sanction only extends to "a *party* who litigates in bad faith," as an incident to the Court's "power to regulate the conduct of the *parties* before" it. Sierra Club. v. U.S. Army

7

Corps. of Engineers, 776 F.2d 383, 389 (2d Cir. 1985)(emphasis added).  The plaintiffs have not cited any authority suggesting that the Court has the "inherent authority" to sanction persons who are not parties, and who were not parties at the time of the allegedly offensive conduct.

The doctrine is also inapplicable to all of the respondents because the plaintiffs' motion does not complain about "meritless *claims*" asserted by the defendants.  Agee, 114 F.3d at 398. Rather, what they really complain about is: (i) the defendants did not turn over the miner devices in 2019 on demand, necessitating the plaintiffs to bring suit and seek replevin in 2019, which was unsuccessful because the machines were not at the Coxsackie location where the plaintiffs attempted to replevy (ECF Doc. #112); and (ii) that the miners were allegedly not at two locations in Oswego when the plaintiffs replevied there in July 2020 (ECF Doc. #4).  Neither one of those episodes involved frivolous or vexatious "claims" by the defendants.

        **1.**      **The 2019 Allegations**

Most of what the plaintiffs complain about from 2019 goes to the underlying merits of the case, which are still in dispute.  Defendant Maranda denied the plaintiffs' demand for a return of the machines in 2019 because, according to Maranda, NWM incurred hundreds of thousands of dollars in expenses building out its facility to host Serenity's machines, and setting up, programming and arranging the machines for operation, only to have Serenity try to back out of the hosting services contract at the last minute. (Maranda Aff. ¶¶5-7.)  Someday a jury will render a verdict on whether NWM's retention of the machines was a lawful exercise of its rights as a lienor (see N.Y. Lien Law §180) or a tortious act of conversion. But Serenity's demand for sanctions now presupposes that verdict.  There is no record before the Court that would allow for summary judgment-type relief of that nature.  Indeed, Serenity's motion is supported only by attorney affirmation of its counsel, Mr. Williams (entitled "Motion for Attorney Fees and Costs,"

8

ECF Doc. #112) which lacks any evidentiary value. Ciaprazi v. Goord, 2005 WL 3531464, at *7, n.8 (N.D.N.Y. Dec. 22, 2005); Rand v. Birbbrower Montalbano, Condon & Frank, 149 F.Supp.2d 96, 98 (S.D.N.Y. 2001).

Another part of Serenity's complaint about 2019 is that the mining devices were not in Coxsackie when Serenity and the Marshalls went there in May 2019 to replevy the machines. (EDC Doc. #112, pg. 3.) Mr. Williams baldly alleges in his affirmation that the defendants moved the machines out of the Coxsackie location to avoid replevin. But that is completely unfounded. Mr. Williams does not offer any evidence that any machines were moved out of Coxsackie after the Court issued its 2019 replevin order. Defendants Carter and Maranda both attest in their affidavits that the machines were relocated to a facility run by Coinmint LLC (in Massena, New York) during the *first week of February 2019*, before the plaintiffs even demanded a return of the machines. (Maranda explains that he had the machines moved there in February with Serenity's consent, because Serenity decided that it could not afford to pay the energy rates in Coxsackie.) Furthermore, the plaintiffs did not even acquire jurisdiction over any of the defendants until March *2020*, when defendants Michael Maranda, NWM, MMLLC, and Hudson Data Center waived service of the Summons and Complaint pursuant to Rule 4. The docket contains no evidence that the plaintiffs ever actually served the 2019 writ of replevin on anyone (there is no affidavit of service). Thus, the defendants were not disobedient of any court order in 2019.

The plaintiffs did virtually nothing between their visit to Coxsackie in May 2019 and March 2020. The docket reflects no significant activity during that time, and no attempts to serve any defendant until March 2020 (as described above). Mr. Williams does not claim in his motion that the plaintiffs made any further demands in that time. There is no basis to award sanctions for anything that occurred in 2019.

### 2. The 2020 Allegations

With respect to 2020, Mr. Williams alleges that Serenity is entitled to fees and costs because when they visited the two Oswego sites on July 24, 2020 with the U.S. Marshalls, their machines were not there. The plaintiffs have filed a separate motion for contempt, in which they allege that the machines were in Oswego as of June 19, 2020, but the defendants committed contempt by removing them after June 19. In the instant motion for fees and costs, Serenity contradictorily alleges that the machines were never there:

> Defendants [sic] counsel knew or should have known upon reasonable investigation that Plaintiffs' bitcoin miners were not at the [Oswego] location[s] Defendants' counsels represented to the Court. In fact, it seems as if everyone else in Oswego, New York knew that Plaintiffs' miners were not at the location[s] that Defendants' counsels represented to this Court.

(ECF Doc. #112 pg. 5.)

In any event, the Court cannot award attorneys' fees and costs for this episode because there remain unresolved questions of fact about whether the machines are in Oswego or not. Defendants Maranda and Carter have submitted an opposition to the contempt motion, which includes affidavits from both of them. (ECF Doc. #117 and 118.) There are 2,051 mining devices in the two Oswego locations which Maranda swears are Serenity's, and those machines were there for the taking by the plaintiffs when they came to Oswego on July 24. (ECF Doc. #117, ¶¶2, 39.) The parties will apparently have to litigate over the identity of those machines. But an award of sanctions against the defendants now would improperly presuppose the answer to that disputed question of fact. Therefore, the motion for fees and costs against the defendants and non-party Welsh should be denied.

