UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – –  X

9384-2557 Québec Inc., a Canadian
corporation; MINEDMAP, INC., a Nevada
corporation; and SERENITY ALPHA, LLC, a
Nevada limited liability, and other similarly
situated individuals

                                        Plaintiff,         :

                            against                    :

NORTHWAY MINING, LLC, a New York
limited liability company; MICHAEL
MARANDA, an individual; MICHAEL CARTER,
an individual; CSX4236 MOTORCYCLE
SALVAGE, LLC, a New York limited liability
company; DROR SVORAI, an individual;
MINING POWER GROUP, INC., a Florida
corporation; HUDSON DATA CENTER, INC, a
New York Corporation, MICHAEL MARANDA,
LLC, a New York Limited liability company;
PORTER KING HILL CONTRACTING, LLC, a
New York limited liability company;
COINMINT, LLC, a Delaware limited liability
company; OSWEGO DATA LLC, a New York
Limited Liability Company; LORI S.
THOMPSON, LCSW, PLLC, a professional
limited liability corporation; LORI S.
THOMPSON, an individual, ANTHONY
PORTER, an individual; and DONALD
D'AVANZO, an individual

                                        Defendants.       :

:                    1:19-CV-00501-TJM-CFH


                     PLAINTIFFS' RESPONSE IN
                     OPPOSITION TO MICHAEL
                     CARTER'S MOTION TO
                     DISMISS


:                    (ECF Case)

:

—————————————————————— X

Plaintiffs, MinedMap et. al., through counsel, WILLIAMS LLP, submits this Response in Opposition to Defendant's Michael Carter Motion to Dismiss, and, in support thereof, state as follows:

4165-9203-2807, v. 1

## INTRODUCTION

Plaintiffs allege claims for RICO violation, Replevin, Civil Conspiracy, Conversion, fraudulent transfer, and unjust enrichment, against Defendant, Michael Carter.[1] Plaintiffs' allegations are set forth in Paragraphs 109 through 133, in Paragraphs 137 through 142, in Paragraphs 154 through 157, and in Paragraphs 150 through 164. Despite the details of Plaintiffs' allegations, Michael Carter relies on Iqbal and Twombly to argue that Plaintiffs' allegations against him are not sufficient as a matter of law.

Specifically, Michael Carter argues that Plaintiffs' RICO claim fails to allege a pattern of racketeering and fail to allege specific acts of racketeering in which Michael Carter engaged; that Plaintiff's civil conspiracy claim is not an independent cause of action; that Plaintiffs' conversion claim fails because Plaintiffs do not allege that they demanded the return of their bitcoin miners; that Plaintiffs' fraud claim does not allege that Carter made any fraudulent statements; that Plaintiffs do not allege constructive or actual fraudulent transfer; and that Plaintiffs do not allege a "sufficiently close relationship" with Michael Carter to sustain their unjust enrichment claim.  Michael Carter is wrong.

---

[1] Although Defendant, Michael Carter, pretends that Plaintiff alleges its fraud claim against him, Plaintiffs did not allege fraud as against Michael Carter in its Original Complaint.  Nevertheless, the Amended Complaint Plaintiffs are submitting does allege fraud against Defendant, Michael Carter.

A plaintiff properly alleges a pattern of racketeering where it alleges at least two acts of racketeering, as listed in 18 U.S.C. 1961(5), and show that the acts occurred over an extended time, or, because of the nature of the act, the act is capable of being repeated in the future. Plaintiffs here allege that Defendants, including Michael Carter, engaged in theft, wire fraud, and mail fraud by stealing Plaintiffs' bitcoin miners, using interstate commerce to sell and ship Plaintiffs' bitcoin miners to third parties, mined bitcoins from Plaintiffs' miners, and deposited the proceeds into Michael Carter and other Defendants' accounts. The foregoing allegations is sufficient under applicable United States Supreme Court and Second Circuit cases.

In addition, Plaintiffs' civil conspiracy claim is viable because it ties Michael Carter to the fraud, conversion, fraudulent transfer, among other claims.

Further Plaintiffs' claims for conversion and replevin are properly pled. Plaintiffs allege, at Paragraph 107 of their Original Complaint, that they demanded the return of their bitcoin miners. Nevertheless, New York law does not require plaintiff to ask the thieves who stole their property to first asked for the return of their property. Michael Carter does not cite such a case and Plaintiffs can find no such case.

