UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

9384-2557 QUÉBEC INC., a Canadian corporation; MINEDMAP, INC., a Nevada corporation; and SERENITY ALPHA, LLC, a Nevada limited liability, and other similarly situated individuals,

       Plaintiffs,

 -against-

NORTHWAY MINING, LLC, a New York limited liability company; MICHAEL MARANDA, an individual; MICHAEL CARTER, an individual; CSX4236 MOTORCYCLE SALVAGE, LLC, a New York limited liability company; DROR SVORAI, an individual; MINING POWER GROUP, INC., a Florida corporation; HUDSON DATA CENTER, INC, a New York Corporation, MICHAEL MARANDA, LLC, a New York Limited liability company; PORTER KING HILL CONTRACTING, LLC, COINMINT, LLC, a Delaware limited liability company,

       Defendants.

Civ. Action No.: 1:19-CV-00501-TJM-CFH

---

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

## BY DEFENDANT MICHAEL CARTER

---

John F. Harwick, Esq.
Benjamin F. Neidl, Esq.
E. STEWART JONES HACKER MURPHY LLP
*Attorneys for Defendants Northway Mining LLC, Michael Maranda, Michael Maranda LLC, Hudson Data Center Inc. and Michael Carter*
28 Second Street
Troy, N.Y. 12180
(518)274-5820

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

REPLY ARGUMENT ............................................................................................................... 1

I. Count I Fails to State a RICO Claim ............................................................................ 1

    A. The Plaintiffs do Not Allege Legal "Continuity" ............................................ 1

    B. The FAC Does Not Plead the Alleged Predicate Acts with Particularity ...... 2

II. Count II Fails to State a Claim for Replevin ................................................................ 3

III. Count III is Improper Because There is No Independent Claim for
"Civil Conspiracy." ........................................................................................................ 5

IV. Count IV Fails to State a Claim for Conversion .......................................................... 5

    A. The Conversion Claim as to the Miners Fails Against Carter for
Reasons Previously Stated ................................................................................ 5

    B. The Conversion Claim as to Money Fails Against Carter Because
the Complaint Does Not Plead that Carter Converted Any
Identifiable Fund from the Plaintiffs. .............................................................. 6

V. Count V Does Not State a Fraud Claim Against Carter .............................................. 7

VI. Count VII Does Not State a Fraudulent Transfer Claim Against Carter .................. 7

    A. The FAC Does Not Sufficiently Allege an Actual Fraudulent
Transfer ............................................................................................................. 7

    B. The FAC Does Not Sufficiently Allege a Constructive Fraudulent
Transfer ............................................................................................................. 8

VII. Count VIII Does Not State a Claim for Unjust Enrichment ....................................... 9

CONCLUSION ........................................................................................................................ 10

**TABLE OF AUTHORITIES**

**Page**

**Cases**

Abramo v. Teal, Becker & Chiarmonte, 713 F.Supp.2d 96, 110 (N.D.N.Y. 2010) ........................ 1

Albunio v. Int'l Safety Grp., 15-CV-152, 2016 WL 1267795 (S.D.N.Y. Mar. 30, 2016) ............. 2

Amaker v. Kelly, 2009 WL 385413 (N.D.N.Y., Feb. 9, 2009) ....................................................... 2

Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229 (2d Cir. 1999) ......................... 1

Cohen v. Dunne, 2017 WL 4516820 (S.D.N.Y. Sep. 27, 2017)............................................... 3, 10

Corporate Trade, Inc. v. Golf Channel, 2013 WL 5375623 (S.D.N.Y., Sep. 24, 2013)................. 5

Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473 (2d Cir. 2014)....................................... 3

Dechter v. Second Nature Therapeutic Program, 42 F.Supp.3d 450 (E.D.N.Y. 2014) .................. 5

DeFalco v. Bernas, 244 F.3d 286 (2d Cir. 2001)............................................................................ 1

Fantozzi v. Axys Tech., 2008 WL 4866054 (S.D.N.Y. Nov. 6, 2008)............................................ 6

First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004).......................... 1

Georgia Malone & Co. v. Rieder, 19 N.Y.3d 511 (2012).............................................................10

Grace Int'l Assemby of God v. Festa, 2019 WL 1369000 (S.D.N.Y. Mar. 26, 2019) ............... 2, 3

