# E. STEWART Jones Hacker Murphy LLP
ATTORNEYS & COUNSELORS AT LAW

Please send all mail to:
**TROY OFFICE**

28 SECOND STREET
TROY, NY 12180
PHONE: (518) 274-5820

200 HARBORSIDE DRIVE, SUITE 300
SCHENECTADY, NY 12305
PHONE: (518) 783-3843

511 BROADWAY
SARATOGA SPRINGS, NY 12866
PHONE: (518) 584-8886

1659 CENTRAL AVENUE, SUITE 103
ALBANY, NY 12205
PHONE: (518) 486-8800

FAX: (518) 274-5875

www.joneshacker.com

October 19, 2020

**VIA ECF FILING**
Hon. Thomas J. McAvoy
United States District Court Judge
United States District Court—NDNY
James T. Foley Courthouse
Albany, N.Y.  12207

Re:     Serenity Alpha LLC et. al. v. Northway Mining LLC, et al.
        Case No.: 19-cv-00501

Dear Judge McAvoy:

      This letter is in response to the plaintiffs' request for a court conference (ECF Doc. #34).  We agree that it is appropriate for the parties to conference this matter with the Court, and our firm will continue to hold the $197,275 that Mr. Williams refers to, in escrow pending further instruction from the Court.  In a conference, the parties may be able to stipulate to the disposition of that money for the time being or, failing that, we can settle the issue through formal motion practice.

      To elaborate on what Mr. Williams addressed in his conference request.  On April 23 there was a power surge at our client's Oswego mining facility that caused widespread damage there.  Our client referred the entire loss to its insurance carrier, and worked with a public adjuster to evaluate the damage and catalogue the loss.  Our client informed us at the end of September that the carrier had determined that 607 S9/S9J bitcoin miners at the premises were damaged in the surge and had determined to indemnify for the loss of those machines in the amount of $197,275.00.  Because there are disputed fact questions about whose machines those were (discussed further below), we arranged for our client to deposit the $197,275 in our firm trust account in the interim, and we informed Mr. Williams about these proceeds and our firm's custody of them on October 2, 2020.  We continue to hold the funds in escrow presently, and would look forward to conferencing with the Court regarding what should occur next with them.

      With regard to Mr. Williams' demand that we immediately pay over the $197,275 to his clients, that would be improper for two reasons.

      First, there are disputed questions of fact as to whether or not the plaintiffs own or owned the 607 damaged S9/S9J machines that produced this insurance money.  These 607 machines were among the 2,051 S9/S9J machines in Oswego that the defendants have maintained were the plaintiffs' machines, and which the defendants had palleted to turn over to the U.S. Marshalls willingly when the Marshalls arrived to execute the writ of replevin on July 24, 2020.  However, as the Court will recall, the plaintiffs visited the Oswego site with the Marshalls on July 24; the plaintiffs purported to have inspected the machines and reported to the Court none of those machines are theirs.  (*See* ECF Doc. #109 and Doc. #110, pg. 3.)  That fact question remains unresolved.  If the damaged machines were not the plaintiffs', then then they have no claim to the insurance proceeds.  So, pending resolution of those fact issues, the insurance proceeds are not payable to the plaintiffs.

      Second, even if we assume that the damaged machines were the plaintiffs,' we would still dispute a summary turnover of the insurance proceeds to them.  The claims and defenses in this case are far from

*John F. Harwick, Esq.*

fully litigated, but the defendants maintain that they held the plaintiffs' machines under a claim of right pursuant to N.Y. Lien Law §180, as a remedy for major expenditures that the defendants made to program the machines and situate them for operation before the plaintiffs putatively cancelled the transactions in violation of their contracts. Although the defendants were ready, willing and able to turn over the machines to the Marshalls on July 24, 2020, if the plaintiffs had proceeded with a request for an order of seizure after that, the defendants would have objected to a release of the machines *to the plaintiffs themselves* until the plaintiffs posted an undertaking compliant with CPLR Articles 25 and 71.[1] (That ended up becoming moot because the plaintiffs dispensed with seeking an order of seizure, after reporting that none of the machines in Oswego were theirs [ECF Doc. #109]. The machines are still in Oswego.) We take the same position with regard to the $197,275. If the plaintiffs want a turnover of those funds, they should be required to post a bond securing that amount, in the event that the final judgment in this case finds that the defendants had a lawful right to that property.

When we reached out to Mr. Williams on October 2, we advised him that we could continue to hold the funds in escrow pending the action, or that we could pay them into Court if that was the plaintiffs' preference. Mr. Williams did not express a preference between those two options, and instead only demanded that we pay the $197,275 over to him for distribution to his clients—for reasons summarized above, we have declined to do that. Having reached an impasse with Mr. Williams, we suggested to him on Friday October 16 that he proceed with seeking a pre-motion conference on this issue before resorting immediately to making a motion, and urged him to do it before the end of this week so that we are not indefinitely holding these funds in escrow under disputed circumstances. The parties' mediation concluded on October 16 without a settlement, and it now appears that the unresolved fact questions may remain that way for some time, so it is an appropriate moment for the parties and the Court to conference whether this insurance money should continue to be escrowed and, if so, by whom and how. In the meantime, we continue to hold the funds in our attorney escrow account and will do so unless and until the Court orders otherwise.

Sincerely,

E. STEWART JONES HACKER MURPHY LLP

_____
John F. Harwick, Esq.
Jharwick@joneshacker.com
Direct Dial: (518) 213-0113

---

[1] The CPLR requires that the undertaking surety either be an insurance company, or a domiciliary of New York State who pledges real property in New York as security for the undertaking. See CPLR §§2502 and 2503. The undertaking that the plaintiffs posted at the outset of this case did not meet those requirements, it was essentially an unsecured promise by non-New York domiciliaries. (ECF Doc. #21.)