

New York, October 20, 2020

<u>VIA ECF</u>
Hon. Thomas J. McAvoy
United States District Judge
United States District Court—NDNY
James T. Foley Courthouse
Albany, New York, 12207

**RE: Serenity Alpha LLC et. al. v. Northway Mining LLC et. al., Case No. 19cv00501,** *Reply in Support of Letter Request for Court Conference.*

Dear Judge McAvoy:

Defendants advance two arguments in their October 20, 2020 Letter but neither argument should prevent the release of the $197,275.00 to Plaintiffs.

First, Defendants argue there is a factual dispute about the ownership of the miners destroyed by the power surge on April 23, 2020 because, when this Court issued the second Writ of Replevin and when Plaintiffs appeared at Defendants property, Plaintiffs refused to take the miners Defendants identified as belonging to Plaintiffs. Second, Defendants argue that they have an Artisan Lien on the $197,275.00 under Section 180 of the New York Lien Law. Defendants are wrong and their arguments are frivolous.

Plaintiffs did not pick up the Miners that Defendants identified as belonging to Plaintiffs because those miners did not have serial numbers on them, and, under this Court's order and under CPLR § 7102, the US Marshal Service could not pick up those miners unless it could identify the miners by the serial numbers. Defendants were the reason why Plaintiffs could not take their miners. In any event, Defendants confirmation that the miners destroyed in the April 23, 2020 power surge belongs to Plaintiffs is sufficient for purposes of releasing the $197,275.00 to Plaintiffs.

7 World Trade Center | 250 Greenwich Street, 46th Floor | New York, NY 10007
T: 212.634.9106 | F: 212.634.9106 | W: www.wmsintl.com





In addition, and as detailed below, Defendants do not have an Artisanal Lien under Section 180 of the New York Lien Law because: (i) Defendants never improved Plaintiffs miners—in fact, defendants destroyed Plaintiffs' miners; (ii) the September 21, 2018 Agreement barred Defendants from altering, repairing, or servicing Plaintiffs' miners without Plaintiffs' prior consent; (iii) Plaintiffs did not consent to any improvements to their miners; and (iv) Defendants are not now (and never were) in lawful possession of Plaintiffs' miners.

## ARGUMENT

### I. CONTRARY TO DEFENDANTS' CONTENTION, THERE IS NO FACTUAL DISPUTE ABOUT THE OWNERSHIP OF THE MINERS DESTROYED IN THE POWER SURGE.

Defendants contend that the ownership of the miners destroyed in the power surge is in dispute because when Plaintiffs and the US Marshal Service came to Defendants' property to retrieve Plaintiffs' miners, Plaintiffs did not identify the miners as theirs. This statement is false.

As this Court is aware, to recover property under CPLR § 7102, the US Marshal must be able to identify the property and match the serial numbers of the properties on the Writ t the serial numbers on the property.  In fact, this Court's Orders on Plaintiffs' Writ of Replevin made that requirement clear. When Plaintiffs and the US Marshal Service arrived at the property, however, Defendants had scraped the serial numbers from Plaintiffs' miners, and so, the United States Marshal Service could not match the serial numbers with the Miners in the Order with the serial numbers of the miners at Defendants' property because there was no serial numbers on the miners at Defendants' property.

In any event, the foregoing is moot because Defendants have affirmatively identified the miners destroyed in the April 23, 2020 power surge as belonging to Plaintiffs. See October 2, 2020 Letter, attached hereto as **Exhibit A**.



## II.    DEFENDANTS DO NOT HAVE AN ARTISAN LIEN UNDER N.Y. LIEN LAW SECTION 180. INDEED, DEFEDANTS SHOULD BE SANCTIONED FOR EVEN RAISING THAT CLAIM.

Section 180 of the New York Lien Law provides, in its entirety, that:

> A person who **makes**, **alters**, **repairs** or **performs work** or **services** of any nature and description upon, **or in any way enhances the value** of an article of personal property, **at the request or with the consent of the owner**, has a lien on such article, **while lawfully in possession thereof**, for his reasonable charges for the work done and materials furnished, and may retain possession thereof until such charges are paid.

N.Y. Lien Law § 180 (emphasis added); *see In re Estate of Harriss*, 18 N.Y.S.2d 842, 843–844 (Sur. Ct. N.Y. Cnty. 1940) (construing § 180); *O'Clair v. Hale*, 25 Misc. 31, 32–33 (Sup. Ct. 1898) (construing § 180, and differentiating between skilled labor, which is protected by § 180, and common labor, which is not protected by § 180).

As the language of section 180 makes clear, a person claiming protection under Section 180 must provide service that enhances the value of the property in question. N.Y. Lien Law § 180; *Hale*, 25 Misc. at 32–33.

Further, the party seeking protection under Section 180 must be in lawful possession of the property and the owner of the property must consent to the alterations, repairs, work, or service that enhances the value of the property in question. Because Defendants have not demonstrated any of the foregoing, and because a lien under Section 180 would be inconsistent with the September 21, 2018 Agreement, Plaintiffs request that this Court Order Defendants to immediately release the $197,275.00 to Plaintiffs.



