UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

9384-2557 QUÉBEC INC., a Canadian corporation; MINEDMAP, INC., a Nevada corporation; and SERENITY ALPHA, LLC, a Nevada limited liability, and other similarly situated individuals,

                      Plaintiffs,

-against-

NORTHWAY MINING, LLC, a New York limited liability company; MICHAEL MARANDA, an individual; MICHAEL CARTER, an individual; CSX4236 MOTORCYCLE SALVAGE, LLC, a New York limited liability company; DROR SVORAI, an individual; MINING POWER GROUP, INC., a Florida corporation; HUDSON DATA CENTER, INC, a New York Corporation, MICHAEL MARANDA, LLC, a New York Limited liability company; PORTER KING HILL CONTRACTING, LLC, COINMINT, LLC, a Delaware limited liability company,

                      Defendants.

**DECLARATION**

Pursuant to 28 U.S.C. §1746

Civ. Action No.: 1:19-CV-00501-TJM-CFH

    I, **MICHAEL MARANDA**, declare under penalty of perjury that the following is true and correct:

    1.    I am one of the defendants in this action, and I am a principal of defendants Northway Mining LLC and Michael Maranda LLC. I respectfully submit this Declaration in opposition to the plaintiffs' motion for an order compelling defendant Northway to "release" $197,275.00 to them (which my attorneys tell me is ECF docket #142).

    2.    I signed an affidavit earlier in this case, in opposition to the plaintiffs' motion for contempt sanctions. My attorneys tell me that the ECF docket number for that affidavit is #117. Some of the information in that affidavit is relevant to the plaintiffs' current motion for release of the $197,275.00, and my attorneys cite that affidavit in the accompanying Memorandum of Law in opposition to the current motion. To avoid duplication I will not repeat all of that information

1

in this Declaration, but I will provide some additional information not addressed in my prior affidavit.

A. **Preparation of the Serenity/MinedMap machines for operation**

3. One of the issues that my attorneys discuss in the Memorandum of Law is the defendants' forthcoming counterclaims and defenses related to the plaintiffs' own breaches of contract.

4. In my prior affidavit, I summarized the circumstances in which Serenity/MinedMap wrongfully tried to withdraw from our hosting services arrangement at the last minute, after Northway Mining had invested hundreds of thousands of dollars building out our electrical infrastructure to host the infusion of their machines (which, per the contract, could have been as many as 3,000 machines, although it ultimately turned out to be several hundred fewer than that). (See ECF Doc. #117, ¶¶13, 19-21.)  To expand our platform to host the new machines, we engaged with several electrical contractors and suppliers to deliver and install the necessary hardware, panels and connectors to take on the new machines.

5. Serenity/Minedmap delivered over 2,000 machines in 2018, that we had to fit up for operation.  A cryptocurrency mining device does not arrive in "run ready" condition.  My laborers and I had to unbox every machine as it came in, rack every machine, connect every machine to our power feed, power up every machine, and then program every machine.  As to programming, that means we turn on every machine, we navigate its settings, and we optimize the settings for operation in our facility.  With over 2,000 machines, it is a very time-consuming process.  Only after all of that work is done, can a machine actually begin mining.

6. As I explained in my prior affidavit, even beyond all of our infrastructure buildout and prepping and programming of the machines, we were forced to do more work for

Sereity/MinedMap in respect of their machines. When Serenity/MinedMap panicked about the depressed performance of Bitcoin relative to electrical costs in fall 2018, we reluctantly acceded to their request to try to place the machines in different space where the kilowatt hour rate was lower. (ECF Doc. #117, ¶¶20-21.) We subcontracted with another provider in Massena, New York (Coinmint) to host the machines. In order to carry that out, in February 2019, Northway Mining had to disconnect, de-rack and package the more-than 2,000 machines we had previously prepped for the plaintiffs, and shipped them to Massena (for which we fronted the expense and have never been reimbursed). All told, we did a great deal of work and incurred a great deal of expense to prep Serenity/MinedMap's devices.

**B.    The insurance money**

7. As the Court knows from prior motions, my companies operate two cryptocurrency mining facilities in Oswego, New York, one at 2140 County Route 1, and one at 193 East Seneca Street.

8. On April 23, 2020, there was a power surge at the 2140 County Route 1 location, which caused a lot of damage there. I referred the entire loss to our insurance carrier, IFPS of New York, LLC. I also used the services of a public adjuster to work with the carrier's adjuster, to determine what might be covered and what was not.

9. At the end of August my adjuster reported to me what the expected insurance settlement would be. It included $197,275.00 for 607 damaged Bitmain-manufactured cryptocurrency mining devices, model S9/S9J.

10. Those 607 machines are among the devices that the parties are fighting about in the plaintiffs' pending motion for contempt sanctions. As I said in my affidavit in response to that motion, we had 2,051 miners palleted and ready for the plaintiffs' and the U.S. Marshalls'

inspection in July 2020, for their visit to the Oswego facilities to effectuate the Court's writ of replevin. (ECF Doc. #117, ¶2.) The 607 S9/S9J machines that were damaged in the surge were included with the machines that were presented to the plaintiffs' representatives and the Marshalls at 2140 County Route 1, when they visited there in July. Those are part of the group of machines that Daniel Kim claimed in his contempt motion affidavit do not belong to Serenity/MinedMap.

11. In the last week of September, my adjuster informed me that the insurance payment was expected to arrive by the end of that month or the beginning of October. I conferred with my attorneys and, because of the disputes of fact about the machines, we decided to escrow the $197,275.00 and inform the plaintiffs' counsel that we would hold it pending this action. Upon my receipt of the money, I immediately wire transferred $197,275.00 to E. Stewart Jones Hacker Murphy LLP to hold in escrow, and they informed the plaintiffs' attorney on October 2, 2020 by an email letter, attached hereto as **Exhibit A**.

12. For the reasons stated in the accompanying Memorandum of Law by my attorneys, I respectfully submit that the plaintiffs' motion should be denied.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: November 10, 2020.

_____
Michael Maranda