UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

9384-2557 QUÉBEC INC., a Canadian corporation; MINEDMAP, INC., a Nevada corporation; and SERENITY ALPHA, LLC, a Nevada limited liability, and other similarly situated individuals,

       Plaintiffs,

 -against-

NORTHWAY MINING, LLC, a New York limited liability company; MICHAEL MARANDA, an individual; MICHAEL CARTER, an individual; CSX4236 MOTORCYCLE SALVAGE, LLC, a New York limited liability company; DROR SVORAI, an individual; MINING POWER GROUP, INC., a Florida corporation; HUDSON DATA CENTER, INC, a New York Corporation, MICHAEL MARANDA, LLC, a New York Limited liability company; PORTER KING HILL CONTRACTING, LLC, COINMINT, LLC, a Delaware limited liability company,

       Defendants.

Civ. Action No.: 1:19-CV-00501-TJM-CFH

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER DIRECTING TURNOVER OF INSURANCE PROCEEDS

John F. Harwick, Esq.
Benjamin F. Neidl, Esq.
E. STEWART JONES HACKER MURPHY LLP
*Attorneys for Defendants Northway Mining LLC, Michael Maranda, Michael Maranda LLC, Hudson Data Center Inc. and Michael Carter*
28 Second Street
Troy, N.Y. 12180
(518)274-5820

## **PRELIMINARY STATEMENT**

Defendants Northway Mining LLC, Michael Maranda, Michael Maranda LLC, Hudson Data Center Inc. and Michael Carter and Michael Carter (collectively, the "Appearing Defendants"[1]), by and through their undersigned attorneys, respectfully submit this Memorandum of Law in opposition to the plaintiffs' "motion to release $197,275.00 to plaintiffs."

## **SUMMARY OF ARGUMENT**

The plaintiffs' motion should be denied. As a threshold matter, it is not clear what authority the plaintiffs invoke as the basis for the motion. Their Notice of Motion and Memorandum of Law do not specify what statute or rule purportedly allows a summary release of over $197,000 in cash to the plaintiffs under the circumstances. If the unspecified motion is intended to be a motion for partial summary judgment, it must be denied because the plaintiffs fail to offer a Statement of Material Facts or any proof in admissible form, in dereliction of Rule 56 of the Federal Rules of Civil Procedure and Local Rule §7.1(a)(3). (The motion consists of only attorney documents, with no supporting affidavits.) If the motion is intended as one for replevin, it is improper because currency typically does not qualify as a "chattel" that can be recovered through that remedy under N.Y. CPLR Article 71 and, in any event, replevin does not allow for pre-judgment, summary awards of property to a plaintiff outright. The provisional remedy of replevin in CPLR §7102 is just that—provisional—and only allows a plaintiff to hold the disputed "chattel" pending final judgment in the action, and even then the plaintiff must secure the preservation of the chattel by posting an undertaking in an amount at least double the chattel's value. In this case, the $197,275.00 in dispute is already preserved pending final judgment, in defense counsel's escrow account, pursuant to Court order.

---

[1]  There are several other defendants named in the caption who have not appeared because the plaintiffs have never served them.

Furthermore, whatever type of motion this is supposed to be, it must be denied in any event because there are triable questions of fact as to the proper disposition of the funds. The defendant's insurance carrier paid the $197,275.00 as indemnification for damage to 607 S9/S9J bitcoin mining machines that the defendants were holding in Oswego, New York, which the plaintiffs' principal (Daniel Kim) inspected in July 2020 when executing the Court's writ of replevin. At that time, Kim denied under oath that those were the plaintiffs' machines. (ECF Doc. #110-2, ¶17.) That discrepancy remains unresolved. In addition, even if we assume that the devices in question were the plaintiffs' machines, the plaintiffs have not established the defendants' liability as a matter of law. The Appearing Defendants have colorable claims to a rightful possessory interest in the machines (and, therefore, any insurance money related to them) pursuant to N.Y. Lien Law §180, and forthcoming counterclaims and equitable defenses in the nature of setoff and recoupment arising from what, the defendants contend, are the plaintiffs' own breaches. Therefore, the plaintiffs' motion must be denied.

