## UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – X

MINEDMAP INC.                              :              19-CV-501-TJM-CFH

                                                                   **FIRST AMENDED COMPLAINT**

                    Plaintiff,        :

                    against           :              **(ECF Case)**

NORTHWAY MINING, LLC, a New York    :
limited liability company; MICHAEL
MARANDA, an individual; MICHAEL
CARTER, an individual; DROR SVORAI, an
individual; MINING POWER GROUP, INC., a
Florida corporation; HUDSON DATA
CENTER, INC, a New York Corporation,
MICHAEL MARANDA, LLC, a New York
Limited liability company; PORTER KING
HILL CONTRACTING, LLC,  a New York
limited liability company; COINMINT,
LLC, a Puerto Rican  limited liability
company; OSWEGO DATA LLC, a New York
Limited Liability Company; LORI S.
THOMPSON, LCSW, PLLC, a professional
limited liability corporation; LORI
SHANNON THOMPSON, an individual,
ANTHONY PORTER, an individual; M&T
BANK, N.A., TEACHERS FEDERAL CREDIT
UNION; CHRISTINE MARANDA, an
individual; ROSEANN MARANDA; an
individual; DOUGLAS MARANDA, an
individual; DONALD D'AVANZO, an
individual, ETHEREUM VENTURES, LLC, a
New York limited liability company,
ANGELO POPE, an individual;  JEFFREY
HOLBROOK, an individual and a resident
of the state of New York; MELISSA
WELSH, an individual and a resident of
the State of New York; XYZ

Corporation, entities form by Michael
Maranda and Other Defendants; XYZ
Limited Liability Company, formed by
Michael Maranda and other Defendants;
Real Property at 38 Oaklawn Avenue
Athens, New York

                        Defendants.    :
– – – – – – – – – – – – – – – – – – – X

Plaintiff, MinedMap Inc., through counsel, WILLIAMS LLP, for their First Amended Complaint, allege as follows:

## INTRODUCTION

1.    Defendant, Michael Maranda ("Maranda"), formed entities to defraud Plaintiffs and other entities similar to Plaintiffs. Among other entities, Maranda formed , formed Northway Mining, Oswego Data LLC, Hudson Data Center, Inc., Michael Maranda, LLC, and Porter King Hill Contracting, LLC, to defraud Plaintiffs. Maranda also enlisted the services of individuals, most of whom are his family members, in defrauding Plaintiffs. Moreover, Maranda used sophisticated insurance schemes to continue the fraud against Plaintiff.

2.    As alleged in more detail below, Plaintiffs seek relief against Defendants for: (i) violation of the RICO Statute, 18 U.S.C. § 1961, with the

predicate acts of criminal mail fraud, 18 U.S.C. § 1341, criminal wire fraud, 18 U.S.C. § 1343, computer fraud, ; (ii) replevin for the immediate return of bitcoin mining machines; (iii) civil conspiracy; (iv) conversion; (v) fraud; (vi) breach of contract; (vii) fraudulent transfer; (viii) unjust enrichment; (IX) aiding and abetting fraud; (X) Civil Theft; and (X) Accounting.

3.   Around August 2018, Plaintiff, MinedMap was seeking a facility to host 2,800 of its bitcoin miners ("Miners").  A properly equipped bitcoin hosting facility can host thousands of Miners simultaneously without electrical or other issues. To host thousands of Miners, the facility must have access to abundant and cheap electricity.  The facility hosting the Miners often require the owners of Miners to make a large deposit against electricity costs.

4.   Plaintiffs sent more than 3,600 miners to Michael Maranda at this facility in Coxsackie, New York (the "Facility").  Maranda and other Defendants represented that the Facility could host thousands of Miners; and that the Facility had access to abundant electrical power either through traditional power sources or through access to solar power. Because of these and other representations, Plaintiffs deposited nearly $600,000.00 with Maranda and Northway, but Maranda did not use the funds to purchase electrical power.  Instead, Maranda and the other Defendants collectively used the funds to purchase personal items, pay mortgages on properties, including the property at 38 Oaklawn Avenue Farmingville New York, and

others.   As for Svorai, he purchased at least one luxury car and made payments on that car using Plaintiffs funds. Defendants defrauded Plaintiffs, and Plaintiffs are entitled to damages against Defendants.

5.    Maranda and the entities he formed used bank accounts at M&T Bank and at Teachers Federal Credit Union to defraud Plaintiffs. Neither M&T Bank nor Teachers Federal Credit Union had complied with know your customers laws or the regulations implementing the Bank secrecy Act, as amended by the Patriot Act.

**PARTIES**

I.    **PLAINTIFFS**

6.    Plaintiff, MinedMap, Inc. ("MinedMap"), is a Nevada corporation and is the parent company of Serenity.  MinedMap, like Serenity, is a bitcoin mining company that specializes in owning and purchasing bitcoin mining machines.

II.   **DEFENDANTS**

7.    Defendant, Northway Mining, LLC ("Northway"), is a New York limited liability company, with a physical office at 7014 13th Avenue, Suite 202 Brooklyn, New York 11228.  Northway has its Registered at 7014 13th Avenue, Suite 202 Brooklyn, New York 11228.

8.    Defendant, Michael Maranda, ("Maranda"), is an individual who represents himself as the CEO of Northway. Maranda's last known address is: 38 Oaklawn Avenue Farmville, NY 11738.

9.     Defendant, Michael Carter, is formerly a resident of New Jersey but he now resides in upstate New York for part of the year.   Michael Carter has been stealing Serenity and MinedMap's Miners in an effort to assist Maranda, Svorai, Northway, and other Defendants.

10.  Defendants, Hudson Data Center, Inc. ("Hudson"), is a New York corporation and its Registered Agent is Michael Maranda. Hudson may be served at 38 Oaklawn Avenue Farmingville, New York 11738.

11.  Defendant, Porter King Hill Contracting, LLC ("Porter King"), is a New York limited liability company and is owned by Michael Maranda, Michael Carter, and Anthony Porter and is used to perpetuate fraud against the Plaintiffs. Porter King may be served at 253 King Hill Road Freehold, New York 12431.

12.  Defendant, Michael Maranda LLC, is a New York limited liability company and is owned by Defendant, Michael Maranda. Michael Maranda LLC may be served at 38 Oaklawn Avenue Farmville, NY 11738.

13.  Defendant, Coinmint, LLC ("Coinmint"), is a Puerto Rican limited liability company. Coinmint has its Register Agent at 1675 S. State Street Suite B Dover Delaware, Delaware 19901.

14.  Defendant, Oswego Data LLC, is a New York limited liability company whose registered agent is Michael Kevin Maranda. Oswego Data LLC may be served at 38 Oaklawn Avenue Farmville, NY 11738.

