UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MINEDMAP, INC.,

                Plaintiff,

    -against-

NORTHWAY MINING, LLC, a New York limited liability
company, *et. al.*,

                Defendants.

Civ. Action No.: 1:19-CV-00501-
TJM-CFH

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS "FIRST AMENDED COMPLAINT" (ECF Doc. #150)

## BY DEFENDANTS NORTHWAY MINING LLC, MICHAEL MARANDA, MICHAEL MARANDA LLC, HUDSON DATA CENTER INC. AND MICHAEL CARTER

John F. Harwick, Esq.
Benjamin F. Neidl, Esq.
E. STEWART JONES HACKER MURPHY LLP
*Attorneys for Defendants Northway Mining*
*LLC, Michael Maranda, Michael Maranda*
*LLC, Hudson Data Center Inc. and*
*Michael Carter*
28 Second Street
Troy, N.Y. 12180
(518)274-5820

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES .................................................................................... ii

PRELIMINARY STATEMENT ............................................................................ 1

PROCEDURAL HISTORY ................................................................................... 1

ALLEGATIONS OF THE NEW PLEADING .................................................... 2

ARGUMENT ........................................................................................................... 5

   I.   MINEDMAP DOES NOT ALLEGE SUFFICIENT
       FACTS TO ESTABLISH STANDING. .................................................... 5

   II.  IN ANY EVENT, COUNT I FAILS TO STATE A RICO CLAIM ......... 6

       A.   The Complaint Does Not Sufficiently Allege Predicate
              Acts of Racketeering Activity. .................................................... 7

             1.   Mail Fraud ...................................................................... 7

             2.   Wire Fraud ..................................................................... 9

             3.   CFAA (18 U.S.C. §1030) ............................................. 10

        B.   The Complaint Does Not Allege the "Continuity" Required
              to Establish a "Pattern." .............................................................. 13

             1.   The Complaint does not allege a "closed-ended"
                   Pattern of racketeering activity. ................................... 14

             2.   The Complaint does not allege an "open-ended"
                   Pattern of Racketeering Activity ................................. 16

III.  IF THE COURT DISMISSES THE RICO CLAIM, THE REMAINING
      STATE LAW CLAIMS SHOULD BE DISMISSED AS AGAINST ALL
      DEFENDANTS FOR LACK OF JURISDICTION ................................ 18

        A.   The Plaintiff Has Not Adequately Alleged Subject Matter
              Jurisdiction on the Basis of Diversity of Citizenship. .............. 18

        B.   Judicial Economy, Convenience and Fairness Weigh in Favor
              Of Declining Supplemental Jurisdiction Over the State Law Claims ......... 18

CONCLUSION ..................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

**Cases**

<u>Abramo v. Teal, Becker & Chiarmonte</u>, 713 F.Supp.2d 96 (N.D.N.Y. 2010) ................ 13, 14, 15

<u>Albunio v. Int'l Safety Grp.</u>, WL 1267795 (S.D.N.Y. Mar. 30, 2016)................................... 16, 17

<u>Amaker v. Kelly</u>, 2009 WL 385413 (N.D.N.Y., Feb. 9, 2009) ...................................................... 7

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009)........................................................................................ 7

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007) ........................................................................ 7

<u>Bernstein v. Misk</u>, 948 F. Supp. 228 (E.D.N.Y. 1997).................................................................. 15

<u>Bigsby v. Barclays Capital Real Estate, Inc.</u>, 170 F. Supp. 3d 568 (S.D.N.Y. 2016) ................... 8

<u>Bridge v. Phoenix Bond Indem. Co.</u>, 553 U.S. 639 (2008) ........................................................... 10

<u>Cofacredit, S.A. v. Windsor Plumbing Supply Co.</u>, 187 F.3d 229 (2d Cir. 1999) ....................... 16

<u>Cosmos Forms Ltd. v. Guardian Life Ins. Co.</u>, 113 F.3d 308 (2d Cir. 1997).............................. 13

<u>Crawford v. Franklin Credit Mgmt. Corp.</u>, 758 F.3d 473 (2d Cir. 2014)...................................... 8

<u>DeFalco v. Bernas</u>, 244 F.3d 286 (2d Cir. 2001).......................................................................... 14

<u>FD Prop. Holding, Inc. v. U.S. Traffic Corp.</u>, 206 F. Supp. 2d 362 (E.D.N.Y. 2002) ................ 14

<u>First Capital Asset Mgmt., Inc. v. Satinwood, Inc.</u>, 385 F.3d 159 (2d Cir. 2004)........... 13, 14, 15

<u>Flexborrow LLC v. TD Auto Fin. LLC</u>, 255 F. Supp. 3d 406 (E.D.N.Y. 2017).......................... 14

<u>Grace International v. Festa</u>, 2019 WL 1369000 (E.D.N.Y., Mar. 26, 2019) ................... 9, 13, 16

<u>Gross v. Waywell</u>, 628 F. Supp. 2d 475 (S.D.N.Y. 2009)............................................................ 13

<u>Handelsman v. Bedford Vill. Assocs.</u>, 213 F.3d 48 (2d Cir. 2000)............................................... 18

<u>K&D Corp. v. Concierge Auctions, LLC</u>, 2 F. Supp. 3d 525 (S.D.N.Y. 2014) ............................ 8

<u>Klein & Co. Futures v. Bd. of Trade of City of New York</u>, 464 F.3d 255 (2d Cir. 2006) .......... 19

