EXHIBIT "C"

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SERENITY ALPHA, LLC,
A Nevada Corporation,
MINEDMAP, INC., a Nevada
limited liability, and 9384-2557
QUEBEC, INC., A Canadian
corporation,

                Plaintiffs,

      -v-                              1:19-CV-501

NORTHWAY MINING, LLC,
MICHAEL MARANDA,
MINING POWER GROUP,
INC., HUDSON DATA
CENTER, INC., DROR SVORAI,
MICHAEL CARTER, an individual,
COINMINT, LLC, MICHAEL
MARANDA LLC, PORTER KING
HILL CONTRACTING LLC,
ANTHONY PORTER, LORI S
THOMPSON-MARANDA, LORI
S. THOMSPON-MARANDA LCSW,
PLLC, 38 Oaklawn Avenue,
Farmingville, NY 11738,
631-655-8795, OSWEGO DATA,
LLC, 38 Oaklawn Avenue,
Farmingville, NY 11738, M&T BANK,
N.A., TEACHERS FEDERAL
CREDIT UNION, CHRISTINE
MARANDA, an individual, ROSEANN
MARANDA, an individual, DOUGLAS
MARANDA, an individual, DONALD
D'AVANZO, an individual, ETHEREUM
VENTURES, LLC, a New York limited
liability company, ANGELO POPE,
an individual, JEFFREY HOLBROOK,

an individual and a resident of the state of New York, MELISSA WELSH, an individual and a resident of the State of New York, XYZ CORPORATION, entities form by Michael Maranda and Other Defendants, and XYZ LIMITED LIABILITY COMPANY, formed by Michael Maranda and other Defendants; Real Property at 38 Oaklawn Avenue, Athens, New York,

      Defendants.

-------------------------------------

APPEARANCES:      OF COUNSEL:

WILLIAMS LLP      T. EDWARD WILLIAMS, ESQ.
Attorneys for Plaintiffs
250 Greenwich Street, 46th Floor
New York, NY 10007

E. STEWART JONES      BENJAMIN F. NEIDL, ESQ.
 HACKER MURPHY, LLP    JOHN F. HARWICK, ESQ.
Attorneys for Defendants Northway
 Mining, LLC, Michael Maranda,
 Hudson Data Center, Inc., Michael
 Carter, and Michael Maranda LLC
28 Second Street
Troy, NY 12180

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On April 12, 2019, plaintiffs 9384-2557 Québec Inc., MinedMap, Inc., and Serenity Alpha, LLC (collectively "plaintiffs") filed this action in the U.S.

District Court for the Eastern District of New York against defendants Northway Mining, LLC ("Northway"), Michael Maranda ("Maranda"), Michael Carter ("Carter"), CSX4236 Motorcycle Salvage, LLC, Dror Svorai, Mining Power Group, Inc., and Hudson Data Center. Dkt. No. 2.[1]

According to plaintiffs, the named defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") by conspiring to commit, and by committing, *inter alia*, mail and wire fraud. Broadly stated, plaintiffs allege that Northway, Miranda, Carter, and the affiliated entities falsely represented the existence of a specially equipped warehouse facility in Coxsackie, New York (the "Facility") that could handle the significant electrical power needed to "mine" bitcoin, a form of digital currency.

Bitcoin "mining" is performed by high-powered computers that solve (or "hash") complex math problems. The process of solving these math problems actually creates new bitcoin, a valuable commodity. Plaintiffs own thousands of these computers (also called "machines" or "miners") and tried to contract with the named defendants to host them at the Facility.

Plaintiffs allege that they sent nearly 3,000 of these bitcoin mining machines to the Facility and deposited large sums of money with the named defendants to finance the planned spike in electrical consumption. Plaintiffs

---

[1] Plaintiffs recently filed an amended complaint that names additional defendants appearing on the caption. Dkt. No. 150.

further allege that instead of buying electrical power, the defendants "used the funds to purchase personal items, pay mortgages on personal homes they own, and [make] other similar purchases." In short, plaintiffs are trying to get back the substantial money they spent as well as possession of their valuable bitcoin mining machines.

On April 23, 2019, U.S. District Judge Brian M. Cogan issued a writ of replevin that directed the U.S. Marshals Service to seize certain property at issue in this litigation. Dkt. No. 12. However, Judge Cogan vacated that order the following day and transferred the case to this District after finding that the property at issue was located in the Northern District of New York. Thereafter, Senior U.S. District Judge Thomas J. McAvoy granted plaintiff's request for the writ, Dkt. No. 19–20, and the parties engaged in some discovery.

