# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – –   X

MINEDMAP, INC., a Nevada corporation:

Plaintiff,          :

against                    :

MICHAEL MARANDA, an individual; and :
MICHAEL CARTER, an individual, et al.

Defendants.   :

– – – – – – – – – – – – – – – –   X

1:19-CV-00501-DNH-CFH

**MEMORANDUM OF LAW IN SUPPORT OF RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**(ECF Case)**

**RESPECTFULLY SUBMITTED,**

*/s/ T. Edward Williams, Esq.*
T. Edward Williams, Esq.
WILLIAMS LLP
7 World Trade Center
250 Greenwich 46th FL.
New York, New York 10007
Tel: 212.634.9106
Fax: 212.202.6228
Edward@williamsllp.com

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................. 2

TABLE OF AUTHORITIES .......................................................... 3

INTRODUCTION .................................................................. 6

BACKGROUND ................................................................... 7

MOTION STANDARD .............................................................. 7

   A.   FED. R. CIV. P. 8 AND *TWOMBLY/IQBAL* STANDARD ..................... 7

   B.   FED. R. CIV. P. 9(B) STANDARD ....................................... 8

   C.   INFERENCES MUST BE DRAWN IN MINEDMAP'S FAVOR .................... 9

ARGUMENT AND AUTHORITIES ..................................................... 9

   A.   IN 115 PARAGRAPHS OF ITS FIRST AMENDED COMPLAINT, MINEDMAP ALLEGED FACTS THAT SUPPORTS ITS STANDING TO SUE. .................... 9

   B.   THE FIRST AMENDED COMPLAINT ALLEGES FEDERAL QUESTION AND DIVERSITY JURISDICTION. THUS, EVEN IF THIS COURT DISMISSES MINEDMAP'S CIVIL RICO CLAIM, THIS COURT HAS DIVERSITY JURISDICTION OVER MINEDMAP'S REMAINING CLAIMS. ...........................................11

   C.   MINEDMAP PLEADED ITS CIVIL RICO CLAIM WITH PARTICULARITY.....12

      *i.   MinedMap Asserted Mail Fraud With Particularity In Its Amended Complaint and In Its Amended RICO Statement.* ......................13

      *ii.   MinedMap Pleaded Wire Fraud with Particularity In Its Amended Complaint.* ..........................................................15

      *iii.   A CFAA Violation Is A Chargeable or Indictable Offense, And So, Violation of The CFAA Is A Racketeering Activity. Alternatively, MinedMap's CFAA Claim Is Also A Standalone Claim.* ...................17

      *iv.   MinedMap Plausibly Pleaded The Pattern of Racketeering Element.* ......................................................19

         a.   MinedMap Pleaded Relatedness of The RICO Predicates.......21

         b.   MinedMap Pleaded Continuity Because MinedMap Alleged that Defendants Have Been Engaged In The Scheme For Longer Than Two Years and Because the Nature of Defendants' Conduct Extends Into the Future. ..........................................................23

CONCLUSION....................................................................25

CERTIFICATE OF SERVICE .......................................................25

## <u>TABLE OF AUTHORITIES</u>

### UNITED STATES SUPREME COURT CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................... 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................... 10

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  109 S. Ct. 2893 (1989) ................................................. 23

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555, 112 S. Ct. 2130 (1992) ................................. 12

*Nat'l Org. for Women v. Scheidler*,
  114 S. Ct. 798 (1994) .................................................. 22

*Sedima v. Imrex Co.*,
  473 U.S. 479 (1985) ..................................................... 13

### SECOND CIRCUIT OPINIONS

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
  187 F.3d 229 (2d Cir. 1999) .......................................... 23

*Cosmas v. Hassett*,
  886 F.2d 8 (2d Cir. 1989) ............................................. 11

*DiVittorio v. Equidyne Extractive Indus.*,
  822 F.2d 1242 (2d Cir. 1987) ......................................... 11

*Empire Merchs., L.L.C. v. Reliable Churchill L.L.L.P.*,
  902 F.3d 132 (2d Cir. 2018) .......................................... 20

*First Capital Asset Mgmt. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004) .......................................... 23

*Gant v. Wallingford Bd. of Educ.*,
  69 F.3d 669 (2d Cir. 1995) ............................................ 12

*Lerner v. Fleet Bank, N.A.*,
  318 F.3d 113 (2d Cir. 2003) ...................................... 13, 14

