UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MINEDMAP, INC., a Nevada
limited liability,

                      Plaintiff,

              -v-                      1:19-CV-501

NORTHWAY MINING, LLC,
MICHAEL MARANDA,
MINING POWER GROUP,
INC., HUDSON DATA
CENTER, INC., DROR
SVORAI, MICHAEL CARTER,
an individual, COINMINT,
LLC, MICHAEL MARANDA
LLC, PORTER KING
HILL CONTRACTING
LLC, ANTHONY PORTER,
LORI S. THOMPSON-MARANDA,
LORI S. THOMPSON-MARANDA
LCSW, PLLC, 38 Oaklawn Avenue,
Farmingville, NY 11738,
631-655-8795, OSWEGO DATA,
LLC, 38 Oaklawn Avenue,
Farmingville, NY 11738, M&T
BANK, N.A., TEACHERS
FEDERAL CREDIT UNION,
CHRISTINE MARANDA, an
individual, ROSEANN MARANDA,
an individual, DOUGLAS
MARANDA, an individual,
DONALD D'AVANZO, an
individual, ETHEREUM
VENTURES, LLC, a New York
limited liability company, ANGELO
POPE, an individual, JEFFREY
HOLBROOK, an individual

and a resident of the state of New
York, MELISSA WELSH, an
individual and a resident of the
State of New York, XYZ
CORPORATION, entities formed
by Michael Maranda and Other
Defendants, and XYZ LIMITED
LIABILITY COMPANY, formed
by Michael Maranda and other
Defendants; Real Property at 38
Oaklawn Avenue, Athens, New York,

Defendants.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| WILLIAMS LLP<br>Attorneys for Plaintiffs<br>250 Greenwich Street, 46th Floor<br>New York, NY 10007 | T. EDWARD WILLIAMS, ESQ. |
| E. STEWART JONES<br>   HACKER MURPHY, LLP<br>Attorneys for Defendants Northway<br>   Mining, LLC, Michael Maranda,<br>   Hudson Data Center, Inc., Michael<br>   Carter, and Michael Maranda LLC<br>28 Second Street<br>Troy, NY 12180 | BENJAMIN F. NEIDL, ESQ.<br>JOHN F. HARWICK, ESQ. |

DAVID N. HURD
United States District Judge

---

[1] The Court has corrected several mis-spellings in the caption.

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On April 12, 2019, plaintiffs 9384-2557 Québec Inc. ("Québec"),

MinedMap, Inc. ("MinedMap"), and Serenity Alpha, LLC ("Serenity") filed

this action in the U.S. District Court for the Eastern District of New York

against defendants Northway Mining, LLC ("Northway"), Michael Maranda

("Maranda"), Michael Carter ("Carter"), CSX4236 Motorcycle Salvage, LLC

("Motorcycle Salvage"), Dror Svorai ("Svorai"), Mining Power Group, Inc.

("Mining Power"), and Hudson Data Center ("Hudson Data") alleging that the

named defendants violated the Racketeer Influenced and Corrupt

Organizations Act ("RICO") and related state law by conspiring to commit,

and by committing, *inter alia*, mail and wire fraud.  Dkt. No. 2.

Broadly stated, plaintiffs' complaint alleged that Northway, Maranda,

Carter, and other affiliated individuals and entities misrepresented the

existence of a specially equipped warehouse facility in Coxsackie, New York

(the "Facility") that could handle the significant electrical power output

needed to "mine" bitcoin, a form of digital currency.  Dkt. No. 2.

Bitcoin "mining" is performed by high-powered computers that solve (or

"hash") complex math equations.  The process of solving these math problems

actually creates new bitcoin, a valuable digital commodity.  According to the

complaint, Québec, MinedMap, and/or Serenity own several thousand of these

high-end bitcoin mining computers (also called "machines" or "miners") and tried to contract with the named defendants to host them at the Facility.

Plaintiffs alleged that they sent thousands of these bitcoin mining machines to the Facility and deposited large sums of money with the named defendants to finance the costs associated with the spike in electrical consumption. Plaintiffs alleged that instead of buying electrical power, defendants "used the funds to purchase personal items, pay mortgages on personal homes they own, and [make] other similar purchases."

On April 23, 2019, U.S. District Judge Brian M. Cogan issued a writ of replevin that directed the U.S. Marshals Service to seize certain property at issue in this litigation. Dkt. No. 12. However, Judge Cogan vacated that order the following day and transferred the case to this judicial district after finding that the bitcoin mining machines were allegedly located in the Northern District of New York.

