```
                   UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF NEW YORK


SERENITY ALPHA, LLC, et al.,  )
                              )
        Plaintiffs,           )        CASE NO. 1:19-CV-501
                              )
    vs.                       )
                              )
NORTHWAY MINING, LLC, et al., )
                              )
        Defendants.           )
                              )
```

  TRANSCRIPT OF ELECTRONICALLY-RECORDED PROCEEDINGS
        BEFORE THE HON. CHRISTIAN F. HUMMEL
             WEDNESDAY, MAY 12, 2021
                ALBANY, NEW YORK


**FOR THE PLAINTIFFS:**
      Williams LLP
      By:  T. Edward Williams, Esq.
      7 World Trade Center, 250 Greenwich St., 46th Floor
      New York, New York  10007


**FOR THE DEFENDANTS:**
      E. Stewart Jones Hacker Murphy, LLP
      By:  John F. Harwick, Esq.
      28 Second Street
      Troy, New York  12180


            **THERESA J. CASAL, RPR, CRR, CSR**
              Federal Official Court Reporter
                445 Broadway, Room 509
                Albany, New York  12207

              *THERESA J. CASAL, RPR, CRR*
          *UNITED STATES DISTRICT COURT - NDNY*

1                    (Court commenced at 11:30 AM.)

2              THE CLERK:  Today is Wednesday, May 12, 2021,

3    it is 11:30 AM.  The case is Serenity Alpha, LLC,

4    et al., versus Northway Mining, LLC, et al., docket number

5    19-CV-501.  Appearances for the record, please.

6              MR. WILLIAMS:  Good morning, your Honor.

7    T. Edward Williams for the plaintiff, MinedMap.

8              THE COURT:  Good morning, Mr. Williams, sir.

9              MR. WILLIAMS:  Good morning.

10             MR. HARWICK:  John Harwick, for E. Stewart Jones

11   Hacker Murphy, LLP, for Northway Mining, Michael Carter,

12   Michael Maranda, Hudson Data Center, Inc., Mike Maranda,

13   LLC.

14             THE COURT:  Good morning, Mr. Harwick.

15             MR. HARWICK:  Good morning.

16             THE COURT:  I scheduled this conference because

17   Mr. Williams filed a letter, which is docket number 162,

18   which was filed on April 27th of 2021, which is entitled,

19   "Request for Court Conference."

20             Docket number 165 is a response to that letter,

21   which was filed by Mr. Harwick on behalf of his various

22   clients.

23             Mr. Williams, let me ask you a preliminary

24   question.

25             MR. WILLIAMS:  Yes, sir.

1    THE COURT:  How many miners are in dispute at this
2  point in time?
3    MR. WILLIAMS:  3,600.
4    THE COURT:  All right.  And my understanding is
5  that at one point in time, Mr. Harwick's clients had
6  indicated that certain of those miners were available to be
7  picked up in Oswego, New York?
8    MR. WILLIAMS:  That's what we were told.  My
9  clients did come out from Nevada and inspect those --
10 inspected those miners.  The problem at the time was that
11 although Mr. Harwick's clients have represented that those
12 miners belong to my clients, the serial numbers on those
13 miners, or at least the ones we saw, were all shaved off.
14 And by the way, the ones that were presented to us were
15 about 500 miners, it wasn't quite the number that we
16 anticipated.
17   THE COURT:  Okay.  Now, Mr. Harwick indicated in
18 his filing, which is docket number 165, that in addition to
19 the serial number, there were additional ways in which
20 miners can be identified.  Did your clients look to see if
21 any of those were, in fact, their miners?
22   MR. WILLIAMS:  Yeah.  We tried that.  So of the
23 500, there is a way to determine if those are your miners.
24 For example, you would have to plug 'em in and then once
25 they're plug in -- plugged in, rather, you open them up and

1  then there's a code that comes up.  And that's the way to

2  identify them.  But these miners couldn't -- so, the ones

3  that we had were all palliated, I think that's the right

4  phrasing --

5        THE COURT:  They were on pallets and they were

6  sealed, right?