## III.  THE MOTION MUST BE DENIED AS TO DEFENSE COUNSEL.

The plaintiffs' motion for fees and costs against defense counsel (John Harwick, Benjamin Neidl, and E. Stewart Jones Hacker Murphy LLP) apparently focuses only on the 2020 incidents: "For clarity, Plaintiffs only seek their fees and costs incurred against Defendants' counsel in connection with the Writ of Replevin issued on July 16, 2020 and executed on July 22 [24],[4] 2020." (ECF Doc. #112, pg. 5.)  The motion as against defense counsel is completely without merit and, in fact, is frivolous.  The plaintiffs' motion does not coherently state why it is purportedly entitled to such extraordinary relief against the defendants' attorneys, and under no theory are they entitled to such relief.

### A.     Rule 11 is Inapplicable Because the Plaintiffs' Motion Does Not Implicate a Signed Paper to the Court, and the Plaintiffs Made no 21-Day Demand.

We can quickly dispose of plaintiffs' motion against defense counsel to the extent it is based on Rule 11.

Here again, "Rule 11's application is limited to documents that are signed and submitted to the court."  Alvarez, 2016 WL 4536574, at *4, citing Sassower, 973 F.2d 75, 79.  Serenity's motion does not allege that defense counsel signed and submitted any paper to the court that was objectively "frivolous, legally unreasonable, or factually without foundation."  E.D. Capital, 316 F.R.D. at 81.  The motion makes no reference to any paper signed or submitted by defense counsel, and the June 19, 2020 letter from Benjamin Neidl disclosing the two Oswego addresses was only a letter to Mr. Williams, not a paper submitted to the Court.

Furthermore, the plaintiffs do not allege that they satisfied the Rule 11 prerequisite of first demanding a retraction of the offending paper to the Court, and giving defense counsel 21 days to

---

[4]     Mr. Williams repeatedly refers to "July 22" as the date of the replevin visit to Oswego, but upon information and belief it was on Friday, July 24.

11

comply.  See Fed. R. Civ. P. 11(c)(2); E.D. Capital, 316 F.R.D. at 82-83.  Therefore, this is not a legitimate Rule 11 motion.  Even if the Neidl June 19, 2020 letter (discussed below) could be contorted into a paper signed and "submitted to the court" (which it was not) the plaintiffs have failed their burden of demonstrating that the letter was so objectively "frivolous, legally unreasonable, or factually without foundation" as to warrant the extreme measure of sanctions against an attorney.  E.D. Capital, 316 F.R.D. at 81.  The court must "resolve all doubts in favor of the signer" of a paper challenged under Rule 11.  Id.; see also McDraw, 73 F.3d at 1259.  Neidl reported the two addresses that Maranda gave him that day, and turned them around to the plaintiffs' counsel within the short timeframe allowed by the Court. There is nothing frivolous about it.

### B. There is No Basis for Sanctions Against Defense Counsel Under the Court's "Inherent Authority" or 28 U.S.C. §1927.

The test for sanctions under the Court's "inherent authority" and under 28 U.S.C. §1927 is one and the same.  "To impose sanctions under either authority, the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes" in the nature of "bad faith."  Agee, 114 F.3d at 398; Sorenson, 170 F.Supp.3d at 633 ("a finding of bad faith is a prerequisite to an award of attorney's fees under either authority").

There is absolutely nothing in the plaintiffs' motion constituting "clear evidence" of "bad faith" by defense counsel.  Defendant Maranda swears that he has 2,051 machines belonging to Serenity/Minedmap at the two disclosed locations in Oswego, and that he does not have any of their machines at any other location. (Maranda Aff. Exh. A, ¶39.)  That is 2,051 machines that are all of the same make and model that the plaintiffs allege they own, and they all basically look alike, 175 miles away from defense counsel's office.  (Id. ¶¶36-38.)  Now, the plaintiffs apparently deny

12

that those are their machines, which yields a question of fact that will ultimately have to be tried. But no matter what that verdict eventually is, the defendants' counsel were not witnesses to the parties' transaction in 2018, and do not have personal knowledge of what machines Serenity/Minedmap owns and what machines it doesn't. Defense counsel had no reason to doubt that the 2,051 machines in Oswego belong to Serenity/Minedmap. Defendants' counsel fully expected that the plaintiffs and the Marshalls would collect those machines, and affirmatively tried to facilitate that. (Neidl Aff. ¶¶ 18-20.)

To hold counsel in "bad faith" here would be tantamount to nothing short of: (a) summarily resolving the disputed fact question of whose machines are in Oswego; and (b) imputing omniscience to defense counsel. That is plainly not the standard. Respectfully, when Magistrate Judge Hummel directed defense counsel on June 19 to "to provide to plaintiffs, in a letter … The address where the machines are physically located" (ECF Doc. #76), and to do so within a mere 24 hours, we do not believe that he meant to (or could) make defense counsel strictly liable in damages in the event the plaintiffs prove those are not their machines. The plaintiffs' evidence-free motion against defense counsel is wholly devoid of merit.

## **CONCLUSION**

For the foregoing reasons, the plaintiffs' motion should be denied in its entirety.

Dated: Troy, New York  
      August 27, 2020

Respectfully submitted,

E. STEWART JONES HACKER MURPHY LLP

      */s/ Benjamin F. Neidl*  
By:    Benjamin F. Neidl  
        John F. Harwick  
*Attorneys for Defendants Northway Mining LLC, Michael Maranda, Michael Maranda LLC, Hudson Data Center Inc. and Michael Carter*  
28 Second Street  
Troy, N.Y.  12180  
(518)274-5820