As to Plaintiffs' claim for unjust enrichment, that claim is properly pled. The special relationship that a plaintiff must plead as set forth in Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173 (2011) is met because Plaintiffs allege that Michael Carter

is a thief and Plaintiffs are the victims of his theft.  The thief-victim relationship is a well-recognized special relationship as it relates to unjust enrichment.

Finally, Plaintiffs also properly pled their claims for fraud and fraudulent conveyance. Michael Carter is the transferee and he is liable to Plaintiffs for the properties transferred to him.

<div align="center">BACKGROUND</div>

Plaintiffs first filed their Complaint in the District Court for the Eastern District of New York, but Judge Cogan determined that venue was better in this District and transferred this matter.  This Court adopted Judge Cogan's Order and granted Plaintiffs' Emergency Motion for Replevin. See Decision & Order Granting the Motion to Adopt and Emergency Motion for Replevin, April 29, 2019, ECF No. 19; see, also, Writ of Replevin, April 29, 2019, ECF. No. 20; and Amended Writ of Replevin, May 1, 2019, ECF. No. 22.

Plaintiffs completed the USM Form 285, submitted it to the United States Marshal Service, and on May, 2, 2019, the US Marshal Service served the Writ, the Summons, and the Complaint on the property at 2 Flint Mine Road, the address from which Defendants operated.  However, on a tip from John Harwick, Esq., Defendants became aware of the Writ of Replevin issued by this Court and the impending raid by the US Marshal Service and absconded with Plaintiffs' bitcoin machines and money.

<div align="center">5</div>

Shortly after the raid, around the end of May 2019, law enforcement contacted Plaintiffs' counsel and requested information on Defendants. Because of the nature of the investigation, law enforcement requested that the undersigned not disclose the investigation or otherwise take action that would alert Defendants of investigation, until the investigation had sufficiently advanced. On July 30, 2019, the undersigned had a status conference with Judge Hummel and disclosed, under seal, the nature of the investigation. Because of that disclosure, Judge Hummel allowed the undersigned to proceed on a limited basis. On September 4, 2019, when the investigation was further along, Plaintiffs requested an ex parte telephone conference to keep the court abreast of the developments. See Ex Parte Motion Request for Telephonic Hearing, Sept. 4, 2019, ECF No. 27.

After the US Marshall served Defendants, Defendants scattered. Defendant Dror Svorai went to Ohio and did not answer calls on the telephone line he had previously used. (Dror Svorai was later arrested and jailed in Ohio). In addition, Defendant, Dror Svorai, was not at the addresses of properties he claimed to own. For their part, Defendants Michael Carter and Michael Maranda began using burner phones and changed emails. Defendants also changed addresses and made it difficult to locate them. Michael Carter, who used more burner phones than Plaintiffs can count, told

6

people that Michael Carter had gotten him involved in criminal enterprises, and that he had to move to the Philippines.

Also, after the raid, Michael Carter stated he had retained John Harwick, Esq., but Michael Carter's counsel denied that assertion and stated process was to be had on Michael Carter through him.  See Original Complaint, ¶ 11.  Thus, because Defendants went to extensive lengths to conceal their whereabouts and other contact information, Plaintiffs requested, and obtained, additional time from Judge Hummel to serve Defendants again.  Judge Hummel granted Plaintiffs' request on February 10, 2020. See Minute Order Entry on Docket Dated February 10, 2020 ("Counsel advises the Court that service is being effectuated on Defendants and proof of service will be filed accordingly. From there, the case should proceed in due course and in accordance with the Federal Rules of Civil Procedure.").

To date, all Defendants, except Dror Svorai and his companies, have been served or have waived service. Through substantial diligence, Plaintiffs obtained an address for Dror Svorai and his new companies, and Plaintiffs are on their seventh attempt at serving Dror Svorai.  Dror Svorai, who is under house arrest, will not answer the door.

<u>STANDARD OF REVIEW</u>

Under Twombly and Iqbal, a court may only dismiss a complaint where the complaint lacks sufficient factual allegations to make the claims for relief plausible.

7

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964–1965 (2007); Ashcroft v. Iqbal,

129 S. Ct. 1937, 1949–50 (2009).  A complaint is plausible on its face when the

pleader provides factual content "that allows a court to draw the reasonable inferences

that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1950.  The

pleader's job is to nudge the claims from the possible or conceivable to the plausible.