Heap v. Centurylink, Inc., 2020 WL 1489801 (S.D.N.Y. Mar. 27, 2020) ..................................... 6

In re North Sea Brent Crude Oil Futures Litig., 256 F.Supp.3d 298 (S.D.N.Y. 2017) ................ 10

In re Tribune Company Fraudulent Con. Litig., 2017 WL 82391 (S.D.N.Y. Jan. 6, 2017)........... 8

Innovative Custom Brands v. Minor, 2016 WL 308805 (S.D.N.Y. Jan. 25, 2016)........................ 8

Kirch v. Liberty Media, 449 F.3d 388 (2d Cir. 2006) .................................................................... 5

Lerner v. Fleet Bank, N.A., 459 F.3d 273 (2d Cir. 2006)............................................................... 3

Payday Advance Plus, Inc. v. Findwhat.com, Inc., 478 F.Supp.2d 496 (S.D.N.Y. 2007) ............. 5

Press Access v. 1800 Postcards, 2012 WL 4857547 (S.D.N.Y. Oct. 9, 2012).............................. 3

Safety-Kleen Systems, Inc. v. Silogram Lubricants, 2013 WL 6795963 (E.D.N.Y. Dec. 23, 2013) ................................................................................................................................................ 4

Spoto v. Herkimer County Trust, 2000 WL 533293 (N.D.N.Y, Apr. 27, 2000) ............................ 3

United States v. Aulicino, 44 F.3d 1102 (2d Cir. 1995) ................................................................ 2

Wee v. Rome Hosp., 1996 WL 191970 (N.D.N.Y., Apr. 15, 1996) ............................................... 1

**Statutes and Rules**

Federal Rule of Civil Procedure 9(b) ..................................................................................... 2, 8

N.Y. C.P.L.R. §7101 ..................................................................................................................... 3

N.Y. Debtor & Creditor Law §273(a)(1) ..................................................................................... 8

**Rules**

In re Tribune Company Fraudulent Conveyance Lit., 2017 WL 82391, at *4 (S.D.N.Y. Jan. 6, 2017) .......................................................................................................................................... 8

# REPLY ARGUMENT

I.     COUNT I FAILS TO STATE A RICO CLAIM.

    A.    **The Plaintiffs do Not Allege Legal "Continuity."**

The First Amended Complaint ("FAC") does not allege *closed-ended continuity*, which means that the alleged racketeering activity occurred "over a substantial period of time." First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 180 (2d Cir. 2004). "[P]redicate acts extending over a few weeks or months" are insufficient. Wee v. Rome Hosp., 1996 WL 191970, at *5 (N.D.N.Y., Apr. 15, 1996). "The Second Circuit "has never found a closed-ended pattern where the predicate acts spanned fewer than two years." Abramo v. Teal, Becker & Chiarmonte, 713 F.Supp.2d 96, 110 (N.D.N.Y. 2010), citing First Capital Asset Mgmt., 385 F.3d at 181; see also DeFalco v. Bernas, 244 F.3d 286, 321 (2d Cir. 2001)(collecting cases). Here, the plaintiffs only vaguely allege that "defendants" sent fraudulent or misleading text message or emails on four dates between August 2018 and November 2018. (FAC ¶158.) The plaintiffs' RICO Statement briefly and vaguely mentions some other text messages from January 2019 (ECF Doc. #59 pg. 14) but, even crediting those allegations, it only extends the alleged predicate acts by a span of a few months, all of which is well below the two year minimum generally accepted in this Circuit. The plaintiffs' opposition simply ignores this.

The FAC also does not allege *open-ended continuity*. Open-ended continuity means that the defendant's racketeering acts were accompanied by a threat of serious crimes in the future. The plaintiff "must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999). But this theory only applies to alleged criminal enterprises engaged in the traditional "organized crime" mold engaged in "inherently unlawful' criminal activities … such as *murder*, *obstruction of justice, narcotics trafficking, embezzlement, extortion,*

1

*bribery, and money laundering.*" Albunio v. Int'l Safety Grp., 15-CV-152, 2016 WL 1267795, at *7 (S.D.N.Y. Mar. 30, 2016)(emphasis added); see also United States v. Aulicino, 44 F.3d 1102, 1111 (2d Cir. 1995); Spoto, 2000 WL 533293, at *5.  Importantly—and this is critical—"*Ordinary fraud supported by wire fraud predicates are not 'inherently unlawful' for purposes of RICO continuity*." Grace Int'l Assemby of God v. Festa, 2019 WL 1369000, at *8 (S.D.N.Y. Mar. 26, 2019), citing Aulicino, 44 F.3d at 1111.  Here, the only predicate acts alleged are mail and wire fraud.  (FAC ¶158.)