### A. *Defendant Did Not Make, Alter, Repair, or Service Plaintiffs' Miners.  In addition, Plaintiffs' Agreement with Defendants does not allow for An Artisan Lien.*[1]

Plaintiffs entered into a Hosting Agreement ("Agreement") with Defendants on September 21, 2018, and the Agreement render frivolous the argument that Defendants have a lien on the $197,275.00 or on any of Plaintiffs' miners.

The relevant provisions of the Agreement provide as follows:

- Northway Mining will deliver the following services under this mining hosting agreement:
    - Receipt and checking of all incoming equipment. Northway Mining will check the condition and quantity of all miners on arrival;
    - Testing: Northway Mining technical team will check the general functioning of the miners. Upon approval of inspection, we will then proceed to set up the miner;
    - Report: **If any Damage were to occur to a client's equipment, they will be notified immediately or if any upgrade or maintenance is necessary for their equipment to improve the mining operations, the customer can also come on site and install [sic] perform the maintenance required**.
    - Consultation: Northway Mining has a team of experts researching the market to find which coins are the most profitable to mine with your mining rigs. **However, Clients can mine their own coin of preference at any time**.
    - Operations: Northway Mining will follow on daily basis the operation and the performance of the miners with dedicated software. **All miners are accessible remotely via a VPN connection, so the customer can fully manage the miners by them self [sic]. Northway does not manage the software or connect to the client's miners, [sic] we only manage physical

---

[1] Because Defendants do not detail the allege labor they provided, Plaintiffs cannot assess whether the labor allegedly provided was skilled or artisan labor as opposed to common labor.  *See Hale*.



> > **technical aspects, any software related problem will be managed by the client**.
> > - If problems occur on site, Northway will try to correct the problem if serviceable. If the problem needs more time to resolve, **the customer will be informed first before proceeding to any repairs or hardware component changes**.
> > - **Maintenance: Northway Mining Offers full maintenance of the customer's miners, [sic] We have services available which include changes of the sensitive parts (risers, power cables…). Replacing GPU\* etc. We will charge a rate of $65/hr. to perform repair services to your mining equipment. A quote will be generated before any maintenance is done. The client must agree to the quote. \*Parts will be paid for by the client**.

Agreement, at ¶¶ 1-6, attached hereto as **Exhibit B** (emphasis added).

As the Agreement makes clear, Defendants could not make any changes to the Plaintiffs' miners without first obtaining Plaintiffs' approval and consent.

In fact, Defendants do not allege they obtained approval from Plaintiffs for any repairs or service they allegedly made to Plaintiffs' miners, and Defendants do not detail the nature of repairs made or services rendered in benefit of Plaintiffs' miners. Indeed, the reason Plaintiffs sent their Miners to Defendants was because Defendants claimed access to cheap electricity and a large facility that could host all of Plaintiffs' miners simultaneously. This arrangement does not give rise to an artisan lien under Section 180.

Because Defendants do not detail the allege alteration, repair, or service they made to Plaintiffs' miners and because the Agreement expressly requires Plaintiffs' approval and consent for any service, repair, or alteration to their miners, Defendants do not have a lien under Section 180.

### B. Defendants Did Not Enhance the Value of Plaintiffs' Miners.

As stated above, to claim protection under Section 180, the litigant must demonstrate that he added value to the property.



Here, the undisputed evidence is that Plaintiffs' miners were destroyed in a power surge. Destruction is not the equivalent of improvement, and therefore, Defendants did not improve Plaintiffs' miners in any manner.

### C. Plaintiffs Did Not Consent to the Unknown Improvements Defendants Claimed They Made to Plaintiffs' Miners.

As noted in Section II(A) above, Plaintiffs did not consent to any improvement to their miners. Indeed, as Plaintiffs have learned, Defendants lack the ability and know-how to make any improvements to Plaintiffs' miners.

### D. Defendants Are Not in Lawful Possession of Plaintiffs' Miners.

As noted above, this Court has previously issued two Orders under CPLR Art. 7102 made applicable through Fed. R. Civ. P. 64 authorizing Plaintiffs to pick up their miners. This Court's two Orders on Plaintiffs' Writ of Replevins is evidence that Defendants are not in lawful possession of Plaintiffs' Miners. Indeed, the Agreement has a one-year term unless terminated earlier. Agreement, at Termination ("All contracts are signed for 1 year listed above. Customers who choose to terminate a contract early will be subject to pay a 2-month fee based off their previous months [sic] billing").

Plaintiffs terminated the Agreement in January 2019 and simultaneously demanded the return of their miners to no avail.  At one point, Defendants claimed they had transported Plaintiffs' miners and Plaintiffs' $432,000.00 deposit to another bitcoin hosting facility in Louisiana, but that statement was false.

### CONCLUSION

For the foregoing reasons above, Plaintiffs requests that this Court release the $197,275.00 to Plaintiffs.

Sincerely,

T. Edward Williams, Esq.