## BACKGROUND

The parties have previously and extensively recited the allegations of this case in prior motion practice. In the interest of brevity, we will not repeat that entire narrative here. The facts pertinent to the instant motion are limited.

On April 23, 2020, there was a power surge at the defendants' facility at 2140 County Route 1 in Oswego, New York, causing widespread damage there. (ECF Doc. #143, ¶8.) The items damaged included 607 Bitmain cryptocurrency mining devices (models S9/S9J). Defendant Michael Maranda referred the entire loss his company's insurance carrier. For months after that, the public adjuster that the defendants retained worked with the carrier's adjuster to determine what was damaged and what might be covered. (*Id.* ¶¶8-9.) In late September, the adjuster

informed Maranda that the carrier intended to settle the loss, and slated a sum of $197,275.00 to be paid in connection with the 607 damaged S9/S9J devices. (*Id.*) At the end of September, the adjuster informed Maranda that the insurance settlement was confirmed and that the proceeds would be arriving by the end of the month or early October. (*Id.* ¶11.) At that time, Maranda informed defense counsel that he was expecting to receive this insurance payment. Because the disposition of the underlying machines was (and is) in dispute, Maranda and defense counsel determined to set the $197,275.00 aside and hold it in escrow, on notice to plaintiffs' counsel. (*Id.*) When the insurance money arrived, Maranda wired it to defense counsel on or about October 2, 2020. The E. Stewart Jones Hacker Murphy firm has been holding that money in its attorney trust account since then. On October 2, 2020, defense counsel notified the plaintiffs' attorney of these circumstances in an emailed letter. (ECF Doc. #143.) The Court ordered defense counsel to continue holding the funds in escrow on October 20, 2020. (ECF Doc. #137.)

The question of whether the 607 damaged S9/S9J machines were or were not the plaintiffs' property is one of the issues in controversy in this case. The Court issued a writ of replevin in July 2020, allowing plaintiffs Serenity/MinedMap to recover their bitcoin mining devices from the defendant's facilities in Oswego, including the facility at 2140 County Route 1. (ECF Doc. #89.) On July 24[2] representatives of the plaintiffs appeared at those facilities with the U.S. Marshalls and inspected the machines that were there—including the 607 machines that are related to the insurance money in question. The plaintiffs declined to take any of the machines in Oswego, contending that none of them were, in fact, theirs. Shortly after that, the plaintiffs filed a motion

---

[2]   The plaintiffs' motion papers indicate that this visit occurred on July 22 but, upon information and belief, that is a typographical error. Our recollection is that it occurred on Friday July 24, which is borne out by certain entries in the docket: the plaintiffs filed an unopposed emergency motion on July 24 to expand the writ of replevin to another building, while the plaintiffs' representatives and the Marshalls were still on site. (*See* ECF Doc. #99 - #101.)

3

for contempt against the defendants (ECF Doc. #110), which is still pending, in which they alleged none of the machines in Oswego were theirs, that the defendants must have converted their machines to some other location. In that motion, the plaintiffs seek many thousands of dollars in contempt "damages." (*Id.*) One of the plaintiffs' principals, Daniel Kim, submitted an affidavit in which he swore, among other things, that he and his colleagues know what their machines look like, made a visual inspection of the machines, and knew that none of them belonged to the plaintiffs. (ECF Doc. #110-2, ¶17.)

## ARGUMENT

### I. AS A THRESHOLD MATTER, MOTION FAILS TO STATE ANY AUTHORITY FOR RELIEF REQUESTED; IF IT IS INTENDED AS A SUMMARY JUDGMENT OR REPLEVIN MOTION, IT IS DEFECTIVE.

The motion seeks substantive relief: basically a summary award of $197,275.00 to the plaintiffs.

Neither the plaintiffs' Notice of Motion nor their Memorandum of Law identify any authority for that relief. For that reason alone, their motion should be denied. If the Court does entertain the motion on the merits, only two ideas come to mind as to what kind of motion this purportedly is: partial summary judgment, or replevin. Either way, the motion is deficient, and must be denied.