15.    Defendant, Lori S. Thompson-Maranda LCSW PLLC, is a New York Professional Service limited liability company with a service address at 38 Oaklawn Avenue Farmville, NY 11738.

16.    Defendant, Lori S. Thompson-Maranda, is an individual whose address is 38 Oaklawn Avenue Farmville, NY 11738.

17.    Defendant, Anthony Porter, is an individual who may be served at 17 Industrial Part Way Coxsackie, New York, 12051. Mr. Porter also has a service address at 14 Durham Woods Road Durham, New York 12422.

18.    Defendant, M&T Bank, N.A. ("M&T"), is a national bank doing business across the United States. M&T is headquartered in Buffalo, New York and has a service address at One M&T Plaza Buffalo, New York 14203.

19.    Defendant, Teachers Federal Credit Union, is a credit union based in New York and has a service address at 180 Riverside Boulevard, New York, New York 10069.

20.    Defendant, Christine Maranda, is an individual and the sister of the Maranda to whom Michael Maranda transferred assets. Christine Maranda has a service address of 7 Sunbonnet Lane Bellport, New York 11713.

21.    Defendant, Roseann Maranda, is an individual to whom Michael Maranda transferred Plaintiffs deposits and money earned from Plaintiffs' bitcoin miners. Roseann Maranda has a service address of 293 Durkee Lane East Patchogue, New York 11772.

22.   Defendant, Douglas Maranda, is an individual to whom Michael Maranda transferred some or all of Plaintiffs' deposits and money earned from Plaintiffs' using or selling Plaintiffs' bitcoin miners.

23.   Defendant, Donald D'Avanzo, is an individual to whom Michael Maranda transferred Plaintiffs' assets. In addition, Defendant D'Avanzo stole money from bitcoins mined from Plaintiffs' miners without Plaintiffs authorization or consent. Defendant D'Avanzo has a service address at 209 Beach 101st Street FL. 2nd Rockaway Park, New York 11694.

## JURISDICTION AND VENUE

24.   This Court has jurisdiction over this matter under 28 U.S.C. 1331, federal question jurisdiction, as this action arises out of, among other federal statutes, violation of federal statutes including, 18 U.S.C. § 1961, et seq. (the "RICO Act"); 18 U.S.C. § 1343 ("Wire Fraud"); and 18 U.S.C. § 1341 ("Mail Fraud"), 18 U.S.C. 7 1030 ("Computer Fraud"). This Court also has jurisdiction over this matter under 28 U.S.C. § 1332, diversity jurisdiction, because Plaintiffs and Defendants are completely diverse and because the amount in controversy exceeds $75,000.00. Further, jurisdiction in this Court is premised on pendant or supplemental jurisdiction over Plaintiffs' claims brought pursuant to New York law.

25.   Venue in the Federal District Court for the Northern District of New York is proper under 28 U.S.C. § 1391 because at least one of the Defendants

reside in this District and because properties Plaintiffs seek are located in this District.

## GENERAL ALLEGATIONS

26.  On June 4, 2018, Maranda registered Northway with the New York Secretary of State.

27.  Between June and July 2018, Maranda hired Ryan Lehmann ("Lehmann"), his twenty-one-year-old nephew, as Chief Financial Officer ("CFO") of Northway.

28.  Maranda paid Lehman a salary and gave him five percent of Northway's shares.

29.  Between July and August 2018, Maranda hired three other individuals to work for Northway.

30.  Maranda instructed Lehman to open a bank account for Northway at M&T Bank.

31.  To get around banking regulations, Maranda instructed Lehmann to tell M&T Bank that Northway was not involved with the bitcoin or with bitcoin companies and that Maranda was not the true beneficiary of the bank account at M&T Bank.

32.  Lehmann opened the bank account at M&T Bank and represented to M&T Bank that Northway was not involved with the bitcoin industry.

33.  Michael Maranda, through Northway and other entities, used the account at M&T to defraud Plaintiffs.

34.   In July 2018, Maranda hired Joseph Stefanelli ("Stefanelli"), a broker with connections to bitcoin companies.

35.   In exchange for introducing Maranda to bitcoin companies, Northway agreed to pay Stefanelli a finder's fee.

36.   Northway did not disclose that Stefanelli's fee would be paid from deposits paid by the bitcoin companies to Northway.

37.   Maranda instructed Stefanelli to make the following representations to bitcoin companies: (i) Northway had a large mining Facility in update New York; (ii) Northway's Facility had access to abundant power and Northway's power was cheaper than power at other bitcoin hosting companies; (iii) Northway could host Miners by the thousands at the Facility; (iv) Northway was a legitimate business, which had obtained all licenses needed for it to operate in New York and in other states; (v) that Northway was one of the largest bitcoin mining operators in the United States and that it was expanding throughout the United States, including in Illinois and in other states were electrical power was cheaper.

38.   Around August 2018, MinedMap, was seeking a company to host their Miners.

39.   Maranda also gave the impression that he was wealthy and that he owned multiple properties, including properties at 293 Durkee Lane East, 38 Oaklawn Avenue, 707 Flats Road, and properties in Miami, Florida.

40.   Maranda represented that Northway had electrical engineers, among other staff, to care for and maintain the Miners.

41.   Defendant, Donald D'Avanzo made the same representations to Plaintiffs about the power of capability of the Facility.

42.   Maranda responded that the replacement power racks and PDUs were also defective and stated that he had scheduled repair for September 28, 2018.

43.   By September 29, 2018, Québec Inc.'s Miners still had not been plugged in.

44.   Around that same time, a third party, who was familiar with Northway's Facility, told Québec Inc.  that Northway's Facility was not able to host Québec Inc.'s 700 Miners because the Facility was not capable of transferring the power needed to operate 700 Miners.

45.   Maranda knew in at least June 2018, that the Facility was not capable of hosting 700 Miners.

46.   In fact, as of June 2018, Maranda knew that the Facility could not host more than 200 Miners.

47.   Maranda did not have the know-how to install or maintain the Miners.

48.   On October 4, 2018, Mr. Girosan and Mr. Cyr arranged to have Québec Inc.'s 700 Miners returned to Montreal.

49.   In exchange for allowing Québec Inc.' to take its Miners, Northway attempted to settle with Québec Inc. and have it release all claims against Northway.

50.   In late-October 2018, Lehman and the three other employees quit Northway.

51.   Lehmann and the other employees quit because they knew Maranda was defrauding bitcoin companies.

52.   Specifically, Lehman, and the other employees, saw Maranda steal funds deposited into Northway and spend those funds to pay Maranda's mortgage at the property located at 38 Oaklawn Avenue, rent expensive hotel suites in Las Vegas, Miami, and elsewhere.