<u>Laufer v. Laxmi & Sons LLC</u>, 2020 WL 6940734 (N.D.N.Y., Nov. 19, 2020)........................ 5, 6

<u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555 (1992) .......................................................................... 5

Moss v. Morgan Stanley, Inc., 719 F.2d 5 (2d Cir. 1983) ............................................................ 7

Neder v. United States, 527 U.S. 1 (1999).............................................................................. 10

NYS Catholic Health Plan v. Academy of O&P Associates,
     312 F.R.D. 278 (E.D.N.Y. 2015) ...................................................................... 10

Ray Larsen Assocs., Inc. v. Nikko Am., Inc., No. 89 CIV. 2809, 1996 WL 442799
     (S.D.N.Y. Aug. 6, 1996) ...................................................................................... 14

Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91 (2d Cir. 1997) ...................................... 13

Sonterra Capital Master Fund Ltd. v. UBS AG, 954 F.3d 529 (2d Cir. 2020) .............................. 6

Speight v. Benedict, 2007 WL 951492 (S.D.N.Y. Mar. 28, 2007)............................................... 15

Spoto v. Herkimer County Trust, 2000 WL 533293 (N.D.N.Y, Apr. 27, 2000).................. passim

Strother v. Harte,  171 F.Supp.2d 203 (S.D.N.Y. 20001)........................................................ 18

Townsend v. Public Storage, Inc., 2014 WL 1764432 (N.D.N.Y., Apr. 30, 2014).......................7

United States v. Aulicino, 44 F.3d 1102 (2d Cir. 1995) ............................................................ 16

Warth v. Seldin, 422 U.S. 490 (1975)....................................................................................... 6

Yun Chi v. Parajon, 2020 WL 6700584 (S.D.N.Y. 2020) .......................................................... 18

**Statutes**

18 U.S.C. §1030 ............................................................................................................. 7, 10, 11

18 U.S.C. §1030(a)(1)............................................................................................................. 11

18 U.S.C. §1030(a)(2)............................................................................................................. 12

18 U.S.C. §1030(a)(5)(A) ....................................................................................................... 11

18 U.S.C. 1030(c)(4)(A)(i) ................................................................................................ 11, 12

18 U.S.C. §1030(e)(2)............................................................................................................. 12

18 U.S.C. §1030(e)(8)............................................................................................................. 12

18 U.S.C. §1961(1) ........................................................................................................... 11, 12

18 U.S.C. §2332b(g)(5)(B) ............................................................................................... 11, 12

28 U.S.C. §1367(c)(3)......................................................................................................... 1, 18

**Rules**

Fed. R. Civ. P. 12(b)(6)...................................................................................................... 9

Fed. R. Civ. P. Rule 9(b)............................................................................................... 7, 8

NDNY General Order #14 ............................................................................................. 17

## PRELIMINARY STATEMENT

Defendants Northway Mining LLC (**"Northway"**), Michael Maranda (**"Maranda"**), Michael Maranda LLC (**"MMLLC"**), Hudson Data Center Inc. (**"Hudson Data"**) and Michael Carter (**"Carter"**) collectively the **"Moving Defendants,"** respectfully submit this Memorandum of Law in support of their motion to dismiss the "First Amended Complaint" at ECF Doc. #150 pursuant to F.R.C.P. 12(b)(1), 12(b)(6) and 28 U.S.C. §1367(c)(3).

## PROCEDURAL HISTORY

A brief recap of the procedural history of this case is in order.  Plaintiff MinedMap, Inc. (**"MinedMap"**) commenced this action on April 12, 2019 by filing the initial Complaint, with two co-plaintiffs at the time: Serenity Alpha, LLC (**"Serenity"**) and 9384-2557 Quebec Inc. (**"Quebec"**).   (ECF Doc. #1 - #2.)   On March 12, 2020 those plaintiffs filed an "Amended Complaint" as of right.  (ECF Doc. #29.)  Northway, Maranda, MMLLC, and Hudson Data moved to dismiss that Amended Complaint on May 8, 2020 (ECF Doc. #55) and Carter moved to dismiss on August 7, 2020 (ECF Doc. #113).  These motions argued for dismissal on various grounds, two of which are relevant to the instant motion: (i) that the Amended Complaint failed to state a claim under RICO; and (ii) that Serenity and Quebec were barred from suing their claims in federal court by the venue selection clauses in their contracts with Northway.

On February 17, 2021 the Court issued a Decision & Order which dismissed the RICO count for failure to state a claim, dismissed all claims by Serenity and Quebec on the basis of the contract venue selection clauses, and granted MinedMap leave to replead.  (ECF Doc. #147.)  In granting leave to replead, the Court reminded MinedMap that it "should only re-plead [the RICO] claim if [it] can satisfy" the requirements of F.R.C.P. 11(b)(2).

1

On March 8, 2021, MinedMap filed a pleading styled "First Amended Complaint" (ECF Doc. #150), although it is in fact a second Amended Complaint (*compare* ECF Doc. #2 and #29). This newest Complaint purports to replead the RICO claim (among others) against the Moving Defendants and several other defendants. The Moving Defendants now seek dismissal of this latest pleading in its entirety for the reasons set forth below.

<u>ALLEGATIONS OF THE NEW PLEADING</u>

The prior motion practice has thoroughly educated the Court on the crux of the plaintiff's allegations. In the interest of avoiding repetition, this summary of the new pleading will be brief, with an emphasis on those features of it that are most germane to the arguments for dismissal.