On July 13, 2020, plaintiffs moved for the issuance or re-issuance of an emergency writ of replevin because the named defendants had refused to release the bitcoin mining machines. Dkt. No. 81. According to plaintiffs, the named defendants had actually moved the mining computers to a different physical location in defiance of the Court's prior order. *Id.* Following some procedural wrangling, Judge McAvoy granted the motion. Dkt. Nos. 84, 88, 99, 101.

Beginning on July 31, 2020, plaintiffs have filed four new motions. First, plaintiffs have moved under Federal Rule of Civil Procedure ("Rule") 70(e) for the issuance of civil and criminal contempt sanctions against defendants Maranda and Carter and non-party Melissa Welsh ("Welsh"). Dkt. No 110. Second, plaintiffs have moved for an award of attorney's fees to cover the cost of their second motion for replevin. Dkt. No. 112. Third, plaintiffs have moved under Rule 64 for pre-judgment attachment of certain assets based on their contention that defendants are dissipating assets in anticipation of a large money judgment against them. Dkt. No. 112. Fourth, plaintiffs have moved for the release of $197,275.00 in insurance proceeds being held by defendants. Dkt. No. 141.

On March 12, 2021, Judge McAvoy recused himself from this matter. Dkt. No. 151. The case was reassigned, first to Senior U.S. District Judge Lawrence E. Kahn and then to this Court. Dkt. Nos. 152–53. The pending motions have been fully briefed and will be considered on the basis of the submissions without oral argument.

## III. DISCUSSION[2]

### A. Contempt

Plaintiffs contend that Carter, Maranda, and Welsh are liable for criminal and civil contempt because they willfully failed to comply with a June 19, 2020 Order issued by U.S. Magistrate Judge Christian F. Hummel. Dkt. No. 110 at 8.[3] Judge Hummel's Order stated that:

> As was directed during the 6/19/2020 conference and placed on the record, by 6/20/2020, Defendants are hereby directed to provide to plaintiffs, in a letter: 1.) The address where the machines are physically located and the Court further directs that there be no movement of the machines without prior notice to plaintiff and the Court; 2.) Defendants are directed to address the issue [of] providing NiceHash IP information to plaintiffs; and 3.) Defendants are directed to address the issue of the Funds, as discussed on the conference call.

Dkt. No. 76.

Plaintiffs contend that Maranda, Carter, and Welsh moved the bitcoin mining machines in violation of Judge Hummel's clear order not to do so without prior notice to plaintiffs and the Court. Dkt. No. 110 at 9. According to plaintiffs, Maranda and Carter immediately began moving the mining machines out of New York and transferring them to a location in Illinois. *Id.*

---

[2] The parties' familiarity with the background set forth in the prior opinions will be assumed for the purpose of resolving these motions. *See, e.g.*, Dkt. No. 147.

[3] Pagination corresponds to CM/ECF.

- 6 -

In fact, plaintiffs claim that defendants actually began scraping serial numbers off the machines, packing them into boxes, and driving them to Illinois. *Id.* at 9–11.

Contempt may be civil or criminal. "Civil contempt differs from criminal contempt, because criminal sanctions are punitive in nature, while civil sanctions are not." *Al Hirschfeld Found. v. Margo Feiden Galleries Ltd.*, 438 F. Supp. 2d 203, 207 (S.D.N.Y. 2020). "The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." *Paramedics Electromedicina Com. Ltda. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004).

"A court may hold a party in civil contempt for failure to comply with a court order if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner." *Al Hirschfeld Found.*, 438 F. Supp. 3d at 207 (cleaned up).

A finding of criminal contempt requires a showing that "(1) the court entered a reasonably specific order; (2) defendant knew of that order; (3) defendant violated that order; and (4) his violation was willful." *United States v. Cutler*, 58 F.3d 825, 834 (2d Cir. 1995). Criminal contempt requires

proof beyond a reasonable doubt. *United States v. Paccione*, 964 F.2d 1269, 1274 (2d Cir. 1992).

Upon review, plaintiffs' motion for contempt will be denied. A review of the evidence submitted by the parties establishes that Judge Hummel ordered defendants to provide the current location of the mining machines and to keep the machines at that location until plaintiffs picked them up.