*McLaughlin v. Anderson*,
  962 F.2d 187 (2d Cir. 1992) .......................................... 17

*Ouaknine v. MacFarlane*,
    897 F.2d 75 (2d Cir. 1990) ............................................. 11

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004) ........................................... 22

*Sewell v. Bernardin*,
    795 F.3d 337 (2d Cir. 2015) ........................................... 21

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008) ........................................... 23

*Strubel v. Comenity Bank*,
    842 F.3d 181 (2d Cir. 2016) ...................................... 12, 13

*United States v. Bortnovsky*,
    879 F.2d 30 (2d Cir. 1989) ............................................. 17

*United States v. Indelicato*,
    865 F.2d 1370 (2d Cir. 1989) ................................. 23, 24, 25

*United States v. Tocco*,
    135 F.3d 116 (2d Cir. 1998) ................................... 17, 18-19

*United States v. Valle*,
    807 F.3d 508 (2d Cir. 2015) ........................................... 22

*United States v. Wallach*,
    935 F.2d 445 (2d Cir. 1991) ........................................... 16

*Weisman v. Le Landais*,
    532 F.2d 308 (2d Cir. 1976) ........................................... 12

### District Court for the Northern District of New York Opinions

*Avitabile v. Beach*,
    277 F. Supp. 3d 326 (N.D.N.Y. 2017) .................................. 13

*Kesick v. Ulloa*,
    No. 1:10-CV-1248, 2012 U.S. Dist. LEXIS 97201 (N.D.N.Y. July 11,
    2012) ............................................................ 13, 16

*Nichols v. BAC Home Loans Servicing LP*,
    No. 1:13-CV-00224, 2013 U.S. Dist. LEXIS 150564, 2013 WL 5723072
    (N.D.N.Y. Oct. 18, 2013) .............................................. 10

*Phillips v. Roy*,
    No. 9:08-CV-878 (FJS/ATB), 2011 U.S. Dist. LEXIS 96615 (N.D.N.Y. Aug.
    29, 2011) ............................................................. 12

## Federal Rules of Civil Procedure

Fed. R. Civ. P. 8(a)(1) ..................................................... 10

Fed. R. Civ. P. 9(b) ....................................................... 11

## Federal Court Opinions

*Canal Ins. Co. v. XMEX Transp., L.L.C.*,
    126 F. Supp. 3d 820 (W.D. Tex. 2015) ................................. 10

*Sky Med. Supply Inc. v. SCS Support Claims Servs.*,
    17 F. Supp. 3d 207 (E.D.N.Y. May 7, 2014) ...................... 13, 19

*Solomon v. Saril Apparel*,
    No. 91 Civ. 1227 (LBS), 1993 U.S. Dist. LEXIS 14189, 1993 WL 404177
    (S.D.N.Y. Oct. 7, 1993) ............................................. 11

*Sumitomo Copper Litig.*,
    995 F. Supp. 451 (S.D.N.Y. 1998) .................................... 20

*Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech.* ,
    886 F. Supp. 1134 (S.D.N.Y. May 25, 1995) ............... 15-16, 19, 23

*Xue v. Koenig*,
    No. 19 Civ. 07630 (NSR), 2021 U.S. Dist. LEXIS 53499 (S.D.N.Y. Mar.
    22, 2021) ........................................................... 12

## Federal Statutes

12 U.S.C.A. § 16 (West) .................................................... 26

15 U.S.C.A. §§ 20, 15 (West) ............................................... 26

15 U.S.C.A. §§ 65, 12 (West) ............................................... 26

18 U.S.C.A. § 1030 (West) .................................................. 27

18 U.S.C.A. § 1030(a)(3)(C) (West) ......................................... 21

18 U.S.C.A. § 1030(g) (West) ............................................... 21

18 U.S.C.A. § 1341 (West) .............................................. 16, 17

18 U.S.C.A. § 1961(1) (West) ............................................... 22

18 U.S.C.A. § 1962(c) (West) ............................................... 15

18 U.S.C.A. § 2314 (West) .................................................. 22

28 U.S.C.A. § 1332(a) (West) ............................................... 15

28 U.S.C.A. § 1343 (West) .................................................. 15

4160-7431-1469, v. 4

## INTRODUCTION

Defendants' three arguments for dismissal lack merit. Defendants first argue that MinedMap lacks standing to sue them because MinedMap did not allege facts that it owned the Miners, and the money Defendants stole. Defendants' second argument adds that if this Court dismisses MinedMap's Civil RICO claim, this Court should not exercise supplemental jurisdiction because the reminder of MinedMap's claims are state law claims. Defendants' third argument focuses on MinedMap's Civil RICO claims, and states that MinedMap did not alleged mail and wire fraud with particularity, that MinedMap's Computer Fraud and Abuse Act ("CFAA") claim is not a Civil RICO predicate, and that MinedMap has not alleged the continuity element of its Civil RICO claim. Defendants are wrong.