Upon transfer to this district, the case was initially assigned to Senior U.S. District Judge Thomas J. McAvoy, who granted plaintiffs' emergency request for the writ of replevin on April 29, 2019. Dkt. Nos. 19–20, 22. According to a status report later filed by plaintiffs, they spent the next six months "working with law enforcement" to satisfy the writ. *See* Dkt. No. 28.

On March 12, 2020, plaintiffs amended their complaint to add Michael Maranda, LLC ("MMLLC"), Porter King Hill Contracting, LLC ("Porter

King"), and Coinmint, LLC ("Coinmint") as named defendants in this action.  Dkt. No. 29.  The amended pleading re-alleged a civil RICO claim against all of the named defendants.  *Id*.  The pleading also added a series of new state law claims related to the ongoing dispute over possession of the bitcoin mining machines.  *See id*.

For some reason, plaintiffs almost immediately tried to amend their complaint a second time, Dkt. No. 37, but it was stricken from the docket as inappropriately filed by U.S. Magistrate Judge Christian F. Hummel, Dkt. No. 49.  Thereafter, plaintiffs moved for leave to amend their complaint in accordance with the Federal Rules.  Dkt. Nos. 50–51.

On May 8, 2020, Northway, Maranda, Hudson Data, and MMLLC moved under Federal Rule of Civil Procedure 12(b) to dismiss plaintiffs' amended complaint on various grounds, including failure to state a plausible claim for relief.  Dkt. No. 55.  Carter later filed his own motion to dismiss on broadly similar grounds.  Dkt. No. 113.

The parties fully briefed these motions.  *See, e.g.*, Dkt. Nos. 58, 60.  During this period, plaintiffs sought emergency discovery before Judge McAvoy, Dkt. No. 67, which was denied, Dkt. No. 68, and then emergency discovery before Judge Hummel, Dkt. No. 69, who granted the request in part after a hearing, Dkt. No. 76.  Plaintiffs later voluntarily dismissed their claims against Porter King, Coinmint, Svorai, and Mining Power.  Dkt. No. 91.

On July 13, 2020, plaintiffs moved for the issuance or re-issuance of an emergency writ of replevin because the named defendants had allegedly refused to release the bitcoin mining machines.  Dkt. No. 81.  According to plaintiffs, the named defendants had actually moved the bitcoin mining computers to a different physical location in defiance of the Court's prior orders.  *Id*.  Following some procedural wrangling, Judge McAvoy granted that motion.  Dkt. Nos. 84, 88, 99, 101.

Thereafter, plaintiffs filed four new motions.  First, plaintiffs moved under Rule 70(e) for the issuance of civil and criminal contempt sanctions against defendants Maranda and Carter and non-party Melissa Welsh ("Welsh").  Dkt. No 110.  Second, plaintiffs moved for an award of attorney's fees to cover the cost of the latest motion for replevin.  Dkt. No. 112.

Third, plaintiffs moved under Rule 64 for pre-judgment attachment of certain assets based on their contention that defendants were dissipating assets in anticipation of a large money judgment against them.  Dkt. No. 112.  Fourth, plaintiffs moved for the release of $197,275.00 in insurance proceeds being held by defendants.  Dkt. No. 141.

These four motions were fully briefed.  *See, e.g.*, Dkt. Nos. 115–22.  In the meantime, plaintiffs continued to seek additional emergency relief before Judge Hummel.  *See, e.g.*, Dkt. Nos. 134, 139.  Those requests were denied by Judge McAvoy.  Dkt. No. 140.

On February 17, 2021, Judge McAvoy granted in part and denied in part the Rule 12(b) motions to dismiss that had been filed by Northway, Maranda, Hudson Data, MMLLC, and Carter. *9384-2557 Quebec, Inc. v. Northway Mining LLC*, 2021 WL 619413 (N.D.N.Y. Feb. 17, 2021) (McAvoy, J.).

As relevant here, Judge McAvoy dismissed plaintiffs Serenity and Québec from this suit because of a contractual forum-selection clause that required the parties to litigate their dispute in a state forum. *9384-2557 Quebec, Inc.*, at *13–*15. Judge McAvoy also dismissed the civil RICO claim against all the named defendants. *Id*. at *18–*12. And although he denied plaintiffs' long-pending motion to amend, Judge McAvoy granted MinedMap—the remaining plaintiff—leave to file another amended complaint if it believed it could cure some or all of the various pleading defects identified in the February opinion. *Id*. at *15.