7        MR. WILLIAMS:  Exactly.  So we couldn't -- there's

8  no way for us to identify them outside of the serial numbers

9  that we had, that we were sort of matching to them.

10        THE COURT:  Okay.  All right.  Mr. Harwick, let me

11  ask you a question:  How many miners do you -- do your

12  clients contend they received from plaintiffs?

13        MR. HARWICK:  Well, that number's in dispute, it's

14  around 2,000, so we dispute the number of miners.  I note in

15  the pleadings there's a couple different numbers alleged.

16  Paragraph 75 of the -- what we believe to be the operative

17  complaint, which is docket number -- or document number 150,

18  plaintiff said MinedMap and Serenity, two plaintiffs,

19  shipped 2,689 miners to Northway, okay.  So, clearly, one of

20  those defendants -- or one of those plaintiffs is no longer

21  a party to this action, so it's really unclear at this point

22  as to how many MinedMap shipped and how many Serenity claims

23  they shipped.  But we dispute the number; we think it's more

24  around 2,000.

25        And we did show, submit evidence, on the prior

1   motion for contempt that there is an internal number that
2   can be identified by taking a closer look at these machines
3   that can identify whether or not these were the subject of
4   the transfer or not.
5               THE COURT:  Let me ask you a question:  How many
6   miners do you contend were at your Oswego facility at the
7   time that Mr. Williams' clients endeavored to inspect them?
8               MR. HARWICK:  I don't know.  I'd have to look back
9   at our papers that we submitted on the motion for contempt.
10              THE COURT:  Why don't you do that.
11              MR. HARWICK:  You want me to do that?
12              THE COURT:  Yeah, um-hum.
13              MR. HARWICK:  All right.  I'm gonna pull up the
14  docket.
15                    (Pause in proceedings.)
16              THE COURT:  Mr. Williams --
17              MR. WILLIAMS:  Yes, sir.
18              THE COURT:  -- do you know how many miners they
19  contend were available for pick up at Oswego?
20              MR. WILLIAMS:  My understanding is they never
21  provided us a number.  Instead, there was a group of miners
22  that have been palliated, sitting there.  My clients counted
23  them, 500 of them, and we couldn't identify them as ours.
24              THE COURT:  Okay.
25              MR. HARWICK:  I thought we did have a list of

1  serial numbers attached to our opposition to the prior
2  contempt, your Honor.  I don't think I have a number of -- a
3  count, but I can look back, if I can access the docket here.
4         THE COURT:  I guess I'm trying to get some sense
5  of why this matter can't be resolved or why no progress was
6  made to having it resolved.  I know you spent an extended
7  period of time with Judge McCarthy in an attempt to settle
8  this matter, but the matter was not resolved and I'm trying
9  to get some sense of why that occurred.
10        Mr. Williams, it appears to me you spent a number
11 of hours with Judge McCarthy.  Did you make any progress
12 towards trying to resolve this matter?
13        MR. WILLIAMS:  Ya know, I think we made some
14 progress.  As I -- counsel and I have spoken about over the
15 last few months, I think we need probably the mediator the
16 Court recommended a long time ago that Mr. Harwick declined.
17        THE COURT:  Mr. Carpinello?
18        MR. WILLIAMS:  Yeah.  I just think we need a
19 stronger personality to drive the parties.  As the Court
20 knows, there's a lot of money at stake, about 12.5 million
21 in damages, accounting for the bitcoins that have been mined
22 from these miners.  And so we're just tryin' to -- one of
23 the things I've told Mr. Harwick candidly is, ya know, it
24 would help me a great deal if, ya know, if your guy were to
25 tell me, hey, look, I mined X, Y, Z from these miners and X,