Accord, Enthone Inc. v. BASF Corp., 126 F. Supp. 3d 821, (N.D.N.Y. 2015) (McAvoy, J.)

(while Rule 8(a)(2) does not required detailed factual allegations, . . . it demands more

than an unadorned, the defendant-harmed-me-accusation."). The court must accept

the allegations in the Complaint as true.  Iqbal, 129 S. Ct. at 1949–50.

<div align="center">ARGUMENT</div>

I.    PLAINTIFFS' PROPERLY PLEADED A PATTERN OF RACKETEERING AND
      PROPERLY PLEADED MICHAEL CARTER'S INVOLVEMENT IN THE PATTERN OF
      RACKETEERRING.

To prevail on a RICO claim, the Plaintiff must demonstrate that: (i) a culpable

person; (ii) who willfully or knowingly (iii) commits or conspires to commission of

racketeering activity, (iv) through a pattern involving a separate enterprise or

association in fact, and (v) an effect on interstate or foreign commerce.  18 U.S.C.

1962(a)–(c)(2018); see, e.g., Katzman, 167 F.R.D. at 655–656.; Holmes,

2013WL5405541 at 7–9; Moss v. Morgan Stanley Inc., 719 F.2d 5, 18–19 (S.D.N.Y.

1983) (listing these elements but in a different order).

<div align="center">8</div>

Defendants argue that Plaintiffs RICO claim must fail because Plaintiffs fail to allege an open-ended or a closed-ended pattern of racketeering. Defendants also argue that Plaintiffs' fail to allege the predicate offenses with particularity as to Defendant, Michael Carter.  See Mot. to Dismiss, at 2–4.

Since the Supreme Court decided H.J. Inc. v. Northwestern Bell Tel. Co., 109 S. Ct. 2893 (1989), the Second Circuit has made clear that a plaintiff can demonstrate the continuity element of a RICO claim by alleging a closed-ended pattern of racketeering or an open-ended pattern of racketeering.  See, Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183–185 (2d Cir. 2008); First Capital Asset Mgmt. Inc. c. Satinwood, Inc., 385 F.3d 159, 181 (2d Cir. 2004); Cofacredit v. S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999).  A plaintiff alleges a closed-ended pattern of racketeering by demonstrating ". . . a series of related predicate acts extending over a substantial period of time."  Spool, supra (quotation marks omitted). Similarly, a plaintiff alleges an open-ended pattern of racketeering by alleging a "pattern of racketeering that poses a risk of continuing criminal conduct beyond the period during which the predicate acts were performed."  Spool, supra.

Here, Plaintiffs have alleged an opened-ended and a closed-ended pattern of racketeering. See Orig. Compl. at ¶¶ 15–123.  In addition, Plaintiff alleges a time place, and content of the predicate offenses, which satisfies the particularity requirement.  In

9

addition, Plaintiffs submitted their RICO Statement which further make clear their RICO allegations against all Defendants, including Defendant Michael Carter.  Thus, although Defendant Michael Carter argues that there are no predicate acts other than mail and wire fraud, Defendant Michael Carter is clearly mistaken. In fact, as Plaintiffs will demonstrate in amended pleadings and as Plaintiffs have demonstrated in their RICO Statement, Plaintiffs can demonstrate additional predicate offense for insurance fraud under 15 U.S.C.A. § 20, 15 U.S.C.A. § 65, and 12 U.S.C.A. § 16.  In addition, Plaintiffs can also demonstrate that Defendants, including Michael Carter, committed computer fraud by erasing and attempting to remark Plaintiffs' miners with forged and fake serial numbers in violation of 18 U.S.C.A. § 1030 et. seq., among other computer and internet crimes statutes.

Indeed, in assessing the predicates acts—stealing bitcoin miners and mining from them without turning the proceeds over to the owners—this Court will arrive at the fact that this is an act by its very nature that continues into the future.  One does not steal bitcoin miners to mine a few bitcoins because a few bitcoins are not worth as much as a lot of bitcoins mined over several years.

II.   PLAINTIFFS CORRECTLY PLEADED THEIR CIVIL CONSPIRACY CLAIM BECAUSE PLAINTIFFS' CIVIL CONSPIRACY CLAIM IS COUPLED WITH THE TORTS OF CONVERSION AND FRAUD.