In opposition, the plaintiffs do not dispute this legal premise.  Instead they apparently argue that in the future they may be able to meet this test "in amended pleadings" (ECF Doc. #131 pg. 10), and that they can "demonstrate that Defendants, including Michael Carter, committed computer fraud by erasing and attempting to remark Plaintiffs' miners with forged and fake serial numbers in violation of 18 U.S.C.A. §1030 eq seq." (*Id.*)  That is nonsense.  For one thing, the computer fraud assertion—which does not appear in the pleading and is not supported by any proffer of evidence—is completely vague and, even if the plaintiffs had pled it, it obviously would be insufficient to meet the plausibility pleading standard of Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), much less the heighted Rule 9(b) pleading standard applicable to RICO claims.  See Amaker v. Kelly, 2009 WL 385413, at *11 (N.D.N.Y., Feb. 9, 2009).  Moreover, the plaintiffs do not offer even a rudimentary explanation about how *allegedly* scraping off and re-writing serial numbers satisfies the elements of 18 U.S.C. §1030, which is concerned with certain types of unauthorized access to and use or transmission of data *in* a computer (not exterior damage).

**B.     The FAC Does Not Plead the Alleged Predicate Acts with Particularity.**

A RICO claim is "subject to the heightened requirement that its supporting allegations must be pleaded with particularity" pursuant to Federal Rule 9(b).  Amaker, 2009 WL 385413, at *11.

2

"[G]iven the routine use of mail and wire communications in business operations, ... 'RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." Grace International Assembly of God v. Festa, 2019 WL 1369000, at *5 (E.D.N.Y. 2019), citing Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 489 (2d Cir. 2014). "[T]he complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006); see also Grace International, 2019 WL 1369000; Spoto v. Herkimer County Trust, 2000 WL 533293, at *5 (N.D.N.Y, Apr. 27, 2000).

The plaintiffs only allege in bare terms that that "Defendants" sent some emails or texts in September and November 2018 and January 2019 that contained "fraudulent misrepresentations," but they largely do not specify which defendants sent communications to which plaintiffs and do not explain how those particular communications were false. (FAC ¶158 [ECF Doc. #29], RICO Statement pg. 14 [ECF Doc. #59].)  Accordingly, the RICO claim should be dismissed.

**II.   COUNT II FAILS TO STATE A CLAIM FOR REPLEVIN.**

A replevin plaintiff must allege: "(1) that it has a superior possessory right to the chattel, and (2) that it made a demand for possession of the chattel from the defendant." Press Access v. 1800 Postcards, 2012 WL 4857547, at *1 (S.D.N.Y. Oct. 9, 2012), citing N.Y. C.P.L.R. §7101. Id. "Demand for the return of chattel is thus a necessary element to a claim of replevin." Id.; see also Cohen v. Dunne, 2017 WL 4516820, at *6 (S.D.N.Y. Sep. 27, 2017).

The FAC alleges (incorrectly) that Northway Mining transferred the plaintiffs' machines to Michael Carter in March 2019 (FAC ¶113) but it does not allege that the plaintiffs ever demanded that Carter return their machines.  In their opposition, the plaintiffs contend that they

3

"allege that they demanded the return of their bitcoin miners to no avail" (ECF Doc. #131 pg. 15) citing ¶¶107 – 134 of the FAC, but none of those paragraphs (or any other part of the FAC) allege that the plaintiffs demanded anything of Carter.  The FAC does allege that the plaintiffs demanded return of the miners from defendants *Maranda and Northway Mining* (FAC ¶¶109 - 110), but not Carter.  The plaintiffs do not allege that they made any attempt to reach Carter, or that he even knew the machines were theirs (the FAC conclusorily alleges that "Carter and other third parties knew that the Miners did not belong to Northway or Maranda," ¶127, but does not allege that he knew that the alleged machines belonged to the plaintiffs).