#### A. This is not a proper summary judgment motion.

The plaintiff's basic prayer for relief most resembles a partial summary judgment motion. In effect, they want a summary award of money damages in the amount of $197,275.00. In that regard, the motion must be denied because it is not supported by an evidentiary record, much less an evidentiary record demonstrating that "there is no genuine issue as to any material fact" and

that the plaintiffs are "entitled to a judgment as a matter of law." Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004), quoting Fed. R. Civ. P. 56(c).

As the Court is aware, Local Rule 7.1(a)(3) requires a summary judgment movant to submit written Statement of Material Facts setting forth "a short and concise statement of each material fact" that the movant contends is undisputed, with specific citations "to the record where the fact is established." The supporting record of the Statement must be evidence in admissible form, not a mere attorney's affirmation:

> The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits. <u>Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion.</u>

Local Rule 7.1(a)(3)(emphasis in original). It is, therefore, beyond well-settled that a summary judgment motion supported only by an attorney affirmation fails to meet the movant's *prima facie* burden, and must be denied irrespective of the defendant's opposition papers. Vermont Teddy Bear, 373 F.3d at 244-45; In re Aarismaa, 233 B.R. 233, 243 (N.D.N.Y. 1999).

Here, the plaintiffs' motion consists of only two documents: a Notice of Motion and a Memorandum of Law. (ECF Doc. #141 and #142.) They are both signed only by the plaintiffs' attorney. The plaintiffs offer no Statement of Material Facts and no admissible proof in the form of witness affidavits or supporting evidence. Therefore, to the extent the plaintiff seeks summary judgment relief, the motion must be denied for these reasons alone.

### B. This is Not a Proper Replevin Motion

The plaintiffs do not explicitly style their motion as one for replevin, either, but if that is their intention the motion is likewise deficient.

New York's version of replevin, found in CPLR Article 71 ("Recovery of a Chattel"), "is a remedy employed to recover a specific, identifiable item of personal property, and '[o]rdinary

5

currency, as a rule, is not subject to replevin.'" Heckl v. Walsh, 122 A.D.3d 1252, 1254 (4th Dep't 2014)(internal citations and quotations omitted), quoting Equitable Life Assur Soc'y of the U.S. v. Branch, 32 A.D.2d 959, 960 (2d Dep't 1969); see also Kendall v. Caliber Home Loans, Inc., 198 F. Supp.3d 168, 171 (E.D.N.Y. 2016); Di Nezza v. Credit Data of Hudson Valley, 166 A.D.2d 768 (3d Dep't 1990). "Unless the currency can be specifically identified, *i.e.*, it consists of specific, identifiable bills or coins, replevin does not lie." Heckl, 122 A.D.3d at 1254. Fungible monies "on deposit" in a bank account "are not specifically identifiable within decisional law so as to qualify as the subject of a replevin action." Branch, 32 A.D.2d at 960.

The $197,275.00 at issue in this case is not some fixed collection of "identifiable bills or coins" that was ever possessed by the plaintiffs. It is a payment of fungible dollars the insurance company made to Northway Mining for loss of 607 S9 miner devices, the ownership of which is in dispute (see Point II, below). In short, the money at issue is not a "chattel" and, therefore, no claim for replevin may lie.

Even if the money were a recoverable "chattel" under CPLR Article 71 (which it is not) the plaintiffs' motion still does not coherently establish any right to the extraordinary relief of simply "paying over" the $197,275.00 unconditionally and without a trial. Under CPLR §7101, a plaintiff may bring an action to "try the right to possession of a chattel." The phrase "try the right" means that the plaintiff must ultimately prove on the merits that it has a superior right to possession of the chattel. Admittedly, the plaintiff may move for a *provisional order* of seizure of the chattel pursuant CPLR §7102 which allows the plaintiff, upon a showing of a likelihood of success on the merits, to possess the chattel *pending a final judgment in the action*. But a pre-judgment order of seizure pursuant to CPLR §7102 "is not a final disposition of the matter [it] is a pendente lite order made in the context of a pending action []." Americredit Financial Services, Inc. v. Decoteau, 103