53.   Lehman and others saw, for example, that Maranda use Québec Inc.'s to purchase cars, make down payments on a condo in Miami, make mortgage payments on personal properties in New York, pay for lavished suites in various hotels, and on other personal expenses unrelated to purchasing electricity to operate  Québec's Inc.'s Miners.

54.   Stefanelli met Daniel Kim ("Mr. Kim") and Allen Song ("Mr. Song") of MinedMap in August 2018.

55.   In September 2018, Mr. Kim and Mr. Song visited the Facility, but Maranda was not at the Facility on that day.

56.   Mr. Song visited the Facility on three other occasions between September and October 2018.

57.   Maranda did not tell Mr. Song or Mr. Kim that just he had misrepresented the capability of the Facility to Québec Inc.

58.    In addition, Maranda did not tell Mr. Song or Mr. Kim that Québec Inc. had requested the withdrawal of its Miners and requested its deposits because Northway was not able to perform under his Agreement with other entities that he and Northway had previously contracted.

59.    Maranda was present the three times Mr. Song visited the Facility.

60.    During Mr. Song's visit in September 2018, Maranda represented that Northway had recently obtained $1 million dollars in funding.

61.    The $1 million funding came from Mining Power Group, Inc. ("Mining Power") and Dror Svorai ("Svorai").

62.    According to Maranda, Northway was so well capitalized that the $1 million capital infusion would be spent on purchasing another facility in Illinois. *See Pitch Brochure, attached hereto as **Exhibit 2**.*

63.    Maranda, D'Avanzo, and other individuals employed by Maranda caused brochures, requests for payments, instructions to send wires, and other communications through the United States mail and through email to MinedMap showing that Northway had obtained additional $1 million dollars in capital and representing that the additional $1 million dollars would allow it to expand its operations.

64.    this Representation was intended to induce MinedMap to send its Miners to Maranda et. al. because these representations made it seem as if Maranda and his entities were conducting legitimate business. 97.    Neither Maranda

not any entities Maranda was associated with had $1 million dollars or anything close to $1 million dollars.

65. In fact, Northway was (and still is) chronically undercapitalized. In fact, other than money stolen from individuals, Northway had no money whatsoever to conduct its business.

66. For example, Northway and Maranda constantly underpaid its workers, contractors, and other third entities with which Northway had contracted.

67. Instead, Maranda, Svorai, and Mining Power had agreed to tell Mr. Song and issue a press release that were designed to induce Mr. Song and Mr. Kim to allow Northway to host Serenity and MinedMap's Miners. *See Press Releases attached hereto as **Exhibit 3**.*

68. Further, the claim that Northway had received $1 million dollars in funding was contrived by Maranda, Svorai, and Mining Power to induce prospective bitcoin companies, like the Plaintiffs, to enter into hosting agreements with Mining Power.

69. Neither Maranda nor Svorai had access to $1 million dollars when they made these representations.

70. In fact, by the time Maranda met Mr. Kim and Mr. Song, Maranda was using Plaintiffs' deposits to fund his day-to-day living expenses, including expenses such as his mortgage payments, groceries, sending monies to family members, including his parents, wife, sister, and brother-in-law.

71.   On September 21, 2018, based on Maranda's representations, MinedMap and Serenity entered into a hosting agreement with Northway Mining. *See Hosting Agreement between MinedMap and Northway ("Agreement II"), attached hereto as* **Exhibit 4.**

72.   Under the hosting agreement with MinedMap and Serenity, MinedMap and Serenity were to pay Northway the following: (i) costs for electricity for operating their Miners; (ii) costs associated with maintaining the Miners at proper temperature and ensuring the physical condition in which the Miners were stored were optimal; (iii) repair costs plus a 10% mark up; (iv) internal labor Northway may incur in storing the miners; and (v) other costs related to storing the Miners.  *Id.*

73.   On September 21, 2018, MinedMap and Serenity wired **$162,000.00** to Northway as a deposit on the electrical costs Northway was to incur hosting MinedMap and Serenity's Miners.

74.   In addition, almost one week later, MinedMap and Serenity wired an additional **$270,000.00** as a deposit against electrical power for its Miners.

75.   Between October 8, 2018 and early-November 2018, MinedMap and Serenity shipped **2,689** Miners to Northway.  See List of Miners Serenity and MinedMap Transferred to Northway, attached hereto as **Exhibit 5.**

76.   Maranda was to plug in MinedMap and Serenity's Miners 21 days from the date that MinedMap and Serenity receiver the Miners.  Agreement II, at 1–2.

77.   However, like Québec Inc.'s Miners, MinedMap and Serenity's Miners were never plugged in.

79.   Neither Northway nor Maranda intended to plug-in  MinedMap's Miners.

80.   In November 2018, Mr. Kim and Mr. Song inquired about their Miners.

81.   Mr. Song and Mr. Kim specifically inquired about their Miners had been plugged in.

82.   Maranda did not immediately respond, but when Maranda did respond, Maranda claimed the Miners would soon be plugged in.

83.   By October 2018, the Miners still had not been plugged in.

84.   Mr. Song and Mr. Kim again  inquired about the Miners, but Maranda was not responsive.

85.   When Maranda responded, he claimed an unspecified issue with the Facility and stated he was sending the Miners to Louisiana to be hosted by another facility, managed by individuals named Prit and Akshard.

86.   On November 13, 2018, Maranda claimed he would transfer MinedMap and Serenity's Miners, without cost to MinedMap and Serenity, and that he would use their deposit to make the payments to the facility in Louisiana.

87.   Maranda did not transfer the Miners to any facilities in Louisiana.

88.   In November 2018, Mr. Kim contacted Prit and Akshard, the individuals who owned the facility in Louisiana, to determine whether Northway had sent the Miners to them for hosting.

89.   Prit and Akshard told Mr. Kim and Mr. Song that they did not know Maranda or Northway, and that they had not received Miners from Maranda or Northway.

90.   In addition, the facility in Louisiana stated that it had not received any deposit from Maranda or Northway.

91.   Mr. Kim and Mr. Song contacted Maranda and asked for the Miners.

92.   Maranda acknowledged that the Miners had not been transferred to Louisiana but did not provide a reason.

93.   Maranda claimed, via text message, he had transferred the Miners to another location in New York, but that statement was false.

94.   Maranda never plugged in MinedMap and Serenity's Miners.

95.   On February 15, 2019, Mr. Kim and Mr. Song demanded the return of their Miners.

96.   Maranda and Northway have refused to return MinedMap and Northway's Miners.

97.   In March 2019, Maranda transferred MinedMap's Miners or bitcoins mined from MinedMap's Miners to third parties, including including Coinmint, D'Avanzo, Anthony Porter, Michael Carter, Christine Maranda, Lori Maranda, Christine Maranda, Douglas Maranda, Roseann Maranda, and others.