The gist of the allegations is that defendant Maranda held out his company, Northway, as a platform for hosting cryptocurrency mining computers, with a facility in Coxsackie, New York that could offer adequate space and power supply to host large numbers of machines. (ECF Doc. #150, ¶37.) In August 2018, MinedMap was allegedly in the market for a hosting services provider to handle MinedMap's crypto mining devices. (*Id.* ¶38.) MinedMap alleges that Maranda, both directly and through intermediaries, overstated Northway's power supply, infrastructure and capitalization in remarks to the cryptocurrency market (representations allegedly made "to bitcoin companies"). (*Id.* ¶¶37-41, 63, 67-68.)

MinedMap alleges that on September 21, 2018, *"MinedMap and Serenity"* entered into a hosting agreement with Northway, which is referenced in the pleading as "Exhibit 4," although there is no Exhibit 4 (Exhibits 1 through 3 are also absent). (*Id.* ¶71 [emphasis added].) It further alleges that *"MinedMap and Serenity"* paid Northway hosting deposits totaling $432,000 in September 2018. (*Id.* ¶¶73-74.) It also alleges that between October 8, 2018 and early November 2018, *"MinedMap and Serenity"* shipped 2,689 crypto miners to Northway's facility in

Coxsackie, but Northway failed to power up the machines within 21 days after receipt, as it was allegedly required to do. (*Id.* ¶¶75-76.)  The pleading complains that "***MinedMap and Serenity's*** Miners were never plugged in."  (*Id.* ¶77 [emphasis added].)  It alleges that Northway never plugged the machines in, but instead transferred the machines to third parties, including several of the co-defendants.  (*Id.* ¶97.)

The current pleading, like each of the prior Complaints, is vague about MinedMap's and Serenity's respective interests in the crypto machines that the plaintiff claims were stolen, and the deposit monies that it alleges Northway mis-spent.  In other words, the Complaints have always referred to MinedMap and Serenity interchangeably, without specifying which company actually owns what.  As discussed further in the Argument below, this is no longer tenable because the Court has dismissed Serenity from this case for *forum non conveniens*, leaving Serenity to pursue its claims in New York State Supreme Court, Greene County.  Therefore, there should be some clearer dividing line between what part of the claims, if any, belong to MinedMap, and what part belong to Serenity.  But from inception through the present, the pleadings have been inscrutable on this point:

- **<u>Vague About Contracting Party.</u>**  The initial Complaint (4/15/19) alleged that "On September 21, 2018 … ***MinedMap and Serenity*** entered into a hosting agreement with Northway Mining," which was purportedly attached to that pleading as Exhibit 4—but in reality there was no Exhibit 4 attached (ECF Doc. #2 ¶84 [emphasis added].)  The next Amended Complaint (3/12/20) repeated this allegation verbatim, and also failed to attach the contract.   (ECF Doc. #29 ¶86.)  And the newest pleading repeats the allegation the same way, even though Serenity has since been dismissed from the case.  (ECF Doc. #150 ¶71.)

3

- **<u>Vague About Ownership of the Deposits.</u>** The initial Complaint (4/15/19) alleged that ***"MinedMap and Serenity"*** paid the $432,000 in deposits to Northway, without actually specifying which of the companies the money belongs to (or if part of it belongs to MinedMap, how much). (ECF Doc. #2 ¶¶86-87 [emphasis added].) The next Amended Complaint (3/12/20) repeated these allegations verbatim, offering no further clarity. (ECF Doc. #29 ¶¶88-89.) And the current pleading repeats the same allegations verbatim once again, with no elaboration even though the Court dismissed Serenity from the case. (ECF Doc. #150 ¶¶73-74.) In other words, even now it is unclear whether the remaining plaintiff, MinedMap, is the putative owner of that money, or whether it is Serenity.

- **<u>Vague About Ownership of the Machines.</u>** The initial Complaint alleged that "***MinedMap and Serenity*** transported 2,689 Miners to Northway" which Northway has allegedly converted. (ECF Doc. #2 ¶88 [emphasis added].) It also alleged that "Defendants are in possession of Miners ***that belong to Serenity and MinedMap***." (*Id.* ¶166 [emphasis added].) It did not specify which of the two companies actually owns the machines or, if they both own some, how many they each own. The next Amended Complaint (3/12/20) made the same allegations verbatim, with no further clarity. (ECF Doc. #29 ¶¶90 and 167.) And the current pleading again repeats these allegations verbatim, naming both companies as aggrieved but failing to specify which of them owns the machines. (ECF Doc. #150, ¶¶75, 211.) Therefore, even now, it is not clear from the most recent pleading whether the remaining plaintiff, MinedMap, holds title to any of the machines.

The new pleading's RICO claim relies on alleged "mail fraud," "wire fraud," and purported Computer Fraud and Abuse Act violations as the predicate acts of "racketeering activity." The mail fraud allegations do not actually allege even a single mailing, but instead rely on a generalized assertion that all of the defendants' acts and omissions "have used the United States Mail." (ECF Doc. #150, ¶¶149-186, quoted language in ¶184). The wire fraud allegations rely on the same handful of vaguely described text messages from September and November 2018 which the Court found to be insufficient to state a claim in the prior Complaint (compare ECF Doc. #150 ¶191 to the Court's Decision & Order ECF Doc. #147 pg. 25), plus one additional, general allegation that the defendants have traded "bitcoins through interstate commerce" (ECF Doc. #150, ¶194). The Computer Fraud and Abuse Act allegations assert generally that the defendants have scraped serial numbers off of crypto miners (*Id.* ¶¶174, 199), have "unlawfully accessed" the miners (*Id.* ¶198), have "improperly stored" them (*Id.* ¶200) and have applied "improper electrical power" to them (*Id.*). As discussed in the Argument below, the Complaint does not sufficiently any acts of racketeering activity, nor a "pattern" of the as required for a RICO claim.