The evidence further establishes that defendants identified certain mining machines, prepared them for transfer, and permitted plaintiffs an opportunity to pick them up, but that plaintiffs refused and claimed that the mining machines in question were not the same machines they had sent to defendants.[4]

As discussed *supra*, plaintiffs claim that defendants moved the machines owned by plaintiffs to somewhere out of state, possibly to Illinois. However, plaintiffs have not presented evidence to support this claim. In contrast, defendants have provided affidavits and other evidence showing the status of the machines, which remain in facilities in Oswego, New York.

In short, plaintiffs have not shown by "clear and convincing" evidence, much less proof beyond a reasonable doubt, that one or more of the defendants (or their non-party confederates) violated the June 19, 2020 Order

---

[4] Some of the confusion is based on the fact that defendants hosted a large number of bitcoin mining machines owned by persons and entities *other* than plaintiffs at the same Facility.

issued by Judge Hummel. Accordingly, plaintiffs' motion for contempt will be denied.

## B. Pre-Judgment Attachment

Plaintiffs contend an order of pre-judgment attachment is necessary because defendants have begun to hide assets and transfer property out of the state. For instance, plaintiffs contend defendants have begun to move plaintiffs' bitcoin mining machines to a location in Illinois. Dkt. No. 111 at 3. Plaintiffs also contend that defendants have transferred substantial sums of money to Welsh, a non-party, and begun withdrawing assets from various accounts and hiding the money in cash at their homes. *Id.* at 3–4. According to plaintiffs, a pre-judgment attachment order is warranted to prevent the dissipation of these and other funds. *Id.*

"Prejudgment attachment is a provisional remedy to secure a debt by preliminary levy upon the property of the debtor in order to conserve that property for eventual execution." *DLJ Mortg. Cap., Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 318 (E.D.N.Y. 2009) (citation omitted). Rule 64 provides that "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." FED. R. CIV. P. 64(a).

As relevant here, Section 6212 of the New York Civil Practice Law and Rules governs attachment in New York. *Silverman v. Miranda*, 116 F. Supp.

3d 289, 310 (S.D.N.Y. 2015). A plaintiff must meet a high burden in order to prove a right to attachment, and in New York "attachment statutes are construed strictly against those who seek to invoke the remedy." *In re Amaranth Nat. Gas Commodities Litig.*, 711 F. Supp. 2d 301, 305 (S.D.N.Y. 2010) (citations omitted).

"To be successful on a motion for attachment, a plaintiff must demonstrate (1) that there is a cause of action; (2) that it is probable that plaintiff will succeed on the merits; (3) that one or more grounds for attachment provided in Section 6201 exist; and (4) that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." *Silverman v. Miranda*, 116 F. Supp. 3d 289, 310 (S.D.N.Y. 2015) (cleaned up).

In support of their request, plaintiffs rely on Section 6201(3), which permits an order of attachment when "the defendant, with the intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." N.Y. C.P.L.R. § 6201(3).

"To show a probability of success on the merits, the moving party must demonstrate by affidavit that it is more likely than not that it will succeed on its claims." *DLJ Mortg. Cap., Inc.*, 594 F. Supp. 2d at 319. "While all legitimate inferences should be drawn in favor of the party seeking

- 10 -

attachment, the moving party must nevertheless make an evidentiary showing of proof stronger than that required to establish a prima facie case in order to satisfy this requirement." *Id.* (cleaned up).

Upon review, plaintiffs' motion for prejudgment attachment will be denied. "Removal, assignment, or other disposition of property is not a sufficient ground for attachment; fraudulent intent must be proven, not simply alleged or inferred, and the facts relied upon to prove it must be fully set forth in the moving affidavits." *DLJ Mortg. Cap. Inc.*, 594 F. Supp. 2d at 319 (citations omitted). "Affidavits containing allegations raising a mere suspicion of an intent to defraud are insufficient." *Id.*

A review of the record establishes that plaintiffs have failed to make any sort of meaningful evidentiary showing that defendants have transferred money or assets in a conscious attempt to avoid judgment. Rather than support this request with specific evidence, plaintiffs have instead alleged a number of supposedly suspicious transfers. Further, plaintiffs have failed to identify what property they would like attached other than the bitcoin mining machines, which have already been ordered returned through the writ of replevin. Accordingly, this motion will be denied.