Defendants' first two arguments can be disposed of summarily. In 115 paragraphs of its First Amendment Complaint, MinedMap alleged that it owns the Miners it shipped to Defendants; MinedMap also alleged that the $462,000.00 it wired to Defendants belonged to it. MinedMap therefore has standing and has alleged that it has standing. Defendants' jurisdictional argument is also empty because this Court has diversity jurisdiction over MinedMap's claims that do not arise under federal statute and MinedMap alleged as much in Paragraphs 6–24

of the Amended Complaint. Indeed, Paragraph 24 of the Complaint specifically invokes this Court's diversity jurisdiction.

Defendants arguments against MinedMap's civil RICO claims are also without merit because each predicate is alleged with specificity, including the date, time, and individuals involved in the acts. Further, and more importantly, Defendants do not contest the existence of the RICO enterprise and under Second Circuit precedent, the related RICO predicate acts and the continuity element can be demonstrating from the RICO enterprise.

**BACKGROUND**

The Factual Background to the Complaint is set forth in Plaintiff's First Amended Complaint and in Plaintiff's RICO Statement that was long submitted and already part of the record.

**MOTION STANDARD**

**A. FED. R. CIV. P. 8 AND *TWOMBLY/IQBAL* STANDARD**

Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff to set forth a short and plain statement of the grounds for the courts' jurisdiction, unless the claim needs no jurisdictional support, and to set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(1)–(2) (quotation marks omitted); *Nichols v. BAC Home Loans Serv. LP*, 2013 U.S. Dist. Lexis 150564, *8–9, 2013 WL 5723072 (N.D.N.Y. Oct. 18, 2013) (Hurd, J.)

(construing Rule 8(a)(2) in the context of a motion to dismiss and construing *Iqbal* and *Twombly*).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and, two years later, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court identified and then clarified the pleading standard under Fed. R. Civ. P. 8(a)(2). At the pleading stage, the plaintiff must allege sufficient facts that would put the defendant on notice of the plaintiff's claim and advance the plaintiff's claim from the speculative to the plausible. *Twombly*, 127 S. Ct. at 1964–1965; *Iqbal*, 129 S. Ct. at 1949–50; *Enthone Inc. v. BASF Corp.*, 126 F. Supp. 3d 821, (N.D.N.Y. 2015).

## B. FED. R. CIV. P. 9(B) STANDARD

Rule 9(b) provides that in all "averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The purpose of Rule 9(b)'s particularity requirement is to provide the defendants with notice of the plaintiff's claims. *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989).

A plaintiff satisfies Rule 9(b) when the plaintiff specifies the statements it claims were false or misleading and give particulars about the fraudulent statements, including "when and where the statements were made and identity of those responsible for the statement." *Id.* at 11; *Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir. 1990) (citing *Divittorio v. Equidyne Extractive Indus. Inc.*, 822 F.2d

1242, 1247 (2d Cir. 1987)). Rule 9(b) is relaxed when the facts allege are "peculiarly within the opposing party's knowledge" and that plaintiff cannot learn that information without discovery. *DiVittorio*, 822 F.2d at 1247; S*olomon v. Saril Apparel, Ltd.*, 1993 U.S. Dist. Lexis 14189, 1993 WL 404177 (S.D.N.Y. 1993).

## C.   INFERENCES MUST BE DRAWN IN MINEDMAP'S FAVOR

When a plaintiff's pleading states plausible claims, the court must draw inferences in favor of the plaintiff. *Xue v. Koenig*, 2021 U.S. Dist. Lexis 53499, *13 (S.D.N.Y. March 22, 2021); *Garcia v. New York Racing Ass'n*, 2011 U.S. Dist. Lexis 96615, *14–15 (N.D.N.Y. Aug. 29, 2011). To draw inferences in favor of Plaintiff's well-pled claims means that the court must think through and analyze whether the plaintiff is entitled to present evidence on the claim. *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995); *Weisman v. Le Landais*, 532 F.2d 308, 311 (2d Cir. 1976).