On March 8, 2021, MinedMap filed a second amended pleading. Dkt. No. 150. This latest pleading asserts twelve counts against twenty-five defendants, including a number of entities that were previously voluntarily dismissed without prejudice. *Id*. Notably, it includes a re-pleaded version of the civil RICO claim dismissed by Judge McAvoy in the February opinion.

On March 17, 2021, Judge McAvoy recused himself from this matter. Dkt. No. 151. The case was initially reassigned to Senior U.S. District Judge

Lawrence E. Kahn.  Dkt. No. 152.  The case was then reassigned to this Court on March 18, 2021.  Dkt. No. 153.

On March 31, 2021, this Court denied plaintiffs' still-pending motions for contempt, pre-judgment attachment, attorney's fees, and a disbursement of insurance proceeds.  *Serenity Alpha, LLC v. Northway Mining, LLC*, –F. Supp. 3d–, 2021 WL 1202131, at \*5–\*6 (N.D.N.Y. Mar. 31, 2021).

On April 1, 2021, Northway, Maranda, MMLLC, Hudson Data, and Carter (collectively the "moving defendants") moved under Rule 12(b)(1) and (b)(6) to dismiss the second amended complaint.  Dkt. No. 157.  That motion has been fully briefed and will be considered on the basis of the submissions without oral argument.[2]

## II. <u>BACKGROUND</u>

The following facts are taken from the Second Amended Complaint, Dkt. No. 150, and are assumed true for the limited purpose of resolving the motion to dismiss.  The latest pleading retains the same core thread running through plaintiffs' prior two filings: it alleges that Québec, MinedMap, and/or Serenity sent "more than 3,600" bitcoin mining computers to be hosted by Northway and the other named defendants at the specialized Facility in Coxsackie, New York.  Second Am. Compl. ¶¶ 4, 71.

---

[2]  For reasons explained in the text order, plaintiff's untimely opposition memorandum was stricken on May 10, 2021.  Dkt. No. 168.  Plaintiff blamed the untimeliness on, *inter alia*, the Court's electronic docketing system.  Dkt. No. 169.

In particular, the new complaint alleges that defendant Maranda, directly and through various intermediaries, misrepresented Northway's power supply capacity, infrastructure capabilities, and business capitalization broadly to the cryptocurrency community.  Second Am. Compl. ¶¶ 37–41, 63, 67–68.  As a result, MinedMap and/or Serenity paid Northway substantial sums of money with the understanding that the bitcoin mining machines they sent Upstate would be powered up within twenty-one days after arrival at the Facility in Coxsackie.  *Id.* ¶¶ 75–76.  However, Northway failed to plug the machines in so that they could begin generating bitcoin; instead, the complaint alleges that defendants unlawfully transferred the machines to third parties, including some of the co-defendants.  *Id.* ¶ 97.

## III.  LEGAL STANDARDS

### A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 297–98 (N.D.N.Y. 2019) (cleaned up).  "The Second Circuit has drawn a distinction between two types of Rule 12(b)(1) motions: (i) facial motions and (ii) fact-based motions."  *Nicholas v. Trump*, 433 F. Supp. 3d 581, 586 (S.D.N.Y. 2020); *see also Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56

(2d Cir. 2016) ("A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based.").

"A facial Rule 12(b)(1) motion is one based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Nicholas*, 433 F. Supp. 3d at 586 (cleaned up). "A plaintiff opposing such a motion bears no evidentiary burden." *Id*. "Instead, to resolve a facial Rule 12(b)(1) motion, a district court must determine whether the complaint and its exhibits allege facts that establish subject matter jurisdiction." *Id*. "And to make that determination, a court must accept the complaint's allegations as true and draw all reasonable inferences in favor of the plaintiff." *Id*.

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the complaint and its exhibits." *Nicholas*, 433 F. Supp. 3d at 586 (quoting *Carter*, 822 F.3d at 57). "In opposition to such a motion, a plaintiff must come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on the allegations in their pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Id*. (cleaned up). "If a defendant supports his fact-based Rule 12(b)(1) motion with material and controverted extrinsic evidence, a district court will need to make findings of fact in aid of its decision as to the subject matter jurisdiction." *Id*.

## B. **Rule 12(b)(6)**

"To survive a Rule 12(b)(6) motion to dismiss, the factual allegations must be enough to raise a right to relief above the speculative level." *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (cleaned up). "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims." *Id*. "When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor." *United States v. Bedi*, 318 F. Supp. 3d 561, 564–65 (citation omitted). "In making this determination, a court generally confines itself to the 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.'" *Bedi*, 318 F. Supp. 3d at 564–65 (quoting *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)).