1  Y, Z bitcoins and here it is, and then I can go back to my
2  guys and say look, this is what was mined from it, ya know.
3  That would help push a deal forward.  I think this is a case
4  that should resolve.  We've been in it for two years now and
5  we're still at the pleading motion stage.
6           THE COURT:  Frankly, that's my concern.  You've
7  been at this for two years now, since sometime in 2019, and
8  there appears to have been no progress made, and now we're
9  in a position where you want to make a motion to hold them
10 in civil or criminal contempt and you want to make a motion
11 for expedited discovery, and Mr. Harwick, who wants to make
12 the same motion for expedited discovery, while there's also
13 a motion to dismiss pending, I believe, at docket number
14 157.  So that's why, frankly, why I had you come in here
15 this morning, if there's some way to see to move this matter
16 towards resolution.
17          What's your sense, Mr. Harwick, of what happened
18 with Judge McCarthy?
19          MR. HARWICK:  Yeah, well, ya know, we did spend
20 some time with Judge McCarthy, and ya know, I wasn't privied
21 to his conversations with plaintiffs, but it's my
22 understanding that part of the problem -- and it's not
23 Mr. Williams' fault, but part of the problem was with his
24 clients' unrealistic expectation of their ability to prove
25 and recover damages in this case.  So, ya know, without

1  getting into the specific numbers, their demand was, we
2  felt, extremely high, and there was no willingness to come
3  into the realm of what we thought would be a reasonable
4  resolution of this matter.
5         Bill McCarthy, ya know, tried to bring the parties
6  together, but, ya know, I think maybe Judge Carpinello could
7  possibly take a crack at it, and I don't know if he's on the
8  list here for the Northern District, but --
9         THE COURT:  He doesn't need to be on the list.  If
10 you gentlemen agree to him, you can use someone off the
11 list.
12        MR. HARWICK:  Yeah.  He's -- I've dealt with him
13 before on cases, and he's -- I don't know how to say this,
14 but a little more forceful.
15        THE COURT:  I've known Judge Carpinello for about
16 35 years and no one has ever accused him of being delicate.
17        MR. HARWICK:  Yeah.  And I hope this doesn't get
18 back to Judge McCarthy.
19        THE COURT:  I like Judge McCarthy, I like Judge
20 Carpinello.  I'm just trying to see what I can do to move
21 this matter forward for you gentlemen.
22        MR. WILLIAMS:  I do think that's what the parties
23 need.  I mean, I -- I think we've made some progress in the
24 last few months in sort of understanding each other and
25 understanding why the case needs to settle.  I think when

1   it's all said and done, each party is probably gonna spend
2   probably close to 500,000 in attorneys' fees before this
3   thing ever gets to a place where we can find a good
4   resolution.
5              THE COURT:  And frankly, that's part of my
6   concern.  You can both sit down by the way.  I like to see
7   lawyers make money; I'm a lawyer, my sister's a lawyer, I
8   have three brother-in-laws (sic) who are lawyers, but at
9   some point -- this doesn't seem to be moving towards any
10  sort of resolution.
11             So, let me go back and -- Mr. Harwick, let me ask
12  you this question:  How many miners do your clients
13  currently have in their possession?
14             MR. HARWICK:  I don't know.
15             THE COURT:  Do you have any sense of how many?
16  Mr. Williams indicates when they went out to Oswego, they
17  thought there were approximately 500 miners.
18             MR. HARWICK:  I think there's more than that.  I
19  think there's probably about 2,000.  But you also have to
20  realize that my client's in the business of mining,
21  brokering miners, buying miners, selling miners, and ya
22  know, these are all kind of -- and that's nine miners and
23  that's nine minor, and --
24             THE COURT:  Right.
25             MR. HARWICK:  It's -- they're like widgets, so

1   they're not unique pieces, and so I can't answer that
2   question.  But what I think -- part of the problem was with
3   the last mediation, was that we were doing this all over
4   Zoom.
5              THE COURT:  Right.
6              MR. HARWICK:  Mr. Williams was in New York, I was
7   in Troy, Bill was in Troy with us, his clients were in
8   Nevada, my client was on Long Island, and ya know, I
9   think -- what I would ask the Court consider is ordering the
10  parties to appear in person for, ya know, a further
11  mediation, and we'd consent to Judge Carpinello.
12             THE COURT:  Mr. Williams, if I direct people to
13  appear for an in-person mediation with Judge Carpinello, do
14  you have any objection to that --
15             MR. WILLIAMS:  I wouldn't object to that, just --
16             THE COURT:  -- including --
17             MR. WILLIAMS:  -- understanding that my guys are
18  in Nevada --
19             THE COURT:  Yeah.
20             MR. WILLIAMS:  -- they'll fly out.
21             THE COURT:  Yeah.  All right.  So then my question
22  then becomes, Mr. Williams, do you want me to set a briefing
23  schedule for your motion to -- motion for contempt and your
24  motion for expedited discovery, or do you want to hold that
25  request in abeyance to see if you make some progress with