Defendants' argue there is no independent claim under New York law for civil conspiracy, and so, this Court must dismiss Plaintiffs' civil conspiracy claim.  Defs. Mot. to Dismiss, at 15–16.  Defendants likely did not research this point in any detail because, although the truism Defendants cite is supported by few cases, the Encyclopedia of New York Causes of Action: Elements and Defenses makes it clear that civil conspiracy, coupled with a tort, is actionable.  In fact, the value of a civil conspiracy claim is that it connects "a defendant to someone else's fraudulent conduct."  Ernest Edward Badway, Encyclopedia of N.Y. Causes of Action: Elements and Defenses, §15-8:7 at 224–225 (N.Y. L.J. 2020 ed.) (Reciting the truism that a civil conspiracy claim is not an independent cause of action and stating: "[h]owever, New York Law would permit a conspiracy to connect a defendant to someone else's fraudulent conduct.").

In Fezzani v. Bear Stearns & Co., 592 F. Supp. 2d 410, 423 (S.D.N.Y. 2008), the District Court for the Southern District of New York recognized a civil conspiracy claim as an actionable claim when coupled with a tort:

> While New York law does not contain an actionable tort of conspiracy alone, a plaintiff may still plead the tort of civil conspiracy "in order to connect someone to an otherwise actionable tort committed by another and establish that those actions were part of a common scheme.  Thus, to state a claim for conspiracy a plaintiff must allege both a primary tort and also show the four elements of a conspiracy, namely: (1) a corrupt agreement between two or more parties; (2) an

overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.

Fezzani, 592 F. Supp. 2d at 423 (citing Lewis v. Rosenfeld, 138 F. Supp. 2d 466, 479

(S.D.N.Y. 2001).

Plaintiffs' civil conspiracy claim is tethered to numerous torts, including the

intentional tort of conversion.  Plts. Orig. Compl. at ¶¶ 175–200.

III.   PLAINTIFFS   PROPERLY   PLEADED   CLAIMS   FOR   ACTUAL   AND CONSTRUCTIVE FRADULENT TRANSFER.   IN ADDITION, DEFENDANTS, INCLUDING MICHAEL CARTER, ARE LIABLE FOR FRAUDULENT TRANSFER UNDER THE NY-UVTA AND NY-UFCA.

A fraudulent transfer may be actual or constructive.  Actual fraudulent transfer

is made, with intent, to hinder, delay, or defraud a business' creditors. See, e.g., N. Hill

Funding of N.Y., LLC v. Amincor Other Assets, Inc., 2016 Misc. Lexis 4922, *20–24 (Sup.

Ct. N.Y. County Jan. 17, 2016).  Constructive fraudulent disregards the defendant's

intent and instead focuses on whether the transfer was made without fair

consideration and whether, at or near the time of the transfer, the transferor was

insolvent, near insolvent, or rendered insolvent by the transfer.  Id.; see also, Shelly v.

Doe, 249 A.D.2d 756, 757 (3d Dept. 1998).

As Defendant, Michael Carter noted, New York Fraudulent Act ("NY-UFCA") was

changed, with the Legislature adopting portions of the Uniformed Fraudulent Transfer

Act.  Now referred to as voidable transactions, the new law that govern transfers

between parties that are suspect and makes it easier for plaintiffs to void a transaction. The Voidable Transactions Act—NY-UVTA—adopts principles used in Bankruptcy fraudulent transfer jurisprudence and relevant bankruptcy cases will be instructive. See 11 U.S.C. A. § 548 et. seq. (2020); see, e.g., UVTA § 281 (Uniformity of Application and Construction).  The UVTA applies to this case because Plaintiffs' assets are still being transferred to individuals like Michael Carter and to Michael Maranda's parents for the sole purpose of shielding Plaintiffs' assets from Plaintiffs.

Under both the NY-UFCA and the NY-UVTA, a transferee is liable for fraudulent transfers. In this case, Plaintiffs alleged that Northway and Michael Maranda transferred their miners to Michael Carter for the express purpose of defrauding, hindering, and delaying Plaintiffs' recovery of their miners.  See Original Compl. at ¶¶ 107–134.