The plaintiffs also apparently argue that they were relieved of the demand-and-refusal requirement because Carter is allegedly a "thief."  But the FAC does not allege in any particular way that Carter actually knowingly stole the machines (or any factual basis for the belief that he had them).  Again, the FAC only goes so far as to say that Northway Mining transferred the machines (FAC ¶113) and vacuously alleges that Carter "knew that the Miners did not belong to Northway" (Id. ¶127)  Even if the pleading alleged some factual basis to infer that Carter knew that (which it does not) that does not mean that Carter knew the machines belonged to the plaintiffs, or that he would have denied the plaintiffs the machines if they demanded them.

Finally, the plaintiffs do not meaningfully address Carter's other reason for dismissing this claim, which is that the "Complaint offers no factual allegations that would indicate why plaintiff believes that such transfers to [Carter] occurred."  <u>Safety-Kleen Systems, Inc. v. Silogram Lubricants</u>, 2013 WL 6795963, at *9 (E.D.N.Y. Dec. 23, 2013). In other words, why do the plaintiffs think that Carter of all people actually has (or ever had) the machines?  The plaintiffs have been all over the place in their contentions about the machines.  The FAC itself later alleges that *Northway Mining* is still holding the machines.  (FAC ¶132.)  They have a motion to amend

4

the Complaint (yet again) pending in which they propose to add numerous other defendants whom they speculate have the machines. (ECF #50.) The plaintiffs executed a writ of replevin on July 24, 2020 for two locations in Oswego maintained by defendant Michael Maranda LLC (not Carter) because they contended that *Maranda* has the machines.[1] To attach this particular claim to this particular defendant (Carter), the plaintiffs are obliged to plead "[f]actual allegations [sufficient] to raise a right to relief above the speculative level." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The pleading does not do that.

### III. COUNT III IS IMPROPER BECAUSE THERE IS NO INDEPENDENT CLAIM FOR "CIVIL CONSPIRACY."

"New York does not recognize an independent tort of conspiracy." Kirch v. Liberty Media, 449 F.3d 388, 401 (2d Cir. 2006). We do not dispute that a defendant's conspiracy to commit some other, underlying tort may make him or her a tortfeasor, *liable for that other tort* as a conspirator. Payday Advance Plus, Inc. v. Findwhat.com, Inc., 478 F.Supp.2d 496, 506 (S.D.N.Y. 2007). But Count III is not pled as "fraud on the basis of conspiracy" or "conversion on the basis of conspiracy" or anything of the sort (and the plaintiffs already separately plead those claims against Carter in Counts IV and V). It is pled in boilerplate fashion just as "civil conspiracy," as though that were a cause of action unto itself, which it is not. Therefore, it should be dismissed. Dechter v. Second Nature Therapeutic Program, 42 F.Supp.3d 450, 463-64 (E.D.N.Y. 2014).

### IV. COUNT IV FAILS TO STATE A CLAIM FOR CONVERSION.

**A.   The Conversion Claim as to the Miners Fails Against Carter for Reasons Previously Stated.**

---

[1]   During that visit, Michael Maranda LLC was ready, willing and able to turn over more than 2,000 machines to the U.S. Marshalls, but the plaintiffs declined because they deny those are their machines. Those machines are still in Oswego.

The conversion claim fails to state a claim against Carter for reasons we set forth in our initial moving papers and which we also repeat in this reply concerning the replevin claim, above (as there are overlapping reasons to dismiss both conversion and replevin). Namely, the FAC does not sufficiently plead a plausible factual basis for the plaintiffs' alleged belief that Carter has or ever had their machines and, in any event, they do not allege that Carter refused a demand.

**B.     The Conversion Claim as to Money Fails Against Carter Because the Complaint Does Not Plead that Carter Converted Any Identifiable Fund from the Plaintiffs.**

To the extent the conversion claim seeks to recover income "money" (¶178) against Carter, it is also defective for the separate and distinct reason that the plaintiffs never owned or possessed the alleged income. "[A] conversion claim for money only survives if [the] plaintiff had ownership, possession or control of the money prior to the conversion." Heap v. Centurylink, Inc., 2020 WL 1489801, at *18 (S.D.N.Y. Mar. 27, 2020); see also Fantozzi v. Axys Tech., 2008 WL 4866054 at *9 (S.D.N.Y. Nov. 6, 2008). In other words, the money must be a "specifically identifiable" fund or account "and there is an obligation to return it or treat it in a particular manner," like a trust fund, escrow or something of the sort. Krasner, 2012 WL 4069294, at *7. The FAC does not allege that plaintiffs entrusted Carter with any money or type of fund.