A.D.3d 761 (2d Dep't 2013).  Indeed, a successful movant for provisional replevin must post an undertaking equal to twice the dollar value of the chattel, to protect the defendant in the event that the final judgment on the merits establishes that the defendant has a superior right to possession. CPLR §7102(4)(e).[3]  That means that a *prejudgment* order of replevin pursuant to CPLR §7102 does *not* grant the plaintiff unencumbered, free title to the chattel, it grants a restricted possession of the chattel pending the outcome of the case, secured by an undertaking.  Therefore, CPLR Article 71 does not, in any way, shape, or form, justify a pre-judgment order compelling the defendant simply to "release" the money to the plaintiffs.

In this case, the $197,275.00 at issue is already secured for the protection of all parties pending final judgment.  Defense counsel voluntarily took those funds into escrow and notified the plaintiffs' counsel that we had done so.  The Court subsequently ordered defense counsel to continue to hold the funds in escrow (which we are doing).  That is protection of the money pendite lite, which preserves the status quo as well as any "order of replevin" could.  Therefore, to the extent the plaintiffs' motion is offered as one for replevin, it must be denied.

### II. WHATEVER THE PURPORTED AUTHORITY FOR THE MOTION MAY BE, QUESTIONS OF FACT PRECLUDE RELIEF AT THIS TIME.

Whatever the nature of the motion is, this type of "final judgment"-style relief is plainly improper where, as here, there are disputed questions of fact.  Not only have the parties not tried this action, they have not even commenced discovery because there are pending motions to dismiss on behalf of several of the Appearing Defendants, and the plaintiffs have not served the rest of the defendants.  The questions of fact fall into two broad categories: (a) whether the plaintiffs owned the bitcoin mining devices that are related to the insurance money; and (b) even if they did, whether

---

[3] Where, as here, the amount in question is greater than $1,000.00, the undertaking must be a bond posted by an insurance company, or domiciliary of New York who pledges real estate of the required value as security for the undertaking.  N.Y. CPLR §§2502, 2503.

7

the defendants had and have a lawful possessory right to the machines and the related insurance money.

      **A.**    <u>**There are disputed questions of fact as to whether the plaintiffs even owned the 607 bitcoin mining machines that were damaged (for which the insurance money has paid).**</u>

Most fundamentally, one of the plaintiffs' principals—Daniel Kim—has already sworn under oath that none of these machines belonged to the plaintiffs. The $197,275.00 relates to 607 S9/S9J bitcoin mining devices at the defendants' facility at 2140 County Route 1 in Oswego, New York. (Maranda Dec. [ECF Doc. #143] ¶¶8-9.) There was an electrical surge there on April 23, 2020, which caused widespread damage at the facility including to those 607 machines. All of those damaged machines were among S9/S9J machines that the plaintiffs came to inspect with the Marshalls on July 24, 2020 in executing the Court's writ of replevin. (*Id.*)

Mr. Kim was part of the plaintiffs' team that visited the site on July 24 to inspect the machines. (Kim Affidavit, ECF Doc. #110-2, ¶¶14 - 17.) In connection with the plaintiffs' pending motion for contempt sanctions (ECF Doc. #110), Mr. Kim submitted an affidavit to this Court attesting that none of the machines in Oswego are the plaintiffs.' (*Id.*) On the plaintiffs' current motion to turn over the $197,275.00, their attorney argues that the only reason the plaintiffs did not collect the machines (through the Marhsalls) that day was because they were technically unable to match serial numbers because, they say, they were obscured or removed.[4] But that seriously understates the extent of Mr. Kim's testimony. Specifically, Mr. Kim also swore to the following in his affidavit:

---

[4]     As the Appearing Defendants argued in response to the pending motion for contempt sanctions, there are actually multiple sets of unique identifying numbers on every S9/S9J machine, and the unique number on the machines' external hash boards are intact on all of them. (*See* ECF Doc. #117, ¶¶27-31.) It is unclear why the plaintiffs did not reference the hash board numbers when the inspected the machines in July.

8

> In addition to lacking serial numbers both *Allen Song and I know what our bitcoin miners physically look like and we did not find any of our miners*.