98.   For example, Maranda used proceeds from Plaintiff's bitcoin miners to pay for costs that arose in his recent divorce from Ms. Maranda. Indeed,

4160-2862-5708, v. 1

Maranda and his wife divided money and property obtained from MinedMap through fraud in their recent divorce.

99.  The third parties to whom Maranda and Northway transferred some or all of Serenity and MinedMap's Miners were warned against taking possession of Serenity and MinedMap's Miners.

100.  In any event, each party knew that the funds they were obtaining from Maranda is stolen property.

101.  In late-March 2019, Northway hired Michael Carter, an electrician.

102.  Michael Carter called Kim and Song and told them that Maranda had transferred some of their Miners to Carter and that he [Carter] was willing to sell the Miners in his possession back to MinedMap at a higher price.

103.  Allan Song and Daniel Kim declined Michael Carter's offer.

104.  Michael Carter, Hudson, and others associated with Northway, have been negotiating with Simpleray, a solar company, to obtain solar power to operate Serenity and MinedMap's Miners.

105.  Maranda, Michael Carter, Northway and other individuals and entities are using Serenity and MinedMap's Miners to mine bitcoins.

106.  Maranda, Michael Carter, Northway, Anthony Porter, Christine Maranda, Douglas Maranda, Roseann Maranda, Donald D'Avanzo and others have been earning income from Serenity and MinedMap's Miners.

107.  The incomes earned from Serenity and MinedMap belong solely to Serenity and MinedMap.

108. None of the third parties who have received Serenity and MinedMap's Miners are bona fide purchasers because these individuals knew, or with minimal research, should have known, that the Miners in Michael Maranda's possession were stolen.

109. All individuals and entities who received MinedMap and Serenity's Miners are liable to Serenity and MinedMap for conversion and theft.

110. Serenity and MinedMap have lost profits because they have been denied the right to use their Miners.

111. In January 2019, Serenity and MinedMap obtained an offer from a Canadian company to host their Miners.

112. Had Serenity and MinedMap timely received their Miners, they would have more than $3 million dollars.

113. Maranda, Northway, Michael Carter, and others have caused Serenity and MinedMap to lose substantial income.

114. Michael Carter has taken sums that would otherwise belong to MinedMap and Serenity and used them for his own benefit, including giving funds to Lori Shannon Thompson-Maranda, Douglas Maranda, Roseann Maranda, Christine Maranda, Anthony Porter, Donald D'Avanzo, among other defendants named and expected to be named in this lawsuit.

115. As of March 2019, Michael Carter owned  35% of Northway and 35% of Michael Maranda LLC.

116. Shares in Northway was transferred to Michael Carter, Anthony Porter, Lori S. Thompson-Maranda and her company, Lori S. Thompson-Maranda LCSW PLLC, and to other third parties to allow Maranda and Northway to hinder, delay, or defraud their creditors.

117. Michael Carter, Anthony Porter, and other third parties knew that the Miners did not belong to Northway or Maranda, but, despite this knowledge, Michael Carter and the third parties willingly assisted Northway and Maranda in defrauding Northway's creditors.

118. Michael Maranda recently transferred Defendant, CSX4236 Motorcycle Salvage LLC to Lori Shannon Thompson-Maranda. In a recent settlement agreement with a third party, Lori Shannon Thompson Maranda executed the settlement agreement on behalf of CSX4236 Motorcycle Salvage.

119. Michael Carter specifically assisted Maranda in hiding assets by changing the titles to those assets into Michael Carter's name and into the names of other third parties.

120. Michael Carter transferred cars and other assets that Maranda purchased using Plaintiffs' deposits to Miami to defraud their creditors.

121. Maranda did not tell Mr. Kim and Mr. Song that Northway was struggling financially, and that Northway did not have capital.

122. Michael Maranda has been selling Plaintiffs' Miners.

133. Northway Mining is wrongfully withholding MinedMap and Serenity's Miners without any legal basis for doing so.

134. MinedMap and Serenity seek an Order from this Court ordering the United States Marshall to break open, enter and search for the Miners that belong to Plaintiffs.

135. Defendants do not have any colorable legal bases for keeping the Miners.

136. Plaintiffs seek an Order of Seizure without Notice because Northway Mining is in the process of transferring or selling the Miners to third parties.

137. The value of the Miners, based on current market valuation, is $12 million dollars, including the bitcoins that should have been mined from them.

**COUNT I:**
**(CIVIL RICO ACT VIOLATIONS—Against Michael Maranda, Michael Maranda LLC, Northway Mining, Inc.; Michael Carter; Donald D'Avanzo; Oswego Data, LLC; Ethereum Ventures, LLC; Porter King Hill Contracting, LLC; Hudson Data Center;)**

138. Plaintiffs incorporate the previous allegations as if fully set forth in this paragraph.

139. Plaintiffs' claims arise under section 1964(c) of RICO, and Plaintiff asserts claims for violations of section 1962(c) and (d) of RICO.

**A.    The Enterprise**

140. Defendants created an association-in-fact enterprise that consists of Maranda, Svorai, Northway, Mining Power, Michael Carter, Coinmint, Oswego Data, LLC, Ethereum Ventures, LLC, Hudson Data Center, and other entities

Defendants created and other individuals who assisted Defendants in the Enterprise.

141. Defendants designed the Enterprise to defraud bitcoin companies in the United States and around the world by representing Northway to be a reputable bitcoin hosting company. Once the bitcoin companies fell for the ruse, Northway would take large amounts of deposits from them and take their Miners, mine bitcoins, and use the deposits and the bitcoins for Northway, Maranda, Anthony Porter, Svorai, Michael Carter and other third parties' own benefit.

142. The activities of Defendants' enterprise affected interstate and international commerce because monies were wired through interstate commerce and because the Miners travelled through interstate and international commerce to reach Northway.

143. In violation of Section 1962(c), Defendants conducted or participated and conspired to participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, and, in so doing, proximately caused injury to Plaintiffs.

144. The individual defendants are persons within the meaning of Section 1961.

145. Each of the individual defendant knew the essential scope of the Enterprise and each of the individual defendants intended to participate in the affairs of the Enterprise. In other words, each Defendant knew that the

enterprise was established to defraud entities that owned bitcoin miners. In fact, Defendants, D'avanzo, Anthony Porter, Christine Maranda, Dror Svorai, and Melissa Welsh, have all stated between January 1, 2018, and continuing until July 2020, that they knew of the scheme and specifically, they knew that the scheme was fraudulent.