## ARGUMENT

## I.   MINEDMAP DOES NOT ALLEGE SUFFICIENT FACTS TO ESTABLISH STANDING.

"To establish standing a plaintiff must demonstrate (1) an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,' (2) 'a causal connection between the injury and the conduct complaint of,' and (3) redressability of the injury by a favorable decision." Laufer v. Laxmi & Sons LLC, 2020 WL 6940734, at *9 (N.D.N.Y., Nov. 19, 2020), quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992). "Where a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element." Id.

(internal quotations omitted).  "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'"  Id., quoting Warth v. Seldin, 422 U.S. 490, 518 (1975).

The current Complaint does not particularly allege facts demonstrating that the sole remaining plaintiff, MinedMap, suffered a redressable concrete injury in fact.  As summarized in the ALLEGATIONS OF THE NEW PLEADING section above, the current Complaint, like its two predecessors, discusses MinedMap and Serenity interchangeably.  It alleges that "MinedMap and Serenity" paid the $432,000 in deposit monies to Northway, and that "MinedMap and Serenity" delivered 2,689 crypto miners to Northway.  The pleading remains vague about whether the money and machines that are sought belong to MinedMap or Serenity.  When MinedMap and Serenity were co-plaintiffs in this case there was little reason to dwell on standing (because at least *one* of them would have standing), but since the Court has since dismissed Serenity for *forum non-conveniens*, MinedMap's individual standing, if any, takes on dispositive significance.  The plaintiff's standing goes to the very heart of the Court's jurisdiction: "Article III, Section 2 of the Constitution limits the jurisdiction of the federal courts to the resolution of 'cases' and 'controversies.'  To ensure that this bedrock case-or-controversy requirement is met, courts require that plaintiffs establish their standing as the proper parties to bring suit.'"  Laufer, 2020 WL 6940734, at *9, quoting Sonterra Capital Master Fund Ltd. v. UBS AG, 954 F.3d 529, 533-34 (2d Cir. 2020).  Since the Complaint does not clearly allege that MineMap owns the deposit monies and miners for which it seeks damages, the plaintiff does not sufficiently allege that it has standing to seek the redress the Complaint seeks.

## II.    IN ANY EVENT, COUNT I FAILS TO STATE A RICO CLAIM.

To state a RICO claim, a plaintiff must allege that the defendant (1) through the commission of two or more acts constituting a "pattern" (2) of "racketeering activity" (3) directly or indirectly participates in an "enterprise" (4) the activities of which affect interstate or foreign

commerce; (5) causing injury to the plaintiff.  <u>Moss v. Morgan Stanley, Inc.,</u> 719 F.2d 5, 17 (2d Cir. 1983); <u>Townsend v. Public Storage, Inc.,</u> 2014 WL 1764432, at *5 (N.D.N.Y., Apr. 30, 2014).

"To withstand a Rule 12(b) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal,</u> 556 U.S. 662, 678 (2009)(internal quotations omitted).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level."  <u>Id.</u> "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" <u>Id.,</u> quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

Moreover, "The pleading of a civil RICO violation is subject to the heightened requirement that its supporting allegations must be pleaded with particularity" pursuant to Federal Rule 9(b).  <u>Amaker v. Kelly</u>, 2009 WL 385413, at *11 (N.D.N.Y., Feb. 9, 2009).  Thus, the complaint must specify, among other things, the time, place and manner of the discrete acts of racketeering activity, and how they purportedly constitute a pattern.  <u>Spoto v. Herkimer County Trust</u>, 2000 WL 533293, at *5 (N.D.N.Y, Apr. 27, 2000).

### A.    <u>The Complaint Does not Sufficiently Allege Predicate Acts of "Racketeering Activity."</u>

The current Complaint ostensibly claims three categories of "racketeering activity": (i) mail fraud; (ii) wire fraud; and (iii) alleged violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030.  It does not meet the pleading standard for any of these categories.

#### 1.    Mail Fraud

"Where a plaintiff alleges racketeering activity based on mail or wire fraud, it "must prove three elements: (1) scheme to defraud, including proof of intent; (2) money or property as object of [the] scheme; (3) use of mails or wires to further the scheme."  <u>Grace International</u>, 2019 WL 1369000, at *5, <u>citing</u> <u>K&D Corp. v. Concierge Auctions, LLC</u>, 2 F. Supp. 3d 525, 539 (S.D.N.Y.

2014).  However, "[g]iven the routine use of mail and wire communications in business operations, ... 'RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it.'"  Grace International, 2019 WL 1369000, at *5, citing Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 489 (2d Cir. 2014); see also Gross, 628 F. Supp. 2d at 493 (observing that "virtually every ordinary fraud is carried out in some form by means of mail or wire communication"); Bigsby v. Barclays Capital Real Estate, Inc., 170 F. Supp. 3d 568, 575–76 (S.D.N.Y. 2016) (noting that "predicate acts of mail and wire fraud merit particular scrutiny ... lest the courts allow the RICO statute 'to federalize garden-variety state common law claims' [internal quotation marks and citations omitted]).  "[S]ome legal minds posit that the civil provisions of [RICO] are the most misused statutes in the federal corpus of law."  Spoto, 2000 WL 533293, at *1.