### C. <u>Attorney's Fees</u>

Plaintiffs contend that they are entitled to attorney's fees and costs under Rule 11, 28 U.S.C. § 1927, and/or this Court's inherent power to sanction

- 11 -

litigants. Dkt. No. 112 at 2. According to plaintiffs, fees and costs are warranted for the litigation surrounding the emergency writ of replevin issued on July 16, 2020 and executed on July 22, 2020. *Id.* at 5.

Rule 11 provides in relevant part that, by presenting a "pleading, written motion, or other paper" to the Court, an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

FED. R. CIV. P. 11(b).

As the Second Circuit has explained, Rule 11 "provides a vehicle for sanctioning an attorney, a client, or both." *United States v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 948 F.2d 1338, 1343 (2d Cir. 1991). "By its terms, Rule 11 requires an attorney to sign every

pleading, motion, or other paper submitted on behalf of his client, and the attorney is subject to sanctions if the document he signs violates the strictures of Rule 11." *Id.* at 1343–44.

"In order to determine if Rule 11 sanctions are appropriate, the Court must apply an 'objective standard of reasonableness' to determine if the attorney has conducted a 'reasonable inquiry' into the basis of the arguments advanced." *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 626 (S.D.N.Y. 2016) (quoting *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 73 F.3d 1253, 1257 (2d Cir. 1996). "The imposition of Rule 11 sanctions is discretionary and should be reserved for extreme cases, and all doubts should be resolved in favor of the signing attorney." *Id.* (cleaned up).

Under 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

"Courts also have inherent authority to award attorneys' fees against a party who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Sorenson*, 170 F. Supp. 3d at 633 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). "The Supreme Court has cautioned that

because of the very potency of a court's inherent power, it should be exercised with restraint and discretion." *Id.* (cleaned up).

"To impose sanctions under either [§ 1927 or the court's inherent authority], the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." *Sorenson*, 170 F. Supp. 3d at 633 (quoting *Agee v. Paramount Commc'ns, Inc.*, 114 F.3d 395, 398 (2d Cir. 1997)). "Thus, a finding of bad faith is a prerequisite to an award of attorney's fees under either authority." *Id.*

Upon review, plaintiffs' motion for fees and costs will be denied. As for fees under § 1927 or the Court's inherent authority, a review of the record does not reveal any bad-faith effort by counsel to delay or prevent recovery of the bitcoin mining machines. As for fees under Rule 11, plaintiffs have not pointed to a specific pleading that could be sanctionable. Accordingly, this motion will be denied.

### D. Turnover of Proceeds

Plaintiffs, without much elaboration, contend that defendants "are unlawfully holding on to $197,275.00 that belongs to Plaintiffs." Dkt. No. 142 at 4. As defendants try to explain, there was a power surge at the Facility on April 23, 2020 that damaged 607 bitcoin mining machines. Dkt. No. 144 at 3. Maranda made an insurance claim to his carrier for the loss and, several

- 14 -

months later, heard back from the insurance carrier that it would pay $197,275.00 to settle the claim. *Id.* When the money arrived, defendants wired it to defendants' counsel, who have been holding the money in their attorney escrow account. *Id.* Indeed, on October 20, 2020 Judge McAvoy ordered counsel to continue holding the funds in that account until further order of the Court. Dkt. No. 137.

Upon review, this motion will be denied for substantially the reasons set forth in defendants' opposition. *See* Dkt. No. 144. As defendants point out, it is unclear on what basis plaintiffs believe they can order the immediate disbursement of the money from defendants' attorneys escrow account. This is especially so where, as here, plaintiffs have not bothered to identify a specific legal basis in their moving papers. Dkt. No. 142.

To the extent this request might be grounded in replevin, the insurance proceeds were a money payment made directly to defendants by their insurance carrier, not the type of specifically identifiable goods that can be provisionally restored to plaintiffs (as putative owners) pending the determination of the merits. Accordingly, this motion will be denied.

## IV. CONCLUSION

Therefore, it is

ORDERED that

1. Plaintiffs' motion for contempt is DENIED;

- 15 -

2. Plaintiffs' motion for prejudgment attachment is DENIED;

3. Plaintiffs' motion for attorney's fees is DENIED; and

4. Plaintiffs' motion for disbursement of funds is DENIED.

The Clerk of the Court is directed to terminate the pending motions.

IT IS SO ORDERED.

Dated: March 31, 2021
       Utica, New York.

David N. Hurd
U.S. District Judge