### ARGUMENT AND AUTHORITIES

## A.   IN 115 PARAGRAPHS OF ITS FIRST AMENDED COMPLAINT, MINEDMAP ALLEGED FACTS THAT SUPPORTS ITS STANDING TO SUE.

A plaintiff has standing to sue when it can show it has suffered injured because of conduct by one or more of the Defendants and that the injury will be redressed by a favorable decision. *See, e.g., Strubel v. Comenity Bank*, 842 F.3d 181, 187–188 (2d Cir. 2016) (finding standing

and applying the elements cited) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130 (1992)). Thus, when the plaintiff shows it had a legal interest and a concrete injury to that legal interest, the plaintiff has standing to sue. *Strubel*, 842 F.3d at 187–191; *Vitabile v. Beach*, 277 F. Supp. 3d 326, 330–332 (N.D.N.Y. 2017) (applying the elements above and finding that the Plaintiff had standing to sue).

The standing requirement for a plaintiff alleging a Civil RICO is like the general standing requirement articulated above. 18 U.S.C.A. § 1961 *et seq*. Standing to assert a RICO claim exists if the Plaintiff can show that he has been injured in his business or property by the conduct constituting the RICO violation and that it suffered actual loss that is clear and definite. *Sky Med. Supply Inc. v. SCS Support Claims Servs.*, 17 F. Supp. 3d 207, 231–232 (E.D.N.Y. May 7, 2014) (internal quotation marks omitted); *Kesick v. Ulloa*, 2012 U.S. Dist. Lexis 97201, *25 (N.D.N.Y. July 12, 2012) (holding that a "RICO plaintiff 'can only recover to the extent that . . . [it] has been injured in [its] business or property by the conduct constituting the violation.'" (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)); *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir. 2003).

MinedMap alleged in its First Amended Complaint that it owned the Miners and the $462,000.00 wired to Defendants. Am. Compl. Am. Compl., ¶¶ 38, 46, 51, 57, 67, 71, 73–77, 79, 86, 98–99, 107, 108, 109–112, 114,

133, 134, 159, 160, and 181–182 (alleging in those paragraphs that MinedMap's ownership of the Miners and Defendants' fraud perpetrated on MinedMap to induce MinedMap to send Defendants to send it Miners to Defendants so that Defendants can steal them).

MinedMap also allege that it had been injured when Defendants stole its Miners and its $462,000.00 by wire and mail fraud. Am. Compl. ¶¶ 138–195. To put it more concretely, MinedMap alleged that it had suffered damages—which at the filing of the Complaint was $3 million dollars—as a direct and proximate result of Defendants' use of the mail and wire systems to defraud MinedMap of its money and miners. *Id*. MinedMap therefore has standing to sue Defendants.

**B. THE FIRST AMENDED COMPLAINT ALLEGES FEDERAL QUESTION AND DIVERSITY JURISDICTION. THUS, EVEN IF THIS COURT DISMISSES MINEDMAP'S CIVIL RICO CLAIM, THIS COURT HAS DIVERSITY JURISDICTION OVER MINEDMAP'S REMAINING CLAIMS.**

Defendants' argue that this Court should decline jurisdiction over MinedMap's state law claims if this Court dismisses MinedMap's Civil RICO claim, which arises under federal law. Defs' Mot. to Dismiss, 18–20, ECF Doc. No. 157–1. Defendants are wrong again.

MinedMap specifically alleged that this Court has diversity jurisdiction over the claims that do not arise under federal question. Am. Compl. ¶ 24 ("This Court also has jurisdiction over this matter under 28 U.S.C.A. § 1343, diversity jurisdiction, because [Plaintiff] and Defendants ***are completely diverse and because the amount in***

*controversy exceeds $75,000.00*.") (emphasis added); 28 U.S.C.A. §
1332(a). What is more, in identifying the parties subject to this suit,
MinedMap listed each party and the state in which those parties were
domiciled, making clear the factual basis for this Court's diversity
jurisdiction. Am. Compl. ¶¶ 6–23. Consequently, even *if* this court
dismisses MinedMap's Civil RICO claim, this Court has diversity
jurisdiction over MinedMap's remaining claims.