## IV. **DISCUSSION**

The moving defendants contend that the Second Amended Complaint fails to cure the defects in the civil RICO claim identified by Judge McAvoy in his February opinion.  Defs.' Mem., Dkt. No. 157 at 10–22.[3]  According to

---

[3] Pagination corresponds to CM/ECF.

defendants, the Court should dismiss the RICO claim and decline to exercise jurisdiction over the remaining state law claims. *Id.* at 23–25.

## A. **RICO**

"Congress enacted RICO in 1970 as part of the Organized Crime Control Act to seek the eradication of organized crime in the United States." *Am. Fed'n of State, Cty. & Mun. Employees Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.*, 948 F. Supp. 2d 338, 344 (S.D.N.Y. 2013) (cleaned up). However, the statute is not limited to "mobsters and organized criminals." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985).

"As relevant here, the civil component of the RICO statute provides a private right of action for treble damages, attorney's fees, and costs to any person injured in his business or property by reason of a violation of section 1962." *Oriska Ins. Co. v. Avalon Gardens Rehab. & Health Care Ctr., LLC*, 2019 WL 4195267, at *8 (N.D.N.Y. Sept. 4, 2019) (cleaned up); *see also Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 220 (E.D.N.Y. 2014) ("When § 1962 is violated, in addition to criminal penalties, the RICO statutes also authorize civil lawsuit, which, if successful, can entitle a plaintiff to treble damages, costs, and attorney's fees.").

This makes "[c]ivil RICO an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991). "Consequently, courts have an obligation to

scrutinize civil RICO claims early in the litigation [to] separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." *Bristol-Myers Squibb Co.*, 948 F. Supp. 32d at 345 (citation omitted).

Of course, "[t]he true civil RICO plaintiff may well provide a laudatory societal service, supplementing the government's efforts 'to protect the general public and the common good from felonious conduct.'" *Bristol-Myers Squibb Co.*, 948 F. Supp. 2d at 345 (quoting *Gross v. Waywell*, 628 F. Supp. 2d 475, 481 (S.D.N.Y. 2009)). However, "it is also well known that the federal courts are flooded with cases molded to the RICO form, even though they are truly little more than garden variety claims for fraud." *Id.* (cleaned up).

"Section 1962 sets forth four separate RICO offenses, with each subsection requiring certain elements." *Oriska Ins. Co.*, 2019 WL 4195267, at *9. As a general matter, however, a plaintiff asserting a civil RICO claim has two pleading burdens.[4] *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983).

First, the plaintiff must allege a violation of the substantive RICO statute by pleading "(1) that the defendant (2) through the commission of two or more

---

[4] Non-fraud elements of a civil RICO claim are subject to Rule 8(a) while predicate acts sounding in fraud or mistake are subject to the particularity requirement of Rule 9(b). *See, e.g.*, *D. Penguin Bros. Ltd. v. City Nat'l Bank*, 587 F. App'x 663, 666 (2d Cir. 2014) (summary order).

acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss*, 719 F.2d at 17 (quoting 18 U.S.C. § 1962(a)–(c)).  Second, the plaintiff must allege he was "injured in his business or property *by reason of* a violation of section 1962."  *Id*. (emphasis in original) (quoting § 1964(c)).

In his prior order, Judge McAvoy found that plaintiffs had utterly failed to allege the pattern of racketeering activity or predicate acts of fraud required to maintain a civil RICO claim.  *9384-2557 Quebec, Inc.*, 2021 WL 619413 at *9–*12.  In dismissing this claim, the prior order cautioned:

> While the Court doubts that Plaintiff can plead a RICO claim based on the facts of this case, the Court notes that dismissal here is predicated on insufficient pleading of facts, not admissions that make stating a claim legally impossible.  Under those circumstances, the Court will permit Plaintiffs to make another effect to plead their RICO claims.  The Court notes, however, that "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the legal arguments are "warranted by existing law or by a nonfrivolous argument" about what the law should be and that the attorney has a reasonable basis for the "factual contentions" in the pleading."  Fed. R. Civ. P. 11(b)(2), (3).  Plaintiffs should only re-plead this claim if they can satisfy this rule.

*Id*. at *12.

- 14 -

The moving defendants contend that the re-pleaded civil RICO claim should be dismissed because MinedMap has failed to heed Judge McAvoy's warnings.  In opposition, plaintiff argues that it "has alleged mail fraud, wire fraud, and computer fraud with particularity."  Pl.'s Opp'n, Dkt. No. 164.