1  Judge Carpinello?  What is best for you?

2              MR. WILLIAMS:  Well, here's my preference:  I
3  think we can do it simultaneously, that way it gives parties
4  incentives --

5              THE COURT:  Sure.

6              MR. WILLIAMS:  -- to move forward and I think both
7  John and I want to see this case go forward.  I mean, ya
8  know, I have no interest in, ya know, chasing miners that,
9  ya know, may or may not have mined a lot of bitcoins or may
10 or may not have been profitable in the end.

11             THE COURT:  All right.  So do you want to file
12 your -- you want to file your motions and pursue mediation
13 with Judge Carpinello at the same time?

14             MR. WILLIAMS:  Yes, sir.

15             THE COURT:  When would you propose to file your
16 motions by?

17             MR. WILLIAMS:  I can get it in -- I have a large
18 briefing -- two briefings on the 17th and the 21st.

19             THE COURT:  Mr. Williams, you tell me a date that
20 works for you and I'll agree to it.

21             MR. WILLIAMS:  All right.  (Pause.)  How about
22 Friday, the 28th?

23             THE COURT:  So you'll file your motions by
24 May 28th?

25             MR. WILLIAMS:  Yes, sir.

*Serenity Alpha v. Northway Mining, et al.– 19-CV-501*

1  THE COURT: And Mr. Harwick, sir, when would you
2  like to file your responses?
3  MR. HARWICK: Could we have until June 18th?
4  THE COURT: Sure.
5  MR. HARWICK: Yeah. I think Carpinello, your
6  Honor, probably can fit us in, ya know, before then, I would
7  think.
8  MR. WILLIAMS: I hope.
9  THE COURT: Yeah. And he will be. I mean, at one
10  point in time, I thought you might reach out to him in the
11  past and I happened to see him and I mentioned to him the
12  possibility you might reach out to him about this, and he
13  was interested in doing it, so I'm sure he'll make some
14  effort to accommodate you. And if I happen -- I
15  periodically see him walking my dog, so if I run into him
16  walking the dog, I'll mention it to him.
17  If, at some point in time, you think the Court can
18  help you settle this, I'm happy to do that for you. I mean,
19  I don't have Judge Carpinello's experience in settling
20  commercial matters, but I've settled lots of cases as a
21  Judge, so if at some point you think I could help you --
22  MR. WILLIAMS: Ya know, that may carry some weight
23  with my guys, 'cause there's a cultural difference. My guys
24  are Korean Americans and they are very -- they believe in
25  wrong is wrong and right is right, and if you steal

1  something from me, you ought to be punished ten-fold and
2  those type of things.  But if a Judge --
3              THE COURT:  Why don't we do this, why don't you
4  reach out to Judge Carpinello, if he can do it, fine, if he
5  can't do it, call me and I'll do it for you.
6              MR. WILLIAMS:  Okay.  John, what do you think?
7              MR. HARWICK:  Yeah, that's fine.  I think Judge
8  Carpinello would be a good fit for this case.  No offense,
9  your Honor.
10             THE COURT:  None -- I suggested him to you, so you
11 can't offend me.  I suggested him to you back in the day
12 and, ya know, I think, Mr. Harwick, your client had some
13 reluctance, but this to me seems to be getting into Judge
14 Carpinello's wheelhouse.  I mean, this is what he did when
15 he was a lawyer --
16             MR. WILLIAMS:  Okay.
17             THE COURT:  -- he did commercial litigation.  He
18 didn't do miners because nobody did miners back in the
19 day --
20             MR. WILLIAMS:  Right, right.
21             THE COURT:  -- but this is certainly his
22 wheelhouse.  But if Judge Carpinello cannot accommodate you
23 for some reason, reach out to me and I'm happy to do a
24 conference for you.
25             MR. WILLIAMS:  Okay.