Michael Carter's main complains that the Original Complaint does not supply sufficient facts as that transfers were made to him without fair consideration.  Mot. to Dismiss at 11–12.  However, as Plaintiffs alleged in the Original Complaint, Plaintiffs bitcoin miners where worth $900,000.00 when they purchased and shipped them to Northway et. al.  Compl. at ¶ 134.  Plaintiffs also allege that their miners, to the date of the Original Complaint, would have mined more than $8 million dollars.  So, drawing an inference as this Court must, an $8.9 million value was transferred to Defendant

13

Michael Carter for, as Plaintiffs allege, for little or no value. Neither Iqbal nor Twombly imposes a burden on Plaintiff to know, at the outset of their case, exactly what, if anything, Michael Carter paid for Plaintiffs' bitcoin miners. The point of the pleading standard, and indeed the point made by Idbal and Twombly is a plaintiff must sufficiently apprise a defendant of the nature and scope of a plaintiff's claims so that the defendant understands and defends against those claims.

Plaintiffs' Original Complaint puts Michael Carter on notice that Michael Carter received all of Plaintiffs' miners and bitcoins mined from Plaintiffs' miners without paying anything to Michael Maranda. Other than Michael Carter's citation to Safety-Kleen Systems, Inc. v. Silogram Lubricants, 2013 WL 6795963, *4 (E.D.N.Y. Dec. 23, 2013)—a one-page case that includes no analysis whatsoever and that was entered on default—Michael Carter does not provide a single relevant case and Plaintiffs can find no relevant case that support the contention Michael Carter proffers.

IV.   PLAINTIFFS PROPERLY PLEADED THEIR CLAIM FOR REPLEVIN BECAUSE, ALTHOUGH PLAINTIFFS ARE NOT REQUIRED TO, DEMANDED THE RETURN OF THEIR BITCOIN MINERS. IN ADDITION, PLAINTIFFS' CONVERSION CLAIM IS PROPER AS PLEAD BECAUSE THE FUNDS MICHAEL CARTER CONVERTED ARE SPECIFICALLY IDENTIFIABLE.

A plaintiff properly asserts a claim for replevin the plead they owned better possessory interest in the property than the defendant. General Elect. Co. v. Am. Export Isbrandtsten Lines, Inc., 37 A.D.2d 959, 959–960 (2d Dept. 1971) (holding that an

14

unlawful exercise of control over a plaintiff's property constitutes conversion: "It is not necessary that one take actual physical possession of property to be guilty of conversion. Any wrongful exercise of dominion by one other than the owner is conversion.").

Michael Carter argues that Plaintiffs did not allege that they requested the return of their miner, and that, if Plaintiffs seek funds, the funds Plaintiffs seek are not sufficiently identifiable. Mot. to Dismiss, at 7–9. Michael Carter is wrong. Plaintiffs allege that they demanded the return of their bitcoin miners to no avail. Compl. at ¶¶ 107–134. Nevertheless, New York law does not require plaintiffs to always demand their property from someone who stole that property before resulting to litigation. Michael Carter cites Pueblo Palomo v. Demaio, 403 F. Supp. 3d 42, 56 (N.D.N.Y. 2019) for the proposition that a plaintiff must first demand the return of their property, but Demaio makes no such pronouncement:

> Unless the defendant purchased the property in good faith (and Defendants admit they did not . . . .), the true owner can sue for conversion when the party in unauthorized possession of his property acts to exclude and control dominion over the property that is inconsistent with the owner's interests.

Demaio, 403 F. Supp. 3d at 56–57.

Although Demaio states that where a defendant initially comes into possession of a plaintiff's property by legal means the plaintiff must demand his property, Demaio

does not say that a plaintiff must do so before filing a suit. Id. at 56–57. Rather, the point made in Demaio is a defendant who is either a good faith purchaser or who comes into possession of a plaintiff's property without knowing the property belonged to the plaintiff, the plaintiff must alert the good faith purchaser or the good faith possessor of the true owner of the property. Id. The Defendants here neither good faith purchasers nor good faith possessors. Instead, the Defendants her are thieves with extensive criminal records who have done time in prison. The Defendants in this suit, including Michael Carter, did not come into possession of Plaintiffs' miners through "legal means." Indeed, as laid out in the Affidavit from Ryan Lehmann, which is filed with Plaintiffs' Complaint, Defendants set out to defraud Plaintiffs and others similarly situated from the inception.