In opposition, the plaintiffs argue that "All funds Plaintiffs provided to Defendants were marked as deposits for electricity." (ECF Doc. #131, pg. 17.) But the FAC does not allege that the plaintiffs paid *Carter* any deposits for electricity—it alleges that they paid *Northway Mining* those deposits. (FAC ¶¶38, 39, 41, 88, 89.) And the pleading does not allege that Northway Mining transferred those deposits to Carter, or that he ever possessed or controlled them. The plaintiffs also argue without basis that Carter has earned bitcoins by running their machines (which is denied). But even if that were true, that is not money that the plaintiffs ever had "ownership,

6

possession or control of" at any time (Heap, 2020 WL 1489801, at *18) and, therefore, are not an appropriate subject of a conversion claim.

## V.   COUNT V DOES NOT STATE A FRAUD CLAIM AGAINST CARTER.

Our motion seeks dismissal of the fraud claim (County V) as against Carter, for the reasons stated in our opening papers. The plaintiffs do not address our arguments as to fraud. Rather, in footnote 1 of their opposition they contend: "Although Defendant, Michael Carter, pretends that Plaintiff alleges its fraud claims against him, Plaintiffs did not allege fraud as against Michael Carter in its Original Complaint. Nevertheless, the Amended Complaint Plaintiffs are submitting does allege fraud against Defendant, Michael Carter." (ECF Doc. #131 pg. 3.)

The plaintiffs appear to be confused about which Complaint is the subject of this motion. This motion does not seek dismissal of the "Original Complaint" (ECF Doc. #2.). The plaintiffs themselves superseded and nullified the Original Complaint on March 12, 2020, by filing the First Amended Complaint (FAC) as of right, ECF Doc. #29. This motion, therefore, seeks dismissal of the *First Amended Complaint* (not the Original Complaint), as our Notice of Motion plainly states (ECF Doc. #113).[2] The First Amended Complaint purports to state Count V for fraud "Against All Defendants," including Carter. Thus, we seek dismissal. Inasmuch as the plaintiffs have not substantively answered our arguments, there appears to be nothing further to reply to here.

## VI.   COUNT VII DOES NOT STATE A FRAUDULENT TRANSFER CLAIM AGAINST CARTER.

### A.   The FAC Does Not Sufficiently Allege an Actual Fraudulent Transfer.

---

[2] The plaintiffs may be thinking of their proposed *Second* Amended Complaint (ECF Doc. #51-3), which is in suspense because that contested motion to amend is still pending. In any event, their current pleading—the First Amended Complaint (ECF Doc. #29)—does purport to plead a fraud claim against "all defendants" in Count V.

7

An actual fraudulent transfer claim requires the plaintiff to plead and prove the defendant disposed of his assets (or accepted assets from a debtor looking to dispose of them) with "***actual intent*** … to hinder, delay, or defraud either present or future creditors []." See former N.Y. Debtor & Creditor Law §276 (emphasis added).³  To state a claim, the complaint must satisfy the heightened pleading standard of Rule 9(b).  See In re Tribune Company Fraudulent Conveyance Lit., 2017 WL 82391, at *4 (S.D.N.Y. Jan. 6, 2017); Innovative Custom Brands v. Minor, 2016 WL 308805, at *2 (S.D.N.Y. Jan. 25, 2016).  This requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake," and "*allege facts* that give rise to a strong inference of fraudulent intent" by the defendant.  Tribune Company, 2017 WL 82391, at *4.  The plaintiff must "plead with specificity when, how often, or in what amounts the allegedly fraudulent conveyances took place."  Innovative Custom Brands, 2016 WL 308805, at *2.

The FAC clearly does not meet that standard.  The allegation that Carter received machines from Northway that he "knew" did not belong to Northway (¶127) is conclusory, unexplained, and certainly does not "*allege facts* that give rise to a strong inference of fraudulent intent." Tribune Company, 2017 WL 82391, at *4.  Other than to vaguely allege that Carter received an unknown number of machines from Northway in March 2019 (¶113), the pleading does not "plead with specificity when, how often, or in what amounts the allegedly fraudulent conveyances took place." Innovative Custom Brands, 2016 WL 308805, at *2.  Nothing in the plaintiffs' opposition corrects these shortfalls.