(ECF Doc. #110-2, ¶17 [emphasis added].)   That is, by visual inspection as well, Mr. Kim concluded (and swore) that none of those machines were the plaintiffs.  On the basis of that affidavit, in the contempt motion, the plaintiffs seek many thousands of dollars in contempt "damages" on the theory that none of the machines in Oswego are theirs, but rather that their machines have been converted to some other location.  (ECF Doc. #110, pg. 11-12.)

The plaintiffs cannot have it both ways.  Either the S9/S9J machines in Oswego were their machines, or they were not.  Mr. Kim has sworn that they were not.  Time will tell. More accurately, discovery and, eventually, a trial will tell.  In the meantime, the plaintiffs cannot claim out of one side of their mouth that they are entitled to "contempt damages" because the machines in Oswego *are not* theirs (ECF Doc. #110), and yet also claim out of the other side of their mouth that they are entitled to the insurance money because the Oswego machines *are* theirs.  This is a vexing and unusual question of fact, but it is an important question of fact.  For that reason alone, triable questions preclude whatever relief it is that the plaintiffs seek in the instant motion.

**B.**   **Even if the plaintiffs did own the machines, there are disputed questions of fact as to whether the defendants had a lawful possessory interest in them, and entitlement to the insurance proceeds.**

Even if we assume that the 607 damaged S9/S9J machines were the plaintiffs,' they still have not established as a matter of law that they are entitled to the insurance money that indemnifies for the loss of those machines.

This case is a commercial dispute that goes both ways.  When issue is joined, the Appearing Defendants will assert counterclaims and defenses.  The circumstances on which they are based are summarized in Mr. Maranda's affidavit in opposition to the contempt motion (ECF Doc. #117) and in his declaration accompanying this memorandum (ECF Doc. #143).

9

In 2018, defendant Northway Mining entered into a contract with Serenity to host up to 3,000 S9J miners.[5] (ECF Doc. #117, ¶12.) In negotiating that contract, Maranda advised the plaintiffs that Northway would have to make substantial investments in its facility at Flint Mine Road in Coxsackie (which is where the machines were to be hosted) to accommodate that infusion of machines. Northway spent hundreds of thousands of dollars doing the electrical buildout necessary to host the Serentiy/MinedMap machines. (*Id.* ¶13.)

In addition to that, in fall 2018 Northway devoted considerable man hours to unboxing Serenity/MinedMap's 2,000+ machines, racking them, programming them, and line-connecting them to power, so that they could be turned on and begin mining. (ECF Doc. #143 ¶5.) Bitcoin miners do not install and prep themselves. A technician who understands the machines must boot up each one and program the appropriate settings before it can operate. Doing that with thousands of machines is a lot of work. (*Id.*)

The present dispute first arose when the plaintiffs tried to renegotiate (and eventually breached) the contract after Northway did all of that work, and made all of that investment. Specifically, on the day that Northway was supposed to turn on Serenity/MinedMap's machines in fall 2018, Allen Song directed them not to do so, because the per unit value of Bitcoin had abruptly dropped, and Serenity/MinedMap faced the prospect of losing money running the machines (that is, the cost of electricity would like exceed the returns). (*See* ECF Doc. #117, ¶¶20-21.) Song demanded to renegotiate contract's kilowatt hour rate. (*Id.*) Although Northway could not agree to do that (that would be a loss for Northway), Northway agreed to try to relocate the hosting to another site with cheaper power, so at least they would not be dead weight in Northway's Coxsackie facility. (*Id.*) With Serenity/MinedMap's approval, Northway subcontracted with

---

[5]  However, the number of machines that Serenity/MinedMap eventually delivered for hosting was in fact several hundred fewer than 3,000. (ECF Doc. #117, ¶15.)

another provider, Coinmint, to deliver the machines to Coinmint's facility in Massena, New York. (*Id.*) Northway, in fact, delivered all of the machines there in February 2019, at even more labor and expense. (*Id.*)  After all that, Serenity/MinedMap decided again not to go through with the hosting services, and purported to cancel the transaction.  (*Id.* ¶21.)