146. Each of the Defendants played discrete roles in the Enterprise: (1) Maranda misrepresented Northway and its capabilities even though Maranda knew Northway could not host thousands of Miners; (2) Svorai, Mining Power, and Maranda, misrepresented Northway's financial condition to make it appear as if Northway was financially sound and did not need to steal from Plaintiffs and others; (3) Michael Carter and Anthony Porter schemed to obtain Serenity and MinedMap's Miners even though Mr. Kim and Mr. Song has warned him against taking the Miners; (4) Michael Carter and Anthony Porter stole large sums of money from Serenity and MinedMap's Miners; (5) Michael Carter engaged in an extensive practice of hiding Maranda's assets in New York and in Miami, Florida.

## B.   Specific Acts of Racketeering

147. Defendants engaged in a pattern of racketeering activity as that term is defined in Section 1961, in that Defendants committed at least two acts of racketeering within 10 years of each other.

148. Specifically, as more particularly described below, Defendants committed discrete violations of 18 U.S.C. § 1341,§ 1343, and §18 U.S.C. 1030(g) since late 2017 to the present.

### i.    Mail Fraud

149. Under 18 U.S.C. § 1341, federal law imposes criminal sanctions on anyone who:

> Having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to . . . distribute, supply furnish or procure for unlawful use any counterfeit or spurious article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do . . . places in any post office or authorized depository for mail matter, any matter of thing whatever to be sent or delivered by postal service . . . or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter of thing.

150. Defendants knowingly devised a scheme or artifice to defraud Plaintiffs, or for obtaining money of Plaintiffs' properties by means of false pretenses, false representations, or promises or by distributing counterfeit and spurious articles.

151. Each Defendant acted with the requisite intent to defraud Plaintiffs.

152. In advancing, furthering, or carrying out the scheme to defraud Plaintiffs, Defendants used the mails, or caused the mails to be used, in furtherance of their scheme to defraud Plaintiffs.

153. For example, as early as June 2017, after Maranda left prison on parole, Maranda, and the other Defendants, determined that they would steal bitcoin miners from businesses who owned them.

154. To that end, around November 2017, Maranda began scouting properties that from which the perpetrate his fraud against MinedMap and against others who are similarly situated to MinedMap.

155. Because Maranda could not obtain funding from legitimate sources, Maranda relied on family members to help him perpetrate the fraud. For example, Maranda used the home of Roseanne and Douglas Maranda to store stolen bitcoin miners.

156. Around that same time—from mid-2017 to the present—Maranda also used the home at 38 Oaklawn Avenue Farmville, New York to store stolen bitcoin Miners.

157. Maranda then started to brand himself as a bitcoin magnet. Specifically, from the time he left Prison to the present, Maranda has told prospective victims and the Owners of MinedMap that he knew how to operate a Bitcoin Mining farm, that he knew how to configure bitcoins in a way that made it perform at a higher level (viz. mine more bitcoins), and that he had sufficient capital to operate a bitcoin farm for the purpose of mining bitcoins.

158. In addition, in September 2018, Maranda told MinedMap's owners, while Maranda was visiting them in Las Vegas, that he had already operated large bitcoin farms throughout the state of New York and that he was one of the few individuals who had experience in operating a large-scale bitcoin farm.

159. The aim of the scheme was to take advantage of the emerging bitcoin industry and to mislead MinedMap and individuals like MinedMap into sending their miners to Maranda so that Maranda and the other Defendants could steal them and mined the bitcoins from them for Maranda and for the other Defendants' own benefit.

160. Although Defendants approached MinedMap in June 2018, Defendants had long been running their scheme before they approached MinedMap. As alleged above, Defendants had been operating since 2017 and Defendants have amassed victims from the years they have been operating.

161. Maranda's statements were false because Maranda had not been operating a bitcoin farm, because Maranda had only just be released from prison, because Maranda had no resources and no ability to transact business since he did not even have a bank account, and because Maranda did not know how bitcoins work and he still does not know how bitcoins work.

162. In fact, by the time Defendants approached Maranda, each Defendant had a distinct role in the enterprise: (i) Maranda was at the head of the enterprise and directed that activities of the named Defendants into performing tasks in furtherance of the Enterprise. For example, Maranda formed or ordered individuals to form entities for the purpose of defrauding MinedMap; and (ii) Defendants, such as Donald D'Avanzo, Michael Maranda, Anthony Porter, Christine Maranda, Dror Svorai, and the other named Defendants each had specific roles in the scheme.

163. For example, Michael Carter was in charge of reconfiguring the stolen miners to make them appear as if they were not stolen, Donald D'Avanzo represented himself as a bitcoin technician and claimed he had substantive knowledge about how bitcoin miners worked although D'Avanzo never possessed such knowledge and had little to no understanding as to how bitcoin miners worked, Dror Svorai claimed he was a wealthy individual from Israel except that he was not wealthy and the other Defendants knew Dror Svorai was not wealthy and otherwise had no resources to put into Northway or other entities created or controlled by Maranda; Christine Maranda stored stolen miners at her property and help prevent recovery of those miners; Anthony Porter helped transfer miners from on location to another to prevent the true owners from knowing where exactly their miners were located. Anthony Porter transferred MinedMap Miners from New York to Illinois in order to prevent MinedMap from tracking its miners and discovering the true location and IP addresses of his miners.

164. Reconfiguring a bitcoin miner require changing the IP address so that the owner of the Miner cannot find the correct IP address of his or her miner.

165. Jeff Holbrook ("Holbrook") performed different tasks. Although Holbrook owned several entities building at which Maranda stored MinedMap Miners, Holbrook knew all along that the Miners hosted at his building were stolen, but Holbrook did not stop doing business with Maranda. In fact, Holbrook participated in the theft in that he began actively courting Maranda

for additional business, and he received bitcoins mined from MinedMap's miners.

166. In fact, Holbrook has participated in transactions with Maranda involving stolen Miners and he and Maranda agreed to allow Holbrook to use Holbrook's name in several transactions to make it appear as if Holbrook was the individual involved in the transaction when in fact Maranda was the one actually behind the transaction.

167. The use of Holbrook in transactions was again meant to make the transaction appear clean and free of Maranda.

168. Holbrook obtained additional sums from Maranda in order for Holbrook to appear at the person in the transaction involving Maranda.

169. Defendant, Melissa Welsh ("Welsh") also played a distinct role in the scheme.

170. Welsh has worked from Maranda since at least June 2018.

171. Welsh has assisted Maranda with running and operating the scheme in that Welsh provided logistical support for shipping MinedMap's miners across the country.

172. For example, even though Ms. Welsh had previous knowledge that the Miners Maranda was using were stolen, Welsh nevertheless organized for those Miners to be shipped from New York to Illinois despite receiving warnings not to do so.