The current Complaint does not allege acts of mail fraud any more successfully than the prior Complaint which the Court dismissed for, among other reasons, failure to plead acts of racketeering activity.  (ECF Doc. #147, pg. 23-26.)  The current Complaint's allegations about mail fraud are in ¶¶149-186 (ECF Doc. #150).  In those 37 paragraphs, the plaintiff does not allege a single, particular mailing.  Instead, the Complaint vaguely alleges that the defendants engaged in miscellaneous acts such as "scouting properties" (¶154), "stor[ing] stolen bitcoin miners" (¶155), telling "prospective victims … that [Maranda] knew how to operate a Bitcoin Mining farm" (¶¶157-58), and "removing (or shaving) serial numbers" (¶174), and then broadly decrees that "For each of these acts, Defendants have used the United States mail []" (¶184).   That is clearly insufficient to state a claim. See also Spoto, 2000 WL 533293, at *5 ("underlying counts of mail and wire fraud must be pled with the particularity required by Rule 9[b]"); NDNY General

Order #14 (providing that a RICO plaintiff must "List the alleged predicate acts" and "Provide the dates of the predicate acts, the participants in the predicate acts and a description of the facts surrounding the predicate acts").

### 2. Wire Fraud

As noted above, RICO wire fraud claims are subject to the same heightened pleading standard as mail fraud claims. Grace International, 2019 WL 1369000, at *5 ("[g]iven the routine use of mail and wire communications in business operations, ... 'RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it").

The current Complaint repeats the same wire fraud allegations that the Court deemed insufficient in dismissing the prior Complaint.  Indeed, on page 25 of the Court's February 17 Decision & Order (ECF Doc. #147) the Court block quoted the four, bare bones allegations about text messages (*e.g.*, "Defendants sent numerous text messages via Appel Message Application and by other similar message applications from August 2, 2018"), and the Court remarked: "It is not clear … if these allegations even meet the pleading standard under Rule 12(b)(6); they are largely conclusory, simply restating the elements of fraud crimes and claiming that Defendants committed them."  The current Complaint repeats those insufficient allegations verbatim.  (ECF Doc. #150 ¶191.)

The new Complaint also includes one new allegation that the "Defendants have also engaged in substantial trading of MinedMap's bitcoins through interstate commerce."  (*Id.* ¶194.) But that does not coherently describe a wire fraud either.  For one thing, not just *any* use of the wires or the mails in connection with an alleged tort amounts to mail or wire fraud.  Gross, 628 F. Supp. 2d at 493 (observing that "virtually every ordinary fraud is carried out in some form by

means of mail or wire communication," but that does not make every ordinary fraud a RICO case). Among many other requirements, an alleged mail or wire fraud transmission must induce some party, somewhere, to rely on the defendant's misrepresentations.   NYS Catholic Health Plan v. Academy of O&P Associates, 312 F.R.D. 278, 298 (E.D.N.Y. 2015)("In most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation"), quoting Bridge v. Phoenix Bond Indem. Co., 553 U.S. 639, 658-59 (2008).[1]  "[M]ateriality of falsehood is an element of the federal mail fraud, wire fraud and bank fraud statutes."  NYS Catholic, 312 F.R.D. at 298, quoting Neder v. United States, 527 U.S. 1, 25 (1999).  The allegation in paragraph 194 that some of the defendants have been "trading MinedMap's bitcoins" does not describe a misleading communication relied on by anyone.  Furthermore, even if the "trading bitcoins" theory were recognizable as wire fraud (which it is not), the allegations still fail to plead these alleged acts with the particularity required by Rule 9(b). They do not adequately specify the time, place and manner of these alleged transactions, or even a ballpark estimate of how many transactions occurred.  Spoto, 2000 WL 533293, at *5.

### 3.      CFAA (18 U.S.C. §1030)

In the current Complaint, the plaintiff alleges that the defendants violated the CFAA by "unlawfully accessing MinedMap's bitcoin miners to defraud MinedMap," by scraping the serial numbers from the miners, by "improperly storing" the miners and by "applying improper electrical power to the Miners" resulting in damage during an electrical surge.  (ECF Doc. #150, ¶¶174, 196-200.)  None of those allegations constitute racketeering activity under RICO.

---

[1]      In Bridge, the Court held that mail fraud did not necessarily require "first party" reliance (that is, reliance by the plaintiff), but it does practically require that someone has relied upon and been deceived by the mailed communications: "In most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation."  Id. at 658.

The statute that defines "racketeering activity" is 18 U.S.C. §1961(1).  The Court will note that the CFAA (18 U.S.C. §1030) is *not* listed there among the many statutory cites that may constitute racketeering activity.  However, the final sentence of §1961(1) does extend racketeering activity to "any act that is indictable under any provision listed in [18 U.S.C. §] 2332b(g)(5)(B)," which is an anti-terrorism statute.  Section 2332b(g)(5)(B) does list some—and only some—CFAA violations in its definition of terrorism-related offenses, specifically the following:

> [T]he term "Federal crime of terrorism" means an offense that—
>
> (A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and
>
> (B) is a violation of—
>
> (i) section … 1030(a)(1) (relating to protection of computers) [and] 1030(a)(5)(A) resulting in damage as defined in 1030(c)(4)(A)(i)(II) through (VI) (relating to protection of computers) … .