## C. MINEDMAP PLEADED ITS CIVIL RICO CLAIM WITH PARTICULARITY.

To state a civil RICO claim, a Plaintiff must allege that the
defendant conducted or participated in an enterprise's affairs through
a pattern of racketeering activity that caused injury to the plaintiffs'
business or property. 18 U.S.C.A. § 1962(c); *Trts. of the Plumbers &
Pipefitters Nat'l Pension Fund v. Transworld Mech.*, 886 F. Supp. 1134
(S.D.N.Y. May 25, 1995); *Kesick*, 2012 U.S. Dist. Lexis 97201; *Holmes v.
Parade Pl. L.L.C.*, 2013 U.S. Dist. Lexis 138645, 2013 WL 5405541, *7–9
(S.D.N.Y. 1983).

Defendants do not argue that MinedMap properly allege an
enterprise. Defendants also do not argue that MinedMap has shown that
the predicate acts are related to each other so as to satisfy the
pattern of racketeering element. Instead, Defendants only argue that
MinedMap's mail and wire fraud allegations are insufficiency that
MinedMap's CFAA claim is not a RICO predicate , and that  MinedMap's

Amended Complaint does not sufficiently allege continuity. Mot. to Dismiss, 5–18.

> i.   *MinedMap Asserted Mail Fraud With Particularity In Its Amended Complaint and In Its Amended RICO Statement.*

Section 1341 prohibits individuals and entities from using the mails in furtherance of "any *scheme or artifice to defraud*, or *for obtaining money or property by means of false or fraudulent pretenses, representations, or promises*." 18 U.S.C.A. § 1341 (emphasis added). *United States v. Wallach*, 935 F.2d 461 (2d Cir. 1991) (construing § 1341). To state a claim for mail fraud, the plaintiff must allege that: (1) the defendant created a scheme to defraud the plaintiff of money or property and (2) the defendant used the mails to further the fraudulent scheme. 18 U.S.C.A. § 1341; *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992).

The plaintiff need only show that the defendant caused the mailing and that the mailing was for the purpose of executing the scheme or that the mailing was "incidental to an essential part of the scheme." *McLaughlin*, 962 F.2d at 191 (quoting *United States v. Bortnovsky*, 879 F.2d 30, 36 (2d Cir. 1989).

The Second Circuit has always "construed the mail fraud statute liberally." *United States v. Tocco*, 135 F.3d 116, 124 (2d Cir. 1998). Thus, courts within the Second Circuit hold that a plaintiff states a mail fraud claim where the plaintiff alleges that defendant "acted

with knowledge that the use of the mails will follow in the ordinary course of business or that such use can reasonably be foreseen, even though not actually intended." *Id* (internal quotation marks omitted).

Defendants argue that MinedMap's First Amended Complaint does not allege mail fraud with particularity because MinedMap does not allege a single mailing by Defendants. *See* Defs. Mot. to Dismiss, 7–8. This argument has no basis in fact or law.

The First Amended Complaint alleges that Defendant devised a scheme, and through that scheme, caused MinedMap (and others) to ship miners to Defendants. In furtherance of their scheme, Defendants received MinedMap's Miners and shipped them to Illinois to permanently deprive MinedMap of the Miners and to prevent MinedMap from discovering the IP addresses of the locations at which the Miners were kept.

MinedMap also alleged that Defendants engaged in insurance fraud scheme whereby, using interstate commerce, Defendants obtained insurance on MinedMap's miners while representing to the insurance companies that the miners belong to Defendants and later claimed millions of dollars on MinedMap's miners without turning over those sums to MinedMap. Am. Compl. ¶¶ 4, 63–64, 75, 86, 87–89, 92, 97, 102, 152, 163, 171–173, 176–182, and 185. MinedMap's RICO Statement also alleges that Defendants used interstate commerce to further their scheme to defraud Plaintiff. ECF Doc. No. 59.

The use of the interstate mail system was essential to Defendants' scheme because Defendants could not receive MinedMap's Miners without the Miners being transported through interstate commerce. Am. Compl., at *passim*; *Tocco*, 135 F.3d at 124 (holding that a plaintiff states a mail fraud claim where the plaintiff alleges that the defendant "***acted with knowledge that the use of the mails will follow in the ordinary course of business or that such use can reasonably be foreseen, even though not actually intended.***") (emphasis added).

What is more, MinedMap shipped its Miners to Defendants *after* Defendants induced MinedMap through Defendants' false representations. MinedMap has therefore stated a mail fraud claim with particularity and is entitled to present evidence on its mail fraud claim. *Transworld Mech.*, 886 F. Supp. at 1145–46 (setting forth the mail fraud analysis and finding mail fraud); *Sky Med. Supply Inc.*, 17 F. Supp. 3d at 229–230.