Upon review, MinedMap's civil RICO claim must be dismissed.[5]  As an initial matter, the Court notes that plaintiff has not filed a new or amended Civil RICO statement in connection with this new pleading.[6]  As Judge McAvoy noted in dismissing the plaintiffs' civil RICO claim the last time around, "[t]he [Civil RICO] statement in general alleges fraud, but makes no effort to describe the mail and wire fraud alleged" and "fails to explain why [certain] statements were fraudulent."  *9384-2557 Quebec, Inc.*, 2021 WL 619413, at *12.

This leaves for consideration whether the new or additional allegations in the Second Amended Complaint have cured the defects identified by Judge McAvoy in the prior opinion.  There, Judge McAvoy concluded that plaintiffs'

---

[5]  The moving defendants also argued that MinedMap failed to plausibly allege standing because the latest pleading still treats MinedMap and Serenity—the latter being a party that Judge McAvoy has already expressly dismissed from this suit—interchangeably, leaving the reader to guess whether some or all of the money and bitcoin machines belong to one or the other or both.  *See* Defs.' Mem. at 8–11.  This argument has some force, but out of an abundance of caution the Court concludes that MinedMap has plausibly alleged standing, at least for the limited purpose of a facial 12(b)(1) motion to dismiss.

[6]  Under General Order #14, a party who files a RICO claim must also file a Civil RICO statement within thirty days after the filing date of the complaint.  As Judge McAvoy noted in his February opinion, plaintiffs "belatedly" filed a RICO statement in connection with their prior pleading.

prior pleading had failed to allege either a closed- or open-ended period of racketeering activity. *9384-2557 Quebec, Inc.*, 2021 WL 619413, at *8–*10.

A review of the new pleading confirms that it adds little in the way of meaningful detail on this element of the claim. *Compare* Am. Compl., Dkt. No. 29 ¶¶ 162–65, *with* Second Am. Compl. ¶¶ 201–09. In fact, the latest pleading has recycled most of the same allegations about the alleged pattern of racketeering activity with the addition of just a few, wholly conclusory new ones. Second Am. Compl. ¶¶ 206–09. Accordingly, MinedMap has failed to allege a pattern of racketeering activity for substantially the same reasons already set forth in Judge McAvoy's prior opinion. *See 9384-2557 Quebec, Inc.*, 2021 WL 619413, at *8–*10.

The re-pleaded allegations surrounding the predicate acts of fraud also remain defective. "Given the routine use of mail and wire communications in business operations, . . . RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014) (cleaned up).

In his prior opinion, Judge McAvoy concluded that plaintiffs' allegations of wire and mail fraud failed to meet even the threshold pleading standard of 12(b)(6), let alone the particularity requirement imposed by Rule 9(b). *9384-*

*2257 Quebec, Inc.*, 2021 WL 619413, at \*11–\*12.  While the latest pleading by MinedMap includes many more individual allegations of mail fraud, Second Am. Compl. ¶¶ 149–86, the pleading basically just restates the same exact allegations related to wire fraud, *id*. ¶¶ 187–92, with a couple conclusory claims tacked on at the end for good measure, *id*. ¶¶ 193–95.  As the moving defendants point out, these allegations of mail and wire fraud—both new and old—still fail to satisfy the particularity requirement of Rule 9(b).

Notably, MinedMap has added a new kind of predicate act in this latest pleading: computer fraud under a federal law known as the Computer Fraud and Abuse Act ("CFAA").  Second Am. Compl. ¶¶ 196–200.  But those allegations fail to save this RICO claim for substantially the reasons stated in the moving defendants' brief.  *See* Defs.' Mem. at 15–18.

In short, a review of the latest pleading confirms that this is one of those cases "molded to the RICO form" that in reality involves "garden variety claims for fraud" or possibly claims for breach of contract.  *Bristol-Myers Squibb Co.*, 948 F. Supp. 2d at 345.  Accordingly, the civil RICO claim will be dismissed.

## B. <u>State Law Claims</u>

The moving defendants argue that the sole basis for federal-question jurisdiction was the re-pleaded civil RICO claim.  Defs.' Mem. at 23.  Because that claim will be dismissed, defendants argue that the remainder of the

complaint should also be dismissed.  *Id.*  According to

defendants, (1) MinedMap has failed to adequately allege complete diversity

of citizenship of the limited liability companies named as defendants; and

(2) the remaining state law claims should be dismissed out of concern for,

*inter alia*, judicial economy.  *Id.*

## 1.  Diversity Jurisdiction and LLCs

"A limited liability company takes the citizenship of its members."  *Avant*

*Cap. Partners, LLC v. W108 Dev., LLC*, 387 F. Supp. 3d 320, 322 (S.D.N.Y.