1     MR. HARWICK:  Yeah, I think that's fine.  We can
2 use that as a backdrop and, ya know, hopefully we can make
3 some progress.
4     MR. WILLIAMS:  What's Judge Carpinello's
5 information, do you have it, John?
6     THE COURT:  It's Anthony Carpinello, Jr.
7     MR. HARWICK:  Anthony.  I think he's with JAMS or
8 NAMS.
9     THE COURT:  I believe he's with JAMS.
10     MR. WILLIAMS:  Is he with JAMS in the city or --
11     THE COURT:  He's with JAMS -- he lives up here,
12 but he does JAMS in the city and here.
13     MR. WILLIAMS:  Oh, okay.
14     THE COURT:  He lives in East Greenbush and he has
15 an apartment, I believe, in Williamsburg.
16     MR. WILLIAMS:  Okay.  All right.
17     MR. HARWICK:  I think there's direct flights into
18 Albany from Nevada, too, I think --
19     MR. WILLIAMS:  There is.
20     MR. HARWICK:  -- so --
21     MR. WILLIAMS:  Well, Syracuse.  They would come up
22 through Syracuse.
23     THE COURT:  You can fly directly from -- you can
24 fly directly from Nevada, from Las Vegas, to Albany.
25     MR. WILLIAMS:  Oh, you can?

1          MR. HARWICK:  Yeah, southwest, I think.
2          THE COURT:  Southwest used to fly to Las Vegas, I
3  believe they still do.
4          MR. WILLIAMS:  I see.
5          MR. HARWICK:  That might have changed, but --
6          MR. WILLIAMS:  I thought you had to come through
7  Syracuse and then --
8          THE COURT:  Yeah, that may have changed,
9  Mr. Williams, since my wife allowed me to go to Las Vegas,
10 but you used to be able to fly directly from Vegas.
11         MR. WILLIAMS:  (Unintelligible.)
12                  (Laughter.)
13         THE COURT:  Mr. Williams, anything else I can do
14 for you this morning, sir?
15         MR. WILLIAMS:  No, sir, that's all.  Thank you.
16         THE COURT:  Mr. Harwick, sir?
17         MR. HARWICK:  No, Judge, thank you.
18         MR. WILLIAMS:  And good to see you in person.
19         THE COURT:  Nice to meet you.  And if Judge
20 Carpinello doesn't help you out, give me a call and I'll try
21 to help you out, all right?
22         MR. WILLIAMS:  Okay.  Will do.
23         THE COURT:  Thank you.
24         MR. WILLIAMS:  Thank you, your Honor.
25         MR. HARWICK:  Will this be posted on ECF, is that

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT - NDNY*

*Serenity Alpha v. Northway Mining, et al.- 19-CV-501*

1  how it works, automatically or no?
2          THE CLERK:  No.
3          MR. HARWICK:  No.
4          THE CLERK:  I mean, it can be ordered as a
5  transcript.
6          MR. HARWICK:  All right.  Just curious.
7          THE COURT:  And we were supposed to have a court
8  reporter, but she's still in with one of the District Court
9  Judges and she's gonna be a while.  I didn't want to hold
10 you guys up.
11         MR. HARWICK:  Appreciate that.
12         THE COURT:  I assume Mr. Williams wants to get
13 back to the city, so --
14         MR. WILLIAMS:  Yeah.
15                 (This matter adjourned at 11:45 AM.)
16                      - - - - -

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT - NDNY*

C E R T I F I C A T I O N

    I, THERESA J. CASAL, RPR, CRR, CSR, Official Court Reporter in and for the United States District Court, Northern District of New York, do hereby certify that I listened to the electronically-recorded hearing set forth in the heading hereof; that I did make a stenographic record of the recording and caused the same to be transcribed; that the foregoing is a true and correct transcript of the same and whole thereof.

    Dated this 1st day of July, 2021.

**s/Theresa J. Casal**

THERESA J. CASAL, RPR, CRR, CSR

FEDERAL OFFICIAL COURT REPORTER

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT – NDNY*