Moreover, if Defendants were mere good faith purchasers or possessors of Plaintiffs' miners, Defendants would have returned Plaintiffs' miners when the US Marshal Service first attempted to seize Plaintiffs' miners from Defendants. Instead, Defendants further upstate New York. When the US Marshal Service again raided Defendants' facilities in search of Plaintiffs' miners, Plaintiffs discovered that Defendants, including Michael Carter, had switched serial numbers from other miners and placed them on Plaintiffs' miners. Defendants' ruse was discovered after the posted the same serial numbers on multiple miners.

16

As to the funds he converted from Plaintiffs, Michael Carter argues those funds are not sufficiently identifiable to support a conversion claim.  Again, Michael Carter is wrong.  All funds Plaintiffs provided to Defendants were marked as deposits for electricity.  In addition, the funds Michael Carter and the other Defendants have been mining and stealing from Plaintiffs' miners are marked and identified.  Indeed, the promise of the bitcoins and the blockchain technology that supports it is that each coin is specifically identifiable and traceable to the miner that produced it, assuming the operator of the miner is not a crook and has not tempered with the miner.  The funds Plaintiffs seek are therefore marked and identifiable. Plaintiffs can identify each bitcoin that have been mined from their miners if given access to that information.

## V.    PLAINTIFFS PROPERLY PLED THEIR CLAIM FOR UNJUST ENRICHMENT AGAINST MICHAEL CARTER BECAUSE MICHAEL CARTER CREATED A SPECIAL RELATIONSHIP WITH PLAINTIFFS WHEN HE STOLE PLAINTIFFS' MINERS.

Unjust enrichment is an equitable claim that allows a plaintiff to recover from a defendant who has been unjustly enriched at the plaintiff's expense under circumstances where it would be unjust for the defendant to keep the benefits.  Georgia Malone & Co. Inc. v. Rieder, 19 N.Y.3d 511, 516 (2012).  To prevail on a claim for unjust enrichment, the plaintiff must allege that: (i) the defendant was enriched; (ii) at the plaintiff's expense; and (iii) it is against equity and good conscience to permit the other party to retain what is sought to be recovered.  Id. at 516–517; see also, Mandarin

17

Trading Ltd. v. Wildenstein, 16 N.Y.3d 173,180–181 (2011). The New York Court of Appeals requires a sufficiently close relationship with a defendant in order to recover on a claim of unjust enrichment from the Defendant. Rieder, 19 N.Y.3d at 517.

Defendant Michael Carter argues that Plaintiffs did not have a sufficiently close relationship with him, and so, Plaintiffs cannot recover all the monies Michael Carter has stolen and is stealing from Plaintiffs. This argument is nonsense. Plaintiffs' complaint alleges that Michael Carter stole their miners; that Michael Carter knew he was stealing Plaintiffs' miners, and that Michael Carter has been mining bitcoins from Plaintiffs' miners. Under any interpretation of the unjust enrichment doctrine, Plaintiffs have properly stated a cause of action against Defendant, Michael Carter.

Moreover, the harm sought to be avoided by the New York Court of Appeals is not at play here. Defendant, Michael Carter, is not a random person who Plaintiffs have added to this suit as was closer to the case in Sperry v. Crompton Corp., 8 N.Y.3d 204, (2007), where the court barred a plaintiff from suing chemical producers because the chemical producer had no contact with the Plaintiff or with the overpriced tires the plaintiffs claim they had purchased. Sperry, 8 N.Y.3d at 209. In this case, the special relationship is that of thief and swindler to victim. Michael Carter created that special relationship and Plaintiffs can recover against him.

CONCLUSION

Based on the foregoing, Plaintiffs respectfully requests that this Court deny

Defendants' Motion to Dismiss. In addition, Plaintiffs have submitting and are renewing

their Motion to Amend their Complaint and they request that this Court grant their

Motion to Amend.


Dated as of September 24, 2020.
New York, New York

<div style="margin-left: 40%;">

RESPECTFULLY SUBMITTED,

/s/ T. Edward Williams, Esq.
T. Edward Williams, Esq. Bar No. 5634738
WILLIAMS LLP
7 World Trade Center
250 Greenwich 46th FL.
Tel: 212.634.9106
Fax: 212.202.6228
Edward.williams@wmsintl.com

</div>

4165-9203-2807, v. 1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of September 2020, this PLAINTIFF'S RESPONSE IN OPPOSITION TO MICHAEL CARTER'S MOTION TO DISMISS was served on the following individuals:

John Harwick, Esq. via ECF
Counsel for Maranda Defendants

4165-9203-2807, v. 1