**B.     The FAC Does not Sufficiently Allege a Constructive Fraudulent Transfer.**

---

³     As explained in our initial papers, this claim is governed by former Article 10 of the N.Y. Debtor & Creditor Law because, based on the date of the pleading, the alleged transfers would have had to have occurred before former Article 10 was replaced by the New York legislature effective in April 2020.

A constructive fraudulent conveyance claim (*i.e.*, based on a transfer made by an insolvent debtor without fair consideration) is not necessarily subject to a Rule 9(b) pleading standard, but it still must plead at least sufficient details to meet the plausibility threshold of Twombly.  One of the most specific cases from this Circuit (that we have found) about applying this pleading standard to such a claim is Safety-Kleen Systems, Inc. v. Silogram Lubricants, 2013 WL 6795963 (E.D.N.Y. Dec. 23, 2013), which held that the pleading must at least allege "factual allegations that would indicate why plaintiff believes that such transfers to [the defendants] occurred or the factual basis for the belief that these transfers were made without fair consideration."  Id. at *9.  That case also held that the complaint must offer some "degree of specificity when the transfers occurred, how much money was involved in the transfers, or the basis upon which plaintiff believes that the transfers were made without consideration."  Id.  See also Amusement Indus., Inc. v. Midland Ave. Assoc., 820 F.Supp.2d 510, 528 (S.D.N.Y. 2011)("The complaint does little to allege with specificity that any money paid to Stephen Stern was without fair consideration.").  This is consistent with Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The FAC does not plead any of those details here.  It does not allege what the factual basis is for the plaintiffs' belief that any defendant transferred assets to Carter, nor any factual basis for the belief that the alleged transfer was made by an insolvent without fair consideration.  In opposition, the plaintiffs do not deny any of that, they simply dismiss Safety-Kleen as a "one page case that includes no analysis whatsoever and that was entered on default."  (ECF Doc. #131, pg. 14.)  Safety-Kleen is actually a ten page case, contains a thorough analysis of constructive fraudulent transfer, and it was *not* entered on default.  We submit that the case is very instructive, and we note that the plaintiffs cite no contrary cases of their own.

**VII.   COUNT VIII DOES NOT STATE A CLAIM FOR UNJUST ENRICHMENT.**

"A plaintiff cannot succeed on an unjust enrichment claim unless "*it has a sufficiently close relationship with the other party*." Cohen v. Dunne, 2017 WL 4516820, at *4 (S.D.N.Y. Sep. 27, 2017) (emphasis added). "The New York Court of Appeals has held that a relationship is too attenuated where the parties *simply had no dealings with each other*, and the complaint *did not allege that the parties had any contact*" in the underlying transactions. Id. (emphasis added), citing Georgia Malone & Co. v. Rieder, 19 N.Y.3d 511, 516 (2012)(the "pleadings failed to indicate a relationship between the parties *that could have caused reliance or inducement*" [emphasis added]); see also In re North Sea Brent Crude Oil Futures Litig., 256 F.Supp.3d 298, 315 (S.D.N.Y. 2017). The FAC does not allege that Carter and the plaintiffs had any dealings with each other. It certainly does not allege that they enjoyed any contact that "could have caused reliance or inducement." In opposition, the plaintiffs cite no authority, but argue that the "special relationship" that the plaintiffs have with Carter is "that of thief and swindler to victim." That label is vacuous. The plaintiffs can call Carter a thief or swindler all they want, but the *factual allegations of the FAC* show plead no "contact" between the plaintiffs and Carter, and no words or deeds by Carter to cause reliance or inducement. Thus, the unjust enrichment claim fails.

## CONCLUSION

For the foregoing reasons, defendant Michael Carter's motion to dismiss should be granted.

Dated: Troy, New York  
       October 1, 2020

Respectfully submitted,

E. STEWART JONES HACKER MURPHY LLP

    */s/ Benjamin F. Neidl*  
By:   Benjamin F. Neidl  
       John F. Harwick  
*Attorneys for Defendants Northway Mining LLC,*  
*Michael Maranda, Michael Maranda LLC, Hudson*  
*Data Center Inc. and Michael Carter*  
28 Second Street  
Troy, N.Y. 12180, (518)274-5820