These events implicate at least two distinct lines of authority that will be among the grounds for the Appearing Defendants' counterclaims, and defenses in this action.

First, N.Y. Lien Law §180 provides that "A person who makes, alters, repairs or performs work or services *of any nature and description* upon, *or in any way enhances the value of an article* of personal property, at the request or with the consent of the owner, has a lien on such article, while lawfully in possession thereof, for his reasonable charges for the work done and materials furnished, and may retain possession thereof until such charges are paid" (emphasis added). The phrases "of any nature and description," and "in any way enhances the value," are broadly construed (as the language itself suggests it should be).  "[S]o long as the long as the work done is in the ordinary course of the artisan's business and as a necessary preliminary step to the [commercial] process … The handling and storage of" the property suffices to create a lien in the property. Mickey's Clan, Inc. v. N.Y. Credit Men's Adjustment Bureau, 114 Misc.2d 926, 927 (S Ct. N.Y. Co. 1981); see also United States v. Toys of the World Club, Inc., 288 F.2d 89, 94 (2d Cir. 1961).  Moreover, the programming and data manipulation of a computer device to facilitate its use is the type of work or service that may give rise to a §180 lien. See American Consumer, Inc. v. Anchor Computers, Inc., 93 Misc.2d 452 (S. Ct. N.Y. Co. 1978).  Maranda and his company invested a great deal of effort and expense situating the plaintiffs' machines for operation, by building out its electrical platform to host them, receiving them, unboxing them, racking them, storing them, programing them, and connecting them to power on an infrastructure that Northway

11

built out for them. (ECF Doc. #143, ¶¶4-6.) When the plaintiffs, after all that, panicked about the value of Bitcoin   For that reason alone, Northway has a colorable claim to a possessory interest in the machines with priority over and above the plaintiffs—and if the insurance money is indemnification for damage to that security, then Northway has a colorable claim to the insurance money.

Second, even leaving aside the Lien Law, Northway Mining has affirmative claims for breach of contract and quantum meruit. The parties' contract (ECF Doc. #117-2) contemplated a service term of 12 months. (*Id.* pg. 4.)   The contract was not simply terminable at will by the plaintiffs. If the plaintiffs terminated early, they were required to pay a fee equal to two times (2x) the "the total of their previous month's billing" which, in this case, would be at least $324,000[6] (*Id.*)   Northway will also assert a counterclaim for quantum meruit, for the work it performed in building out infrastructure for the machines, programming them and situating them for use, as described above. In equity, Northway may set off (or more accurately, recoup) its own damages arising from this transaction against the plaintiffs' recovery, if any. See Metropolitan Switch Board Manuf. Co. v. B& Electrical Contractors, 96 A.D.3d 725, 726 (2d Dep't 2012); Millenium Environmental, Inc. v. City of Long Beach, 35 A.D.3d 408, 412 (2d Dep't 2006); Enrico & Sons Contracting, Inc. v. Bridgemarket Assocs., 252 A.D.2d 429, 430 (1st Dep't 1998). See also Constantino v. State, 99 Misc.2d 362, 365 (Ct. Claims 1979).  The net liability of one party to the other is far from established in this case and, for that separate and distinct reason, it would be improper for the $197,275.00 insurance money to be turned over to the plaintiffs now.

---

[6]    The contract, revised as of November 2018, contemplated a monthly charge to Serenity Alpha of at least $162,000. (ECF Doc. # 55-4, pg. 3.)

## **CONCLUSION**

For the foregoing reasons, the plaintiffs' motion should be denied in its entirety.

Dated: Troy, New York            Respectfully submitted,
       November 10, 2020

                                       E. STEWART JONES HACKER MURPHY LLP

                                       */s/ Benjamin F. Neidl*
                                       By:    Benjamin F. Neidl
                                                 John F. Harwick
                                       *Attorneys for Defendants Northway Mining LLC,*
                                       *Michael Maranda, Michael Maranda LLC, Hudson*
                                       *Data Center Inc. and Michael Carter*
                                       28 Second Street
                                       Troy, N.Y.  12180
                                       (518)274-5820