173. In fact, Welsh specifically directed an individual whose last name is Finch to pack certain miners and ship them to Illinois.

174. Also, Welsh was responsible for removing (or shaving) serial numbers from bitcoin miners in order to conceal the identity of MinedMap's Miners. Thus, from January 1, 2018 to the present, Welsh was involved with Maranda and Northway in stealing and erasing the serial number of MinedMap's Miners.

175. The Defendants also used other means of stealing from MinedMap and from others.

176. Defendants had obtained certain insurance policies on Minedmap Miners.

177. One of the policies obtained on the Miners was with West World Insurance Group, a subsidiary of AIG Insurance Group.

178. The ruse that Defendants used with insurance companies were more intricate than the ruse Defendants used in taking MinedMap's Miners.

179. Defendants established insurance policies on MinedMap Miners but did not disclose those policies to MinedMap.

180. Defendants represented to the insurance companies that Defendants owned the Miners.

181. Defendants would then make claims on MinedMap's policies but not pay those proceeds to MinedMap.

182. Upon information and belief, Defendants have received more than $1 million dollars in insurance proceeds on MinedMap Miners, but Defendants have not turned those proceeds over to Plaintiffs.

183. In addition, Defendants have not disclosed the true owner of the Miners to the various insurance companies.

184. For each of these acts, Defendants have used the United States mail, email systems across interstate commerce, traveled across interstate commerce, and other modalities of interstate in  violation of 18 U.S.C. § 1341.

185. Defendants have specifically used the mail system to send and receive messages in furtherance of their scheme, have used interstate commerce in furtherance of their scheme by driving Plaintiff's Miners to Illinois and to other states,

186. Defendants acts of mail fraud constitute discreet Predicate Offenses under Section 1961.

### ii.  Wire Fraud

187. Under 18 U.S.C. § 1343, federal law imposes criminal sanctions on anyone who:

> Having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses representations, or promises, transmits, or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

188. As stated above, Defendants knowingly devised a scheme to defraud or obtain money or property from Plaintiffs by making materially false or fraudulent pretenses, representations, or promises.

189. Each Defendant acted with the requisite intent to defraud Plaintiffs.

29

190. Each Defendant knowingly (and collectively) devised a scheme to defraud or obtain money or property from Plaintiffs by materially false or fraudulent pretenses, representations, or promises.

191. In advancing, furthering, or carrying out the scheme to defraud Plaintiffs, Defendants transmitted by means of wire or caused to be transmitted by means of wire, writings, signs, signals, and pictures for the purpose of executing their scheme, the following:

        a. Defendants sent numerous text messages via Apple Message Application and by other similar message applications from August 2, 2018 through the present;

        b. On September 21, 2018, Defendants sent an email making fraudulent misrepresentations;

        c. On September 28, 2018, Defendants sent several text messages making misrepresentations to Plaintiffs; and

        d. On or around November 13, 2018, Defendants sent several text messages to Plaintiffs making fraudulent representations to Plaintiffs.

192. The wires affected interstate and international commerce.

193. The uses of wires were each in violation of 18 U.S.C. § 1343.

194. Defendants have also engaged in substantial trading of MinedMap's bitcoins through interstate commerce. For example, beginning in December 2018, Defendant, Michael Carter, traded, using interstate commerce a large number of bitcoins that belong to MinedMap using the financial platforms available in interstate commerce do so. Defendant Maranda, from the same

time and continuing until the present has engaged in the same conduct in trading MinedMap's bitcoins across interstate commerce.

195. The acts described above constitute discrete Predicate Offenses under § 1961.

### iii.  Computer Fraud and Abuse Act ("CFAA") 18 U.S.C. 1030

196. Under 18 U.S.C. § 1030, federal law imposes criminal sanctions on anyone who access through fraud or other illegal means the computer of another without authorization or permission.

197. Defendants, and specifically including Defendant Maranda, Michael Carter, D'Avanzo, Holbrook, obtained accessed to MinedMap's bitcoin miners, which are computers beginning in **October 2018** and continuing until the **present**.

198. Defendants unlawfully accessed MinedMap's bitcoin miners to defraud MinedMap and to obtain MinedMap's bitcoins in violation of §(a)(4). Also, Defendants knowingly and intentionally damaged (and continue to damage) MinedMap's bitcoin Miners in violation of § (a)(5)(b).

199. As just one example, Defendants, with Melissa Welsh primarily leading the charge, accessed MinedMap's bitcoin miners in a manner that MinedMap did not know of and did not authorize and began erasing the serial numbers from those Miners.

200. Defendants also damaged MinedMap's Miners by improperly storing MinedMap's miners, by applying improper electrical power to the Miners

causing a power surge that destroy some of MinedMap's Miners, and by otherwise negligently causing damage to MinedMap's Miners.

### iv.   Pattern of Racketeering

201. The predicate offenses as described above had the same or similar purposes, results, participants, victims, and methods of commission, and are otherwise interrelated by distinguishing characteristics and were not isolated events.

202. Defendants' development of new companies and the transferring of assets in the name of other individuals included at least two acts of Wire Fraud over a period of more than two years.

203. In addition, Defendants damaging, accessing without permission, and stealing MinedMap's bitcoin violates the Computer Fraud and Abuse Act as detailed above.

204. Defendants' commission of the Predicate Offenses included multiple acts of mail and wire fraud constitute conduct that extends temporally from the past into the future with a threat of repetition.

205. Defendants' commission of the Predicate Offenses evidenced continuity because both amounted to a closed period of repeated conduct as well as conduct that extended temporally from the past into the future with a threat of repetition.

206. In fact, the fraudulent acts that Defendants began in 2017, when Maranda was paroled from prison has continued until today in that Maranda

is still in possession of MinedMap's bitcoins, Maranda is still selling MinedMap's Miners.

207. In fact, as recently as March 4, 2021, Maranda was trying to sell MinedMap's S9 Miners:



208. Indeed, whereas Defendants and its counsel represented that they were providing MinedMap's Miners, they are instead selling MinedMap's Miners in furtherance of the scheme that MinedMap has alleged.

209. Defendants have been perpetrating the same or similar acts against individuals similarly situated to Plaintiff. In fact, between mid-2007 and continuing through the present, Defendants have committed the same acts it committed against Plaintiff, against individuals and entities in Colorado, in New Hampshire, in Florida, in Las Vegas, in Texas, in New York, in Illinois, in California, among other states. In addition, Maranda et. al. has defrauded others in a similar manner in Australia, in Singapore, among other countries.