Therefore, the only CFAA violations that may constitute RICO racketeering activity are: **(a)** violations of 18 U.S.C. §1030(a)(1); or **(b)** violations of §1030(a)(5)(A) resulting in damage as defined in 1030(c)(4)(A)(i)(II) through (VI).  The Complaint does not allege either of those.

**CFAA §1030(a)(1)** only concerns unlawfully accessing a computer to steal information that the U.S. Government has classified as non-disclosable.  Obviously MinedMap's allegations about the treatment of its crypto miners have nothing to do with government secrets and, therefore, do not implicate §1030(a)(1).

The allegations also do not fit under **CFAA §1030(a)(5)(A)**, nor do they describe the "damage as defined in **1030(c)(4)(A)(i)(II) through (VI)**."  Section 1030(a)(5)(A) prohibits:

> knowingly caus[ing] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caus[ing] damage without authorization to a protected computer.

11

Moreover, the term "damage" as used in that offense means "impairment to the integrity or availability of data, a program, a system, or information."  18 U.S.C. §1030(e)(8).

The Complaint does not allege that the defendants "transmitted" anything, much less a "program, information, code or command" to "impair the availability of data" or the like.  Instead, it alleges conduct such as "accessing" [2] the machines (¶197), "shaving" off the serial numbers (¶174), "improperly storing" the machines (¶200), and applying "improper electrical power" to them, "causing a power surge."  (ECF Doc. #150, ¶¶174, 196-200.)  Those types of things do not make a "transmission" claim under §1030(a)(5)(a). Basically, the plaintiff is trying to federalize acts that could be described as common-law conversion or negligence.

As noted, the Complaint also does not allege "damage as defined in [CFAA section] 1030(c)(4)(A)(i)(II) through (VI)."  The Complaint clearly does not implicate sub-paragraphs "II" through "V," which concern CFAA violations that result in impairment of a medical treatment or diagnoses, physical injury to a person, or damage to a government computer.  That leaves sub-paragraph "VI," which concerns "damage affecting 10 or more protected computers [3] during any 1-year period."  The Complaint does allege that MinedMap (or "MinedMap and Serenity") delivered more than 10 miners to Northway, but it does not allege that the defendants damaged more than ten of them with a "transmission" of a "program," "information," "code" or "command."

---

[2]       The CFAA does have subdivisions regarding illegally "accessing" a computer to obtain certain financial information or to take things of value.  See §1030(a)(2) and (4).  But those CFAA subdivisions are not eligible for use as acts of "racketeering activity" in a RICO claim because they are not listed in 18 U.S.C. §2332b(g)(5)(B), as incorporated into 18 U.S.C. §1961(1).  A RICO plaintiff must plead and prove "transmission" violations.  "Access" violations do not suffice.

[3]       The definition of "protected computer" includes a computer that "affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States."  18 U.S.C. §1030(e)(2).

In other words, even if the Complaint could be read generously to suggest that *some* computer suffered such a "transmission" (which it does not), it does not allege that any particular number of them did.  For that separate reason the Complaint does not plead a covered CFAA violation.

**B.      The Complaint Does not Allege the "Continuity" Required to Establish a "Pattern."**

To satisfy the "pattern" requirement of a civil RICO claim, the factual allegations must meet two standards: relatedness and continuity.  Gross v. Waywell, 628 F. Supp. 2d 475, 485 (S.D.N.Y. 2009).

"Predicate acts are 'related' for RICO purposes, when they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 97 (2d Cir. 1997).  Relatedness is indicated by "temporal proximity of the [underlying] acts, by common goal, methodology, and their repetition." Cosmos Forms Ltd. v. Guardian Life Ins. Co., 113 F.3d 308, 310 (2d Cir. 1997).

*Continuity*, on the other hand, requires something more.  And, in fact, the continuity element is where many would-be claims fall short of RICO's strict requirements and find dismissal.  See, e.g., Abramo v. Teal, Becker & Chiarmonte, 713 F.Supp.2d 96, 110 (N.D.N.Y. 2010); Spoto v. Herkimer County Trust, 2000 WL 533293, at *5 (N.D.N.Y, Apr. 27, 2000); Grace International v. Festa, 2019 WL 1369000, at *5 (E.D.N.Y., Mar. 26, 2019).

Specifically, to plead continuity, the plaintiff "must allege either an open-ended pattern of racketeering activity (*i.e.*, past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (*i.e.*, past criminal conduct extending over a substantial period of time)." First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 180 (2d Cir. 2004); see also Abramo, 713 F.Supp.2d at 110.

13

1.      **The Complaint does not allege a "closed-ended" pattern of racketeering activity.**

"A closed-ended pattern of racketeering activity involves predicate acts extending over a substantial period of time." First Capital, 385 F.3d at 181. "[P]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy the continuity requirement." Wee v. Rome Hosp., 1996 WL 191970, at *5 (N.D.N.Y., Apr. 15, 1996).