### ii. *MinedMap Pleaded Wire Fraud with Particularity In Its Amended Complaint.*

Like mail fraud, § 1343 prohibits an individual from devising or intending to devise any scheme or "***artifice to defraud*, or *for obtaining money or property by means of false or fraudulent pretenses, representations, or promises*,** transmits or causes to be transmitted

*by means of wire* . . . in interstate or foreign commerce . . . ." 18
U.S.C.A. § 1343.

A plaintiff states a claim for wire fraud it if alleges that: (1)
defendant engaged in a scheme to defraud; (2) money or property was
the object of the scheme; and (3) the use of the wires to further the
scheme. *Sumitomo Copper Litig.*, 995 F. Supp. 451, 455 (S.D.N.Y. 1998)
(listing the elements of mail and wire fraud); *Empire Merchs., LLC v.
Reliable Churchill LLLP*, 902 F.3d 132, 137–138 (2d Cir. 2018) (reversing
the district court and finding plaintiff had stated a claim for wire
fraud).

The first element—a scheme to defraud—is "measured by a
nontechnical standard," and it is a "reflection of moral uprightness,
of fundamental honesty, fair play and right dealing in the general and
business life of members of society." *Id.* at 139–140. The second
element—the thing obtained—questions whether the money or property
obtained was "in the hands of the victim" or that the victim had a
right to the money or property. *Id* (some quotation marks omitted).

Defendants argue that MinedMap has not stated a claim for wire
fraud with particularity because MinedMap has only stated that
Defendants mined and transported their bitcoins through interstate
commerce. Mot. to Dismiss, 9–10. Defendants are wrong.

As alleged in the Amended Complaint, MinedMap wired **$162,000.00** to Defendants on September 21, 2018, and, one week later, MinedMap wired an additional **$270,000.00**. Am. Compl. ¶¶ 26–64, ¶¶ 74–75. MinedMap alleged that without Defendants' schemes and false representations, MinedMap would not have wired Defendants $462,000.00.

### iii. *A CFAA Violation Is A Chargeable or Indictable Offense, And So, Violation of The CFAA Is A Racketeering Activity. Alternatively, MinedMap's CFAA Claim Is Also A Standalone Claim.*

A defendant commits a crime under the CFAA, where he intentionally accesses a computer without authorization or exceeds the authorization granted, and through the unauthorized accessed, obtains information from any protected computer, and as a result such conduct, causes damage and loss. 18 U.S.C.A § 1030(a)(3)(C) (quotation marks omitted). The CFAA creates a private right of action. 18 U.S.C.A. § 1030(g).

The CFAA defines "damage" as any "impairment to the ***integrity or availability of data, a program, a system, or information.***" § 1030(e)(8) (emphasis added); *Sewell v. Bernardin*, 795 F.3d 337, 340–341 (2d Cir.2015). A defendant exceeds authorized access where a defendant obtains or alters information in the computer that a defendant is not entitled to obtain or access. *United States v. Valle*, 807 F.3d 508, 511–512 (2d Cir. 2015).

A plaintiff states a claim for violation of the CFAA, where it alleges that the defendant: (1) obtained information through intentional unauthorized access to a computer and (2) caused damage or loss that exceeds $5000.00. *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 439 (2d Cir. 2004).

Defendants argue that the CFAA is not a RICO predicate because violation of the CFAA is not listed as one of the offenses in 18 U.S.C.A. § 1961(1) and that only certain CFAA crimes are subject to RICO's reach. Mot. to Dismiss, 10–13. Defendants are wrong. To constitute a racketeering activity, the offense need not be listed in § 1961 (1) but must be an offense that is chargeable or indictable under a host of state and federal laws. *Nat' Org. for Women v. Scheider*, 114 S. Ct. 798, 803 (1994) (internal quotation marks omitted).

MinedMap has clearly alleged that Defendants have altered MinedMap's Miners and, as of the time the Complaint was submitted, MinedMap had suffered more than $3 million in damages from the bitcoins stolen from those Miners. In addition, if this Court holds that CFAA is not a RICO predicate—no court in New York has made such a ruling—MinedMap's CFAA claim is nevertheless actionable as a standalone claim.