2016).  "A complaint premised upon diversity of citizenship must allege the

citizenship of natural persons who are members of a limited liability company

and the place of incorporation and principal place of business of any corporate

entities who are members of the limited liability company."  *Id.* (citation

omitted).

Upon review, the Second Amended Complaint fails to adequately allege

facts sufficient to establish diversity jurisdiction.  As the moving defendants

point out, the pleading simply alleges that MinedMap, the remaining

plaintiff, is a Nevada corporation.  Second Am. Compl. ¶ 6.  The pleading is

similarly deficient as to defendants Coinmint, Oswego Data LLC, Lori S.

Thompson-Maranda LCSW PLLC, and Ethereum Ventures LLC.  *See* Defs.'

Mem. at 23 (explaining deficiencies).

## 2.  **Supplemental Jurisdiction**

The remaining claims in MinedMap's Second Amended Complaint arise
under state law.  Second Am. Compl. ¶¶ 210–273.

As a general matter, federal courts "have supplemental jurisdiction over
all other claims that are so related to claims [over which the court has]
original jurisdiction that they form part of the same case or controversy."  28
U.S.C. § 1367(a).  In other words, "[t]he state and federal claims must derive
from a common nucleus of operative fact."  *United Mine Workers of Am. v.
Gibbs*, 383 U.S. 715, 725 (1966).

"[O]nce it is determined that a supplemental claim is related to the claim
within the court's original jurisdiction such that they form the same case or
controversy, supplemental jurisdiction over the related claim is
mandatory."  *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d
Cir. 2018 (citation omitted).

The exercise of supplemental jurisdiction over related state law claims has
its "justification . . . in consideration of judicial economy, convenience and
fairness to litigants; if these are not present a federal court should hesitate to
exercise jurisdiction over state claims, even though bound to apply state law
to them."  *Gibbs*, 383 U.S. at 726.

As the Supreme Court has explained, "*Gibbs* emphasized that pendent
jurisdiction is a doctrine of discretion, not of plaintiff's right," and that it

"articulated . . . a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (cleaned up).

Consequently, a federal court may decline to exercise supplemental jurisdiction where "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c); *see also Shahriar v. Smith & Wollensky Rest. Grp.*, 659 F.3d 234, 245 (2d Cir. 2011).

However, even if one of the § 1367(c) categories apply, "a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity." *Catzin*, 899 F.3d at 85 (quoting *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004)).

As the Second Circuit has cautioned, "[t]he declining of supplemental jurisdiction must actually promote [the enumerated] values as 'the fact that one or more of the grounds for declining to exercise supplemental jurisdiction set forth in section 1367(c) does not mean that dismissal is mandated.'" *Id*.

- 20 -

(quoting *Oneida Indian Nation of N.Y. v. Madison Cty.*, 665 F.3d 408, 439 (2d Cir. 2011)).

"Where, as here, a plaintiff's federal claims will be dismissed before trial, a district court should generally decline to exercise supplemental jurisdiction over any state law claims absent exceptional circumstances." *B.A. v. City of Schenectady Sch. Dist.*, 209 F. Supp. 3d 515, 528 (N.D.N.Y. 2016).

There are no exceptional circumstances presented in this case.  On the contrary, the prior opinions issued by Judge McAvoy and by this Court confirm that this is a run-of-the-mill business dispute between some contracting parties, not a civil RICO claim.  *Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017) ("RICO targets conduct that amounts to or poses a threat of continued criminal activity."  (cleaned up)).

## V.  **CONCLUSION**

Therefore, it is

ORDERED that

1.  Northway, Maranda, MMLLC, Hudson Data, and Carter's motion to dismiss is GRANTED;

2.  MinedMap's Second Amended Complaint is DISMISSED;

3.  MinedMap's civil RICO claim is DISMISSED WITH PREJUDICE;

4.  Supplemental jurisdiction over the state law claims is DECLINED; and

5.  Those state law claims are DISMISSED WITHOUT PREJUDICE.

The Clerk of the Court is directed to terminate any pending motions, enter a judgment accordingly, and close the file.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  May 13, 2021
Utica, New York.