<u>COUNT II</u>:
**(REPLEVIN FOR BITCOIN MINERS AND MONEYS STOLEN: Against All Defendants)**

210. Plaintiffs incorporate the preceding allegations as if they are fully set forth in this paragraph.

211. Defendants are in possession of Miners that belong to Serenity and MinedMap.

212. Plaintiffs, Serenity and MinedMap, have superior possessory right to the Miners.

213. Plaintiffs, Serenity and MinedMap, are entitled to immediate possession of their Miners.

214. Plaintiff have attached an Emergency Motion under CPLR 7218 made applicable in this Court through Fed.R.Civ.P 64.

## COUNT III:
### (CIVIL CONSPIRACY: Against All Defendants)

215. Plaintiffs incorporate the preceding allegations as if they are fully set forth in this paragraph.

216. Defendants entered into an agreement to defraud Plaintiffs of their money and their Miners; in addition, Defendants entered into a conspiracy to remove Plaintiffs' Properties out of Plaintiffs' custody possession or control.

217. Defendants undertook an overt act in furtherance of their agreement in that Defendants opened bank accounts; received money and miners form Plaintiff based on false representations; transferred properties outreach of Plaintiffs.

218. Each Defendant intentionally participated in the furtherance of the plan and the purpose of the plan.

219. Plaintiffs suffered damages as a proximate cause of Defendants' actions in an amount to be proven at trial.

## COUNT IV:
### (CONVERSION: Against All Defendants)

220. Plaintiffs incorporate the preceding allegations as if they are fully set forth in this paragraph.

221. Plaintiffs have a possessory right and property interests in their Miners and the deposits they paid to Defendants.

222. Defendants have exercised dominion and control over Plaintiffs' Miners and over Plaintiffs' money so as to deprive Plaintiffs of the Miners and money.

223. Plaintiffs are entitled to damages in amounts to be proven at trial.

**COUNT V:**
**(FRAUD: Against All Defendants, Except M&T Bank, Teachers Federal Credit Union, & Donald D'Avanzo)**

224. Plaintiffs incorporate the preceding allegations as if they are fully set forth in this paragraph.

225. From **June 2018** to the filing (and amendment) of this lawsuit, Maranda, acting for himself and at times through others mispresented the true nature of his entities and business, misrepresented his ability to host bitcoin miners, misrepresented his the liquidity or capital the entities he formed had, misrepresented his skillset, misrepresented the capabilities of his facilities, omitted to disclose his time in prison, omitted to disclose that he had defrauding others and was still defrauding others, omitted to disclose his aim as to certain insurance policies and certain insurance companies with which he was working, omitted to disclose that the other named defendants in this suit was part of his fraudulent scheme, omitted to disclose that individuals who previously worked for him had quit because those individuals discovered his fraud, omitted to disclose that he had not paid a single power company, omitted to disclose that reputable power companies declined to do business with him, omitted to disclose that all

sums paid to him was used for personal expenses such as giving money to his wife, his parents, and other family members, and omitted to disclose that neither he nor Svorai had the ability to finance Northway, Michael Maranda LLC, or any other entity. Maranda also misrepresented the ownership of Northway by claiming—beginning in June 2018—that he was the sole owner of Northway when in fact Michael Carter and Dror Svorai also owned Northway in exchange for payments they had made to Maranda around that same time.

220.  The foregoing fraudulent acts and omissions were made to MinedMap's owners in New York, when each of them visited, and in Las Vegas (June, July, and August 2018) when Maranda.

226.  The Defendants and the entities they used to perpetuate the fraud, were aware when they made the fraudulent acts and omissions that the fraudulent acts and omissions were all false and were undertaken specifically to induce MinedMap's owners to send their Miners and their deposits to Defendants.

227.  Defendants induced Plaintiffs to rely on their representations.

228.  Plaintiffs relied on Defendants' representations.

229.  Plaintiffs' reliance was justified.

230.  Plaintiffs have suffered damages in an amount to be proven at trial.

**COUNT VI:**
**BREACH OF CONTRACT:**
**(Against Northway, Michael Maranda LLC)**

231.  Plaintiffs incorporate the preceding allegations as if they are fully set forth in this paragraph.

232. Defendants entered into a contract with Plaintiffs.

233. Among other obligations, Defendants were required to install Plaintiffs' Miners so that Plaintiffs could earn income from their Miners on behalf of their investors.

234. Plaintiffs performed their obligations under the Contract in that Plaintiffs paid Defendants large deposits and transported their machines to Northway Facility.

235. Defendants breached their agreements with Plaintiff by failing to install Plaintiffs' Miners.

236. Plaintiffs are entitled to damages in amounts to be proven at trial.

<u>COUNT VII:</u>
**(FRAUDULENT TRANSFER: Against All Defendants, Except M&T Bank, Teachers Federal Credit Union)**

237. Plaintiffs incorporate the preceding allegations as if they are fully set forth in this paragraph.

238. Defendants have conveyed Miners and monies owned by Plaintiffs to each other and to various third parties, including to Defendant Lori S. Thompson-Maranda and her company, Lori S. Thompson-Maranda LCSW PLLC.

239. At the time Defendants conveyed Plaintiffs' Miners and money, the conveyance was made without fair consideration.

240. Defendants were insolvent or rendered insolvent because of the transfer.

241. Further, Defendants committed the transfer to hinder, delay, and defraud creditors.

242. Plaintiffs are entitled to damages in amounts to be proven at trial.

## COUNT VIII:
### (UNJUST ENRICHMENT: Against All Defendants, Except M&T Bank, Teachers Federal Credit Union)

243. Plaintiffs incorporate the preceding allegations as if they are fully set forth in this paragraph.

244. Defendants were enriched by keeping Plaintiff's Miners, the bitcoins mined from Plaintiffs' Miners, and the deposits Plaintiffs made to Defendants.

245. Defendants benefitted at Plaintiffs' expense.

246. It is against equity and good conscience to permit Defendants to retain Plaintiffs' deposits, Plaintiffs' Miners, and the bitcoins Mined from Plaintiffs' Miners.

247. Plaintiffs have incurred damages to be proven at trial.

## COUNT IX:
### (AIDING & ABETTING FRAUD—All Defendants)

248. Plaintiffs incorporate the preceding allegations as if they are fully set forth in this paragraph.

249. M&T Bank, Teachers Federal Credit Union, Coinmint, Lori S. Thompson-Maranda LCSW PLLC, and Lori S. Thompson, and the other Defendants engaged in an underlying fraud to defraud Plaintiffs of their bitcoin machines and of their money.

250. Coinmint, Lori S. Thompson-Maranda LCSW PLLC, and Lori S. Thompson aided and abetted Defendants, Northway, Michael Maranda, Dror Svorai, and others, by storing and mining bitcoins from Plaintiffs machines even though they knew that Defendants had stolen the bitcoin machines and moneys from Plaintiffs. In addition, Defendants, M&T Bank and Teachers Federal Credit Union allowed Defendants to open accounts at their respective Banks even though accounts by Defendants should have been rejected out of hand. Indeed, Defendants only used their accounts at M&T Bank and Teachers Federal Credit Union to commit substantial fraud against MinedMap and others similarly situated as MinedMap.