"The Second Circuit "has never found a closed-ended pattern where the predicate acts spanned *fewer than two years*." Abramo, 713 F.Supp.2d at 110 (emphasis added), citing First Capital Asset Mgmt., 385 F.3d at 181; see also DeFalco v. Bernas, 244 F.3d 286, 321 (2d Cir. 2001)(collecting cases). This duration "is measured by the *RICO predicate act*s the defendants commit"—that is, the span of time in which the actual acts of mail fraud, wire fraud, or other RICO crimes occurred. Abramo, 713 F.Supp.2d at110-11 (emphasis added). In accordance with Second Circuit precedent, the courts in this Circuit repeatedly dismiss closed-ended pattern cases when the defendant fails to allege racketeering acts spanning at least two years. See Abramo, 713 F.Supp.2d at 110; Wee, 1996 WL 191970, at *5; FD Prop. Holding, Inc. v. U.S. Traffic Corp., 206 F. Supp. 2d 362, 372 (E.D.N.Y. 2002); Flexborrow LLC v. TD Auto Fin. LLC, 255 F. Supp. 3d 406, 420 (E.D.N.Y. 2017); Ray Larsen Assocs., Inc. v. Nikko Am., Inc., No. 89 CIV. 2809, 1996 WL 442799, at *8 (S.D.N.Y. Aug. 6, 1996).

In this case the plaintiffs do not allege that the predicate racketeering acts spanned a "substantial period of time," much less the minimum of two years commonly accepted in this Circuit. MinedMap alleges that it met Maranda and contracted with Northway in September 2018 (ECF Doc. #150, ¶¶55, 71), that it shipped miners to Northway in October and November 2018 (Id. ¶75), and that it had already fallen out with the defendants by February 2019 (Id. ¶95). The only dates of alleged wire fraud mentioned in the Complaint occurred between August and

November 2018.  (Id. ¶191.)  The Complaint pleads no dates or times of any mail fraud or CFAA violations.  (See Points II.A.i and II.A.iii.)  The Complaint simply does no better on closed-ended continuity than the previously dismissed pleading did.[4]

Furthermore, even if the Complaint did satisfy the durational requirement (which it does not) it suffers another defect.  "[W]hile two years may be the minimum duration necessary to find closed-ended continuity, the mere fact that predicate acts span two years is insufficient, without more, to support a finding of a closed-ended pattern."  Abramo 713 F.Supp.2d at 110.  "[O]ther factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists."  Id., quoting First Capital Asset Mgmt., 385 F.3d at 181; see also Speight v. Benedict, 2007 WL 951492, at *5 (S.D.N.Y. Mar. 28, 2007); Bernstein v. Misk, 948 F. Supp. 228, 238 (E.D.N.Y. 1997)(finding no closed-ended continuity where acts took place over four-and-a-half years, but the criminal activity alleged "involved only one major perpetrator who focused his activity on one group of purchasers in a single, non-complex scheme to obtain financing for a purchase of property and then default on the loan").

Here, the Complaint suggests only a small number of "participants and victims" and a low "variety of predicate acts."  Basically, the Complaint alleges two bad transactions with Northway: one by MinedMap/Serenity and one by Quebec.  There is nothing here suggesting a prolific criminal enterprise or sustained organized crime of the variety that RICO was intended to target.

---

[4]    The new Complaint adds a conclusory allegation that the scheme "began in 2017 when Maranda was paroled from prison and has continued until today []." (¶206.)  But it does not allege any particular acts by Maranda or any defendant in 2017.  There is also a conclusory allegation that Maranda "was trying to sell MinedMap's S9 miners" on March 4, 2021, which is based on a text message screen shot between *MinedMap's attorney* (Mr. Williams) and some unknown person—thus the basis for that allegations is a speculation by the plaintiffs' own attorney that miners that the other (unknown) person mentioned were "prob[ably] part of the 3000 he stole from one of my clients." (¶207.)  On its face that is pure supposition by counsel, not a well-pleaded fact that meets Twombly's plausibility test.

As the Court explained in its dismissal of the prior Complaint:

> [D]uring the brief period that Plaintiffs have described, they have alleged the creation of one allegedly fraudulent scheme, not a pattern of racketeering activity.

(ECF Doc. #147 pg. 22.)  The current Complaint is equally deficient.

## 2.    The Complaint does not allege an "open-ended" pattern of racketeering activity.

"To satisfy open-ended continuity, the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999).

Importantly, open-ended continuity "only applies to 'inherently unlawful' criminal activities in pursuit of 'inherently unlawful' goals, such as murder, obstruction of justice, narcotics trafficking, embezzlement, extortion, bribery, and money laundering."  Albunio v. Int'l Safety Grp., WL 1267795, at *7 (S.D.N.Y. Mar. 30, 2016)(emphasis added); see also United States v. Aulicino, 44 F.3d 1102, 1111 (2d Cir. 1995); Spoto v. Herkimer County Trust, 2000 WL 533293, at *4 (N.D.N.Y, Apr. 27, 2000).  "Ordinary fraud supported by wire fraud predicates are not 'inherently unlawful' for purposes of RICO continuity."  Grace Int'l Assemby of God v. Festa, 2019 WL 1369000, at *8 (S.D.N.Y. Mar. 26, 2019), citing Aulicino, 44 F.3d at 1111.

MinedMap's allegations rest on ordinary "fraud" (or other tort) allegations in discrete disputes between the defendants on the one hand, and MinedMap/Serenity and Quebec on the other hand.  The gist of it is that Maranda overstated his facility's capacity to host as many miners as he accepted from these specific companies, that he has refused to return miners or deposits to those companies, and that he or other defendants are wrongly using their property.  Those claims may be sufficient to allege that Northway was an incompetent hosting facility or that some defendants

16

are tortfeasors, but they are not sufficient to allege that the defendants are an *"inherently unlawful"* criminal enterprise "in pursuit of 'inherently unlawful' goals, such as murder, obstruction of justice, narcotics trafficking, embezzlement, extortion, bribery, and money laundering." <u>Albunio</u>, WL 1267795, at \*7; <u>see also</u> <u>Spoto</u>, 2000 WL 533293, at \*4 ("Here, defendants' alleged wrongdoing is not 'inherently unlawful.' Rather, their wrongdoing sounds more in the nature of fraud, as is evidenced by plaintiffs' alternate state law cause of action brought under that theory.").