4160-7431-1469, v. 4

### iv.  *MinedMap Plausibly Pleaded The Pattern of Racketeering Element.*

MinedMap alleged mail and wire fraud, violation of the CFAA, and the transport of stolen goods in interstate commerce in violation of 18 U.S.C.A. § 2314. The RICO predicate offenses are related if they share a similar purpose, participants, victims, methods, and other distinguishing characteristics. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 109 S. Ct. 2893 (1989); *Transworld Mech.*, 886 F. Supp. at 1144; *United States v. Indelicato*, 865 F.2d 1370, 1381–1385 (2d Cir. 1989).

A Civil RICO plaintiff can satisfy the continuity element by showing that the predicate acts occurred for a long time or by showing that the nature of the predicate acts were inclined or intended to extend into the future. *Id.* 2901–02; *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183–185 (2d Cir. 2008); *Indelicato*, 865 F.2d at 1381–1385. Courts have referred to the nature and length of the continuity element as a closed-ended pattern of racketeering or an open-ended pattern of racketeering. *Spool*, 520 F.3d at 183–185; *First Capital Asset Mgmt. Inc. c. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004); *Cofacredit v. S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999).

Although cases have discussed the pattern of racketeering element, few cases have discussed the method of alleging or proving relatedness and continuity as the Second Circuit did in *United States*

*v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989). The Second Circuit surveyed its pattern of racketeering jurisprudence, and, in so doing, provided guidance to lower courts and to litigants. Thus, the following principles on method of alleging and proving and proving pattern of racketeering element of a Civil RICO claim is helpful.

In providing guidance on the interrelationship of the RICO predicate acts, the Second Circuit states:

> An interrelationship between acts, suggesting the existence of a pattern, may be established in a number of ways. These include proof of their temporal proximity, or common goals, or similarity of methods, or repetitions. The degree to which these factors establish a pattern may depend on the degree of proximity, or any similarities in goals or methodology, or the number of repetitions.

*Indelicato*, 865 F.2d at 1382.

The Second Circuit also reasoned that each RICO predicate act should be counted as one act, without regard to whether each act happened in temporal proximity to each other:

> In sum, though we would disapprove any attempt by the Government or a private plaintiff to go beyond Congress's intent and fragment an act that plainly is unitary into multiple acts in order to invoke RICO, we conclude that where in fact there are different acts, each should be separately counted. If there are similarities between them with respect to victim, methodology, goal, etc., and if there is evidence of a threat of continuation of racketeering activity, we conclude that the act may constitute a pattern even though they are nearly simultaneous.

*Id.* at 1383.

A litigant may prove the relatedness and continuity prongs from the nature of the RICO enterprise:

> In some cases both the relatedness and the continuity necessary to show a RICO pattern may be proven through the nature of the RICO enterprise. For example, two racketeering acts that are not directly related to each other may nevertheless be related indirectly because each is related to the RICO enterprise. The nature of the enterprise may also serve to show the threat of continuing activity. Where the enterprise is an entity whose business is racketeering activity, an act performed in furtherance of that business automatically carries with it the threat of continued racketeering activity.

*Id.* at 1383–84.

### a. *MinedMap Pleaded Relatedness of The RICO Predicates.*

MinedMap alleged predicate acts of mail fraud, wire fraud, CFAA violation, and transporting stolen goods in interstate commerce in violation of 18 U.S.C.A. §§ 2314–2315. Am. Compl., ¶¶ 100, 102, 107, 108–109, 116, 120, 122, 136, 138–207. Plaintiff allege that Defendants formed various entities, including the entities MinedMap shipped its Miners to and wired its funds to, as sham corporations to defraud MinedMap and other bitcoin companies. Since January 2017, after Michael Maranda was paroled from prison, Defendants have been engaged in the practice of stealing miners from bitcoin companies.

After Defendants stole the Miners, they then caused the stolen Miners to be transported in interstate commerce to Illinois and elsewhere across the US. Defendants then used those Miners to mine

bitcoin for themselves without authorization from MinedMap and from other bitcoin companies and kept the mined bitcoins for themselves.