251. Coinmint had actual knowledge of the fraud because Plaintiffs told Coinmint that the bitcoin machines Defendants had placed with Coinmint did not belong to Northway et. al. In fact, MinedMap's owner, Daniel Kim, had specifically told Coinmint that the Miners Maranda had placed with them were ill-gotten. In addition, Mr. Kim had specifically told Coinmint that the bitcoins mined from those miners belonged to MinedMap. Coinmint proceeded forward with taking and mining from MinedMap's miners instead of heeding Mr. Kim's instructions.

252. As to M&T Bank and Teachers Federal Credit Union, they should have vetted Defendants and Defendants' business before doing business with Defendants. In fact, every aspect of Defendants' business is fraudulent and neither M&T Bank nor Teachers Federal Credit Union should have allowed

Defendants to use their bank accounts as instruments of fraud in interstate commerce. In fact, had M&T Bank or Teachers Federal Credit Union monitored any of Defendants activities, they would have learned that the accounts were set up solely to defraud Plaintiffs and others.

253. Despite knowing their knowing (or, in the case of the banks, despite knowledge that are imputed to them), they continued to assist Defendants in Defendants' scheme to defraud MinedMap and other entities similarly situated as MinedMap.

254. Without Coinmint's substantial assistance to Northway et. al., Northway et. al. could not have pulled off the fraud committed against Plaintiffs.

255. Plaintiffs have suffered damages in an amount to be proven at trial.

### Count X:
### (ACCOUNTING—Against all Defendants, Except M&T Bank and Teachers Federal Credit Union)

256. Plaintiffs incorporate the preceding factual allegations as if they were fully set forth in this paragraph.

257. Defendants, Michael Maranda, Northway, Michael Carter, Svorai, Michael Maranda LLC, Porter King Hill Contracting, LLC, Hudson Data Center, Mining Power Group, and Oswego Data, entered into a fiduciary relationship with Plaintiffs when the foregoing Defendants took money from Plaintiffs and entered into an Agreement with Plaintiffs to store Plaintiffs' Miners.

258.  Because Defendants were acting as Plaintiffs' fiduciary, Plaintiffs are entitled to an accounting against the Defendants.

### Count XI:
**(CIVIL THEFT—Against Michael Carter, Michael Maranda, Michael Maranda LLC, Northway Mining, Svorai, Porter King Hill Contracting, Hudson Data Center, Anthony Porter, and)**

259.  Plaintiffs incorporate the preceding factual allegations as if they were fully set forth in this paragraph.

260.  Defendants took deposits from Plaintiffs, took Plaintiffs' Miners, and mined bitcoins from Plaintiffs' Miners without turning over those sums to Plaintiffs.

261.  Defendants acted with the requisite intent in taking Plaintiffs' bitcoin miners, in taking Plaintiffs' deposits, and in taking bitcoins mined from Plaintiffs Miners.

262.  Plaintiffs are entitled to damages against Defendants.

### COUNT XII:
**(NEGLIGENCE—Against M&T Bank and Teachers Federal Credit Union)**

263.  Plaintiffs incorporate the preceding allegations as if fully set forth herein.

264.  Defendants, M&T Bank and Teachers Federal Credit Union has a duty obligation under know your customer laws to identify and verify Michael Maranda, to identify who owned and controlled the accounts Maranda caused third parties to open, the nature and purpose of the business Maranda was engaged in, and to monitor Maranda on an ongoing basis. The banks duty to

know its client dovetails with existing rules promulgated by the Office of the Comptroller of the Currency, which prohibited banks from doing business with cryptocurrency business because of the level of fraud that existed in those businesses.

265. Under 12 U.S.C. §§ 1, 26-27, the Office of the Comptroller has regulatory and other powers over banks, like M&T Bank and Teachers Federal Credit Union.

266. Since the arrival of bitcoins, the Office of the Comptroller instituted certain restrictions on how banks may interact with cryptocurrencies businesses. The Office of the Comptroller's Restrictions were designed to protect the larger public and to protect businesses.

267. Defendants were among the businesses that the rules promulgated by the Office of the Comptroller was designed to protect.

268. Under the Rules and regulations promulgated by the Office of the Comptroller, Defendants, M&T Bank and Teachers Federal Credit Union, had a duty to bar Defendants from doing business with them and Defendants breached that duty when they failed to identify and verify Michael Maranda and his businesses, when they failed to investigate and nature and scope of Michael Maranda's business, and when they failed to monitor Michael Maranda on an ongoing basis.

269. Defendants, M&T Bank and Teachers Federal Credit Union, did not have adequate policies and practices in place to comply with know your customer

regulations and with the regulations promulgated by the Office of the Comptroller.

270. Defendants, M&T Bank and Teachers Federal Credit Union, failed to implement adequate practices and policies aided Maranda in defrauding Plaintiffs.

271. If Defendants, M&T Bank and Teachers Federal Credit Union, had adequate practices and policies in place, it would have caught and flagged Maranda's business, Maranda's business practices, and transactions with Mining Power and Dror Svorai, who was arrested for fraud in Ohio and is currently awaiting trial.

272. If Defendants, M&T Bank and Teachers Federal Credit Union, had adequate practices and policies in conducting customer due diligence, they would have known that Maranda did not use his bank accounts for legitimate banking transactions.

273. Defendants, M&T Bank and Teachers Federal Credit Union, failure to implement adequate practices and policies under New York and federal know your customer laws caused Plaintiffs to suffer substantial damages, in an amount to be proven at trial.

**WHEREFORE,** based on the foregoing, Plaintiffs seek the following reliefs:

      (i)   For the return of all of Plaintiffs' Miners;

      (ii)  For treble damages on all monetary damages Plaintiffs suffered;

      (iii) For all sums Defendants have earned from operating Plaintiffs' Miners;

      (iv)  For attorney fees and costs;

      (v)   For all equitable relief this court deems proper under the laws of the state of New York;

      (vi)  For moratory interests on all damages incurred by Plaintiffs; and

      (vii) For all other relief this Court determines to be proper under New York Law and under Federal law.

Dated as of March 8, 2021.
New York, New York

**RESPECTFULLY SUBMITTED,**

*/s/ T. Edward Williams, Esq.*
T. Edward Williams, Esq.
Williams LLP
7 World Trade Center
250 Greenwich 46th FL.
New York, New York 10007
Tel: 212.634.9106
Fax: 212.202.6228
Edward@williamsllp.com

**With Copy To:**
Minedmap