MinedMap tries to circumvent that limitation by arguing that the alleged scheme is bigger than MindeMap/Serenity and Quebec, and must be inherently unlawful because the defendants allegedly "have been perpetrating the same or similar acts against individuals similarly situated to Plaintiff" in various states in the U.S. and overseas. (ECF Doc. #150 ¶209.)  But the Complaint does not allege a single detail about any of those other alleged episodes. The Court dismissed the prior Complaint for the same defect:

> The allegations in the Complaint and in the RICO statement, however, are largely conclusory and do not allege any particular facts about other parties harmed by the scheme. Under those circumstances, the pleading is insufficient. It simply "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action [.] <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 2009).

(ECF Doc. #147 pg. 22-23.)  <u>See also</u> NDNY General Order #14 (providing that a RICO plaintiff is required to "list the alleged victims and state how each victim was allegedly injured").  Thus, the plaintiff once again fails to allege open-ended continuity.

17

III.   **IF THE COURT DISMISSES THE RICO CLAIM, THE REMAINING STATE LAW CLAIMS SHOULD BE DISMISSED AS AGAINST ALL DEFENDANTS FOR LACK OF JURISDICTION.**

The sole basis for federal question jurisdiction is the RICO claim.  If the Court dismisses the RICO claim, it should also dismiss the remainder of the Complaint for the reasons set forth below.

A.   **The Plaintiff Has Not Adequately Alleged Subject Matter Jurisdiction on the Basis of Diversity of Citizenship.**

The Complaint names several limited liability companies as defendants.  "For purposes of diversity jurisdiction, a limited liability company has the citizenship of each of its members." Strother v. Harte,  171 F.Supp.2d 203, 205 (S.D.N.Y. 20001).  To sufficiently allege diversity jurisdiction, the complaint must allege the names and residences of each member of the LLC defendant.  Id.; see also Handelsman v. Bedford Vill. Assocs., 213 F.3d 48, 50 (2d Cir. 2000); Yun Chi v. Parajon, 2020 WL 6700584, at *1 (S.D.N.Y. 2020).

The Complaint alleges that MinedMap is a Nevada corporation but does not allege where its principal place of business is.  (ECF Doc. #150 ¶6.)  And whereas the Complaint purports to allege membership of some of the LLC defendants, but it does *not* do that for several of them, namely: Coinmint LLC (Id. ¶13), Oswego Data LLC (Id. ¶14), Lori S. Thompson -Maranda LCSW PLLC, and Ethereum Ventures LLC.[5]  Therefore, MinedMap has not sufficiently alleged diversity jurisdiction.  Strother,  171 F.Supp.2d at 205.

B.   **Judicial Economy, Convenience and Fairness Weigh in Favor of Declining Supplemental Jurisdiction over the State Law Claims.**

A district court may decline to exercise supplemental jurisdiction over a state law claim if the court has dismissed all claims over which it had original jurisdiction.  28 U.S.C. §1367(c)(3).

---

[5]      Ethereum Ventures LLC is in the caption as a defendant, but the Complaint contains no allegations about it, other than one fleeting reference to it in ¶140, and inclusion of it in the heading for Count I.

"In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity []." Klein & Co. Futures v. Bd. of Trade of City of New York, 464 F.3d 255, 262 (2d Cir. 2006).

In this case, the factors of judicial economy, convenience and fairness counsel against exercising supplemental jurisdiction over MinedMap's state law claims. The Court has already dismissed Serenity and Quebec from the case on the basis of *forum non-conveniens*. Those plaintiffs are constrained by their contracts to bring their claims in New York State Supreme Court, Greene County. MinedMap's claims in this case are inherently tied up with Serenity's claims. As discussed above (pg. 3-4) the pleadings have always been, and remain, very vague about which of those two corporate relatives actually owns the machines and deposit monies in controversy. Serenity's and MinedMap's claims clearly arise out of common transactions and occurrences. (ECF Doc. # ¶¶6, 9, 67, 71-77, 86, 94, 110, 113, 133-34, 211-213.) Even as to Quebec, which is apparently not a corporate relative of MindeMap's, MinedMap still extensively pleads the alleged dealings between Quebec and the defendants in order to establish civil conspiracy and other circumstances relevant to MinedMaps's claims. (Id. ¶¶43-53, 57-58, 77.) It is not economical, convenient or fair for the parties to litigate over the same facts and circumstances in two different cases at the same time. Therefore, we respectfully submit that the court should decline supplemental jurisdiction Counts II through XII if the Court dismisses Count I.

19

**<u>CONCLUSION</u>**

For the foregoing reasons, the Moving Defendants' motion to dismiss should be granted.

Dated: Troy, New York                    Respectfully submitted,
      April 2, 2021

                                        E. STEWART JONES HACKER MURPHY LLP

                                    By: Benjamin F. Neidl
                                    *Attorneys for Defendants Northway Mining LLC,*
                                    *Michael Maranda, Michael Maranda LLC and*
                                    *Hudson Data Center Inc.*
                                    28 Second Street
                                    Troy, N.Y.  12180
                                    (518)274-5820