MinedMap alleged, with particularity, the following RICO predicate acts:

- **Mail Fraud** (In October 2018 and November 2018, using the through the enterprise, Defendants caused Plaintiffs to ship their miners to Defendants. *See, e.g.*, Am. Compl. ¶ 75);

- **Wire Fraud** (On September 21, 2018, and one week later, on September 28, 2018, MinedMap wired Defendants $462,000.00 dollars. *See, e.g.*, Am. Compl. ¶¶ 73–74);

- **Insurance Fraud** (15 U.S.C.A. § 20, 15 U.S.C.A. § 65, and 12 U.S.C.A. § 16) (Defendants took out insurance policies on MinedMap's miners and obtained millions on MinedMap's miners without giving MinedMap the sums Defendants received. *See, e.g.*, Am. Compl. ¶¶ 176–180, 182–183);

- **CFAA Violation** (Defendants unlawfully accessed MinedMap's Miners or authorized control over Defendants' Miners in a way that MinedMap did not authorized. Defendants then scraped the serial numbers from MinedMap's Miners, changed the serial number and the Internet Protocol Address and took redirected bitcoins mined from MinedMap's miners to Defendants personal accounts. The foregoing occurred in October 2018 and has continued to today. *See, e.g.*, Am. Compl. ¶¶ 196–200); and

- **Transporting Stolen Property In Interstate Commerce** (18 U.S.C.A. §§ 2314–2315) (Since 2018, Defendants have transferred MinedMap's Miners that Defendants stole to Illinois and to other states. Defendants also stole and transferred Plaintiffs $462,000.00 deposit to third parties

across the US. *See*, *e.g.*, Am. Compl. ¶¶ 100, 102,
107, 108–109, 116, 120, 122, 136, 138–207).

Each of these acts are related in timing because they all occurred immediately after the other. Thus, for example, Defendants scammed MinedMap into sending its Miners to Defendants (mail and wire fraud), and, shortly thereafter, Defendants stole the Miners and the money and shipped them to Illinois and elsewhere out of MinedMap's reach. The same is true of the bitcoins mined from the Miners.

> **b. *MinedMap Pleaded Continuity Because MinedMap Alleged that Defendants Have Been Engaged In The Scheme For <u>Longer Than Two Years</u> and Because the Nature of Defendants' Conduct Extends Into the Future*.**

As the Second Circuit held in *Indelicato*, when one has demonstrated an enterprise and RICO predicate acts, one may not need to show continuity. Because Defendants do not contest that they operated a RICO enterprise and because MinedMap can demonstrate RICO predicate acts, MinedMap is not required to state this element. *Indelicato*, 865 F.2d at 1382.

Nevertheless, MinedMap can demonstrate continuity. Continuity is demonstrated by alleging an open–or–closed–ended–pattern of racketeering. MinedMap alleged that since **2017**, which was more than **two years** before MinedMap sued Defendants. Indeed, Defendants opened bank accounts at M&T Bank and at Teachers Federal Credit Union long **before** they met MinedMap as part of the enterprise and as part of the

scam to appear legitimate to MinedMap and others. Am. Compl. ¶¶ 5, 30–33.

In addition, MinedMap can demonstrate the continuity element because of the nature of the enterprise. A scam to steal bitcoins miners is not a short-term scam, but a long-term criminal enterprise and require many steps. For example, to profitable mine for bitcoins as MinedMap alleges Defendants has done, one need multiple years to gain sufficient coins because mining for bitcoins is a process done through pooling.

Pooling in bitcoin mining is akin to individuals in an actual goldmine mining for gold, except that pooling is more important to bitcoin mining because **no single miner**, by himself, can solve the algorithm needed to mine sufficient bitcoins. Instead, bitcoin miners are all part of a pool and they work together to solve an algorithm in order to come up with the right algorithm to mine for bitcoin. This process takes years to accomplish. Thus, the very nature of the scam in which Defendants are engaged takes a substantial amount of time.

Consequently, in addition to alleging that Defendants have engaged in this enterprise for longer **than two years**, MinedMap has also demonstrated the continuity element by the very **long-term nature** of the enterprise. Defendants do not dispute the existence of the enterprise.

**CONCLUSION**

For the reasons stated above, MinedMap requests that this Court deny Defendants' Motion to Dismiss and grant MinedMap any relief this Court deems proper.

May 3, 2021.
New York, New York

**RESPECTFULLY SUBMITTED,**

*/s/ T. Edward Williams, Esq.*
T. Edward Williams, Esq. Bar No. 5634738
WILLIAMS LLP
7 World Trade Center
250 Greenwich 46th FL.
New York, New York 10007
Tel: 212.634.9106
Fax: 212.202.6228
Edward@williamsllp.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10rd day of May 2021, this **MINEDMAP'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** was served on these individuals:

John Harwick, Esq. *via ECF*
Benjamin Niedl, Esq.
*Counsel for Defendants*

25